SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Robert L. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, New York 10022
By: Moshe Maimon, Esquire
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE SANTOMENNO, for the use and benefit of John Hancock Funds II-All Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-Global Bond Fund; John Hancock Funds III-International Core Fund; John Hancock Funds II-International Value Fund ; John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Lifestyle Balance Portfolio; John Hancock Funds II-Lifestyle Growth Portfolio; John Hancock Funds II-Lifestyle Conservative Portfolio; John Hancock Trust: Mid Value Trust ; John Hancock Trust-Money Market Trust; John Hancock Funds II-Real Return Bond Fund ; John Hancock Trust-Small Cap Growth Trust ; John Hancock Funds II-Small Company Value Fund ; John Hancock Trust-Strategic Income Trust ; John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities Fund and John Hancock Trust -Value Trust and | **Docket No.**<br><br>**Civil Action**<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

546319.1

DANIELLE SANTOMENNO individually
and on behalf of ERISA covered employee
benefit plans that held, or continue to hold,
group variable annuity contracts with John
Hancock Life Insurance Company (U.S.A.)
which contracts purchased or purchase units
in one or more of the aforesaid mutual funds
and the participants and beneficiaries of all
such ERISA covered employee benefit plans.

      Plaintiffs,

vs.

John Hancock Life Insurance Company
(U.S.A.), John Hancock Life Insurance
Company of New York, John Hancock
Investment Management Services, LLC, and
John Hancock Distributors, LLC,

      Defendants.

Plaintiff, DANIELLE SANTOMENNO, whose street address is 18-00 Fair Lawn

Avenue, Suite 105, Fair Lawn, New Jersey, 07410 and whose post office address is Post Office

Box 2652, Fair Lawn, New Jersey 07410, for the use and benefit of John Hancock Funds II-All

Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-

Global Bond Fund; John Hancock Funds III-International Core Fund ; John Hancock Funds II-

International Value Fund; John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock

Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Lifestyle Balanced Portfolio; John

Hancock Funds II-Lifestyle Growth Portfolio; John Hancock Funds II-Lifestyle Conservative

Portfolio; John Hancock Trust: Mid Value Trust; John Hancock Trust-Money Market Trust; John

Hancock Funds II-Real Return Bond Fund; John Hancock Trust-Small Cap Growth Trust ; John

Hancock Funds II-Small Company Value Fund; John Hancock Trust-Strategic Income Trust;

John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities

Fund; and John Hancock Trust-Value Trust, and DANIELLE SANTOMENNO individually and

on behalf of ERISA covered employee benefit plans that held, or continue to hold, group annuity

contracts with John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance

Company of New York which contracts purchased or purchase units in one or more of the

aforesaid mutual funds and the participants and beneficiaries of all such ERISA covered

employee benefit plans, by way of Complaint against, Defendants, John Hancock Life Insurance

Company (U.S.A.), (whose principal place of business is believed to be 601 Congress Street,

Boston, Massachusetts, 02210), John Hancock Life Insurance Company of New York (whose

principal place of business is believed to be 197 Clarendon Street, Boston Massachusetts,

02117), John Hancock Investment Management Services, LLC (whose principal place of

business is believed to be 601 Congress Street, Boston, Massachusetts, 02210), and John

Hancock Distributors, LLC, (whose principal place of business is believed to be 601 Congress

Street, Boston, Massachusetts, 02210), says that:

## I. NATURE OF ACTION AND SUMMARY OF CLAIMS

### A.    Overview

1.      This action, and the underlying claims, derive from Defendants' sale and

operation of group annuity contracts to the sponsors of Plaintiffs' 401(k) plans, the management

of assets in those plans, and the investments which Defendants made of the plans' assets, which,

as a consequence of Defendants' misconduct, caused Plaintiffs to pay unreasonable and

excessive fees in connection with the investment of their retirement savings.

2.     The Plaintiff ERISA covered employee benefit plans (hereafter "the Plaintiff Plans") are employer-sponsored retirement plans subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001, *et seq.*

3.     The Plaintiff class are or were participants and beneficiaries of the aforesaid Plaintiff Plans ("Plaintiff Participants"). Collectively, the Plaintiff Plans and Plaintiff Participants form the "Plaintiff Class.)

4.     Defendants, John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (collectively "John Hancock (U.S.A.)"), provide services to ERISA covered employee benefit plans and, in connection therewith, provided and provide the Plaintiff Plans with various investment options including a product known as a "group annuity contract."

5.     As part of its services, Defendant, John Hancock (U.S.A.) provided and provides these Plans with a set selection of twenty-nine mutual funds for potential investment by the Plans, Plan participants and Plan beneficiaries.

6.     Each of the Plans then selects a subset of the funds provided by John Hancock (U.S.A.), which subset is made available to Plan participants for investment of their retirement assets.

7.     Individual Plan participants do not invest directly in any mutual fund. Rather the monies which an individual wishes to invest are invested in variable annuity accounts, provided by John Hancock (U.S.A.). These monies are segregated into Sub-Accounts which correspond to the various mutual fund investment options ("sub-accounts") available to each Plan.

8.     John Hancock (U.S.A.) pools the funds designated for various mutual funds from multiple Plans and uses the funds from the Sub-Accounts to purchase units in the chosen mutual fund.

9.     The substance of the claims with respect to Defendants' actions is that the Plans, all ERISA covered defined contribution retirement plans and their participants and beneficiaries, which owned group annuity contracts issued by John Hancock (U.S.A.), were charged unreasonable and excessive fees on their retirement investments for products and services that were not materially different than an investment by a standard 401(k) plan directly into a mutual fund.

10.     Defendants have developed a scheme in which they market their package of investment options to unsophisticated small to mid-size employee retirement programs.

11.     Defendants sell what is essentially an investment in a mutual fund within a wrapper of an annuity or insurance contract which, upon information and believe, does not provide any additional variable annuity features (unless an extra fee, in addition to the already excessive fee, is paid) to distinguish the Plaintiff Participants' investment from a direct investment in a retail mutual fund.

12.     Defendant, John Hancock (U.S.A.) has failed to fulfill its duties under ERISA as a fiduciary to the Plaintiff Plans by charging excessive unwarranted fees.

13.     Defendants, through charging excessive fees, have appropriated significant assets from the Plan Participants' retirement accounts on a continual basis.

14.     The Defendant's program fees charged to Plaintiffs exceed what would be a reasonable fee negotiated in an arm's length transaction for such services.

15.     Excessive fees are charged to Plan Participants' accounts, both individually and in the aggregate, by John Hancock (U.S.A.) and then paid, in whole or in part, to external service providers of the Plan or Program, in several ways, including the Sales and Service fee, the high and continual commissions paid to financial intermediaries, the recordkeeping and administrative fees assessed separately at the account level, mutual fund distribution and service fees ("12b-1 fees") paid to Defendants from the underlying mutual funds, high investment management fees charged by Defendants and their affiliates to affiliated underlying mutual funds, high expense structures in the underlying mutual funds which do not take advantage of the Defendants' negotiating leverage to obtain the most favorable fee structure; and improper revenue sharing arrangements which inure to the benefit of Defendants instead of being returned to the plan.

16.     Defendant, John Hancock (U.S.A.) is a fiduciary under the ERISA.  Plaintiff, Danielle Santomenno, files these ERISA claims because Defendant has breached its fiduciary duties by (a) failing to act prudently towards the Plans for which it is a fiduciary, (b) failing to take steps to defray costs when managing the Plan assets, (c) failing to invest in suitable underlying available mutual fund share classes, (d) failing to utilize the negotiating power that the Defendants' or their affiliates possessed to negotiate a more favorable fee structure with sub-advisors, (e) self dealing with respect to the setting of the advisory fee charged to affiliated underlying funds in comparison to the fees paid to sub-advisors who were performing all material investment management functions with respect to the funds, (f) self dealing and misappropriation of plan assets by retaining revenue sharing payments from unaffiliated underlying mutual funds for the funds' participation in Defendants' program and (g) charging and/or accepting 12b-1 fees at the underlying fund level when the plan would qualify as an institutional investor and could

avoid such distribution and service fees.

17.     Defendant, John Hancock Investment Management Services, LLC, has breached its fiduciary obligations under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §80a-35(b), by charging advisory fees that were so disproportionately large that those fees bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

18.     Plaintiff, Danielle Santomenno, files these claims under the ICA for the use and benefit of John Hancock Funds II-All Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-Global Bond Fund; John Hancock Funds III-International Core Fund ; John Hancock Funds II-International Value Fund; John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Lifestyle Balanced Portfolio; John Hancock Funds II-Lifestyle Growth Portfolio; John Hancock Funds II-Lifestyle Conservative Portfolio; John Hancock Trust: Mid Value Trust; John Hancock Trust-Money Market Trust; John Hancock Funds II-Real Return Bond Fund; John Hancock Trust-Small Cap Growth Trust ; John Hancock Funds II-Small Company Value Fund; John Hancock Trust-Strategic Income Trust; John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities Fund; and John Hancock Trust-Value Trust.

19.     Plaintiff, Danielle Santomenno, files these claims under ERISA individually and on behalf of ERISA covered employee benefit plans that held, or continue to hold, group annuity contracts with John Hancock (U.S.A.) which contracts purchased or purchase units in one or more of the JH Mutual Funds.

**B.     The Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq ("ERISA)**

20.    ERISA was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA §2(a), 29 U.S.C. §1001(a).

21.    This action seeks equitable relief and damages under ERISA.

22.    In order to protect pension investments, ERISA requires that those who manage plan assets act (a) with loyalty to the interests of plan participants; (b) prudently; (c) to diversify plan investments so as to minimize the risk of large losses; and (d) in accordance with plan documents. *See* ERISA §§404(a)(1)(A), (B), (C) and (D), 29 U.S.C. §§1104(a)(1)(A), (B), (C) and (D).

23.    Under ERISA §406, 29 U.S.C. §1106, those who manage plan assets must refrain from engaging in transactions with related parties, known as "prohibited transactions."

24.    Pursuant to ERISA §405, 29 U.S.C. §1105, a co-fiduciary to a plan may be liable for another fiduciary's violations if such co-fiduciary participates in, or knows of, the other fiduciary's violations.

25.    Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), a civil action may be maintained against a non-fiduciary that participates in a fiduciary's violation.

26.    When ERISA's strict standards are not met, plan participants have the authority to seek relief under ERISA §§409 and 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), to redress violations and restore plan losses.  Participants may also seek injunctions to prevent those who have violated ERISA in the past from managing or providing services to an employee benefit plan in the future.

27.    Plaintiffs seek disgorgement of profits, restitution of excess charges and the recovery of the full value of their benefits from Defendant John Hancock (U.S.A.) on account of

such Defendant's breach of fiduciary duties under ERISA 404(a)(1)(B) because Defendant made imprudent investments, paid and collected excessive fees, and failed to select less costly options available to it when using Plan assets to purchase interests in mutual funds.

28.     Plaintiffs seek disgorgement of profits, restitution of excess charges under ERISA and to recover the full value of their benefits from Defendant John Hancock (U.S.A.) on account of such Defendant's breach of fiduciary duties under ERISA 404(a)(1)(A) because Defendant failed to discharge its fiduciary duties for the exclusive purpose of providing benefits to Plaintiffs at reasonable costs.

29.     Plaintiffs seek disgorgement of profits, restitution of excess charges and to recover the full value of their benefits from Defendant John Hancock (U.S.A.) on account of such Defendant's breach of fiduciary duties , on account of such Defendant's having engaged in certain prohibited "party in interest" and "self dealing transactions," in violation of ERISA 406(a) and (b).

30.     Plaintiffs bring this action pursuant to ERISA 409(a), 29 U.S.C. §1109(a), ERISA 502(a)(2), (3)(A) and (g), 29 U.S.C. §1132(a)(2), (3)(A) and (g) for, among other relief, the following:

    a.     A declaratory judgment holding that the acts of Defendant John Hancock (U.S.A.), John Hancock Investment Management Services, LLC, and John Hancock Distributors, LLC, described herein are illegal as violations of ERISA.

    b.     A permanent injunction against the Defendants from engaging in the prohibited practices described herein.

    c.     Disgorgement/restitution of the excessive and impermissible fees received by Defendants on account of investments made in John Hancock (U.S.A.) products.

d.      Disgorgement/restitution of the impermissible revenue sharing payments that were received by Defendant John Hancock Services, LLC and Defendants John Hancock (U.S.A.) on account of investments made in John Hancock Life Insurance Company (U.S.A.) products.

e.      Disgorgement of excessive fees charged by underlying, unaffiliated mutual funds that represent the difference between the unsuitable investment classes. Defendants selected for Plaintiffs' assets and the lowest cost alternative.

**C.      ICA 36(b), 15 U.S.C. 80a-35(b) (ICA)**

31.     This action is also brought pursuant to ICA 36(b), 15 U.S.C. §80a-35(b), for the use and benefit of John Hancock Funds II-All Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-Global Bond Fund; John Hancock Funds III-International Core Fund ; John Hancock Funds II-International Value Fund; John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Lifestyle Balanced Portfolio; John Hancock Funds II-Lifestyle Growth Portfolio; John Hancock Funds II-Lifestyle Conservative Portfolio; John Hancock Trust: Mid Value Trust; John Hancock Trust-Money Market Trust; John Hancock Funds II-Real Return Bond Fund; John Hancock Trust-Small Cap Growth Trust ; John Hancock Funds II-Small Company Value Fund; John Hancock Trust-Strategic Income Trust; John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities Fund; and John Hancock Trust-Value Trust, to recover on behalf of these funds, fees that were approved by the board of directors of such mutual funds and received by Defendant, John Hancock Investment Management Services, LLC, in breach of their fiduciary duties.

32.     The Plaintiffs seek to rescind the investment advisory agreements under the ICA 47(b), 15 U.S.C. §80a- 47(b) and to recover the total fees charged by Defendants or, alternatively, to recover any improper compensation retained by Defendants in breach of their

546319.1

fiduciary duty under the ICA 36(b), 15 U.S.C. §80a-35(b). Plaintiffs seek a recovery from the earliest date permitted by the statute of limitations through the date of final judgment.

33.    The claims under the ICA are derivative claims on behalf of the Funds.

## II. THE PARTIES

### A.    Plaintiff

34.    The Plaintiff Participants are participants, as defined in ERISA 3(7), 29 U.S.C. §1002(7), and/or beneficiaries, as defined in ERISA (3)(8), 29 U.S.C. §1002(8), of defined contribution plans (401(k) plans) to whom John Hancock(U.S.A.) provided investment services through one of its group annuity contracts.

35.    The plan Plaintiff Plans are defined contribution plans (401(k) plans) to whom John Hancock(U.S.A.) provided investment services through one of its group annuity contracts.

36.    The Plaintiff Class files this action as a derivative claim under the ICA §36(b), 15 U.S.C. §80a-35(b).

### B.    Defendants

37.    Defendant, John Hancock Life Insurance Company (U.S.A.), is a Michigan corporation engaged in the business of issuing and administering group annuity contracts to sponsors of defined contribution (401(k)) plans in all states, with the exception of the State of New York.  These contracts are targeted to small to mid size employers.  The principal place of business of John Hancock Life Insurance Company (U.S.A.) is believed to be 601 Congress Street, Boston, Massachusetts, 02210.

38.    Defendant, John Hancock Life Insurance Company of New York is a New York corporation engaged in the business of issuing and administering group annuity contracts to

sponsors of 401(k) plans in the State of New York. These contracts are targeted to small to mid size employers. The principal place of business of John Hancock Life Insurance Company of New York is believed to be 197 Clarendon Street, Boston Massachusetts, 02117.

39.     John Hancock Life Insurance Company of New York is a wholly owned subsidiary of Defendant John Hancock Life Insurance Company (U.S.A.).

40.     Both John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York are herein referred to as John Hancock (U.S.A.).

41.     Defendant, John Hancock Investment Management Services, LLC is a Delaware limited liability company engaged in the business of providing investment advice to all of the proprietary John Hancock mutual funds that John Hancock (U.S.A.) offers as investment options in connection with its group annuity contracts. The principal place of business of John Hancock Investment Management Services, LLC is believed to be 601 Congress Street, Boston, Massachusetts, 02210.

42.     The Securities and Exchange Commission of the United States of America (hereafter "the SEC") has fined John Hancock Investment Management Services, for engaging in a scheme to defraud and deceive with respect to the John Hancock proprietary mutual funds that it advises, and that are used as investment options for group annuity contracts sold to the Plans by John Hancock U.S.A. This fine stemmed from the use by John Hancock Investment Services of fund assets to pay unauthorized fees.

43.     John Hancock Distributors, LLC, is a Delaware limited liability company and is an affiliate of Defendant John Hancock Investment Management Services, LLC. The principal place of business of John Hancock Distributors, LLC, is believed to be 601 Congress Street,

Boston, Massachusetts, 02210.

44.     John Hancock Distributors, LLC is engaged in the business of promoting the sale of the mutual funds that are advised by Defendant, John Hancock Investment Management Services, LLC, to be used in connection with group annuity contracts operated in conjunction with 401(k) retirement plans.

45.     On an annual basis, Defendant, John Hancock Investment Management Services, requests the approval, by the board of each fund that it manages, to continue its distribution and service plan in accordance with Rule 12b-1 under the ICA, which permits payment of distribution and service fees known as "12b-1" fees from a mutual fund assets.

46.     The funds managed by the Defendant, John Hancock Investment Management Services, pay all or a portion of such 12b-1 fees to John Hancock Investment Management Services or John Hancock Distributors, LLC.

47.     Defendants' promotion of John Hancock proprietary mutual funds benefits John Hancock Management Services, and John Hancock Distributors, LLC, because the compensation paid to these Defendants appreciates with the growth of assets in the John Hancock Mutual Funds.

48.     The SEC has fined John Hancock Distributors, LLC for aiding and abetting in a scheme to defraud and deceive with respect to John Hancock proprietary mutual funds that are used as investment options for group annuity contracts.

### III. JURISDICTION AND VENUE

49.     This Court has jurisdiction over the claims that arise under ERISA pursuant to 28 U.S.C. §1331 and ERISA 502(e)(1), 29 U.S.C. §1132(e)(1) and the claims that

arise under the ICA, §36(b), 15 U.S.C. §80a-35(b) pursuant to 28 U.S.C. §1331, 15 U.S.C. §80a-43, and 15 U.S.C. §80a-35(b)(5).

50.    Venue with respect to this action may be laid in the District of New Jersey pursuant to ERISA 502(e)(2), 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

51.    No presuit demand on the board of directors of the JH Mutual Funds is required as the requirements of Fed. R. Civ. P. 23.1 do not apply to actions under §36b of the ICA.

**IV.    THE LAW**

**A.    ERISA**

52.    ERISA, codified at 29 U.S.C. §1001, *et seq.*, was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA §2(a), 29 U.S.C. §1001(a).

53.    A 401(k) plan is a defined contribution plan.

54.    Defined contribution plans are governed by ERISA.  ERISA 3(34), 29 U.S.C. §1002(34).

55.    As John Hancock (U.S.A.) uses its group annuity contracts in connection with services provided to defined contribution plans, such plans are subject to ERISA.

56.    ERISA 3(21), 29 U.S.C. §1002(21) defines a fiduciary as any entity that

(a) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(c) has any discretionary authority or discretionary responsibility in the administration of such plan.

57.    In managing the assets of a plan subject to ERISA, a fiduciary must act solely in the interest of plan participants.  ERISA 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

58.    In managing the assets of a plan subject to ERISA, a fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

59.    The fees that are charged to participants on account of the investment of ERISA plan assets are relevant to assessing whether a fiduciary has made a prudent investment of plan assets.

60.    The historical performance of an investment option into which ERISA plan assets are placed is relevant to assessing whether a fiduciary has made a prudent investment of plan assets.

61.    The disciplinary history of any party associated with managing or operating investment vehicles into which ERISA plan assets are placed is relevant to assessing whether a fiduciary has made a prudent investment of plan assets.

62.    ERISA forbids self dealing by fiduciaries.

63.    Self dealing transactions are among the "prohibited transactions" described in ERISA 406(b), 29 U.S.C. §1106(b).

64.    ERISA 406(b), 29 U.S.C. §1106(b) provides in pertinent part as follows:

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for
his own account,

(2) in his individual or in any other capacity act in any
transaction involving the plan on behalf of a party (or
represent a party) whose interests are adverse to the
interests of the plan or the interests of its participants or
beneficiaries. . . .

65.    ERISA forbids a fiduciary from engaging in transactions with "parties in interest,"

as defined in ERISA 3(14), 29 U.S.C. §1002(14).

66.    Transactions with parties in interest are among the "prohibited transactions"

described in ERISA 406(a), 29 U.S.C. §1106(a).

67.    ERISA 3(14)(G), 29 U.S.C. 1002(14)(G) defines a "party in interest" as
a corporation, partnership...of which (or in which) 50 percent or more of--

(i) the combined voting power of all classes of stock entitled to vote or the
total value of shares of all classes of stock of such corporation,

(ii) the capital interest or profits interest of such partnership, or:

\*                    \*                    \*

is owned directly or indirectly, or held by a fiduciary to a plan or an entity that
provides services to a plan.

68.    ERISA 406(a), 29 U.S.C. §1106(a) provides in pertinent part as follows:

(a) Transactions between plan and party in interest
Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause
the plan to engage in a transaction, if he knows or
should know that such transaction constitutes a
direct or indirect--

(A) sale or exchange, or leasing, of any property between the plan
and a party in interest;

\*                    \*                    \*

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan. . . .

69.    Pursuant to ERISA 409, 29 U.S.C. §1109, any fiduciary that violates either ERISA 404 or ERISA 406, 29 U.S.C. §1104 and 1106, with respect to an ERISA plan, is liable to "make good" for

any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

70.    Pursuant to ERISA 502(a)(2), 29 U.S.C. §1332(a), a participant or beneficiary has standing to bring a complaint for any relief under 29 U.S.C. §1109.

71.    Pursuant to ERISA 502(a)(3), 29 U.S.C. §1132(a)(3) a civil action may be maintained against a non-fiduciary that participates in a fiduciary's violations of ERISA

72.    The named Plaintiff and the individual members of the putative class are participants in an ERISA plan in which participants invest in group annuity contracts issued by John Hancock (U.S.A.) and Plaintiff therefore has standing to bring this action.

**B.    ICA**

73.    Since 1935, the United States Congress has recognized that mutual funds present special features which require attention beyond the disclosure philosophy which animates the Securities Act of 1933.

74.    In 1940, Congress enacted the Investment Company Act of 1940, recognizing in the Act's policy and purpose that

The national public interest and the interest of investors are adversely affected . . .

when investment companies are organized, operated [and] managed . . . in the
interest of . . . investment advisors . . . rather than in the interest of [shareholders]

ICA 1(b), 15 U.S.C. §80a-1(b).  The ICA further states that the provisions of the Act are to be

interpreted to mitigate and so far as is reasonable to eliminate such conditions as described in the

Act's policy and purpose section.

   75.    Over time, it became apparent that investment advisors to mutual funds were

charging excessive fees, eschewing economies of scale.  *See A Study of Mutual Funds Prepared*

*for the Securities and Exchange Commission by the Wharton School of Finance and Commerce*,

H.R. Rep. No. 2274 (1962).  As a result, in 1970, Congress amended the Investment Company

Act of 1940, by adopting §36(b), 15 U.S.C. §80a-35(b), which imposes a fiduciary duty on

mutual fund investment managers with respect to the receipt of compensation:

   [t]he investment adviser of a registered investment company shall be deemed to
   have a fiduciary duty with respect to the receipt of compensation . . . . An action
   may be brought under this subsection . . . by a security holder of such registered
   investment company on behalf of such company against such investment advisers,
   or an affiliated person of such investment advisor . . . for breach of fiduciary duty
   in respect to such compensation. . . .

   76.    John Hancock Management Services, is an investment advisor subject to the ICA,

who has charged excessive fees on the mutual funds, in which Plaintiff Participants retirement

monies are invested, that are so disproportionately large that they bear no reasonable relationship

to the services rendered and could not have been the product of arms length bargaining.

   77.    Plaintiff Participants are security holders of the John Hancock mutual funds by

virtue of their interests in certain Sub-Accounts which invest in John Hancock mutual funds.

Plaintiff Participants have standing to bring this action against John Hancock (U.S.A.) and John

Hancock Investment Management Services, LLC.  In addition, Plaintiff Participants who are

suing on behalf of and for the use of John Hancock mutual funds designated in the caption of the Complaint, have standing to seek rescission of any contract which violates the ICA or any rule, regulation or order thereunder. 15 U.S.C. §80a-46.

## V.   GENERAL DESCRIPTION OF JOHN HANCOCK U.S.A.

### A.   The Services of John Hancock (U.S.A.)

78.    The web address, www.johnhancock.com ("JH Website"), indicates that John Hancock (U.S.A.) does business, under certain instances, in the name of John Hancock Retirement Plan Services (JHRS).

79.    According to the JH Website, "[a]mong mutual fund, life insurance companies. . . . JHRS [John Hancock (U.S.A.)] is ranked as the #1 provider to 401(k)'s based on number of 401(k) plans managed."

80.    According to the JH Website, John Hancock (U.S.A.) offers 401(k) plans/retirement products through group annuity contracts.  These products are specifically marketed to small and medium size employers.

81.    The individual class Plaintiffs are past and present employees of companies which retained John Hancock (U.S.A.) to provide, manage, and/or establish 401(k) plans.

82.    Once John Hancock (U.S.A.) is retained with respect to a 401(k) plan, among other things, it: (a) provides record keeping services; (b) provides "plan installation" services (if necessary); (c) provides for the enrollment of Plaintiffs under such plans; (d) distributes educational materials; (e) provides customer service; and (f) provides other participant services.

83.    John Hancock (U.S.A.), in addition, offers plan participants, through their applicable plans, investment options for their retirement monies through John Hancock (U.S.A.)

group annuity contracts.

84.   John Hancock U.S.A., in connection with ERISA plans for which it provides services, gives a "Fiduciary Standards Warranty" at no additional cost to companies that offer participants of their 401(k) plans a minimum required number of investment options "offered by John Hancock (U.S.A.)" (hereafter "the Fiduciary Standards Warranty").

85.   The Fiduciary Standards Warranty promises to "restore any losses to the plan and pay litigation costs related to the suitability of our investment process and Fund lineup for 401(k) plans." http://www.jhfiduciarywarranty.com/assets/downloads/PS9615.pdf

86.   In a footnote included in the description of the Fiduciary Standards Warranty, John Hancock (U.S.A.) discloses that "[t]he Warranty does not extend to any claims that any expenses paid directly or indirectly by the plan are unreasonable." https://www.jh401kadvisor.com/do/productsAndServices/.

**B.    Defendant John Hancock (U.S.A.)'s Target Market**

87.   John Hancock (U.S.A.) describes its target market for its group annuity products as

> [s]mall business owners [who] face unique challenges when looking for a retirement plan.  You want to offer your employees a retirement plan but don't have the time and resources of a large business.
> http://www.jhfunds.com/Article.aspx?ArticleID=%7B15781157-E15F-4E7B-8E48-3CD0B1A8DEF7%7D

88.   John Hancock (U.S.A.) promises to

> help plan sponsors with compliance responsibilities and operation of the plan by offering recordkeeping and communication including our Fiduciary toolkit: 'fiduciary responsibility an employer's guide' and Annual Contract Review.
> http://www.jhrps.com/us/

89.     John Hancock (U.S.A.) promises that its

group annuity contracts relieve the plan sponsor of the benefit obligations,
administration and other related tasks and fees associated with maintaining a
defined benefit pension plan
http://www.johnhancock.com/about/news_details.php?fn=apr0407-text&yr=2007

90.     John Hancock (U.S.A.) describes itself as follows:

A history of stability combined with industry-leading communications and local service
and support make John Hancock U.S.A. a solid choice for qualified retirement plans.
Through our group annuity contracts, John Hancock Retirement Plan Services offers
qualified retirement plan products and services for corporate and small to mid-sized
businesses.   http://www.jhrps.com/us/

91.     John Hancock (U.S.A.) promises that it offers

an investment platform that is among the most competitive and flexible in the industry
today, designed to help participants overcome the retirement challenge.
http://www.jhrps.com/us/

92.     In its description of the John Hancock (U.S.A.) Fiduciary Standards Warranty,

Defendant John Hancock (U.S.A.) states the following:

John Hancock Retirement Plan Services today introduced the 401(k) industry's
first Fiduciary Standards Warranty. The Warranty provides 401(k) plan sponsors
and participants with specific assurances that its investment selection and
monitoring process satisfies fiduciary standards established under the Employee
Retirement Income Security Act (ERISA). The company promises to restore plan
losses and pay litigation costs related to the suitability of this process or the
investment options themselves. The warranty is being offered at no extra cost to
plan sponsors.

93.     In its description of the John Hancock (U.S.A.) Fiduciary Standards Warranty,

Defendant John Hancock (U.S.A.) further has stated the following:

We recognize that fund selection and monitoring is an important part of the due
diligence process, and we are confident that our investment selection and
monitoring process meets the highest fiduciary standards," said Susan Bellingham,
Senior Vice President for Marketing Development, Retirement Plan Services.
"We are committed to helping employers meet the highest fiduciary standards for
selection and monitoring of the investments they offer their 401(k) participants.

\*                    \*                    \*

94.   John Hancock (U.S.A.) promises that its funds

a)    Have been selected and monitored by John Hancock using a process that satisfies the ERISA prudence requirements for investment selection

b)    Are appropriate for long-term investors such as 401(k) participants

c)    Offer a broad range of investment alternatives, as prescribed under ERISA

\*                    \*                    \*

http://www.johnhancock.com/about/news_details.php?fn=oct03-text&yr=2005

95.   John Hancock (U.S.A.), in a letter to the Financial Industry Regulatory Authority (formerly the National Association of Security Dealers), dated August 9, 2003, observed that "we acknowledge and agree that situations in which the sale of a variable annuity within a qualified plan are limited  . . . ."

96.   Notwithstanding this acknowledgment, John Hancock (U.S.A.) makes widespread use of its group annuity contracts when servicing small and medium sized businesses.

97.   Defendants sold group annuity contracts to the Plaintiff Plans.

## VI.   DESCRIPTION OF JOHN HANCOCK (U.S.A.) GROUP ANNUITY CONTRACTS IN RELATIONSHIP TO PLAINTIFFS

### A.   The Fund Selection Process

98.   The Plaintiff Participants, through the group annuity contract applicable to their respective plans, are permitted to invest in a maximum of twenty-nine different mutual funds.

99.   John Hancock (U.S.A.) participates in the selection of the menu of mutual funds available to individual Plaintiffs.

100.   John Hancock (U.S.A.) selects from its menu of hundreds of available John Hancock mutual funds those mutual funds to be included on a template menu.

101.   John Hancock (U.S.A.) has constructed a template menu that includes twenty-nine different mutual funds, consisting of nineteen John Hancock proprietary mutual funds and ten independent mutual funds.

102.   Plan sponsors select from this menu of twenty-nine mutual funds, those mutual funds which are to be included as investment options for each Plan's participants.

103.   The John Hancock (U.S.A.) Fiduciary Standards Warranty is only available to sponsors who include at least nineteen John Hancock (U.S.A.) proprietary mutual funds.

104.   Plaintiff Participants select those funds in which they wish to invest from among the subset of funds chosen by Plan sponsors from among the twenty-nine funds offered by John Hancock (U.S.A.).

105.   The monies to be invested by Plan participants are pooled into the John Hancock (U.S.A.) group annuity contract and then segregated for investment among the Sub-Account for each of the mutual funds selected.

**B.   The Excessive Management Fees Charged by John Hancock Management Services, LLC**

106.   John Hancock Investment Management Services, LLC (hereafter "John Hancock Services") earns excessive management fees on all John Hancock proprietary mutual funds which are selected for Plaintiffs' investments.

107.   The fees referred to in the preceding paragraph are and were in addition to the fees that John Hancock (U.S.A.) received.

108.   The fees referred to in the preceding two paragraphs are and were precluded by ERISA.

109.   By charging the fees referred to in this section, John Hancock (U.S.A.) and John Hancock Services, unlawfully deprived the Plaintiff Plans and Plaintiff Participants of their retirement benefits.

### C.   Operation of the Group Annuity Contract and Sub-Accounts

110.   Plaintiff Participants do not invest their retirement savings directly into the mutual funds which they select.

111.   When a Plaintiff Participant determines to purchase shares in the mutual funds through the John Hancock (U.S.A.) group annuity contract, the retirement assets to be invested are directed to a "Sub-Account."

112.   Each Sub-Account is associated with an underlying mutual fund.

113.   John Hancock (U.S.A.) then uses the pooled funds to purchase shares of the mutual fund selected by the Plaintiff Participant.

114.   Each Sub-Account only invests in a specific underlying mutual fund.

115.   Defendants describe each Sub-Account in a document they call a "Fund Sheet."

116.   Each Plaintiff Participant receives from Defendant a booklet entitled "Your Investment Options."

117.   The booklet entitled "Your Investment Options" summarizes each of the Sub-Accounts offered by the program.

118.   The Fund Sheets contain the name of each applicable Sub-Account investment option, which corresponds to the name of the mutual fund in which the assets provided to the

Sub-Account are invested.

119.   The Fund Sheets contain the "ticker symbol" of the mutual fund in which the assets provided to the Sub-Account are invested.

120.   The Fund Sheets disclose the investment strategy of each mutual fund that receives investments from the Sub-Account.

121.   From the perspective of a Plaintiff Participant, who provides funds to a Sub-Account, the only difference between the Sub-Account and the mutual fund in which those assets are invested is that the investment in the Sub-Account requires that the Plaintiff Participant pay fees in addition to the fees that the Plaintiff Participant would have paid had he or she invested directly in the mutual fund in which the assets of the Sub-Account are invested.

122.   The booklet entitled "Your Investment Options," distributed by Defendant, John Hancock (U.S.A.), contains the following statement:

> When contributions are allocated to Funds under your employer's group annuity contract with John Hancock, they will be held in a sub-account (also referred to as "Fund"), which invests solely in shares of the specified underlying mutual fund.
>
> The ticker symbols shown are for the underlying mutual funds in which sub-accounts are invested.

123.   At www.jhancockpensions.com, John Hancock (U.S.A.) makes the following statements:

> a.   Unit value is the value of a unit of a sub-account (or "Fund"). When you make a contribution to a sub-account, it is used to purchase units of a Fund. The unit value is like the share price of a mutual fund.
>
> b.   An investment in a sub-account will fluctuate in value to reflect the value of the sub-account's underlying securities and, when redeemed, may be worth more or less than original cost.

c.     Contributions under a group annuity contract issued by John Hancock Life
Insurance Company (U.S.A.) (John Hancock U.S.A.) are allocated to investment
options which: (a) invest solely in the shares of the underlying mutual fund. . . .

## VII.   FIDUCIARY STATUS OF JOHN HANCOCK (U.S.A.)

### A.     ERISA

124.   John Hancock (U.S.A.) is a fiduciary for the Plaintiff Plans pursuant to ERISA

3(21)(A), 29 U.S.C. §1002(21)(A).

### 1.     John Hancock U.S.A.'s Ability to Change the Mutual Fund Menu and Share Class of the Underlying Mutual Fund in Which Plan Participants' Retirement Assets are Invested

125.   Once John Hancock (U.S.A.) establishes the menu of twenty-nine mutual funds

available to an ERISA plan, John Hancock (U.S.A.) retains the authority, at its discretion, to add

or delete the available investment options.

126.   The John Hancock website contains the following disclosures, all of which are

applicable to the Plaintiff Plans:

> Beginning in late April and concluding in May 2010, subject to regulatory approval, some
> Funds available under your company's qualified retirement plan under John Hancock may
> be changing.  These changes are part of our ongoing review and monitoring process,
> helping to give you access to high-quality and well diversified portfolios . . . ."
> Effective April/May 2010 (subject to regulatory approvals), some of the funds available
> under your company's group annuity contract will be merging or changing.

127.   Certain versions of the John Hancock (U.S.A.) booklet, entitled "Your Investment

Options," contain the following disclosures, all of which indicate that John Hancock (U.S.A.)

has, at times, revised its fund menu:

> This sub-account previously invested in a different underlying portfolio [the then
> underlying mutual fund].  It began investing in the current underlying portfolio [JH
> American Century Vista Fund] effective on or about May 7, 2005.

26

This sub-account previously invested in a different underlying portfolio [the then underlying mutual fund]. It began investing in the current underlying portfolio [JH Lifestyle Fund-Aggressive Portfolio] effective October 14, 2005.

This sub-account previously invested in a different underlying portfolio [the then underlying mutual fund]. It began investing in the current underlying portfolio [U.S. Government Securities Fund] effective October 14, 2005.

This sub-account previously invested in a different underlying portfolio [the then underlying mutual fund]. It began investing in the current underlying portfolio effective on or about November 6, 2006 [International Core Fund].

This sub-account previously invested in a different underlying portfolio [the then underlying mutual fund]. It began investing in the current underlying portfolio [Davis New York Venture Fund] effective April 30, 2001.

This sub-account previously invested in a different underlying portfolio [underlying mutual fund]. It began investing in the current underlying portfolio [JH Oppenheimer Global Fund] effective February 9, 2004.

128.   Review of the 2008 and 2009 versions of the booklet entitled "Your Investment Options" reveals that, in 2009, John Hancock (U.S.A.) deleted the "John Hancock Classic Value Fund" as an underlying investment option and replaced it with the "T. Rowe Price Equity Income Fund."

129.   John Hancock (U.S.A.) also retains the authority to change the share class, with respect to each mutual fund, in which Plaintiffs' retirement monies are invested.

130.   The 2009 version of the booklet entitled "Your Investment Options,"contains the following statements:

.   This sub-account [referring to The Growth Fund of America] previously invested in a different share class of the underlying portfolio. It began investing in the current share class effective on or about July 28, 2009.

.   This sub-account [referring to the Oppenheimer Global Fund] previously invested in a different share class of the same underlying portfolio. It began investing in the current share class effective on or about November 10, 2008.

Effective on or about November 9, 2009, this sub-account [referring to the Euro Pacific Growth Fund] began investing in a different share class of the same underlying portfolio.

131.    Because John Hancock (U.S.A.) exercises discretionary authority and/or discretionary control with respect to the management of Plaintiffs' assets within their respective plans, it is a fiduciary pursuant to ERISA 3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i).

132.    Because John Hancock U.S.A. has the authority to change, at its discretion, both the underlying mutual funds and the share classes available to Plaintiffs, John Hancock (U.S.A.) renders investment advice for a fee with respect to Plaintiffs' monies within their respective plans and has the authority and/or responsibility to do so and it is a fiduciary pursuant to ERISA 3(21)(A)(ii), 29 U.S.C. §1002(21)(A)(ii).

133.    Because John Hancock (U.S.A.) has the authority, at its discretion, to change both the underlying mutual funds and the share classes available to Plaintiffs, Defendant John Hancock (U.S.A.) has discretionary authority and/or discretionary responsibility in the administration of the plans in which Plaintiffs are participants and it is a fiduciary pursuant to ERISA 3(21)(A)(iii), 29 U.S.C. §1002(21)(A)(iii).

**2.    Defendant John Hancock (U.S.A.) is a Fiduciary to the Plans in Which Plaintiffs Monies are Invested Because Plaintiffs' Employers Are "Rubberstamping" John Hancock (U.S.A.)'s Investment Option Recommendations**

134.    In order for a Plan sponsor to acquire the John Hancock (U.S.A.) Fiduciary Standards Warranty, the sponsor must include, from the menu of twenty-nine funds that is assembled by John Hancock (U.S.A.), "at least one fund from each of the following classes of funds offered by John Hancock (U.S.A.)."

135.   The classes to which John Hancock (U.S.A.) refers are nineteen in number, each corresponding to a different category of investment strategy for the mutual fund (i.e., large cap stock mutual funds, international stock mutual funds, etc.).

136.   In order to receive the free John Hancock (U.S.A.) Fiduciary Standards Warranty, Plan sponsors are therefore required to select nineteen mutual funds that are "offered by John Hancock (U.S.A.)."

137.   John Hancock (U.S.A.), by conditioning receipt of the free John Hancock (U.S.A.) Fiduciary Standards Warranty on a sponsor's selection of nineteen John Hancock (U.S.A.) mutual funds, rather than mutual funds in the same investment category offered by an independent mutual fund company, was rendering investment advice.

138.   By offering the Fiduciary Standards Warranty, John Hancock (U.S.A.) acknowledged that it is a fiduciary with regard to all Plans for which the Fiduciary Standard Warranty is offered.

139.   John Hancock (U.S.A.) has rendered and continues to render investment advice for a fee with respect to Plaintiffs' retirement monies in their applicable plans and exercises discretionary control over such monies and therefore is a fiduciary pursuant to ERISA 3(21)(A)(ii), 29 U.S.C. §1002(21)(A)(ii).

### 3.   John Hancock U.S.A. is A Fiduciary Pursuant to 29 C.F.R. 2550.401c-1(d)(2)(c)

140.   29 C.F.R. 2550.401c-1(d)(2)(c) provides as follows:

In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account (other than a separate account registered under the Investment Company Act of 1940) to the extent that the investment performance of such assets is passed directly through to the plan policyholders. ERISA requires insurers, in administering separate account assets,

to act solely in the interest of the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and requires insurers to adhere to a prudent standard of care.

141.   To the extent John Hancock (U.S.A.) operates separate accounts not registered under the ICA, and the investment performance of those separate accounts is passed "directly through to the plan policyholders," it is a fiduciary.

142.   John Hancock (U.S.A.) is a fiduciary pursuant to 29 C.F.R. 2550.401c-1(d)(2)(c).

### 4.   John Hancock (U.S.A.) is a Fiduciary Because it Uses Plaintiff's Sub-Accounts to Obtain Revenue Sharing Payments from the Mutual Funds with Which it Contracts

143.   The group annuity contracts issued by John Hancock (U.S.A.) give John Hancock (U.S.A.) control of a large pool of money contributed by the ERISA plans with which it contracts.

144.   John Hancock (U.S.A.) uses its control of Plan assets to bargain for revenue sharing payments from the mutual funds that it offers as investment options.

145.   John Hancock (U.S.A.) is a fiduciary because it uses its role as a gate keeper to select available funds in exchange for receipt of revenue sharing payments.

### B.   Investment Company Act of 1940

146.   John Hancock Services, is a fiduciary to each of the following funds: John Hancock Funds II-All Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-Global Bond Fund; John Hancock Funds III-International Core Fund ; John Hancock Funds II-International Value Fund; John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Lifestyle Balanced Portfolio; John Hancock Funds II-Lifestyle Growth Portfolio; John Hancock Funds II-

Lifestyle Conservative Portfolio; John Hancock Trust: Mid Value Trust; John Hancock Trust-Money Market Trust; John Hancock Funds II-Real Return Bond Fund; John Hancock Trust-Small Cap Growth Trust ; John Hancock Funds II-Small Company Value Fund; John Hancock Trust-Strategic Income Trust; John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities Fund; and John Hancock Trust-Value Trust, as that term is used in ICA §36(b), 15 U.S.C. §80a-35(b), .

## VIII.   GENERAL DESCRIPTION OF EXCESSIVE FEES CHARGED BY DEFENDANT

147.   Plan Participants are charged several different types of fees by Defendant, John Hancock (U.S.A.), in connection with John Hancock (U.S.A.)'s operation of Plaintiffs' 401(k) plans.

### A.   Contract Level Fees

148.   John Hancock (U.S.A.) charges Plaintiffs a "Contract Level" fee.

149.   Contract Level fees are charged to provide for the cost of operating the 401(k) retirement plans.  These fees cover the expenses for plan installation, enrollment of participants, record keeping, customer service and other participant services.

150.   Contract Level fees may also include the cost charged to provide compensation to financial representatives of a plan.

### B.   Expenses Charges

151.   John Hancock (U.S.A.) charges Plaintiffs certain expenses computed as a function of the "Expense Ratio" (hereafter "ER").

152.   John Hancock (U.S.A.) describes the computation of these expenses as follows: These fees pay for the cost of running the Fund [i.e., the investment option].  The

Expense Ratio may be comprised of the following components: Fund Expense Ratio [i.e., expense charged by the underlying mutual fund], Administrative Maintenance Charge, Sales and Service Fee, etc.  This information is available on the Fund Sheets."

153.   The "ER," as presented to Plaintiffs on the Fund Sheets available online and in the booklet entitled "Your Investment Options," is the sum of three fees:  (a) the "FER;" (b) the "AMC;" and (c) and the "Sales and Service" fee.

154.   The "FER" is described by John Hancock (U.S.A.) as the underlying fund's total expense ratio.

155.   The "AMC" is described by John Hancock (U.S.A.) as "John Hancock U.S.A.'s" administrative maintenance charge.

**C.   Sales and Service Fees**

157.   John Hancock (U.S.A.) charges Plaintiffs a sales and service fee ("Sales and Service Fee").

158.   Sales and Service Fees are charged to cover expenses for "other external providers for the distribution and marketing of the Fund's units."

**D.   Annuity Fee**

159.   On information and belief, Plan participants may opt to pay a separate  annuity fee to guarantee a portion of their investments.

**E.   Other Fees Charged to Plaintiffs/Commissions.**

160.   John Hancock (U.S.A.) charges Plaintiffs an asset charge calculated on the total value of all of Plaintiffs' retirement monies invested under their applicable group annuity contract.

546319.1

161.   The magnitude of the asset charge ranges from between 0% to 4% of the amount invested.

162.   Defendants' financial representatives are also compensated from Plaintiffs' retirement monies in an amount not to exceed 5% of Plaintiffs contributions and/or 1.4% of their assets that were under John Hancock (U.S.A.)'s management.

### IX.   PLAINTIFFS INVESTMENT OPTIONS AS PRESENTED IN THE "YOUR INVESTMENT OPTIONS" BOOKLET FOR 2008 AND 2009

163.   Set forth below is a list of the investment options which John Hancock (U.S.A.) provided to Plaintiff Participants in 2008 and 2009.  Each description sets forth whether the investment option is a John Hancock product or the product of an independent provider and includes the name of the underlying fund, the identity of the sub-advisor and the ticker symbol:

**A.**     **Investment Options that Where John Hancock Mutual Funds were the Underlying Investment  (hereinafter collectively referred to as the "JH Investment Options")**

1.     Investment Option:

       All Cap Value Fund
       Investing Solely in John Hancock Funds II-All Cap Value Fund
       Sub advised by Lord, Abbett & Co. LLC
       Ticker Symbol: JICVX

       Hereinafter this investment option is referred to as the "JH All Cap Value Investment Option."

2.     Investment Option:

       Blue Chip Growth Fund
       Investing solely in John Hancock Funds II-Blue Chip Growth Fund
       Sub-advised by T. Rowe Price Associates, Inc.
       Ticker Symbol: JIBCX

Hereinafter this investment option is referred to that the "JH Blue Chip Growth Investment Option"

3.    Investment Option:

Global Bond Fund
Investing solely in John Hancock Funds II-Global Bond Fund (Class 1)
Sub-advised by Pacific Investment Management Company
Ticker Symbol: JIGDX

Hereinafter this investment option is referred to as the "JH Global Bond Fund Investment Option."

4.    Investment Option:

International Core Fund
Investing solely in John Hancock Funds III-International Core Fund (Class 1)
Sub-advised by Grantham, Mayo, Van Otterloo & Co., LLC (GMO)
Ticker: GOCIX

Hereinafter this investment is referred to as the "JH International Core Investment Option."

5.    Investment Option:

International Value Fund
Investing solely in John Hancock Funds II-International Value Fund (Class 1)
Sub-advised by Franklin Templeton
Ticker Symbol: JIVIX

Hereinafter this investment option is referred to as the "JH International Value Investment Option."

6.    Investment Option:

Lifestyle Fund-Aggressive Portfolio
Investing solely in John Hancock Funds II-Lifestyle Aggressive Portfolio (Class 1)
Sub-advised by MFC Global Investment Management (U.S.A.) Limited
Ticker Symbol: JILAX

Hereinafter this investment option is referred to as the "JH Lifestyle Fund-Aggressive Portfolio Investment Option."

7.    Investment Option:

Lifestyle Fund-Moderate Portfolio
Investing solely in John Hancock Funds II-Lifestyle Moderate Portfolio (Class 1)
Sub-advised by MFC Global Investment Management (U.S.A.) Limited
Ticker Symbol: JILMX

Hereinafter this investment option is referred to as the "JH Lifestyle Fund-Moderate Portfolio Investment Option."

8.    Investment Option:

Lifestyle Fund-Balanced Portfolio
Investing solely in John Hancock Funds II-Lifestyle Balanced Portfolio (Class 1)
Sub-advised by MFC Global Investment Management (U.S.A.) Limited
Ticker Symbol: JILBX

Hereinafter this investment option is referred to as the "JH Lifestyle Fund-Balanced Investment Option."

9.    Investment Option:

Lifestyle Fund-Growth Portfolio
Investing solely in John Hancock Funds II-Lifestyle Growth Portfolio (Class 1)
Sub-advised by MFC Global Investment Management (U.S.A.) Limited
Ticker Symbol: JILGX

Hereinafter this investment option is referred to as the "JH Lifestyle Fund-Growth Portfolio Investment Option."

10.    Investment Option:

Lifestyle Fund Conservative Portfolio
Investing solely in John Hancock Funds II-Lifestyle Conservative Portfolio (Class 1)
Sub-advised by MFC Global Investment Management (U.S.A.) Limited
Ticker Symbol: JILCX

Hereinafter this investment option is referred to as the "JH Lifestyle Fund-Conservative Portfolio Investment Option."

11.    Investment Option:

Mid Value Fund
Investing solely in John Hancock Trust: Mid Value Trust (Class 1)
Sub advised by T. Rowe Price Associates, Inc.
Ticker Symbol: JEMUX

Hereinafter this investment option is referred to as the "JH Mid Value Fund
Investment Option."

12.    Investment Option:

Money Market Fund
Investing solely in John Hancock Trust-Money Market Trust
Sub advised by MFC Global Investment Management (U.S.A.) Limited
Ticker symbol: JHOXX

Hereinafter this investment option is referred to as the "JH Money Market Fund
Investment Option."

13.    Investment Option:

Real Return Bond Fund
Investing solely in John Hancock Funds II-Real Return Bond Fund (Class 1)
Sub advised by Pacific Investment Management Company
Ticker Symbol: JIRRX

Hereinafter this investment option is referred to as the "JH Real Return Bond
Fund Investment Option."

14.    Investment Option:

Small Cap Growth Fund
Investing solely in John Hancock Trust-Small Cap Growth Trust (Class 1)
Sub advised by Wellington Management Company, LLP
Ticker Symbol: JESGX

Hereinafter this investment option is referred to as the "JH Small Cap Growth
Fund Investment Option."

15.    Investment Option:

Small Company Value Fund

546319.1

Investing solely in John Hancock Funds II-Small Company Value Fund (Class 1)
Sub advised by T. Rowe Price Associates, Inc.
Ticker Symbol: JISVX

Hereinafter this investment option is referred to as the "JH Small Company Value Fund Investment Option."

16.    Investment Option:

Strategic Income Fund
Investing solely in John Hancock Trust-Strategic Income Trust (Class 1)
Sub advised by MFC Global Investment Mgmt. (U.S.), LLC
Ticker Symbol: JESNX

17.    Investment Option

Total Return Fund
Investing solely in John Hancock Funds II-Total Return Fund
Sub-advised by Pacific Management Company
Ticker Symbol: JITRX

Hereinafter this investment option is referred to as the "JH Total Return Fund Investment Option."

18.    Investment Option:

WAMCO U.S. Government Securities Fund
Investing solely in John Hancock Funds II-U.S. Government Securities Fund (Class 1)
Ticker: JIUSX

Hereinafter this investment option is referred to as the "JH U.S. Government Securities Fund Investment Option."

19.    Investment Option:

Value Fund
Investing solely in the John Hancock Trust (Class 1)
Sub-advised by Van Kampen Investments
Ticker Symbol: JEVLX

Hereinafter this investment option is referred to as the "JH Value Fund Investment Option."

546319.1

37

B.   **Investment Options Where the Underlying Mutual Fund was Not a John Hancock Mutual Fund (hereinafter collectively referred to as the "Independent Investment Options")**

20.   Investment Option:

American Century Vista Fund
Investing solely in American Century Vista Fund (Investor Class)
Ticker Symbol: TWCVX

Hereinafter this investment option is referred to as the "American Century Vista Fund Investment Option."

21.   Investment Option:

American Funds EuroPacific Growth Fund
Investing solely in American EuroPacific Growth Fund (Class R3 in 2008; however, in 2009 John Hancock U.S.A. began directing participants investments to Class R5)
Ticker symbol: RERCX in 2008 (for Class R3); RERFX in 2009 (for Class R5)

Hereinafter this investment option is referred to as the "American Funds EuroPacific Growth Fund Investment Option."

22.   Investment Option:

American Funds Growth Fund of America
Investing solely in American Funds Growth of America (Class R3 in 2008; however in 2009 John Hancock U.S.A. began directing Plaintiffs investments to Class R5))
Ticker Symbol: RGACX in 2008 (for Class R3); RGAFX in 2009 (for Class R5).

Hereinafter this investment option is referred to as "American Funds Growth Fund of America Investment Option."

23.   Investment Option:

Domini Social Equity Fund
Investing solely in Domini Social Equity Fund (Investor Class)
Ticker Symbol: DSEFX

Hereinafter this investment option is referred to as the "Domini Social Equity Fund Investment Option."

24.    Investment Option:

Columbia Value and Restructuring Fund (formerly known as the Excelsior Value and Restructuring Fund)
Investing solely in Columbia Value and Restructuring Fund (Class Z)
Ticker Symbol: UMBIX

Hereinafter this investment option is referred to as the "Columbia Value and Restructuring Fund Investment Option."

25.    Investment Option[1]:

John Hancock Classic Value Fund
Investing solely in John Hancock Classic Value (Class A)
Ticker Symbol: PZFVX

Hereinafter this investment option is referred to as the "John Hancock Classic Value Investment Option."

26.    Investment Option:

Davis New York Venture Fund
Investing solely in Davis New York Venture Fund (Class A)
Ticker Symbol: NYVTX

Hereinafter ths investment option is referred to as the "Davis New York Venture Fund Investment Option."

27.    Investment Option:

Mutual Discovery Fund
Investing solely in Mutual Discovery Fund (Class A) in 2008.  However in 2009, Defendant John Hancock U.S.A. began directing Plaintiffs investments to Class Z and name of fund changed to Mutual Global Discovery Fund)
Ticker Symbol: TEDIX in 2008 (for Class A); MDSIX in 2009 (for Class Z)

Hereinafter this investment option is referred to as the "Mutual Discovery Fund Investment Option."

---

[1]This investment option was only available in 2008.

546319.1

28.   Investment Option:

Oppenheimer Global Fund
Investing solely in Oppenheimer Global Fund (Class A in 2008; however, in 2009
Defendant John Hancock U.S.A. began directing Plaintiffs investments to Class
Y).

Ticker Symbol: OPPAX in 2008 (for Class A); OGLYX in 2009 (for Class Y)

Hereinafter this investment option is referred to as the "Oppenheimer Global Fund
Investment Option."

29.   Investment Option:

Royce Opportunity Fund
Investing solely in Royce Opportunity Fund (Service Class)
Ticker Symbol: RYOFX

Hereinafter this investment option is referred to as the "Royce Opportunity
Investment Option."

30.   Investment Option:

T. Rowe Price Equity Income Fund[2]
Investing solely in T. Rowe Price Equity Income Fund (Advisor Class)
Ticker Symbol: PAFDX (this investment option was only available as of
sometime in 2009)

Hereinafter this investment option is referred to as the "T. Rowe Price Equity
Income Investment Option."

**C.   Fees**

164.   John Hancock (U.S.A.) earned fees on both the JH Investment Options and on the

Independent Investment Options.

---

[2] In both 2008 and 2009 Plaintiffs only had twenty-nine investment options.  Thirty are
listed here because, at some point, Defendant John Hancock (U.S.A.) deleted the John Hancock
Classic Value Investment Option in favor of the T. Rowe Price Equity Income Investment
Option.

546319.1

## X.   DEFENDANTS' MISCONDUCT

### A.   The Tables

165.   Four tables are attached to the back of Plaintiffs' Complaint.

**1.   Table I - JH Investment Options Where the Underlying Mutual Fund was a John Hancock Mutual Fund that was Cloned from an Independent Mutual Fund.**

166.   Table I contains a list of funds.  For each fund listed in Table I, a Plan Participant would deposit money into a Sub-Account, which was directly tied to a John Hancock fund, which in turn was a clone of an unrelated third party's fund (the "cloned fund").

167.   Table I contains the fees that were annually charged to Plaintiffs on their investments into the Sub-Accounts for an illustrative period and compares those fees to the fees charged by the (a) underlying John Hancock mutual fund and (b) to independent investors in the corresponding cloned fund.  On information and belief, comparable fees have been charged since the date of the accrual of Plaintiffs' cause of action.

168.   In each instance, the left-hand column contains what is referred to by John Hancock (U.S.A.) as the Sub-Account level fees.

169.   The "ER," or expense ratio for each fund under the "Sub-Account" column represents the total fees paid by each Plan participant.

170.   The "ER" consists of three components: (a) the FER; (b) the AMC; and the (c) S&S.

171.   The "FER," or Fund Expense Ratio, is described by John Hancock, LLC as the underlying fund's total expense ratio and closely corresponds to or is identical to the total expenses of the underlying John Hancock mutual fund.

172.    Other than defining the "AMC," as the Administrative Maintenance Charge,  John Hancock (U.S.A.) does not explain what this fee covers..

173.    The "S&S" are Sales and Service fees which are charged to cover expenses for "other external providers for the distribution and marketing of the Fund's units."

174.    Each of the Sub-Accounts corresponds to an underlying John Hancock Services, managed mutual fund.

175.    The center column contains the fees charged by the underlying corresponding John Hancock Services, managed mutual fund.

176    In all instances, the fees paid by the Plaintiff Participants, the "Sub Account" fees, exceed the fees paid in arms length transactions by independent buyers of the underlying John Hancock Services, managed mutual fund, as shown in the second column.

177.    Each of the eleven John Hancock funds listed in the second column of Table I are clones of independent funds available in the market place.

178.    In each instance, the third column contains the fees charged by each underlying cloned mutual fund.

179.    The fees charged by each underlying mutual fund, the John Hancock and the cloned funds, are composed of a Management Fee (Mgt. Fee), a 12b-1 fee (distribution fee) and Other Expenses.

180.    The third column for each chart shows the fees charged by the independent mutual fund which, in each instance, was advised by the same entity that sub-advised the internal John Hancock mutual fund (the "Underlying JH Fund") which is a clone of the corresponding independent fund.

181.    Defendant John Hancock (U.S.A.) acknowledges, with respect to the cloned funds, that "the revenue John Hancock (U.S.A.) receives from many of its internally-managed Funds . . . may be higher than those advised or sub-advised exclusively by unaffiliated mutual fund companies."

### 2.    Table II

182.    Table II contains all of the information set forth above in Table I, for an illustrative period, except this table is confined to the investment of Plan assets through Sub-Accounts into John Hancock proprietary funds without clones, that are available to Plan participants.  On information and belief, comparable fees have been charged since the date of the accrual of Plaintiffs' cause of action.

### 3.    Table III

183.    Table III contains all of the information for an illustrative period, set forth above in Table I, except this table is confined to the investment of Plan assets through Sub-Accounts with independent third party mutual funds as the underlying investment.  On information and belief, comparable fees have been charged since the date of the accrual of Plaintiffs' cause of action

184.    Table III, in addition, compares the costs and performance of investments in the institutional and retail classes of these independent mutual funds.

### B.    Allegations Related to Improper Fees

185.    The Sub-Account ER charged by John Hancock (U.S.A.) was significantly in excess of Total Expense ratios (a) which John Hancock Services, charged for the underlying mutual fund in which each Sub-Account was invested, which, in turn, were significantly in

excess of the Total Expense ratios charged by the funds from which they were cloned in those instances in which the John Hancock fund was a clone of a third party fund (Table I); and (b) charged by independent mutual funds (Table III).

### 1.   The Sub-Account Sales and Service Charge Were Excessive

186.   Plaintiff Participants were, at all relevant times, annually charged improper, excessive and unreasonable Sales and Service Fees (S&S) in the amount of .50% on their Sub-Account investments for simply gaining access to the mutual funds that underlay the applicable Investment Option.

187.   John Hancock (U.S.A.) should not have charged a Sales and Service fee at all as it offered no benefit to Plaintiffs.  To the extent that John Hancock (U.S.A.) may lawfully have charged such a fee, it should not have charged a Sales and Service fee that exceeded the underlying fund's 12b-1 fee.  John Hancock (U.S.A.) was in conflict when it approved the Sales and Service fee.  John Hancock (U.S.A.) was paid for duplicative services from the Sales and Service fees since the underlying funds' 12b-1 fee, approved by each fund's board for the distribution of the units of the Sub-accounts, should have been sufficient to pay all costs associated with distribution of the units of the Sub-accounts.  Insofar as the Sales and Service Fee included a 12b-1 fee as a consequence of the purchase of shares in the retail class of a mutual fund, rather than the institutional class of a mutual fund, the portion of the Sales and Service Fee attributable to the purchase of the retail class is excessive.

### a.   The Sales and Service Fee Should Not Exceed A Mutual Fund's 12b-1 Fee.

188.   The Sales and Service fee is a component of the ER paid on Sub-Accounts by Plaintiff Participants.

44

189.    According to John Hancock (U.S.A.), the expense ratio or "ER" is the cost of running a "Fund."

190.    The ER is independent of any contract level expenses (i.e., record keeping, account statements, participant communications) and any fee for any guaranteed income.

191.    As stated by John Hancock (U.S.A.) on the named Plaintiff's online investment profile "when you make a contribution to a Sub-account it is used to purchase units of the fund.[, and] . . . [t]he unit value is like the share price of a mutual fund" and "an investment in a Sub-account will fluctuate in value to reflect the value of the of the Sub-account's underlying securities. . . ."

192.    When a Plan Participant purchases a "unit" of a Sub-account, the fees charged on account of investing in the Sub-Account should be no higher that the fees charged for investing in the underlying mutual fund.

193.    The SEC has opined that sales of the "units" of the applicable "sub-Accounts" should result in the buyer being charged the same fee as if they had purchased shares of the underlying mutual fund:

> In many respects the variable annuity separate account operates much like a mutual fund during the contract's pay-in phase.  As a result the Division and other entities have questioned whether variable annuity issuers should be permitted to deduct asset based charges. . .on a basis that is different from that required of mutual funds." (May 1992 Report from SEC Division of Investment Management, Chapter 10, Variable Insurance, p. 401).

194.    The Sales and Service fee for the Sub-Accounts/Funds was being charged for the same type of service (distribution and marketing) charged by the underlying mutual fund on a product that is nearly identical to a mutual fund.  The 12b-1 fees of the applicable mutual fund that underlies the applicable Sub-Account pays for services similar to the Sub-Account Sales and

Service Fee, the 12b-1 fee is an appropriate benchmark against which to assess the reasonableness of the Sales and Service fee charged on the Sub-Account.

195.   In all cases, the Sales and Service fee charged by John Hancock (U.S.A.) for investing in the Sub-Account exceeds the 12b-1 fee for investing in the underlying mutual fund by at least .45% and was excessive.

**b.   John Hancock (U.S.A.) was in Conflict of Interest When it Approved the Sales and Service Fee**

196.   Mutual funds are open-end investment companies with a board of directors.

197.   As a matter of law, 12b-1 fees may only be paid pursuant to a written plan that is approved by the fund's shareholders if adopted after any public offering of the Fund's securities and by the fund's board of directors, including a majority of directors who have no direct or indirect financial interest in the operation of the 12b-1 plan. 17 C.F.R. 270.12b-1(b)(1) and (2).

198.   The SEC implemented this approval requirement to "ensure that the fund's financially independent directors are not unduly influenced by management, are fully informed, and are able to exercise reasonable business judgment in determining whether the [12b-1] plan is in the best interest of the fund." (SEC No Action Letter, Oct. 30, 1998).

199.   According to the SEC "12b-1 fees" are "fees paid by the fund out of fund assets to cover distribution expenses . . . ." http://www.sec.gov/answers/mffees.htm#distribution (See also §III. B. 1., U.S. Securities and Exchange Commission: Division of Investment Management: Report on Mutual Fund Fees and Expenses describing a 12b-1 fee as paying for, on behalf of a mutual fund, the service of "distribution and marketing").

200.   The Sub-Account Sales and Service Fee is used to compensate "other external providers for the distribution and marketing of the Fund's units, if applicable to that unit class,"

46

546319.1

and is similar to a mutual fund 12b-1 fee.

201.   A mutual fund's 12b-1 fee should represent the arm's length price of marketing and distribution of the similar Sales and Service Fee charged for marketing the Sub-Account Units.

202.   John Hancock (U.S.A.) sets the Sales and Service Fee unilaterally and without any oversight, which prevents any assurance that the fee is the product of an arms length negotiation.

203.   It was a conflict of interest for John Hancock (U.S.A.) to approve the Sales and Service fee paid to its affiliates.

        c.      **The Sales and Service Fee Was Duplicative of the**
                **12b-1 Fees on the Underlying Mutual Funds**

204.   The mutual funds which underlie the Sub-Accounts have many different share classes.

205.   For fourteen of the John Hancock mutual funds that underlie the Sub-Accounts, John Hancock Services, created share class 1 for the sole purpose of selling these shares to insurance companies (with their parent being their largest customer).

206.   For the remaining five John Hancock mutual funds that underlie the Sub-Accounts the class that John Hancock Services, created to be used for sale to insurance companies was called class Series I or II (again with their parent as their largest customer).

206.   For each of these share classes (which are used to underlie the Sub-Accounts) the board of each mutual fund had to expressly approve a 12b-1 plan and re-approve the 12b-1 plan on an annual basis.

47

546319.1

207.   The 12b-1 fees of the mutual funds underlying the JH Investment Options, as disclosed in SEC filings, were intended to support the distribution scheme of the Units of the Sub-Accounts.

208.   Plaintiffs paid these fees by paying the FER.

209.   Defendant John Hancock Services,  stated in SEC filings, with respect to the mutual funds that underlie the JH WAMCO U.S. Securities Investment Option, the JH Blue Chip Growth Investment Option, the JH Small Company Value Investment Option, the JH International Value Investment Option, JH Total Return Investment Option, JH Real Return Investment Option, JH Global Bond Investment Option and the JH All Cap Value Investment Option, JH Lifestyle Fund-Conservative Portfolio Investment Option, JH Lifestyle Fund-Moderate Portfolio Investment Option, JH Lifestyle Fund-Balanced Portfolio Investment Option, JH Lifestyle Fund- Growth Portfolio Investment Option, and JH Lifestyle Fund-Aggressive Portfolio Investment Option as follows:

> The Distributor [John Hancock Distributors, LLC] may pay all or part of the 12b-1 fee applicable to the Class 1 shares of a Fund to cover one or more affiliated and unaffiliated insurance companies that have issued group annuity contracts for which the Fund serves as an investment vehicle as compensation for providing some or all of the types of services contemplated by the 12b-1 Plan.

210.   Defendant, John Hancock Services, stated in SEC filings with respect to the mutual fund that underlies the JH International Core Investment Option the following:

> The Distributor [Defendant John Hancock Distributors, LLC] may pay all or part of the 12b-1 fees applicable to the Class 1 shares of a Fund to one or more affiliated and unaffiliated insurance companies that have issued group annuity contracts for which the Fund serves as an investment vehicle for compensation for providing all or some of the types of services contemplated by the 12b-1 Plan. [Statement of Additional Information, p. 65].

211.   Defendant John Hancock Services, stated in SEC filings with respect to the mutual fund that underlies the JH Money Market Investment Option, the JH Strategic Income Investment Option, the JH Value Investment Option, the JH Mid Value Investment Option, the JH Small Company Growth Investment Option, the following:

> Insurance companies and their SEC registered separate accounts may use JHT [referring to the John Hancock Trust that holds these mutual funds] as an underlying investment option for their variable annuity contracts. Distributors of such variable products pay compensation to authorized broker dealers for the sale of the contracts. These distributors may also pay additional compensation to, and enter into revenue sharing arrangements with, certain authorized broker dealers. . . . . The compensation paid to broker-dealers and the revenue sharing arrangements may be derived, in whole or in part, through 12b-1 distribution fees. . . .

212.   The boards of these mutual funds approved the 12b-1 fees for these underlying mutual funds for the specific purpose of funding the distribution scheme for the Units of each Sub-Account.

213.   These distribution fees could not have been for any other purpose since these shares are almost exclusively owned by John Hancock (U.S.A.).

214.   The Sales and Service Fee was therefore duplicative.

### d.   The Sales and Service Fee Should Have Been Comparable to the 12b-1 Fee Charged by the Institutional Class of a Mutual Fund

215.   Many mutual funds offer several classes of investments.

216.   Larger pools of money generally have access to the "institutional class" of a mutual fund.

217.   Smaller investors generally may only have access to the "retail class" of a mutual fund.

218.   Institutional classes generally do not charge a 12b-1 fee.

546319.1

219.   Had John Hancock (U.S.A.) invested Plaintiffs' money in the institutional class of a mutual fund, Plaintiffs would not, have had to pay a 12b-1 fee..

220.   Institutional classes generally have investment minimums that a 401(k), or in this case 401(k)s, must meet to gain access.

221.   This minimum need not be met by a single investor, but can be met by an institution that pools funds of investors.

222.   On information and belief, the aggregate amount of Plaintiff Participant contributions, Defendant John Hancock (U.S.A.) passed through the Sub-Accounts corresponding to each mutual fund, was sufficient to permit the Defendant to invest in the institutional class in each instance, as many other managers of 401(k)s do.

223.   In each instance, the amount of monies that was invested in the underlying John Hancock Sub-Account exceeded the minimum investment requirement for the institutional class of the fund in which that money was invested.

224.   John Hancock (U.S.A.) possessed the economic leverage to negotiate lower expense charges with the independent mutual funds that underlie the Independent Investment Options.

225.   Since Plaintiff Participants were investing retirement monies in connection with 401(k) plans, in all cases, Defendant, John Hancock (U.S.A.), had sufficient leverage to invest Plan assets in the institutional classes of the mutual funds in which it invested.

226.   John Hancock (U.S.A.), starting sometime in 2009, began investing in the institutional class for certain mutual funds but should have done so earlier and should have invested in the institutional class for all independent mutual funds.

546319.1

227.    The institutional classes of the Independent Investment Options  did not have a 12b-1 fee.

228.    For most of the class period, John Hancock (U.S.A.) was investing in a fund class that charged Plaintiffs a 12b-1 fee.  Therefore, the 12b-1 fee that was charged to Plaintiffs (incorporated into the FER which was part of th Total Expenses of each Sub-account) could have been avoided by investing in the institutional class and was improper.

229.    John Hancock (U.S.A.) breached its fiduciary duty by not using its negotiating power to invest in the classes of mutual funds which did not assess a 12b-1 fees.

**e.    Plaintiffs Paid Both a Sales and Service Fee to Defendants and a 12b-1 Fee on the Independent Investment Option**

230.    All of the Independent Investment Options charged a 12b-1 fee to each Plaintiff, upon Plaintiffs' investment into an Independent Investment Option.  This fee was not remitted to Defendants for the benefit of Plaintiffs.

231.    John Hancock (U.S.A.) charged an additional Sales and Service Fee on each such Plaintiffs' investment which fee was an improper addition to the 12b-1 fee already paid.

**3.    Excessive Adviser Fees**

**a.    Allegations Relevant to All Excessive Adviser Fee Claims**

232.    The mutual funds in which Sub-Accounts may invest, and therefore that are available to Plaintiffs, fall into two categories: (1) those which are sub-advised by a John Hancock affiliated entity; and (2) those which are sub-advised by an entity independent of John Hancock.

233.    The following John Hancock mutual funds, which are available for the investment of monies paid into Sub-Accounts by Plaintiffs are advised by Defendant, John Hancock

Investment Management Services, LLC, and are sub-advised by a John Hancock affiliate: JH Lifestyle Conservative Portfolio, JH Lifestyle Moderate Portfolio, JH Lifestyle Balance Portfolio, JH Lifestyle Growth Portfolio, JH Lifestyle Aggressive Portfolio, JH Money Market Trust and JH Strategic Income Trust. Defendant, John Hancock Services, treats the International Care Fund as if it were advised by a John Hancock affiliate; however, it was sub-advised by an independent third party.

234. Table IV reflects the fees that were paid to the adviser (Defendant John Hancock Investment Management Services, LLC) and the sub-adviser (a John Hancock (U.S.A.) affiliate) in connection with those John Hancock Mutual funds sub-advised by a John Hancock affiliated entity. Table IV and Table V below set forth the fee paid to John Hancock Services, ("JHIMS"), the sub-advisers's management fee ("SubAdvMgtFee") and the difference, the "Excessive Adviser Fee."

4.

**TABLE IV**

| Mutual Fund | JHIMS Mgt. Fee | | SubAdv Mgt.Fee | | Excessive Adviser Fee |
|---|---|---|---|---|---|
| JH Lifestyle Conservative Portfolio | $691,118 | - | $311,219 | = | $379,899 |
| JH Lifestyle Moderate Portfolio | $993,588 | - | $447,172 | = | $546,416 |
| JH Lifestyle Balanced Portfolio | $3,603,198 | - | $1,620,909 | = | $1,982,289 |
| JH Lifestyle Growth Portfolio | $3,775,569 | - | $1,698,206 | = | $2,077,363 |
| JH Lifestyle Aggressive Portfolio | $1,299,039 | - | $584,156 | = | $714,883 |
| JH Money Market Trust | $18,592,095 | - | $934,770 | = | $17,657,325 |
| JH Strategic Income Trust | $3,480,999 | - | $1,209,499 | = | $2,271,500 |
| International[3] Core Fund | $14,353,461 | - | $7,059,170 | = | $7,294,291 |

235.    The following John Hancock mutual funds, which are available for the investment of monies paid into Sub-Accounts by Plaintiffs, are advised by Defendant, John Hancock Services, and are sub-advised by an entity independent of John Hancock: John Hancock U.S.

---

[3] While sub-advised by an independent third party, John Hancock Services, treated this fund as if it was advised by an affiliated sub-adviser.

546319.1

Government Securities Fund, the John Hancock Total Mutual Fund, the John Hancock Real

Return Bond Fund, the John Hancock Global Bond Fund, the John Hancock All Cap Value Fund,

the John Hancock Blue Chip Growth Fund, the John Hancock International Value Fund, the John

Hancock Value Fund, and the John Hancock Small Cap Growth Fund.

    236.    Table V reflects the fees that were paid to the adviser (Defendant John Hancock

Services, LLC) and the sub-adviser (an entity independent of John Hancock) in connection with

those John Hancock mutual funds sub-advised by an entity independent of John Hancock.

7.

**TABLE V**

| Mutual Fund | JHIMS Mgt. Fee | | SubAdv Mgt.Fee | | Excessive Adviser Fee |
|---|---|---|---|---|---|
| U.S. Government Securities Fund | $1,227,948 | - | $242,474 | = | $985,474 |
| Total Return Fund | $12,479,999 | - | $3,358,463 | = | $9,121536 |
| Real Return Bond Fund | $6,319,183 | - | $1,513,884 | = | $4,805,299 |
| Global Bond Fund | $5,512,295 | - | $1,397,033 | = | $4,115,262 |
| All Cap Value Fund | $817,965 | - | $282,334 | = | $535,631 |
| Blue Chip Growth Fund | $15,922,509 | - | $4,974,391 | = | $10,948,118 |
| International Value Fund | $12,562,507 | - | $4,050,015 | = | $8,512,492 |
| Value Fund | $1,917,817 | - | $755,551 | = | $1,162,266 |
| Small Cap Growth Fund | $2,776,094 | - | $1,606,385 | = | $1,169,709 |

237.    With regard to all of the  funds listed in Tables IV and V, John Hancock  Services,

administers the business affairs of the trust that contains these mutual funds, but "the investment

sub-advisers . . . manage the assets of the funds."

238.    With regard to all of the  funds listed in Tables IV and V, Defendant John

Hancock Services, must annually obtain the approval of the fund's board of directors for the

renewal of the investment management agreement and approval of the investment management fee that it seeks to receive from each mutual fund for which it serves as an adviser.

239.    Defendant John Hancock Services, has previously been cited by the SEC for engaging in a scheme of fraud and deceit with respect to representations it made to the board of directors of mutual funds that underlie group annuity contracts, in connection with the amount of fees it sought to receive from mutual fund assets.  The SEC also cited Defendant, John Hancock Distributors, LLC, an affiliate of John Hancock Management Services, for  aiding and abetting in this scheme.

240    According to SEC filings, pursuant to its sub-advisory agreement, each sub-adviser, with respect to its mutual fund, is responsible for formulating the investment program for the mutual fund, implementing the program through the purchase and sale of securities, managing  the investment and reinvestment of the fund's assets, and regularly reporting to the mutual fund's board of directors.  Furthermore, in connection with providing all of these services, the sub-adviser, at its expense, furnishes all necessary investment and management facilities, including paying the salaries of personnel required for the sub-adviser to execute its duties, as well as administrative facilities, including bookkeeping, clerical personnel and equipment necessary for the conduct of the investment affairs of this mutual fund.

241.    With regard to all of the  funds listed in Tables IV and V, Defendant John Hancock (U.S.A.) had the authority to directly retain the sub-adviser to serve as the mutual fund's adviser.

242.    With regard to all of the  funds listed in Tables IV and V, had John Hancock (U.S.A.) directly retained the sub-adviser, it would have (a) eliminated Defendant John Hancock

Investment Management Services, LLC, (and its affiliate Defendant John Hancock Distributors, LLC) from being in a position to influence the fees it received from funds assets and (b) avoided the payment of the excessive adviser fees to Defendant, John Hancock Investment Management Services, LLC.

243.   With regard to all of the funds listed in Tables IV and V, Defendant, John Hancock (U.S.A.), should have foreseen that by allowing Defendant John Hancock Investment Management Services, LLC, to serve as each mutual funds' adviser and influence the fees that it receives, the Plaintiffs could have been harmed.

244.   In each instance, the individual Plaintiffs were harmed because Defendant, John Hancock Services, did receive a large and unreasonable fee for investment management services, when, in fact, it was providing no such services.

245.   This harm was foreseeable to all Defendants and deprived the Plaintiffs of the full value of their retirement benefits.

246.   The Excessive Adviser Fee paid to Defendant, John Hancock Investment Management Services, LLC, with respect to each of the mutual funds listed in Table IV and V, resulted in a breach of fiduciary duty pursuant to ICA §36(b), 15 U.S.C. §80a-35(b), because those fees were so disproportionately large that they bore no relationship to the services rendered and could not have been the product of arm's length bargaining.

247.   **Nature and Quality of the Services**   No investment management services were provided by Defendant, John Hancock Services, since the sub-adviser provided all of the investment management services. Therefore, the Excessive Adviser Fees for each fund was necessarily so disproportionately large that they bore no reasonable relationship to the services

rendered and could not have been the product of arm's length bargaining.

248. **Profitability of the Adviser**   Since Defendant John Hancock Investment Management Services, LLC, was providing no investment advisory services, it was therefore not incurring any fees in connection with providing such services (all such fees were paid by the sub-adviser) and therefore the Excessive Adviser Fees for each fund were all profit to Defendant, John Hancock Investment Management Services, LLC and, therefore, necessarily so disproportionately large that they bore no relationship to the services rendered and could not have been the product of arm's length bargaining.

249. **Conscientiousness of the Mutual Funds Board**   As the board of directors of each John Hancock  mutual fund knew that all of the investment management services were being provided by the sub-adviser and that Defendant, John Hancock Investment Management Services, LLC, had, in the past, been cited by the SEC for misappropriating mutual fund assets through improper fees, each board violated its fiduciary responsibilities when it approved the payment of the Excessive Adviser Fees and therefore the Excessive Adviser Fee for each fund was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

250. **Comparative Fee Structure**   The fee charged by the sub-adviser was the fee required to render the investment advisory services for the mutual fund.  Since the Excessive Adviser Fee is in excess of that amount, it is necessarily so disproportionately large that it bore no relationship to the services rendered and could not have been the product of arm's length bargaining.

546319.1

b.   **Additional Allegations with Regard to Defendants' Performance of Fiduciary Duties in Connection with the Mutual Funds Listed in Table V**

251.   All of the sub-advisers to the John Hancock mutual funds listed in Table V are not affiliated with John Hancock.  Those sub-advisers manage independent funds in the capacity of an adviser, and not in a sub-advisory capacity.  For example, T. Rowe Associates (the sub-adviser to the John Hancock Blue Chip Growth Fund) is the adviser to its own proprietary mutual fund, the T. Rowe Price Blue Chip Growth Fund.  These independent mutual funds, for which the adviser serves as the sub-adviser to the John Hancock product,  were effectively cloned to create the John Hancock mutual funds listed in Table V.

252.   Despite the fact that Defendant, John Hancock Services, had been fined by the SEC for engaging in a scheme of fraud and deceit with respect to representations it made to the boards of directors of mutual funds that underlie variable annuity products, in connection with the amount of fees it sought to receive from mutual fund assets, the board of each of these John Hancock mutual funds (except for the International Core Fund) has stated in SEC filings that:

> With respect to the evaluation of the subadvisory agreements (including any sub-subadvisory agreement) with entities not affiliated with the Adviser [Defendant John Hancock Investment Management Services, LLC], the Board believes that, in view of the Trust's [the trusts that hold the John Hancock mutual funds] 'manager-of-managers' advisory structure, the profits to be realized by those subadvisers that are not affiliated with the Adviser from their relationship with the Trust generally are not a **material factor** in the Board's consideration of these subadvisory agreements because such fees are paid by the Adviser and not by the Funds and the Board relies on the ability of the Adviser to negotiate the subadvisory fees at arms-length. (emphasis added)

c.   **Additional Allegations With Regard to the Investment Company Act**

253.   Had the board of each of the John Hancock mutual funds complied with their fiduciary duties pursuant to ICA 36(b), 15 U.S.C. §80a-35(b), by reviewing the sub-adviser's fee

, they would have realized the excessiveness of the fees that they were paying to John Hancock Investment Management Services, LLC, for not rendering any investment management services.

254.   Had Defendant, John Hancock Investment Management Services, LLC, complied with its fiduciary duties pursuant to ICA 36(b), 15 U.S.C. §80a-35(b), it would have disclosed to each board the excessiveness of the fees that it was requesting.

### d.   Additional Allegations with Regard to the Employee Retirement Income Security Act of 1974 with Regard to John Hancock (U.S.A.)'s Performance of Fiduciary Duties in Connection with All Funds Listed in Tables IV and V

255.   The management fees paid by John Hancock (U.S.A.) and received by Defendant, John Hancock Management Services, LLC, were excessive and unreasonable.  These fees, with respect to Defendant John Hancock (U.S.A.), resulted in violations of ERISA.

256.   The management fees paid by John Hancock (U.S.A.) were excessive and unreasonable insofar as John Hancock (U.S.A.) declined to consider fees paid to sub-advisers. These fees, which were paid by Defendant, John Hancock (U.S.A.), resulted in violations of ERISA.

257.   Defendant John Hancock (U.S.A.) is liable to the individual Plaintiffs for breaching its fiduciary duty pursuant to ERISA 404, 29 U.S.C. §1104.

258.   The Excessive Adviser Fee retained by Defendant John Hancock Investment Management Services, LLC, constituted a prohibited transaction pursuant to ERISA 406, 29 U.S.C. §1106 and was otherwise prohibited by ERISA.

### 4.   Payment of Impermissible .50% Fee From Certain Advisers to the Mutual Funds that Underlie the Independent Investment Options and from Certain Sub-advisers to the Cloned Funds, to the Mutual Funds that Underlie the JH Investment Options

259.    The 2008 and 2009 "Your Investment Option" booklets state as follows:

John Hancock USA's AMC will be reduced if John Hancock USA or an affiliate receives asset based distribution charges (12b-1) fees, sub transfer agency fees, or other fees from an unaffiliated underlying mutual fund. These fees, collectively, range from 0% to .50%.

260.    Defendant John Hancock (U.S.A.) received a .50% payment from Plaintiffs' investments into the following mutual funds that underlie the Independent Investment options: the American Century Vista Fund, the Columbia Value and Restructuring Fund, the Davis New York Venture Fund, the Domini Social Equity Fund, the EuroPacific Growth Fund, the Mutual Global Discovery Fund, the Oppenheimer Global Fund, the Royce Opportunity Fund, the Growth Fund of America and the T. Rowe Price Equity Income Fund.

260.    All of the mutual funds that underlie the Independent Investment Options have "asset based distribution charges (12b-1) fees, sub transfer agency fees, or other fees" totaling to exactly .50%, which is the maximum percentage that John Hancock (U.S.A.) disclosed that this payment would be.

261.    Defendant, John Hancock (U.S.A.), received a .50% payment from Plaintiffs' investments into the following mutual funds that underlie the JH Investment Options, that are sub-advised by an entity that is not affiliated with Defendant John Hancock (U.S.A.): the John Hancock All Cap Value Fund, the John Hancock Blue Chip Growth Fund, the John Hancock Global Bond Fund, the John Hancock International Value Fund, the John Hancock Mid Value Fund, the John Hancock Real Return Bond Fund, the John Hancock Small Cap Growth Fund, the John Hancock Small Company Value Fund, the John Hancock Total Return Fund, the John Hancock Value Fund and the John Hancock WAMCO U.S. Government Securities Fund.

262.   Defendant, John Hancock (U.S.A.), claims that these fees (hereinafter referred to as "Revenue Sharing Payments") were used to offset the Administrative and Maintenance charge (AMC).

263.   The AMC is the cost Defendant John Hancock (U.S.A.) claims that it incurs for "record keeping services, such as employer statements, participant statements and enrollment kits."

264.   The AMC is a component of the Expense Ratio (ER) which means that it is a fee attributable to all of Plaintiffs' investments.

265.   Knowledge of the value of these Revenue Sharing Payments can only be obtained if a Plaintiff reviews a footnote to a statement that is available on the electronic website where each Plaintiff monitors their investments.

266.   "The record keeping services fees, such as employer statements, participant statements, and enrollment kits," are also part of the Contract Level Fees, and thus are levied in connection with the Contract Level Fees.

267.   As a result, the AMC is a fiction created so that it appears to Plaintiffs as if they are getting a reduction in fees on account of John Hancock (U.S.A.) receipt of the Revenue Sharing Payments when in fact those payments only benefit John Hancock (U.S.A.) and Plaintiffs are being deprived of the full value of their retirement assets.

268.   Defendant, John Hancock (U.S.A.), should have either remitted the Revenue Sharing Payments to Plaintiffs' retirement accounts or reduced the fees assessed to Plaintiffs.

268.   Receipt of these payments by Defendant John Hancock (U.S.A.) was a breach of fiduciary duty pursuant to ERISA 404, 29 U.S.C. §1104, that resulted in Plaintiffs being deprived

62

of the full value of their retirement benefits.

269.    Receipt of this payment by Defendant John Hancock (U.S.A.) was a prohibited transaction as prescribed by ERISA 406(b), 29 U.S.C. §1106(b).

### 5.    Excessive Fees Paid by Plaintiffs Because of Defendants's Failure to Invest Plan Assets in the Less Costly Readily Available Identical Institutional Class of the Mutual Funds that Underlie the Independent Investment Options

270.    In certain circumstances, Plaintiffs had the option to invest in mutual funds that were not John Hancock mutual funds.

271.    In each instance, a Plan participant would select an investment based upon disclosures John Hancock made regarding the underlying mutual fund.

272.    The Plan participant would direct his funds into the John Hancock (U.S.A.) Sub-Account and these funds would be used to purchase the underlying mutual fund.

273.    In almost all instances, John Hancock (U.S.A.) purchased shares in the retail class of funds.

274.    It is generally less expensive to purchase shares in the institutional class of a mutual fund.

275.    The right-hand column of Table III, attached to this Complaint, sets forth the expenses charged for investing in a less expensive "institutional class" of a mutual fund than the class chosen by John Hancock, (U.S.A.) generally referred to as the "retail class" of each independent mutual fund.

276.    With regard to each fund, John Hancock (U.S.A.) could have selected the less expensive institutional class in which to invest Plan Participants's funds, rather than the retail class.

546319.1

277.   The SEC has acknowledged that it is advantageous for large investors to avail themselves of the more attractive expense structure offered by investments into the institutional class of funds.  See Division of Institutional Management Report on Mutual Fund Fees and Expenses, http://www.sec.gov/news/studies/feestudy.htm

278.   Had John Hancock (U.S.A.) invested the assets it received from Plan Participants in the institutional class, Plaintiffs would have received the same underlying investment, at a lesser fee, with regard to each independent mutual fund.

279.   Had John Hancock (U.S.A.) invested in the institutional class of each independent mutual fund, Plaintiffs would have enjoyed superior performance to that of the retail class.

280.   Had John Hancock invested in the institutional class of the independent mutual funds, Plaintiffs would not, in some instances, have had to pay a front end charge or a 12b-1 fee..

281.   On information and belief, John Hancock (U.S.A.) had less incentive to invest in the institutional class of a mutual fund because it received payments from the underlying mutual funds which payments would have been less if John Hancock (U.S.A.) invested in the retail class of the particular fund.

### 6.   The Selection of John Hancock Money Market Funds

282.   Defendant, John Hancock (U.S.A.), selected the John Hancock Money Market Fund as the money market fund to be offered to Plaintiffs. At the time of selecting this fund and thereafter, Defendant John Hancock (U.S.A.) knew, or should have known, that the adviser to this money market fund (Defendant John Hancock Investment Management Services, LLC) had been fined by the SEC for engaging in a scheme of fraud and deceit with respect to the fees it charged mutual funds, and that such fund's distributor had been fined for aiding and abetting in

that scheme. Therefore, Defendant John Hancock (U.S.A.) should not have considered using this money market fund as the money market fund to offer to Plaintiffs.

283.    Money market funds by their nature are a purely administrative product. As such there is very little difference in the security selection of funds, and returns are strongly correlated to the fees charged. Therefore, identifying the  money market fund with the least amount of expenses should have been the primary concern of John Hancock (U.S.A.), as those funds tend to have superior performance. Had Defendant John Hancock (U.S.A.) been complying with its fiduciary obligations, it would have avoided selecting the John Hancock Money Market Fund, which was advised by an affiliate that had been cited by the SEC for misappropriating mutual fund assets, and instead selected a money market fund that charged lower fees and performed better as the money market option which underlay the JH Investment Option.

### 7.    Common Law Allegations

284.    Insofar as ERISA does not preempt the claims hereunder, Defendants, John Hancock (U.S.A.) and John Hancock Management Services, LLC, would be subject to the common law.

285.    Both would have fiduciary obligation and a duty to refrain from corporate waste, obligations and duties breached by the misconduct described above.

### XI.    CLASS ALLEGATIONS

286.    Plaintiff, Danielle Santomenno, brings this action individually and on behalf of ERISA covered employee benefit plans that held, or continue to hold, group annuity contracts with John Hancock (U.S.A.) which contracts purchased or purchase units in one or more of the mutual funds, listed in the caption of this Complaint, and on behalf of the participants and

beneficiaries of all such ERISA covered employee benefit plans. The class period for each claim begins on the earliest date on which each such claim would be timely.

287.    Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their judicial staff.

288.    Based upon the Defendants' advertising, it is believed that the proposed Class is so numerous that individual joinder of all of its members is impracticable.  The total number of Class members is believed to be at least 200 individuals.

289.    There are questions of law and fact common to the Class, among them the following:

    a.    Was John Hancock (U.S.A.) a fiduciary by virtue of its right to change the fund menu;

    b.    Was John Hancock (U.S.A.) a fiduciary by virtue of its role in investment management;

    c.    Was John Hancock (U.S.A) a fiduciary by virtue of its use of leverage to obtain revenue sharing payments;

    d.    Was John Hancock (U.S.A.) a fiduciary by virtue of its acknowledgment that it was a fiduciary;

    e.    Whether John Hancock (U.S.A.) violated its fiduciary duties by charging excessive Sales and Service Fees;

    f.    Whether John Hancock (U.S.A.) violated its fiduciary duties by charging excessive Administrative Maintenance Charges.

    g.    Whether John Hancock (U.S.A.) engaged in unlawful revenue sharing with the Independent Investment Options;

    h.    Whether John Hancock (U.S.A.) charged excessive adviser fees;

529471.1

i.    Whether John Hancock (U.S.A.) violated its fiduciary duties by utilizing a group annuity contract rather than permitting direct investments into mutual funds.

j.    Whether John Hancock (U.S.A.) violated its fiduciary duties by investing in the retail, rather than the institutional class of mutual funds.

k.    Whether John Hancock (U.S.A.) employed the requisite level of care, skill prudence and diligence and/or violated its fiduciary duty when selecting an affiliated investment manager;

l.    Whether John Hancock (U.S.A.) discharged its duties with respect to the Plans solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.  ERISA 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

m.    Whether John Hancock (U.S.A.)'s receipt of revenue sharing payments was consistent with its duties to act solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character. ERISA 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

n.    Whether John Hancock (U.S.A.) dealt with Plan assets to its own interest and for its own account. ERISA 404(b)(1), 29 U.S.C. §1106(b)(1);

o.    Whether John Hancock (U.S.A.) received any consideration for its personal account from any of the mutual funds dealing with the Plans in connection with transactions involving assets of the Plans.  ERISA 406(b)(3), 29 U.S.C. §1106(b)(3);

p.    Whether any of the Defendants violated the Investment Company Act §36(b), 15 U.S.C. §80a-35(b),

q.    Whether Defendants are liable to disgorge fees collected from the Plans and Plan Participants and profits earned thereon;

r.    Which Defendants committed corporate waste or violated applicable common law fiduciary duties.

290.   The claims and defenses of the representative party are typical of the claims and defenses of the Class. The representative party has no interests that are antagonistic to the claims of the Class, and understands that this matter cannot be settled without the Court's approval.

291.   The representative party will fairly and adequately protect the interests of the Class, and is committed to a vigorous prosecution of this case.

292.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendants.

293.   The parties opposing the Class have acted on grounds generally applicable to the Class thereby making appropriate final injunctive relief or corresponding declaratory relief.

294.   The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

295.   The Defendants were obligated to treat all Class members similarly as Plan participants under ERISA and the ICA which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications.

296.   Since the damages suffered by each Class member may be relatively small, the expense and burden of individual litigation makes it impractical for class members to separately seek redress.

297.   The Class suffered, and will continue to suffer, harm as a result of Defendants' conduct.

298.   A class action is superior to other available methods for the fair and efficient

68

adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.

299.   Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.

300.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.

301    The Class action device allows a single Court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.

302    The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class members. For many, if not most, class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

303.   This Class may be certified under Rule 23(b).

A.   23(b)(1).  As an ERISA breach of fiduciary duty action and one alleging prohibited transactions,  this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (a) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendant opposing the Class, or (b) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.   23(b)(2).  This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final

injunctive, declaratory or other appropriate equitable relief with respect to the Class.

C.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

529471.1

## XII.   CLAIMS FOR RELIEF

### ERISA CLAIMS FOR RELIEF

### COUNT I

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i),(ii) and (B) and Commission of Prohibited Transaction by Defendant John Hancock (U.S.A.) Pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), for Charging the Plaintiff Plans and the Plaintiff Participants of Such Plans an Excessive Sales and Service (Marketing and Distribution) Fee For Their Purchase of the JH Investment Options**

1.      Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

2.      At all relevant times Defendant John Hancock U.S.A. acted as a fiduciary to the Plaintiffs plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii) and (iii).

3.      Pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries.

4.      Pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of defraying reasonable expenses of administering such plans.

5.      Pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of such plans' participants and beneficiaries and with the care, skill, prudence and

71

529471.1

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

6.     ERISA §406(b)(1), 29 U.S.C. §1106(b)(1) prohibits a fiduciary with respect to a plan from dealing with the assets of the plan in its own interest or for its own account.

7.     As set forth in Section X of this Complaint, Defendant John Hancock (U.S.A.) charged an improper and excessive Sales and Service Fee, with respect to the JH Investment Options to Plaintiffs and paid that fee to other external service providers for the distribution and marketing of the Sub-Account units.

8.     The receipt of the excessive Sales and Service Fee (marketing and distribution) in the amount of .50% was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries, because such payment exceeded the .05% 12b-1 fee that was already being charged to Plaintiffs by the underlying mutual funds for the distribution and marketing of the units of the Sub-Account and such fee did not result in the provision of any additional services benefitting the Plaintiff plans or the Plaintiff participants of such plans.

9.     The receipt of the excessive Sales and Service Fee (marketing and distribution) in the amount of .50% was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries

of such plans and for the exclusive purpose of defraying reasonable expenses. Assuming the underlying mutual fund's 12b-1 fee was not set at an excessive rate, the appropriate fee for marketing and distributing the units of the Sub-Account is the amount of the 12b-1, which is .05%. This is the fee that Defendant John Hancock Distributors, LLC, was paid to distribute the shares of the mutual funds that underlie the Independent Investment Options to third party insurance companies and was the amount that was approved by the board of each mutual fund that underlies the JH Investment Options to fund the distribution scheme of the Sub-Account's units. Therefore, by charging Plaintiffs an additional .50% Sales and Service Fee for marketing and distribution, Defendant John Hancock (U.S.A.) breached its fiduciary duty by not acting with the exclusive purpose of defraying reasonable expenses and administration of the Plaintiff plans.

10.     Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), by charging Plaintiffs a Sales and Service Fee (marketing and distribution) in the amount of .50% because a prudent fiduciary would have ensured that the Plaintiff plans and the Plaintiff participants of such plans only paid a marketing and distribution fee equal to the underlying mutual funds' 12b-1 fee, which was .05%.

11.     The receipt of the .50% Sales and Service Fee by Defendant John Hancock USA constitutes a prohibited transaction pursuant to ERISA 406(b)(1), 29 U.S.C. 1106(b)(1), which prohibits fiduciaries from dealing with plan assets in their own interests or their own accounts, because (a) such fees are assets of the Plaintiff plans, (b) such fees were not used to benefit the Plaintiff plans or provided to them and  (c) Defendant John Hancock (U.S.A.) in assessing this fee was exercising authority and control such that it caused the Plaintiff plans and the Plaintiff participants of such plans to pay it a fee and/or compensation.

529471.1

12.     On information and belief, the actions of Defendant John Hancock (U.S.A.) are not protected by any of the regulatory exemptions issued by the Department of Labor pursuant to ERISA 408, 29 U.S.C. §1108, or any of the statutory exemptions contained in ERISA 408, 29 U.S.C. §1108.

13.     As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), and commission of a prohibited transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

14.     Pursuant to ERISA §§409 and 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the excessive Sales and Service fee of .50% that they were charged.

## COUNT II

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i),(ii) and (B) and Commission of Prohibited Transaction by Defendant John Hancock (U.S.A.) Pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), for Charging the Plaintiff Plans and the Plaintiff Participants of Such Plans an Excessive Sales and Service (Marketing and Distribution) Fee For Their Purchase of the Independent Investment Options**

1.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

2.     As set forth in Section X of this Complaint, Defendant John Hancock (U.S.A.) charged an improper and excessive Sales and Service Fee, with respect to the Independent Investment Options, to Plaintiffs and paid that fee to other external service providers for the

546239.1

distribution and marketing of the Sub-Account units related to that Independent Investment Option.

3.     The receipt of the excessive Sales and Service Fee (marketing and distribution) in the amount of .50% was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries, because such payment was in addition to the independent mutual fund's 12b-1 fee (a fee that Plaintiffs paid in addition to the .50% Sales and Service Fee) and if Defendant John Hancock (U.S.A.) believed that it was entitled to any distribution payments on account of distributing the independent mutual funds' shares through the Independent Investment Options it should have used its stature as a large investor to negotiate with the independent mutual funds that they remit to John Hancock (U.S.A.) a portion of the 12b-1 fee that Plaintiffs paid (a fee that is charged by the independent mutual funds, on certain share classes where appropriate, to pay distributors of their shares) to the independent mutual fund on account of their investment into the Independent Investment Options, rather than charging Plaintiffs an additional and separate distribution fee.

4.     The receipt of the excessive Sales and Service Fee (marketing and distribution), with respect to the Independent Investment Options,  in the amount of .50%, was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive

546239.1

purpose of defraying reasonable expenses. All of the independent mutual funds that underlie the Independent Investment Options charged a 12b-1 fee on Plaintiffs investments into such Independent Investment Options. This 12b-1 fee was the fee that was set by the independent adviser to the mutual funds that underlie the Independent Investment Options, and approved by each funds' board in a fiduciary capacity ICA 35(b), 15 U.S.C. §80a-35(b), as the fee that was necessary to compensate third parties for the marketing and distribution of the shares of these mutual funds. By charging Plaintiffs an additional Sales and Service Fee in the amount of .50%, rather than negotiating with the mutual funds that underlie the Independent Investment Options that they be compensated for their distribution efforts through such funds' 12b-1 fees, Defendant John Hancock (U.S.A.) breached its fiduciary duty by not acting with the exclusive purpose of defraying reasonable expenses and administration of the Plaintiff plans.

5.      Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), by charging Plaintiffs a Sales and Service Fee (marketing and distribution) in the amount of .50% because a prudent fiduciary would have ensured that the Plaintiffs only paid one marketing and distribution fee and such fee would have been equal to the 12b-1 fee associated with the appropriate share class that should have underlied the Independent Investment Options.

6.      The receipt of the .50% Sales and Service Fee by Defendant John Hancock (U.S.A.) constitutes a prohibited transaction pursuant to ERISA 406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits fiduciaries from dealing with plan assets in their own interests or their own accounts, because (a) such fees are assets of the Plaintiff plans, (b) such fees were not used to benefit the Plaintiff plans or provided to them and  (c) Defendant John Hancock (U.S.A.)

546239.1

in assessing such fees was exercising authority and control such that it caused the Plaintiff plans and the Plaintiff participants of such plans to pay it a fee and/or compensation.

7.  On information and belief the actions of Defendant John Hancock (U.S.A.) are not protected by any of the regulatory exemptions issued by the Department of Labor pursuant to ERISA §408, 29 U.S.C. §1108, or any of the statutory exemptions contained in ERISA §408, 29 U.S.C. §1108.

8.  As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), and commission of a prohibited transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

9.  Pursuant to ERISA §§409 ad 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the excessive Sales and Service fee of .50% that they were charged.

## COUNT III

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i),(ii) and (B), and the Commission of Prohibited Transactions Pursuant to ERISA §§406(a)(1)(A) and (D) and (b)(1), 29 U.S.C. §§1106(a)(1)(A) and (D) and (b)(1), for Allowing Plaintiffs To Be Charged 12b-1 Fees On Their Investments Into the JH Investment Options; Liability of Defendants John Hancock Services and John Hancock Distributors, LLC, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) for Knowingly Participating in the Fiduciary Violations of Defendant John Hancock (U.S.A.)**

1.  Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

546257.2

2.      At all relevant times Defendant John Hancock (U.S.A.) acted as a fiduciary to the

Plaintiffs plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii)

and (iii).

3.      ERISA 406(a)(1)(A) and (D), 29 U.S.C. 1106(a)(1)(A) and (D) provides that

> A fiduciary with respect to a plan shall not cause the plan to engage
> in a transaction, if he knows or should know that such transaction
> constitutes a direct or indirect--
>
> (A) sale or exchange, or leasing, of any property between the plan
> and a party in interest;
>
>       *         *         *         *
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of
> the plan....

4.      ERISA 3(14)(G), 29 U.S.C. 1002(14)(G) defines a "party in interest" as

> a corporation, partnership...of which (or in which) 50 percent or more of--
>
> (i) the combined voting power of all classes of stock entitled to vote or the
> total value of shares of all classes of stock of such corporation,
>
> (ii) the capital interest or profits interest of such partnership, or:
>
>       *         *         *
>
> is owned directly or indirectly, or held by a fiduciary to a plan or an entity that
> provides services to a plan.

5.      As set forth in Section X of this Complaint, Plaintiffs were impermissibly

charged 12b-1 fees by the underlying mutual funds of the JH Investment Options.  As set forth in

Section X of this Complaint Defendant John Hancock Services and/or Defendant John Hancock

Distributors, LLC, were the recipients of these fees.

6.    Defendant John Hancock Distributors, LLC is an affiliate of Defendant John Hancock Services and Defendant John Hancock Services is the direct subsidiary of Defendant John Hancock (U.S.A.).  Thus, Defendant John Hancock Services and John Hancock Distributors, LLC are "parties in interest" as defined in ERISA 3(14)(G), 29 U.S.C. 1002(14)(G).

7.    As a prudent fiduciary with the stature of Defendant John Hancock (U.S.A.) would have used such stature against its subsidiary to negotiate a fee structure such that the mutual funds underlying the JH Investment Options that did not contain a 12b-1 fee, which is a typical characteristic of the share class of a mutual fund that is designed to accept 401(k) monies, Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B) by allowing Plaintiffs to be charged a 12b-1 fee on account of their investments into the mutual funds that underlie the JH Investment Options.

8.    By failing to negotiate the removal of the improper 12b-1 fee, Defendant John Hancock (U.S.A.) increased the profitability of its subsidiary and an affiliate to such subsidiary. Defendant John Hancock (U.S.A.), breached its fiduciary duty pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), by failing to discharge its duties solely in the interest of the Plaintiff plans' participants and beneficiaries.

9.    The failure to negotiate the removal of the 12b-1 fees constituted a failure to defray reasonable expenses of the Plaintiff plans and therefore Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii) by not negotiating for the removal of this fee.

10.    The receipt of 12b-1 fees by Defendants John Hancock Services and/or John Hancock Distributors, LLC constituted a prohibited transaction on the part of Defendant John

546257.2

Hancock (U.S.A.) pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), because (a) Defendant John Hancock Distributors, LLC, is an affiliate of Defendant John Hancock Services, which is a subsidiary of Defendant John Hancock (U.S.A.), (b) the 12b-1 fees are assets of the Plaintiff plans, (c) such fees were not used to benefit the Plaintiff plans or provided to them and (d) Defendant John Hancock (U.S.A.) by permitting/causing these 12b-1 fees to be charged, was exercising authority and control such that it caused the Plaintiffs to pay it a fee and/or compensation through its subsidiary and/or the affiliate to such subsidiary.

11.     The receipt of 12b-1 fees by Defendants John Hancock Services and/or John Hancock Distributors, LLC constituted a prohibited transaction on the part of Defendant John Hancock (U.S.A.) pursuant to ERISA §406(b)(a)(1)(A) and (D), 29 U.S.C. §1106(a)(1)(A) and (D), because (a) Defendants John Hancock Services and John Hancock Distributors, LLC, are "parties in interests" to the Plaintiff plans, (b) Defendants John Hancock Services and/or John Hancock Distributors, LLC, receipt of the 12b-1 fees constituted (i) a sale or exchange of the plans' properties and (ii) the transfer of assets of the plans, and (c) such fees were not in the form of reasonable compensation and were not used to benefit the Plaintiff plans or provided to them.

12.     As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), and the commission a prohibited transaction pursuant to ERISA §§406(a)(1)(A) and (D) and (b)(1), 29 U.S.C. §§1106(a)(1)(A) and (D) and (b)(1), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

546257.2

13.    Pursuant to ERISA §§409 ad 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2),
Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of
such plans for the 12b-1 fees they were charged by the underlying mutual funds in connection
with their investments into the JH Investment Options.

14.    Pursuant to ERISA §502(a)(3), 29 U.S.C. 1132(a)(3),  Defendants John Hancock
Services and John Hancock Distributors, LLC, are liable to the Plaintiff plans and the Plaintiff
participant of such plans for the 12b-1 fees they received by knowingly participating in the
ERISA violations described herein of Defendant John Hancock (U.S.A.).

## COUNT IV

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§
404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i),(ii) and (B) for Allowing Plaintiffs
To Be Charged 12b-1 Fees On Their Investments Into the Independent Investment Options**

1.    Plaintiffs incorporate by reference the allegations in the previous paragraphs of
this Complaint.

2.    At all relevant times Defendant John Hancock (U.S.A.) acted as a fiduciary to the
Plaintiffs plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii)
and (iii).

3.    As set forth in Section X of  this Complaint and reflected in Table III,
with respect to all Independent Investment Options, during all of the time, or a part thereof, that
Defendant John Hancock (U.S.A.) has been a fiduciary to the Plaintiffs' plans, it invested
Plaintiffs' investments, with respect to the mutual funds that underlie the Independent Investment
Options, in the incorrect share class labeled as "Class Chosen by JH" because such share class
charged Plaintiffs a 12b-1 fee  when John Hancock (U.S.A.) should have invested Plaintiffs

546298.1

investments in a separate class of the same mutual fund, labeled in Table III as the "Appropriate Class" which is the class that was designed for, among other things, to accept 401(k) plan monies, and did not charge a 12b-1 fee.  As the performance charts included in Table III reflect by investing in the incorrect share class, Defendant John Hancock (U.S.A.) caused Plaintiffs to suffer from inferior returns on their investments.

4.      As a prudent fiduciary with the stature it had, Defendant John Hancock (U.S.A.) should have negotiated with the sponsors of the mutual funds that underlie the Independent Investment Options so that Plaintiffs' investments would be invested in the class of such mutual fund that does not charge a 12b-1 fee and that provided superior performance.  Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

5.      As a prudent fiduciary, after passing Plaintiffs' investments through the applicable Sub-Account, Defendant, John Hancock (U.S.A.) would have invested Plaintiffs' investments (since they are retirement monies associated with a 401(k) plan), in the share class underlying each of the Independent Investment Options that did not charge a 12b-1 fee and thereby delivered superior performance, Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

6.      The failure to negotiate the removal of the 12b-1 fees constituted a failure to defray reasonable expenses of the Plaintiff plans and therefore Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii).

7.      As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C.

§§1104(a)(1)(A)(ii),(ii) and (B) the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

8.      Pursuant to ERISA §§409 ad 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the 12b-1 fees they were charged and an amount equal to the difference in returns that they did not earn because their investments were being directed to the incorrect share class of each of the mutual funds that underlie the Independent Investment Options.

## COUNT V

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i),(ii) and (B), and the Commission of Prohibited Transactions Pursuant to ERISA §§406(a)(1)(A) and (D) and (b)(1), 29 U.S.C. §§1106(a)(1)(A) and (D) and (b)(1), for Allowing Plaintiffs To Be Charged The "Excessive Adviser Fee", which was paid to Defendant John Hancock Services, on the Mutual Funds that Underlie the JH Investment Options; Liability of Defendants John Hancock Services pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) for Knowingly Participating in the Fiduciary Violations of Defendant John Hancock (U.S.A.)**

1.      Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

2.      At all relevant times, Defendant John Hancock (U.S.A.) acted as a fiduciary to the Plaintiffs plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii) and (iii).

3      As set forth in Section X of this Complaint and Tables IV and V, with respect to all of the John Hancock proprietary mutual funds that underlie the JH Investment Options, John Hancock Services charged, as referred to in Tables IV and V, for each fund, an "Excessive Adviser Fee" (this term is used herein to refer to the excessive adviser fee that was charged with respect to each mutual fund listed in Tables IV and V). This fee was excessive because John

546343.1

Hancock Services charged an investment management fee, when it was providing no investment management services. That fee exceeded the fee that each mutual funds' sub-adviser charged for providing all of the investment management services, and also bearing the costs of providing such services, to each mutual fund.

4.  A prudent fiduciary with the stature of Defendant John Hancock (U.S.A.) should have used its stature to negotiate directly with the sub-advisers to all of the mutual funds that underlie the JH Investment Options to have them serve as the adviser to such mutual funds at the same fees they were charging for serving as a sub-adviser (since they were already providing all of the investment management services for each of these funds). The effect of this would have been to (a) eliminate the Excessive Adviser Fee that was paid to Defendant John Hancock Services and borne by Plaintiffs and (b) prevented Defendant John Hancock Services and its affiliate Defendant John Hancock Distributors, LLC (through the retention of a separate distributor), an entity had previously been fined by the SEC for engaging in a scheme of fraud and deceit with respect to the fees it charged mutual funds, from having any ability to set, influence or receive, a fee from the mutual funds that underlie the JH Investment Options. Therefore, by not negotiating directly with the sub-advisers to all of the mutual fund that underlie the JH Investment Options to have them serve as the adviser to such mutual funds, Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), by allowing Plaintiffs to be charged an excessive investment management fee by an entity with a history of engaging in a scheme of fraud and deceit with respect to the fees it charged to mutual funds (and therefore their shareholders).

546343.1

5.     By failing to use its stature to negotiate the removal of the Excessive Adviser Fee for each mutual fund underlying the JH Investment Options, which resulted in no additional services to Plaintiffs, but increased the profitability of its subsidiary, Defendant John Hancock (U.S.A.), breached its fiduciary duty pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), by failing to discharge its duties solely in the interest of the Plaintiff plans' participants and beneficiaries.

6.     The failure to negotiate the removal of the Excessive Adviser Fees constituted a failure to defray reasonable expenses of the Plaintiff plans and therefore Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii) by not negotiating for the removal of this fee.

7.     The receipt of the Excessive Adviser Fees by Defendant John Hancock Services constituted a prohibited transaction on the part of Defendant John Hancock (U.S.A.) pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), because (a) the Excessive Adviser Fees were taken from assets of the Plaintiff plans, (b) such fees were not used to benefit the Plaintiff plans or remitted to them and  (c) Defendant John Hancock (U.S.A.) by permitting/causing these Excessive Adviser fees to be paid, was exercising authority and control such that it caused the Plaintiffs to pay it a fee and/or compensation through its subsidiary.

8.     The receipt of the Excessive Adviser fee with respect to all of the mutual funds that underlie the JH Investment Options by Defendants John Hancock Services constituted a prohibited transaction on the part of Defendant John Hancock (U.S.A.) pursuant to ERISA §406(b)(1)(A) and (D), 29 U.S.C. §1106(a)(1)(A) and (D), because (a) Defendants John Hancock Services is a "party in interest" to the Plaintiff plans, (b) Defendants John Hancock

Services receipt of the Excessive Adviser Fee for each mutual fund underlying the JH Investment Options constituted (i) a sale or exchange of the plans' properties and (ii) the transfer of assets of the plans, and (c) such fees were not in the form of reasonable compensation and were not used to benefit the Plaintiff plans or remitted to them.

9.      As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), and the commission of prohibited transactions pursuant to ERISA §§406(a)(1)(A) and (D) and (b)(1), 29 U.S.C. §§1106(a)(1)(A) and (D) and (b)(1), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

10.      Pursuant to ERISA §§409 ad 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the Excessive Adviser Fees they were charged by each of the underlying mutual funds in connection with their investments into the JH Investment Options.

11.      Pursuant to ERISA §502(a)(3), 29 U.S.C. 1132(a)(3), Defendant John Hancock Services is liable to the Plaintiff plans and the Plaintiff participants of such plans for the Excessive Adviser Fees they received by knowingly participating in the ERISA violations described herein of Defendant John Hancock (U.S.A.).

## COUNT VI

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i),(ii) and (B) and Commission of a Prohibited Transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), For Its Receipt of Receiving Revenue Sharing Fees on Account of Plaintiffs Investments in Both Independent Investment Options and the JH Investment Options**

1.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

2.     At all relevant times Defendant John Hancock (U.S.A.) acted as a fiduciary to the Plaintiffs plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii) and (iii).

3.     As set forth in Section X of this Complaint, Defendant John Hancock (U.S.A.) required the advisers, that were independent of John Hancock (U.S.A.), to the mutual funds that underlie the Independent Investment Options, to remit .50% of Plaintiffs investment to Defendant John Hancock (U.S.A.).

4.     As set forth in Section X of this Complaint, Defendant John Hancock (U.S.A.) required the sub-advisers, that were independent of John Hancock (U.S.A.), to the John Hancock mutual funds listed in Section X that underlie the JH Investment Options to remit .50% of Plaintiffs investment to Defendant John Hancock (U.S.A.)

5.     The payments to John Hancock (U.S.A.) described in paragraphs 3 and 4 are collectively referred to in the remainder of this Count as the Revenue Sharing Payments.

6.     As set forth in Section X of the Complaint, Defendant John Hancock (U.S.A.) represented to Plaintiffs that its receipt of the Revenue Sharing Payments resulted in a reduction in the fees that were charged to Plaintiffs, when in fact no such reduction ever occurred.

7.     The receipt of the Revenue Sharing Payment by Defendant John Hancock (U.S.A.) was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such

546343.1

plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries, because rather than accepting the Revenue Sharing Payments, Defendant John Hancock (U.S.A.) could have returned these fees to Plaintiffs or negotiated with the payer a reduction in the fees that were charged to Plaintiffs (through the FER) by .50%.

8.      The receipt of the Revenue Sharing Payments by Defendant John Hancock (U.S.A.) was a breach of fiduciary duty pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of defraying reasonable expenses because Defendant John Hancock (U.S.A.), rather than taking receipt of the Revenue Sharing Payments, could have negotiated with the payers of these fees a reduction in the fees that were charged to Plaintiffs.

9.      Defendant John Hancock (U.S.A.) breached its fiduciary duty pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B) by taking receipt of the Revenue Sharing Payments because a prudent fiduciary would have ensured that the Plaintiffs were not subjected to the fees that generated this payment for Defendant John Hancock (U.S.A.).

10.     The receipt of the Revenue Sharing Payments by Defendant John Hancock (U.S.A.) constitutes prohibited transactions pursuant to ERISA 406(b)(1), 29 U.S.C. 1106(b)(1), which prohibits fiduciaries from dealing with plan assets in their own interests or their own accounts, because (a) such fees are assets of the Plaintiff plans, (b) such fees were not used to benefit the Plaintiff plans or provided to them and  (c) Defendant John Hancock (U.S.A.) exercised its discretionary authority and/or control to cause the Plaintiff plans to invest in the mutual funds that paid it the Revenue Sharing Payments.

546343.1

11.     On information and belief, the actions of Defendant John Hancock (U.S.A.) are not protected by any of the regulatory exemptions issued by the Department of Labor pursuant to ERISA 408, 29 U.S.C. §1108, or any of the statutory exemptions contained in ERISA 408, 29 U.S.C. §1108.

12.     As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), and commission of a prohibited transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

13.     Pursuant to ERISA §§409 and 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the Revenue Sharing Payments it received.

## COUNT VII

**Breach of Fiduciary Duties by Defendant John Hancock (U.S.A.) Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i),(ii) and (B) and For Selecting the John Hancock Money Market Fund (Advised by its Subsidiary Defendant John Hancock Services) as the Money Market Option For Plaintiffs Instead of the Vanguard Prime Money Market Fund**

1.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint.

2.     At all relevant times Defendant John Hancock (U.S.A.) acted as a fiduciary to the Plaintiff plans pursuant to ERISA §§3(21)(A)(i),(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i),(ii) and (iii).

546343.1

3.    Defendant John Hancock (U.S.A.) in its fiduciary capacity selected the John Hancock Money Market Fund as the money market fund to be offered to Plaintiffs.

4.    At the time of selecting, and continuing to include the John Hancock Money Market Fund, as Plaintiffs' money market option, Defendant John Hancock (U.S.A.) knew, or should have known, that the adviser to this money market fund was fined by the SEC for engaging in a scheme of fraud and deceit with respect to the fees it charged mutual funds, and that such fund's distributor had been fined for aiding and abetting in that scheme. Therefore, Defendant John Hancock (U.S.A.) never should have considered using this money market fund as the money market fund to offer to Plaintiffs.

5.    Money market funds by their nature are a purely administrative product. As such there is very little difference in the security selection of funds; as a result returns are strongly correlated to the fees charged. Therefore, the money market funds with the least amount of expenses tend to have the best performance and those expenses should be a primary concern of a fiduciary in its selection of a money market fund.

6.    The Vanguard Prime Money Market Fund is a very well known money market fund. The John Hancock Money Market Fund consistently underperforms the Vanguard Prime Money Market Fund (VMRXX) and charges fees that are substantially less than the fees charged by the John Hancock Money Market Fund.

7.    Defendant John Hancock (U.S.A.) should have either selected the Vanguard Prime Money Market Fund or a similarly low priced high performance money market fund to offer to Plaintiffs or, as it subsidiary did with other independent advisers, used its negotiating powers to retain the Vanguard Group, Inc. to manage a separate money market fund that

90

Defendant John Hancock (U.S.A.) could have created to receive Plaintiffs investments.

8.     Had Defendant John Hancock (U.S.A.) been complying with its fiduciary obligations, it would have avoided selecting the John Hancock Money Market Fund, which was advised by an affiliate that had been cited by the SEC for misappropriating mutual fund assets and selected a superior fund to underlie the JH Investment Option that was intended to represent a money market fund, and Plaintiffs would have been charged much lower fees on account of their investment and received higher returns on their investments.

9.     The selection of the John Hancock Money Market Fund as the money market fund to underlie the JH Invetment Option that was intended to represent a money market fund, as opposed to a less expensive better performing fund, resulted in a breach of fiduciary duty by Defendant John Hancock (U.S.A.) pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that a fiduciary discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries, because selection of such money market fund resulted in the Plaintiffs paying excessive fees to Defendant John Hancock (U.S.A.)'s subsidiary, Defendant John Hancock Services and receiving inferior returns.

10.     The selection of the John Hancock Money Market Fund as the money market fund to underlie the JH Interment Option that was intended to represent a money market fund, as opposed to a less expensive better performing fund, resulted in a breach of fiduciary duty by Defendant John Hancock (U.S.A.) pursuant to pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that a fiduciary discharge its duties with respect to the plans

546343.1

for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of defraying reasonable expenses because the excessive fees charged by the John Hancock Money Market Fund were unreasonable.

11.     The selection of the John Hancock Money Market Fund as the money market fund to underlie the JH Interment Option that was intended to represent a money market fund, as opposed to a less expensive better performing fund, resulted in a breach of fiduciary duty pursuant to pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), because a prudent fiduciary would have not selected a money market fund where the adviser to such fund was previously fined by the SEC for misappropriating mutual fund assets from multiple mutual funds and, given the nature of money market funds, would have sought one that consistently charged low fees but provided superior returns.

12.     As a direct and proximate result of Defendant John Hancock (U.S.A.)'s breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i),(ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(ii),(ii) and (B), the Plaintiff plans and the Plaintiff participants of such plans were denied the full value of their retirement benefits.

13.     Pursuant to ERISA §§409 and 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2), Defendant John Hancock (U.S.A.) is liable to the Plaintiff plans and the Plaintiff participants of such plans for the excessive fees they paid, and inferior returns they received, as a consequence of Defendant John Hancock (U.S.A.) selection of the John Hancock Money Market Fund as the underlying fund to the JH Investment Option.

## ICA CLAIMS

### Count VIII

**Breach of Fiduciary Duty Pursuant to ICA §§36(b) and 46(b), 15 U.S.C. §§80a-35(b) and 46(b) for Management Fees Charged by Defendant John Hancock Services with Respect to the Following Mutual Funds: John Hancock Funds II-All Cap Value Fund; John Hancock Funds II-Blue Chip Growth Fund; John Hancock Funds II-Global Bond Fund; John Hancock II-International Value Fund; John Hancock II-Real Return Bond Fund; John Hancock Funds II-Small Cap Growth Fund; John Hancock Funds II-Total Return Fund; John Hancock Funds II-U.S. Government Securities Fund; John Hancock-Value Trust (collectively referred to in this Count XIII as the "Funds")**

1.     Pursuant to ICA §36(b), 15 U.S.C. §80-35(b), a security holder may bring a private right of action against an investment adviser or any affiliated party to such investment adviser for breach of fiduciary duty regarding the compensation paid by such registered investment company.  The compensation received by the adviser will be deemed a breach of fiduciary duty if it is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.  Among the factors a court should consider in evaluating this claim is (a) the nature and quality of services provided, (b) the profitability of the adviser, (c) the conscientiousness of the mutual funds' boards of directors and (d) comparative fee structures.

2.     Pursuant to ICA §46(b), 15 U.S.C. §46(b), any party to a contract, or non-party to such contract who has acquired a right under such contract, may bring a private right of action for the rescission of any provision of such contract that violates any provision of the ICA, including ICA §36(b), 15 U.S.C. §80-35(b).

3.     All of the Funds are within John Hancock trusts that are registered open ended investment companies and Defendant John Hancock Services serves as the adviser to all of the Funds and is paid a fee for providing investment management services.

546343.1

4.     Plaintiffs are all security holders in the Funds through their interests in the Sub-Accounts and thus have a private right of action to bring this claim pursuant to ICA §36(b), 15 U.S.C. §80a-35(b).

5.     On information and belief, Plaintiffs are all parties to the group annuity contracts that Defendant John Hancock (U.S.A.) entered into with the Plaintiff plans and/or the sponsors of such plans.  Even if Plaintiffs are non-parties to such contracts, then they are non-parties that have acquired rights under those group annuity contracts because such contracts operate their 401(k) plans, effect the investments they make pursuant to such plans and the returns they receive on such investments, require Plaintiffs to make payments to Defendants John Hancock (U.S.A.) and John Hancock Services and govern when they receive their retirement benefit. Thus if the group annuity contracts, through the payments they require to Defendants John Hancock (U.S.A.) and/or John Hancock Services result in Defendant John Hancock Services being paid compensation that is a breach of fiduciary duty pursuant to, ICA §36(b), 15 U.S.C. §80a-35(b), ICA 46(b), 15 U.S.C. §80a-46(b), provides them with a private right of action to bring a claim for such breach.

6.     As set forth in Section 10 of this Complaint and Table V, with respect to all of the Funds, John Hancock Services charged, as referred to in Table V, for each Fund, an "Excessive Adviser Fee" (this term is used herein to refer to the excessive adviser fee that was charged with respect to each mutual fund listed in Table V).  This fee was excessive because John Hancock Services charged an investment management fee, when it was providing no investment management services.  That fee exceeded the fee each Funds' sub-adviser charged for providing all of the investment management services, and also bearing the costs of providing

94

such services, to each Fund.  Application of the above listed four factors demonstrates that the investment management fee received by Defendant John Hancock Services was so disproportionately large that it bears no reasonable relationship to the services rendered for each of the Funds and could not have been the product of arm's length bargaining.

7.       **Nature and Quality of the Services** .  As disclosed in SEC filings, Defendant John Hancock Services rendered no investment management services.  As no investment management services were provided by Defendant John Hancock Services, since the sub-adviser provided all of the investment management services the Excessive Adviser Fees for each of the Funds was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

8.       **Profitability of the Adviser**.  Since Defendant John Hancock Investment Management Services and was not incurring any fees in connection with providing such services (all such fees were paid by the sub-adviser) the Excessive Adviser Fees for each of the Funds was all profit to Defendant John Hancock Services and, therefore, was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

9.       **Conscientiousness of the Funds' Boards**.  As the board of directors of each of the Funds knew that all of the investment management services were being provided by the sub-advisers to the Funds and that the sub-advisers bore the expenses of providing such services, the Excessive Adviser Fee paid to Defendant John Hancock Services for each Fund was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.  Furthermore, despite the fact that

546343.1

Defendant John Hancock Services had previously been fined by the SEC for engaging in a scheme of fraud and deceit with respect to the amount of fees it charged the assets of mutual funds that underlie annuity products, the board of each of the Funds elected not to review the fee that was paid to the sub-adviser for performing all of the investment management services for each Fund. As stated in SEC filings by the board of each Fund:

> With respect to the evaluation of the subadvisory agreements (including any sub-subadvisory agreement) with entities not affiliated with the Adviser [Defendant John Hancock Services], the Board believes that, in view of the Trust's [the trusts that hold the Funds] 'manager-of-managers' advisory structure, the profits to be realized by those subadvisers that are not affiliated with the Adviser from their relationship with the Trust generally are not a material factor in the Board's consideration of these subadvisory agreements because such fees are paid by the Adviser and not by the Funds and the Board relies on the ability of the Adviser to negotiate the subadvisory fees at arms-length. (emphasis added)

Therefore, since the board was not considering the fee of the sub-adviser as compared to the fee that was requested by John Hancock Services, given the board's knowledge of this Defendant's past and the lack of investment management services it provided to the Funds, this lack of consideration of the suabadviser's fee for each Fund represents a total lack of conscientiousness on the part of the boards of each Fund and thus the Excessive Adviser Fee is necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

    10.   **Comparative Fee Structure**.   The fee charged by the sub-adviser was the fee required to render the investment advisory services for the mutual fund. Since the Excessive Adviser Fee, for each Fund, was in excess of that amount, it was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

11.    Plaintiffs seek, pursuant to ICA §36(b)(3), 15 U.S.C. §80a-35(b)(3), the actual damages resulting from the breach of fiduciary duty by Defendant John Hancock Services, up to, including the amount of compensation and payments received from the Funds or, pursuant to ICA §46(b), 15 U.S.C. §80a-46(b), rescission of the contracts due to their violation of ICA §36(b), 15 U.S.C. §80a-35(b).

<strong>Count IX</strong>

**Breach of Fiduciary Duty Pursuant to ICA §§36(b) and 46(b), 15 U.S.C. §§80a-35(b) and 46(b) for Management Fees Charged by Defendant John Hancock Services with Respect to the Following Mutual Funds: John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Balanced Portfolio; John Hancock Funds II-Growth Portfolio; John Hancock Funds II-Conservative Portfolio; John Hancock Money Market Trust; John Hancock Strategic Income Trust; and John Hancock Funds III-International Core Trust (collectively referred to in this Count IX as the "Funds")**

1.    Pursuant to ICA §36(b), 15 U.S.C. §80-35(b), a security holder may bring a private right of action against an investment adviser or any affiliated party to such investment adviser for breach of fiduciary duty regarding the compensation paid by such registered investment company.  The compensation received by the adviser will be deemed a breach of fiduciary duty if it is so disproportionately large that it bears no reasonable relationship to the

services rendered and could not have been the product of arm's length bargaining.  Among the factors a court should consider in evaluating this claim is (a) the nature and quality of services provided, (b) the profitability of the adviser, (c) the conscientiousness of the mutual funds' boards of directors and (d) comparative fee structures.

2.     Pursuant to ICA §46(b), 15 U.S.C. §46(b), any party to a contract, or non-party to such contract who has acquired a right under such contract, may bring a private right of action for the rescission of any provision of such contract that violates any provision of the ICA, including ICA §36(b), 15 U.S.C. §80-35(b).

3.     All of the Funds are within John Hancock trusts that are registered open ended investment companies and Defendant John Hancock Services serves as the adviser to all of the Funds and is paid a fee for providing investment management services.

4.     Plaintiffs are all security holders in the Funds through their interests in the Sub-Accounts and thus have a private right of action to bring this claim pursuant to ICA §36(b), 15 U.S.C. §80a-35(b).

5.     On information and belief, Plaintiffs are all parties to the group annuity contracts that Defendant John Hancock (U.S.A.) entered into with the Plaintiff plans and/or the sponsors of such plans.  Even if Plaintiffs are non-parties to such contracts, then they are non-parties that have acquired rights under those group annuity contracts because such contracts operate their 401(k) plans, effect the investments they make pursuant to such plans and the returns they receive on such investments, require Plaintiffs to make payments to Defendants John Hancock (U.S.A.) and John Hancock Services and govern when they receive their retirement benefit.  Thus if the group annuity contracts, through the payments they require to Defendants John

Hancock (U.S.A.) and/or John Hancock Services result in Defendant John Hancock Services being paid compensation that is a breach of fiduciary duty pursuant to, ICA §36(b), 15 U.S.C. §80a-35(b), ICA §46(b), 15 U.S.C. §80a-46(b), provides them with a private right of action to bring a claim for such breach.

6.      As set forth in Section 10 of this Complaint and Table IV, with respect to all of the Funds, John Hancock Services charged, as referred to in Table IV, for each Fund, an "Excessive Adviser Fee" (this term is used herein to refer to the excessive adviser fee that was charged with respect to each mutual fund listed in Table IV). This fee was excessive because John Hancock Services charged an investment management fee, when it was providing no investment management services. That fee exceeded the fee each Funds' sub-adviser charged for providing all of the investment management services, and also bearing the costs of providing such services, to each Fund. Application of the above listed four factors demonstrates that the investment management fee received by Defendant John Hancock Services was so disproportionately large that it bears no reasonable relationship to the services rendered for each of the Funds and could not have been the product of arm's length bargaining.

7.      **Nature and Quality of the Services**. As disclosed in SEC filings, Defendant John Hancock Services rendered no investment management services. As no investment management services were provided by Defendant John Hancock Services, since the sub-adviser provided all of the investment management services the Excessive Adviser Fees for each of the Funds was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

546343.1

8.    **Profitability of the Adviser.**   Since Defendant John Hancock Investment

Management Services and was not incurring any expenses in connection with providing such

services (all such expenses were paid by the sub-adviser) the Excessive Adviser Fees for each of

the Funds was all profit to Defendant John Hancock Services and, therefore, was necessarily so

disproportionately large that it bore no reasonable relationship to the services rendered and could

not have been the product of arm's length bargaining.

9.    **Conscientiousness of the Funds' Boards.**   As the board of directors of each of

the Funds knew that all of the investment management services were being provided by the sub-

advisers to the Funds and that the sub-advisers bore the expenses of providing such services, the

Excessive Adviser Fee paid to Defendant John Hancock Services for each Fund was necessarily

so disproportionately large that it bore no reasonable relationship to the services rendered and

could not have been the product of arm's length bargaining.

10.    **Comparative Fee Structure.**   The fee charged by the sub-adviser was the fee

required to render the investment advisory services for the mutual fund.  Since the Excessive

Adviser Fee, for each Fund, was in excess of that amount, it was necessarily so

disproportionately large that it bore no reasonable relationship to the services rendered and could

not have been the product of arm's length bargaining.

11.    Plaintiffs seek, pursuant to ICA §36(b)(3), 15 U.S.C. §80a-35(b)(3), the actual

damages resulting from the breach of fiduciary duty by Defendant John Hancock Services, up to,

including the amount of compensation and payments received from the Funds or, pursuant to

ICA §46(b), 15 U.S.C. §80a-46(b), rescission of the contracts due to their violation of ICA

§36(b), 15 U.S.C. §80a-35(b).

## COUNT X

### Common Law Fraud and Corporate Waste

1.      In the event that it is determined that John Hancock (U.S.A.) is not a fiduciary, as that term is used in ERISA, §3(21), 29 U.S.C. §29 1002(21), then ERISA would not pre-empt common law claims against John Hancock (U.S.A.),.

2.      In the event that it is determined that John Hancock (U.S.A.) is not a fiduciary, as that term is used in ERISA, then Defendant, John Hancock (U.S.A.) would owe a common law fiduciary duty to Plaintiffs and a common law duty to refrain from corporate waste of Plaintiffs' property.

3.      The conduct described in Section X of this Complaint establishes that Defendant, John Hancock (U.S.A.), breached the fiduciary duty it owed to Plaintiffs and committed corporate waste.

4.      John Hancock Management Services, LLC has a common law fiduciary duty to Plaintiffs and a common law duty to refrain from corporate waste of Plaintiffs' property.

5.      The conduct described in Section X of this Complaint establishes that Defendant, John Hancock Management Services, LLC, breached the fiduciary duty it owed to Plaintiffs and committed Corporate waste.

6.      Defendants formed a civil conspiracy to deprive Plaintiffs of the value of their retirement savings in the manner described in Section X of this Complaint.

7.      All Defendants are jointly and severally liable to Plaintiffs for the misconduct of any Defendant.

546343.1

**Count IX**

**Breach of Fiduciary Duty Pursuant to ICA §§36(b) and 46(b), 15 U.S.C. §§80a-35(b) and 46(b) for Management Fees Charged by Defendant John Hancock Services with Respect to the Following Mutual Funds: John Hancock Funds II-Lifestyle Aggressive Portfolio; John Hancock Funds II-Lifestyle Moderate Portfolio; John Hancock Funds II-Balanced Portfolio; John Hancock Funds II-Growth Portfolio; John Hancock Funds II-Conservative Portfolio; John Hancock Money Market Trust; John Hancock Strategic Income Trust; and John Hancock Funds III-International Core Trust (collectively referred to in this Count IX as the "Funds")**

1.     Pursuant to ICA §36(b), 15 U.S.C. §80-35(b), a security holder may bring a private right of action against an investment adviser or any affiliated party to such investment adviser for breach of fiduciary duty regarding the compensation paid by such registered investment company.  The compensation received by the adviser will be deemed a breach of fiduciary duty if it is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.  Among the factors a court should consider in evaluating this claim is (a) the nature and quality of services provided, (b) the profitability of the adviser, (c) the conscientiousness of the mutual funds' boards of directors and (d) comparative fee structures.

2.     Pursuant to ICA §46(b), 15 U.S.C. §46(b), any party to a contract, or non-party to such contract who has acquired a right under such contract, may bring a private right of action for the rescission of any provision of such contract that violates any provision of the ICA, including ICA §36(b), 15 U.S.C. §80-35(b).

3.     All of the Funds are within John Hancock trusts that are registered open ended investment companies and Defendant John Hancock Services serves as the adviser to all of the Funds and is paid a fee for providing investment management services.

4.      Plaintiffs are all security holders in the Funds through their interests in the Sub-Accounts and thus have a private right of action to bring this claim pursuant to ICA §36(b), 15 U.S.C. §80a-35(b).

5.      On information and belief, Plaintiffs are all parties to the group annuity contracts that Defendant John Hancock (U.S.A.) entered into with the Plaintiff plans and/or the sponsors of such plans. Even if Plaintiffs are non-parties to such contracts, then they are non-parties that have acquired rights under those group annuity contracts because such contracts operate their 401(k) plans, effect the investments they make pursuant to such plans and the returns they receive on such investments, require Plaintiffs to make payments to Defendants John Hancock (U.S.A.) and John Hancock Services and govern when they receive their retirement benefit. Thus if the group annuity contracts, through the payments they require to Defendants John Hancock (U.S.A.) and/or John Hancock Services result in Defendant John Hancock Services being paid compensation that is a breach of fiduciary duty pursuant to, ICA §36(b), 15 U.S.C. §80a-35(b), ICA §46(b), 15 U.S.C. §80a-46(b), provides them with a private right of action to bring a claim for such breach.

6.      As set forth in Section 10 of this Complaint and Table IV, with respect to all of the Funds, John Hancock Services charged, as referred to in Table IV, for each Fund, an "Excessive Adviser Fee" (this term is used herein to refer to the excessive adviser fee that was charged with respect to each mutual fund listed in Table IV). This fee was excessive because John Hancock Services charged an investment management fee, when it was providing no investment management services. That fee exceeded the fee each Funds' subadviser charged for providing all of the investment management services, and also bearing the costs of providing

such services, to each Fund.  Application of the above listed four factors demonstrates that the investment management fee received by Defendant John Hancock Services was so disproportionately large that it bears no reasonable relationship to the services rendered for each of the Funds and could not have been the product of arm's length bargaining.

7.     **Nature and Quality of the Services** .  As disclosed in SEC filings, Defendant John Hancock Services rendered no investment management services.  As no investment management services were provided by Defendant John Hancock Services, since the subadviser provided all of the investment management services the Excessive Adviser Fees for each of the Funds was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

8.     **Profitability of the Adviser.**  Since Defendant John Hancock Investment Management Services and was not incurring any expenses in connection with providing such services (all such expenses were paid by the sub-adviser) the Excessive Adviser Fees for each of the Funds was all profit to Defendant John Hancock Services and, therefore, was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

9.     **Conscientiousness of the Funds' Boards.**  As the board of directors of each of the Funds knew that all of the investment management services were being provided by the sub-advisers to the Funds and that the sub-advisers bore the expenses of providing such services, the Excessive Adviser Fee paid to Defendant John Hancock Services for each Fund was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

546343.1

10. **Comparative Fee Structure.**    The fee charged by the subadviser was the fee required to render the investment advisory services for the mutual fund.  Since the Excessive Adviser Fee, for each Fund, was in excess of that amount, it was necessarily so disproportionately large that it bore no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.

11.    Plaintiffs seek, pursuant to ICA §36(b)(3), 15 U.S.C. §80a-35(b)(3), the actual damages resulting from the breach of fiduciary duty by Defendant John Hancock Services, up to, including the amount of compensation and payments received from the Funds or, pursuant to ICA §46(b), 15 U.S.C. §80a-46(b), rescission of the contracts due to their violation of ICA §36(b), 15 U.S.C. §80a-35(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and 23(b)(3);

B.    Declare that Defendant, John Hancock (U.S.A.) is liable for its breach of fiduciary duties pursuant to ERISA:

1.    Pursuant to ERISA §§ 404(a)(1)(A)(i),(ii) and (b), 29 U.S.C.. §§1104(a)(1)(A)(i) and (ii) and (B) and for the commission of a prohibited transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), for charging the plaintiff plans and the plaintiff participants of such plans an excessive sales and service (marketing and distribution) fee for their purchase of the JH Investment Options;

2.    Pursuant to ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.A.

§§1104(a)(1)(A)(i) and (ii) and (B) and for the commission of prohibited transactions pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), for charging the plaintiff plans and the plaintiff participants of such plans an excessive sales and service (marketing and distribution) fee for their purchase of the Independent Investment Options;

3.    Pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C.. §§ 1104(a)(1)(A)(i) and (ii) and (B), and for the commission of prohibited transactions pursuant to ERISA §§406(a)(1)(a) and (d) and (b)(1), 29 U.S.C. §§1106(a)(1)(A) and (D) and (b)(1), for allowing plaintiffs to be charged 12b-1 fees on their investments into the JH Investment Options

4.    Pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) and (ii) and (B) for allowing plaintiffs to be charged 12b-1 fees on their investments into the Independent Investment Options.

5.    Pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and for the commission of prohibited transactions pursuant to ERISA §§406(a)(1)(A) and (D) and (b)(1), 29 U.S.C.. §§1106(a)(1)(A) and (D) and (b)(1), for allowing plaintiffs to be charged the "Excessive Adviser Fee", which was paid to Defendant John Hancock Services, on the mutual funds that underlie the JH Investment Options;

6    Pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B) for the  commission of a prohibited transaction pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), for its receipt of revenue sharing fees on account of plaintiffs investments in both Independent Investment Options and the JH Investment Options.

7.    Pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B) for selecting the John Hancock Money Market Fund (advised

546343.1

by its subsidiary defendant John Hancock Services as the money market option for Plaintiffs instead of a less expensive better performing mutual fund.

    8.    Declare that John Hancock Services and John Hancock Distributors, LLC, are liable to Plaintiffs pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) for knowingly participating in the fiduciary violations of Defendant John Hancock (U.S.A.).

    9.    Order, pursuant to ERISA §502(a)(3), 29 U.S.C. §§1132(a)(3), that all Defendants and any subsidiaries of the Defendants that received monies from the Plaintiffs, disgorge all such monies, and any earnings thereon, and refund such monies to the Class;

    10.    Enjoin, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), John Hancock (U.S.A.) from contracting or investing, on behalf of any Plaintiff with any of its affiliates or subsidiaries; and

    11.    Order, that Plaintiffs be paid reasonable costs and attorneys fees, pursuant to ERISA §502(6)(g), 29 U.S.C. §1132(g).

    B.    Order that John Hancock Services receipt of the Excessive Adviser Fees in Tables IV and V constitute a breach of fiduciary duty pursuant to ICA §36(b), 15 U.S.C. §80a-35(b).

    1.    Order that John Hancock services pay to Plaintiffs the actual damages resulting from its breach of fiduciary duty pursuant to ICA §36(b)(3), 15 U.S.C. § 80a-35(b)(3).

    2.    Order the rescission of the group annuity contracts to the extent they violate ICA 36(b), 15 U.S.C. 80a-35(b), pursuant to ICA 46(b), 15 U.S.C. 80a-46(b).

    C.    Declare that Defendant, John Hancock Investment Management Services, LLC is liable for its breach of fiduciary duties under the common law;

    1.    Declare that Defendant John Hancock (U.S.A.) has engaged in corporate waste;

2.      Declare that John Hancock Services has engaged in corporate waste.

3.      Declare that all Defendants participated in a civil conspiracy to deprive Plaintiffs of the value of their retirement savings in the manner described in Section X of this Complaint.

4       Declare that all Defendants are jointly and severally liable to Plaintiffs for the misconduct of any Defendant.

E.      Order that Defendants jointly and severally pay to the Class compensatory and punitive damages;

F.      Order Defendants to make disgorgement of all fees, equitable restitution and other appropriate equitable monetary relief as the Court deems just;

G.      Order the Defendants to pay damages to the Plan and to Plaintiffs in an amount sufficient to restore them to the position they would have been in had the wrongs alleged herein not been committed.

P.      Award interest, costs, attorney fees and such other relief as it deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.


Dated: March 31, 2010          s/ Robert L. Lakind
                               Robert L. Lakind


Levy, Phillips & Konigsberg


Dated: March 31, 2010          s/Moshe Maimon
                               Moshe Maimon

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.


s/Robert L. Lakind

Dated: March 31, 2010          Robert L. Lakind



Levy, Phillips & Konigsberg


s/Moshe Maimon

Dated: March 31, 2010          Moshe Maimon

546343.1

# TABLE 1

546343.1

## TABLE 1

## JH INVESTMENT OPTIONS WITH CLONED FUNDS

**WAMCO U.S. GOVERNMENT SECURITIES INVESTMENT OPTION**

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)**<br><br>FER: .77%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.27% | **JIUSX (eff. 12/09)**<br><br>Mgt. Fee: .62%<br>12b-1 Fees: .05%<br>Other Exp.: .09%<br>Tot. Exp.: .76% | **WATFX (eff. 7/09)**<br><br>Mgt Fee: .41%<br>12b-1 Fees: .00%<br>Other Exp.: .07%<br>Tot. Exp. .48% |
| **(12/07)**<br>FER: .77%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.27% | **JIUSX (eff. 12/07)**<br>Mgt. Fee: .61%<br>12b-1 Fees: .05%<br>Other Exp.: .10%<br>Tot. Exp.: .76% | **WATFX (eff. 8/08)**<br>Mgt Fee: .41%<br>12b-1 Fees: .00%<br>Other Exp.: .03%<br>Tot. Exp. .44% |

546343.1

# JH BLUE CHIP GROWTH INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|

**(9/09)**

FER: .89%
AMC: .00%
S&S: .50%
ER: 1.39%

**JIBCX (eff. 12/09)**

Mgt. Fee: .81%
12b-1 Fees: .05%
Other Exp.: .04%
Tot. Exp.: .90%

**TRBCX (eff. 5/09)**

Mgt Fee: .61%
12b-1 Fees: .00%
Other Exp.: .19%
Tot. Exp. .80%

**(12/07)**

FER: .90%
AMC: .00%
S&S: .50%
ER: 1.40%

**JIBCX (eff. 12/07)**

Mgt. Fee: .81%
12b-1 fees: .05%
Other Exp.: .03%
Tot. Exp.: .89%

**TRBCX (eff. 5/08)**

Mgt Fee: .60%
12b-1 fees: .00%
Other Exp.: .17%
Tot. Exp. .77%

546343.1

## JH VALUE INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)**<br>FER: .85%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.35% | **JEVLX (12/09)**<br>Mgt. Fee: .74%<br>12b-1 Fees .05%<br>Other Exp.: .06%<br>Tot. Exp.: .85% | **MSAIX (eff. 10/09)**<br>Mgt Fee: .72%<br>12b-1 Fees: .00%<br>Other Exp.: .47%<br>Tot. Exp. 1.19% |
| **(12/07)**<br><br>FER: .84%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.34% | **JEVLX (eff. 5/08)**<br><br>Mgt. Fee: .74%<br>12b-1 Fees: .05%<br>Other Exp.: .04%<br>Tot. Exp.:   .83% | **MSAIX (eff. 10/07)**<br><br>Mgt Fee: .72%<br>12b-1  Fees: .00%<br>Other Exp.: .29%<br>Tot. Exp. 1.01% |

546343.1

# JH MID VALUE INVESTMENT OPTION

<u>Fees:</u>

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)** | **JEMUX(12/09)** | **TRMCX (eff. 5/09)** |
| FER: 1.13%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.63% | Mgt. Fee: .98%<br>12b-1 Fees: .05%<br><u>Other Exp.: .10%</u><br>Tot. Exp.: 1.13% | Mgt Fee: .66%<br>12b-1 Fees: .00%<br><u>Other Exp.: .17%</u><br>Tot. Exp. .83% |
| **(12/07)** | **JEMUX (eff. 5/08)** | **TRMCX (eff. 5/08)** |
| FER: 1.10%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.60% | Mgt. Fee: .97%<br>12b-1 Fees: .05%<br><u>Other Expenses: .07%</u><br>Tot. Exp.: 1.09% | Mgt Fee: .65%<br>12b-1 Fees: .00%<br><u>Other Expenses: .14%</u><br>Tot. Exp. .79% |

114

# JH SMALL COMPANY VALUE INVESTMENT OPTION

<u>Fees:</u>

| Sub-Account | Underlying JH Fund | Source of Clone |
|---|---|---|
| **(9/09)**<br><br>FER: 1.12%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER 1.62% | **JISVX (eff. 12/09)**<br><br>Mgt. Fee: 1.03%<br>12b-1 Fees: .05%<br>Acq. Fund fees: .01%<br><u>Other Exp.: .05%</u><br>Tot. Exp. 1.14% | **PRSVX (eff. 5/09)**<br><br>Mgt Fee: .66%<br>12b-1 Fees: .00%<br>Acq. Fund Exp. .07%<br><u>Other Exp.: .19%</u><br>Tot. Exp. .92% |
| **(12/07)**<br><br>FER: 1.12%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.62% | **JISVX (eff. 12/07)**<br><br>Mgt. Fee: 1.02%<br>12b-1 Fees: .05%<br><u>Other Expenses: .04%</u><br>Tot. Exp.: 1.11% | **PRSVX (eff. 5/08 )**<br><br>Mgt Fee: .65%<br>12b-1 Fees: .00%<br>Acq. Fund Exp: .01%<br><u>Other Exp.: .16%</u><br>Tot. Exp. .82% |

546343.1

## INTERNATIONAL VALUE INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source of Clone |
|---|---|---|
| **(9/09)** | **JIVIX(eff. 12/09)** | **TEMWX (eff. 1/10)** |
| FER: .98%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.48% | Mgt. Fee: .82%<br>12b-1 Fees: .05%<br>Other Exp.: .11%<br>Tot. Exp.: .98%<br>Exp. Reimb.: .02%<br>Net Operating Exp.: .96% | Mgt Fee: .62%<br>12b-1 Fees: .00%<br>Other Exp.: .24%<br>Tot. Exp. .86% |
| **(12/07)** | **JIVIX (eff. 12/07)** | **TEMWX (eff. 2/08 )** |
| FER: 1.01%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.51% | Mgt. Fee: .80%<br>12b-1 Fees: .05%<br>Other Exp.: .13%<br>Tot. Exp.: .98% | Mgt Fee: .61%<br>12b-1 Fees: .00%<br>Other Exp.: .20%<br>Tot. Exp. .81% |

546343.1

# TOTAL RETURN INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)**<br>FER: .79%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.29% | **JITRX(eff. 12/09)**<br>Mgt. Fee: .68%<br>12b-1 Fees: .05%<br>Other Exp.: .05%<br>Tot. Exp.: .78% | **PMBIX(eff. 12/08)**<br>Mgt Fee: .50%<br>12b-1 Fees: .00%<br>Other Exp.: .00%<br>Tot. Exp. .50% |
| **(12/07)**<br>FER: .82%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.32% | **JITRX (eff. 12/07)**<br>Mgt. Fee: .70%<br>12b-1 Fees: .05%<br>Other Exp.: .08%<br>Tot. Exp.: .83% | **PMBIX (eff. 03/08)**<br>Mgt Fee: .50%<br>12b-1 Fees: .00%<br>Other Exp.: .00%<br>Tot. Exp. .50% |

117

546343.1

# REAL RETURN BOND INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)**<br>FER: .80%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.30% | **JIRRX (12/09)**<br>Mgt. Fee: .68%<br>12b-1 Fees .05%<br>Other Exp.: .06%<br>Tot. Exp.: .79% | **PRRIX (eff. 10/09)**<br>Mgt Fee: .45%<br>12b-1 Fees: .00%<br>Other Exp.: .20%<br>Tot. Exp. .65% |
| **(12/07)**<br>FER: .80%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.30% | **JIRRX (eff. 12/07)**<br>Mgt. Fee: .69%<br>12b-1 Fees: .05%<br>Other Exp.: .05%<br>Tot. Exp.: .79% | **PRRIX (eff. 7/08)**<br>Mgt Fee: .25%<br>12b-1 Fees: .00%<br>Other Exp.: .20%<br>Tot. Exp. .45% |

546343.1

# GLOBAL BOND INVESTMENT OPTION

<u>Fees:</u>

| <u>Sub-Account</u> | <u>Underlying JH Fund</u> | <u>Source for Clone</u> |
|---|---|---|
| **(9/09)** | **JIGDX(eff. 12/09)** | **PIGLX (eff. 7/08)** |
| FER: .88%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.38% | Mgt. Fee: .70%<br>12b-1 Fees: .05%<br><u>Other Exp.: .11%</u><br>Tot. Exp.: .86% | Mgt Fee: .25%<br>12b-1 Fees: .00%<br><u>Other Exp.: .59%</u><br>Tot. Exp. .84% |
| **(12/07)** | **JIGDX (eff. 12/07)** | **PIGLX (eff. 7/08)** |
| FER: .84%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.34% | Mgt. Fee: .70%<br>12b-1 Fees: .05%<br><u>Other Expenses: .11%</u><br>Tot. Exp.: .86% | Mgt Fee: .25%<br>12b-1 Fees: .00%<br><u>Other Exp.: .59%</u><br>Tot. Exp. .84% |

546343.1

# ALL CAP VALUE INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source for Clone |
|---|---|---|
| **(9/09)** | **JICVX(eff. 12/09)** | **LLCYX (eff. 2/10)** |
| FER: .97% | Mgt. Fee: .84% | Mgt Fee: .40% |
| AMC: .00% | 12b-1 Fees: .05% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .07% | Other Exp.: .52% |
| ER: 1.47% | Tot. Exp.: .96% | Tot. Exp. .92% |
| **(12/07)** | **JICVX (eff. 12/07)** | **LLCYX (eff. 3/08)** |
| FER: .94% | Mgt. Fee: .82% | Mgt Fee: .40% |
| AMC: .00% | 12b-1 Fees: .05% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .10% | Other Exp.: .41% |
| ER: 1.44% | Tot. Exp.: .97% | Tot. Exp. .81% |
| | | Exp. Reimb.: .21% |
| | | Net Exp.: .60% |

546343.1

# SMALL CAP GROWTH INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund | Source of Clone |
|---|---|---|
| **(9/09)** | **JESGX (12/09)** | **VEXRX (eff. 2/10)** |
| FER: 1.19% | Mgt. Fee: 1.06% | Mgt Fee: .30% |
| AMC: .00% | 12b-1 Fees: .05% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .08% | Other Exp.: .04% |
| ER: 1.69% | Tot. Exp.: 1.19% | Tot. Exp.: .34% |
| | | |
| **(12/07)** | **JESGX (eff. 5/08)** | **VEXRX (eff. 4/08)** |
| FER: 1.23% | Mgt. Fee: 1.07% | Mgt Fee: .20% |
| AMC: .00% | 12b-1 Fees: .05% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .06% | Other Exp.: .03% |
| ER: 1.73% | Tot. Exp.: 1.18% | Tot. Exp. .23% |
| | Exp. Reimb.: .01% | |
| | Net Exp.: 1.17% | |

546343.1

# TABLE II

546343.1

## TABLE II

## JOHN HANCOCK PROPRIETARY FUNDS WITHOUT CLONES

## INTERNATIONAL CORE INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |
|---|---|
| **(9/09)** | **GOCIX (07/09)** |
| FER: 1.10%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.60% | Mgt. Fee: .89%<br>12b-1 Fees: .05%<br>Other Exp.: .16%<br>Tot. Exp.: 1.10% |
| **(12/31/07)** | **GOCIX (eff. 7/08)** |
| FER: 1.20%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.70% | Mgt. Fee: .89%<br>12b-1 Fees: .05%<br>Other Expenses: .22%<br>Tot. Exp.: 1.16%<br>Exp. Reimb.: .02%<br>Net Exp.: 1.14% |

546343.1

## JH LIFESTYLE FUND - CONSERVATIVE PORTFOLIO INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |
|---|---|

**(9/09)**

**JILCX (eff. 4/10)**

FER: .89%
AMC: .10%
S&S: .50%
ER: 1.49%

Mgt. Fee: .04%
12b-1 Fees: .05%
Other Expenses: .03%
Acquired Fund fees & exp.: .77%
Tot. Exp.: .89%

**(12/07)**

**JILCX (eff. 5/08)**

FER: .90%
AMC: .10%
S&S: .50%
ER: 1.50%

Mgt. Fee: .04%
12b-1 Fees: .05%
Other Exp.: .02%
Acquired Fund fees & exp.: .80%
Tot. Exp.: .91%

546343.1

# JH LIFESTYLE FUND - MODERATE PORTFOLIO INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |

**(9/09)**        **JILMX  (eff. 4/10)**

FER: .90%          Mgt. Fee: .04%
AMC: .10%          12b-1 Fees: .05%
S&S: .50%          Other Exp.: .03%
ER: 1.50%          Acquired Fund Fees & Exp.: .78%
                        Tot. Exp.: .90%


**(12/ 07)**       **JILMX  (eff. 5/08)**

FER: .94%          Mgt. Fee: .04%
AMC: .10%          12b-1 Fees: .05%
S&S: .50%          Other Exp.: .02%
ER: 1.54%          Acquired Fund Fees & Exp.: .83%
                        Tot. Exp.: .94%

546343.1

# JH LIFESTYLE FUND - BALANCED PORTFOLIO INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |
|---|---|

**(9/09)**          **JILBX(04/10)**

FER: .89%          Mgt. Fee: .04%
AMC: .10%          12b-1 Fees: .05%
S&S: .50%          Other Expenses: .03%
ER: 1.49%          Acquired Fund Fees & Exp.: .77%
                   Tot. Exp.: .89%


**(12/07)**          **JILBX(eff. 5/08)**

FER: .97%          Mgt. Fee: .04%
AMC: .10%          12b-1 Fees: .05%
S&S: .50%          Other Exp.: .02%
ER: 1.57%          Acquired Fund Fees & Exp.: .86%
                   Tot. Exp.: .97%

546343.1

# JH LIFESTYLE FUND - GROWTH PORTFOLIO INVESTMENT OPTION

Fees:

Sub-Account                    Underlying JH Fund

**(9/09)**                     **JILGX(eff. 4/10)**

FER: .93%                      Mgt. Fee: .04%
AMC: .10%                      12b-1 Fees: 05%
S&S: .50%                      Other Expenses: .03%
ER: 1.53%                      Acquired Fund Fees & Exp. .81%
                               Tot. Exp.: .93%


**(12/07)**                    **JILGX (eff.5/08)**

FER: .98%                      Mgt. Fee: .04%
AMC: .10%                      12b-1 Fees:  .05%
S&S: .50%                      Other Expenses: .02%
ER: 1.58%                      Acquired Fund Fees & Exp.:  .88%
                               Tot. Exp.: .99%

546343.1

# JH LIFESTYLE FUND - AGGRESSIVE PORTFOLIO INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH fund |

**(9/09)**       **JILAX(eff. 4/10)**

FER: .98%       Mgt. Fee: .04%
AMC: .10%       12b-1 Fees: .05%
S&S: .50%       Other Exp.: .%.03
ER: 1.58%       Acquired Fund fees & exp.: .86%
     Tot. Exp.: .98%

**(12/07)**       **JILAX(eff. 5/1/08)**
FER: 1.02%       Mgt. Fee: .04%
AMC: .10%       12b-1 Fees: .05%
S&S: .50%       Other Expenses: .02%
ER: 1.62%       Acquired Fund fees & exp.: .93%
     Tot. Exp.: 1.04%

546343.1

# JH MONEY MARKET INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |
|---|---|

**(9/09)**
FER: .58%
AMC: .00%
S&S: .50%
ER: 1.08%

**JHOXX (05/09)**
Mgt. Fee: .47%
12b-1 Fees: .05%
Other Expenses: .06%
Tot. Exp.: .58%

**(12/07)**
FER:  .56%
AMC: .00%
S&S: .50%
ER: 1.06%

**JHOXX(eff. 12/07)**
Mgt. Fee: .48%
12b-1 Fees: .05%
Other Expenses: .03%
Tot. Exp: 056%
Contract. Reimb Exp.: .01%
Net. Exp.: .55%

## JH STRATEGIC INCOME INVESTMENT OPTION

Fees:

| Sub-Account | Underlying JH Fund |
|---|---|
| **(9/09)** | **JESNX (05/09)** |
| FER: .82% | Mgt. Fee: .69% |
| AMC: .00% | 12b-1 Fees: .05% |
| S&S: .50% | Other Expenses: .08% |
| ER: 1.32% | Tot. Exp.: .82% |

| Sub-Account | Underlying JH Fund |
|---|---|
| **(12/07)** | **JESNX (12/07)** |
| FER: .90% | Mgt. Fee: .69% |
| AMC: .00% | 12b-1 Fees: .05% |
| S&S: .50% | Other Expenses: .09% |
| ER: 1.40% | Tot. Exp.: .83% |

# TABLE III

546343.1

## TABLE III

## DAVIS NEW YORK VENTURE INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)** | **Fund (Class A)**<br>**(eff. 12/09)**<br>**(Ticker: NYVTX)** | **Fund (Class Y)**<br>**(eff. 12/09)**<br>**(Ticker: DNYVX)** |
| FER: .85%<br>AMC: .03%<br>S&S: .50%<br>ER: 1.38% | Mgt. Fee: .49%<br>12b-1 Fees: .24%<br>Other Exp.: .19%<br>Tot. Exp.: .92%<br>(Front end sales: 4.75%)<br>(Deferred Sales charge .50%<br>If purchase over $1 mm and sell<br>within one year) | Mgt Fee: .49%<br>12b-1 Fees: .00%<br>Other Exp.: .14%<br>Tot. Exp. .63%<br>(No front end sales) |
| **(12/07)** | **Fund (Class A) (eff. 11/07)**<br>**(Ticker: NYVTX)** | **Fund (Class Y) (eff. 11/07)**<br>**(Ticker: DNYVX)** |
| FER: .85%<br>AMC: .03%<br>S&S: .50%<br>ER: 1.38% | Mgt. Fee: .48%<br>12b-1 Fees: .25%<br>Other Expenses: .12%<br>Tot. Exp.: .85%<br>(Front end sales: 4.75%)<br>(Deferred Sales charge .50%<br>If purchase over $1 mm and sell<br>within one year) | Mgt Fee: .48%<br>12b-1 fees: .00%<br>Other Expenses: .11%<br>Tot. Exp. .59%<br>(No front end sales) |

**Performance:**

| **Total Return** | **Class A** | **Class Y** |
|---|---|---|
| | 7/31/09: -20.08%<br>7/31/08: -12.77%<br>7/31/07: 14.03%<br>7/31/06: 10.15%<br>7/31/05: 16.34%<br>7/31/04: 18.10% | 7/31/09: -19.88%<br>7/31/08: -12.53%<br>7/31/07: 14.34%<br>7/31/06: 10.44%<br>7/31/05: 16.68%<br>7/31/04: 18.53% |

546343.1

## MUTUAL DISCOVERY INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)**<br>FER: 1.02%<br>AMC: .25%<br><u>S&S: .50%</u><br>ER: 1.77% | **Fund (Class Z) (eff. 5/09)**<br>**Ticker: MDISX**<br>Mgt. Fee: .76%<br>12b-1 Fees: .00%<br><u>Other Exp.: .26%</u><br>Tot. Exp.: 1.02%<br>(No front end sales) | **Fund (Class Z) (eff. 5/09)**<br>**Ticker: MDISX**<br>Mgt Fee: .76%<br> 12b-1 Fees: .00%<br> <u>Other Exp.: .26%</u><br>Tot. Exp. 1.02%<br>(No front end sales) |
| **(12/07)**<br>FER: 1.36%<br>AMC: .00%<br><u>S&S: .50%</u><br>ER: 1.86% | **Fund (Class A) (eff. 5/08)**<br>**Ticker: TEDIX**<br>Mgt. Fee: .75%<br>12b-1 Fees: .31%<br><u>Other Exp.: .26%</u><br>Tot. Exp.: 1.32%<br>(5.75% front end sales)<br>(2.00% redemption fee w/in 7 days) | **Fund (Class Z) (eff. 5/08)]**<br>**Ticker: MDISIX**<br>Mgt Fee: .75%<br> 12b-1 Fees: .00%<br> <u>Other Exp.: .26 %</u><br>Tot. Exp. 1.01%<br>(No front end sales)<br>(2.00% redemption fee w/in 7 days) |

**Performance:**

| **Total Return** | **Class A**<br>12/31/09: 20.89%<br>12/31/08: -26.73%<br>12/31/07: 10.96%<br>12/31/06: 23.02%<br>12/31/05: 15.29%<br>12/31/04: 18.98% | **Class Z**<br>12/31/09: 21.31%<br>12/31/08: -26.55%<br>12/31/07: 11.32%<br>12/31/06: 23.43%<br>12/31/05: 15.70%<br>12/31/04: 19.39% |
|---|---|---|

## AMERICAN FUNDS GROWTH FUND OF AMERICA INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)**<br><br>FER: .37%<br>AMC: .45%<br>S&S: .50%<br>ER: 1.32% | **Fund (Class R5)**<br>**(eff. 11/09)**<br>**(Ticker: RGAFX)**<br>Mgt. Fee: .28%<br>12b-1 Fees: .00%<br>Other Exp.: .12%<br>Tot. Exp.: .40%<br>(No front end sales) | **Fund (Class R6)**<br>**(eff. 11/09)**<br>**(Ticker: RGAGX)**<br>Mgt Fee: .28%<br>12b-1 Fees: .00%<br>Other Exp.: .09%<br>Tot. Exp. .37%<br>(No front end sales) |
| **(12/07)**<br><br>FER: .93%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.43% | **Fund (Class R3)**<br>**(eff. 11/07)**<br>**(Ticker: RGACX)**<br>Mgt. Fee: .27%<br>12b-1 Fees: .50%<br>Other Exp.: .19%<br>Tot. Exp.: .96%<br>(No front end sales) | **Fund (Class R5)**<br>**(eff. 11/07)**<br>**(Ticker: RGAFX)**<br>Mgt Fee: .27%<br>12b-1 Fees: .00%<br>Other Exp.: .11%<br>Tot. Exp. .38%<br>(No front end sales) |

**Performance:**

| Total Return | Class R3 | Class R5 | Class R6[4] |
|---|---|---|---|
| | 8/31/09: -17.78% | 8/31/09: -17.30% | 5/1-8/31/09: 15.17% |
| | 8/31/08: -8.50% | 8/31/08: -7.96% | |
| | 8/31/07: 16.33% | 8/31/07: 16.97% | |
| | 8/31/06: 9.30% | 8/31/06: 9.92% | |
| | 8/31/05: 20.83% | 8/31/05: 21.52% | |
| | 8/31/04: 8.28% | 8/31/04: 9.02% | |

---

[4] Class commenced operation on May 1, 2009.

**DOMINI SOCIAL EQUITY INVESTMENT OPTION FUND**

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)**<br><br>FER: 1.20%<br>AMC: .15%<br>S&S: .50%<br>ER: 1.85% | **Fund (Investor Class)**<br>**(eff. 11/09)**<br>**Ticker: DSEFX**<br>Mgt. Fee: .30%<br>12b-1 Fees: .25%<br>Other Expenses: .76%<br>Tot. Exp.: 1.31%<br>Fee waiver: .06%<br>Net exp. 1.25%<br>(No front end sales)<br>(2% redemption fee w/in 30 days) | **Fund (Institutional Class)**<br>**(eff. 11/09)**<br>**Ticker: DIEQX**<br>Mgt Fee: .30%<br>12b-1 Fees: .00%<br>Other Expenses: .50%<br>Tot. Exp. .80%<br>Fee waiver: .00%<br>Net exp.: .80%<br>(No front end sales)<br>(2% redemption fee w/in 30 days) |
| **(12/07)**<br><br>FER: 1.15%<br>AMC: .15%<br>S&S: .50%<br>ER: 1.80% | **Fund (Investor Class) (11/07)**<br>**Ticker: DSEFX**<br>Mgt. Fee: .30%<br>12b-1 Fees: .25%<br>Other Expenses: .69%<br>Tot. Exp.: 1.24%<br>Fee waiver: .09%<br>Net exp. 1.15%<br>(No front end sales)<br>(2.00% redemption fee w/in 30 days) | **Fund (Class R) (eff. 11/07)**<br>**Ticker: DSFRX**<br>Mgt Fee: .30%<br>12b-1 Fees: .00%<br>Other Expenses: .60%<br>Tot. Exp. .90%<br>Fee waiver: .05%<br>Net exp.: .85%<br>(No front end sales)<br>(2.00% redemption fee w/in 30 days) |

**Performance:**

| **Total Return** | **Investor Class** | **Class R** | **Institutional Class** |
|---|---|---|---|
| | 7/31/09: -17.48% | 7/31/09: -17.23% | 7/31/09: 20.93%* |
| | 7/31/08: -11.84% | 7/31/08: -11.52% | |
| | 7/31/07: 15.11% | 7/31/07: 15.43% | |
| | 7/31/06: .72% | 7/31/06: 1.04% | |
| | 7/31/05: 10.68% | 7/31/05: 11.04% | |
| | 7/31/04: 11.24% | 7/31/04: 4.14%** | |

* Institutional Class commenced operations on 11/28/08
**Class R commenced operations on 11/28/03

**OPPENHEIMER GLOBAL FUND INVESTMENT OPTION**

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)** | **Fund (Class Y)**<br>**(eff. 1/10)**<br>**(Ticker: OGLYX)** | **Fund (Class Y)**<br>**(eff. 1/10)**<br>**(Ticker: OGLYX)** |
| FER: .70%<br>AMC: .25%<br>S&S: .50%<br>ER: 1.45% | Mgt. Fee: .67%<br>12b-1 Fees: .00%<br>Other Expenses: .18%<br>Tot. Exp.: .85%<br>(No front end sales) | Mgt Fee: .67%<br>12b-1 Fees: .00%<br>Other Expenses: .18%<br>Tot. Exp. .85%<br>(No front end sales) |
| **(12/07)** | **Fund (Class A) (eff. 12/07)**<br>**(Ticker: OPPAX)** | **Fund (Class Y)**<br>**(eff. 12/07)**<br>**(Ticker: OGLYX)** |
| FER: 1.05%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.55% | Mgt Fee: .62%<br>12b-1 Fees: .24%<br>Other Expenses: .19%<br>Tot. Exp. 1.05%<br>(5.75% front end sales)<br>(2.0% Redemption fee w/in 30 days) | Mgt Fee: .62%<br>12b-1 Fees: .00%<br>Other Expenses: .06%<br>Tot. Exp. .68%<br>(No front end sales)<br>(2.0% Redemption fee w/in 30 days) |

**Performance:**

| **Total Return** | **Class A** | **Class Y** |
|---|---|---|
| | 9/30/09: 3.58 % | 9/30/09: 4.02% |
| | 9/30/08: -27.90% | 9/30/08: -27.61% |
| | 9/30/07: 20.58% | 9/30/07: 21.00% |
| | 9/30/06: 13.13% | 9/30/06: 13.57% |
| | 9/30/05: 26.40% | 9/30/05: 26.76% |
| | 9/30/04: 19.58% | 9/30/04: 19.89% |

## COLUMBIA VALUE AND RESTRUCTURING INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)**<br><br>FER: .94%<br>AMC: .25%<br>S&S: .50%<br>ER: 1.69% | **Fund (Class Z) (eff. 8/09)**<br>**(Ticker: UMBIX)**<br>Mgt. Fee: .75%<br>12b-1 Fees: .00%<br>Other Exp.: .19%<br>Tot. Exp.: .94%<br>(No front end sales) | **Fund (Class Z) (eff. 8/09)**<br>**(Ticker: UMBIX)**<br>Mgt Fee: .75%<br>12b-1 Fees: .00%<br>Other Exp.: .19%<br>Tot. Exp. .94%<br>(No front end sales) |
| **(12/07)**<br><br>FER: 1.05%<br>AMC: .15%<br>S&S: .50%<br>ER: 1.70% | **Fund (Class A) (10/07)[5]**<br>**(Ticker: UMBIX)**<br>Mgt. Fee: .60%<br>12b-1 Fees: .25%<br>Other Exp.: .56%<br>Tot. Exp.: 1.41%<br>Fee waiver: .27%<br>Net fee: 1.14%<br>(5.75% front end sales)<br>(1% deferred sales)<br>(2.00% redemption fee) | **Fund (Class Z) (eff. 7/07)**<br>**(Ticker: UMBIX)**<br>Mgt Fee: .75%<br>12b-1 Fees: .00%<br>Other Exp.: .19%<br>Acquired Fund Fees .05%<br>Tot. Exp. .99%<br>(No front end sales) |

**Performance:**

| Total Return | Class A<br>3/31/09: -48.51%<br>3/31/08: -9.41% | Class Z<br>3/31/09: -48.39%<br>3/31/08: -1.74% |
|---|---|---|

---

[5] On March 31, 2008, share classes of Excelsior Value and Restructuring Fund were reorganized into Class Z.

546343.1

## AMERICAN FUNDS EUROPACIFIC GROWTH INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)**<br><br>FER: .54%<br>AMC: .45%<br>S&S: .50%<br>ER: 1.49% | **Fund (Class R5) (eff. 6/09)**<br>**(Ticker: RERFX)**<br>Mgt. Fee: .43%<br>12b-1 Fees: .00%<br>Other Exp.: .11%<br>Tot. Exp.: .54%<br>(No front end sales) | **Fund (Class R6) (eff. 6/09)**[6]<br>**(Ticker: RERGX)**<br>Mgt Fee: .43%<br>12b-1 Fees: .00%<br>Other Exp.: .08%<br>Tot. Exp. .51%<br>(No front end sales) |
| **(12/07)**<br><br>FER: 1.11%<br>AMC: .00%<br>S&S: .50%<br>ER: 1.61% | **Fund (Class R3) (eff. 7/08)**<br>**(Ticker: RERCX)**<br>Mgt. Fee: .42%<br>12b-1 Fees: .50%<br>Other Expenses: .19%<br>Tot. Exp.: 1.11%<br>(No front end sales) | **Fund (Class R5) (eff. 7/08)**<br>**(Ticker: RERFX)**<br>Mgt Fee: .42%<br>12b-1 Fees: .00%<br>Other Expenses: .13%<br>Tot. Exp. .55%<br>(No front end sales) |

**Performance:**

| **Total Return** | **Class R3** | **Class R5** |
|---|---|---|
| | 3/31/09: -40.70% | 3/31/09: -40.37% |
| | 3/31/08: 6.05% | 3/31/08: 6.64% |
| | 3/31/07: 16.20% | 3/31/07: 16.91% |
| | 3/31/06: 29.85% | 3/31/06: 30.56% |
| | 3/31/05: 11.68% | 3/31/05: 12.38% |
| | 3/31/04: 56.46% | 3/31/04: 57.49% |

---

[6] No return information was available for Class R6

# AMERICAN CENTURY VISTA INVESTMENT OPTION  FUND

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)** | **Fund (Investor Class) (eff. 3/10)** **(Ticker: TWCVX)** | **Fund (Inst. Class) (eff. 3/10)[7]** **(Ticker: TWVIX)** |
| FER: 1.00% | Mgt. Fee: 1.00% | Mgt Fee: .80% |
| AMC: .15% | 12b-1 Fees: .00% | Fees: .00% |
| S&S: .50% | Other Expenses: .01% | Other Exp.: .01% |
| ER: 1.65% | Tot. Exp.: 1.01% | Tot. Exp. .81% |
| | (No front end sales) | (No front end sales) |
| **(12//07)** | **Fund (Investor Class) (3/08)** **(Ticker: TWCVX)** | **Fund (Inst. Class)(eff. 3/08)** **(Ticker: TWVIX)** |
| FER: 1.00% | Mgt. Fee: 1.00% | Mgt Fee: .80% |
| AMC: .15% | 12b-1 Fees: .00% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .00% | Other Exp.: .00% |
| ER: 1.65% | Tot. Exp.: 1.00% | Tot. Exp. .80% |
| | (No front end sales) | (No front end sales) |

**Performance:**

| Total Return | Investor Class | Institutional Class |
|---|---|---|
| | 10/31/09: -2.41% | 10/31/09: -2.12% |
| | 10/31/08: -43.58% | 10/31/08: -43.50% |
| | 10/31/07: 49.39% | 10/31/07: 49.68% |
| | 10/31/06: 9.07% | 10/31/06: 9.33% |
| | 10/31/05: 14.08% | 10/31/05: 14.26% |
| | 10/31/04: 9.77% | 10/31/04: 9.99% |

---

[7] Institutional Class Shares are not available to Insurance Companies for Variable Annuity or Variable Life Insurance products.  Investor Class is therefore the least expensive share class available.

546343.1

## ROYCE OPPORTUNITY INVESTMENT OPTION

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| **(9/09)** | **Fund (Service Class) (eff. 5/09) (Ticker: RYOFX)** | **Fund (Inst. Class) (eff. 5/09) (Ticker: ROFIX)** |
| FER: 1.46% | Mgt. Fee: 1.00% | Mgt Fee: 1.00% |
| AMC: .15% | 12b-1 Fees: .25% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .21% | Other Exp.: .06% |
| ER: 2.11% | Tot. Exp.: 1.46% | Tot. Exp. 1.06% |
| | (No front end sales) | (No front end sales) |
| | (1.00% redemption fee w/in 180 days) | |
| **(12/07)** | **Fund (Service Class) (eff. 5/08) (Ticker: RYOFX)** | **Fund (Inst. Class) (eff. 5/08) (Ticker: ROFIX)** |
| FER: 1.29% | Mgt. Fee: .99% | Mgt Fee: .99% |
| AMC: .15% | 12b-1 Fees: .25% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .15% | Other Exp.: .03% |
| ER: 1.94% | Tot. Exp.: 1.39% | Tot. Exp. 1.02% |
| | Exp. Reimb.: .05% | (No front end sales) |
| | Net Exp.: 1.34% | |
| | (No front end sales) | |
| | (1.00% redemption fee w/in 180 days) | |

**Performance:**

| Total Return | Service Class | Institutional Class |
|---|---|---|
| | 12/31/09: 61.72% | 12/31/09: 62.23% |
| | 12/31/08: -45.76% | 12/31/08: -45.66% |
| | 12/31/07: -2.22% | 12/31/07: -1.89% |
| | 12/31/06: 18.51% | 12/31/06: 18.85% |
| | 12/31/05: 4.66% | 12/31/05: 4.90% |
| | 12/31/04: 17.22% | 12/31/04: 17.57% |

## JOHN HANCOCK CLASSIC VALUE INVESTMENT OPTION
### (treated by JH similar to an independent investment option)

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| (12/07)[8] | **Fund (Class A) (eff. 5/08)** **(Ticker: PZFVX)** | **Fund (Institutional Class) (eff. 5/08)** **(Ticker: JCVIX)** |
| FER: 1.30% | Mgt. Fee: .82% | Mgt Fee: .82% |
| AMC: .05% | 12b-1 Fees: .25% | 12b-1 Fees: .00% |
| S&S: .50% | Other Exp.: .21% | Other Exp.: .10% |
| ER: 1.85% | Tot. Exp.: 1.28% | Tot. Exp. .92% |
| | (5.00% front end sales) | (No front end sales) |

**Performance:**

| Total Return | **Class A** | **Institutional Class** |
|---|---|---|
| | 10/31/09: 19.84% | 10/31/09: 20.32% |
| | 10/31/08: -42.50%[9] | 10/31/08: -42.33%[10] |
| | 12/31/07: -14.20% | 12/31/07: -13.86% |
| | 12/31/06: 16.54% | 12/31/06: 17.01% |
| | 12/31/05: 8.81% | 12/31/05: 9.28% |
| | 12/31/04: 14.28% | 12/31/04: 14.77% |

---

[8] This ceased being an investment option sometime in 2009.

[9] For the ten-month period ended 10/31/08. The fund changed its fiscal year from 12/31 to 10/31.

[10] For the ten-month period ended 10/31/08. The fund changed its fiscal year from 12/31 to 10/31.

## T. ROWE PRICE EQUITY INCOME INVESTMENT OPTION (Ticker: PAFDX)

Fees:

| Sub-Account | Class Chosen by JH | Appropriate Class |
|---|---|---|
| (9/09)[11] | Fund(Advisor Class) (eff. 5/09) | Fund (Investor Class) (eff. 5/09) |
| | (Ticker: PAFDX) | (Ticker: PRFDX) |
| FER: .92% | Mgt. Fee: .56% | Mgt Fee: .56% |
| AMC: .10% | 12b-1 Fees: .25% | 12b-1 Fees: .00% |
| S&S: .50% | Other Expenses: .11% | Other Expenses: .15% |
| ER: 1.52% | Tot. Exp.: .92% | Tot. Exp. .71% |
| | (No front end sales) | (No front end sales) |

**Performance:**

| Total Return | Advisor Class | Investor Class |
|---|---|---|
| | 12/31/09: 25.40% | 12/31/09: 25.62% |
| | 12/31/08: -35.88% | 12/31/08:  -35.75% |
| | 12/31/07: 3.03% | 12/31/07: 3.30% |
| | 12/31/06: 18.92% | 12/31/06: 19.14% |
| | 12/31/05: 4.03% | 12/31/05: 4.26% |
| | 12/31/04: 14.85% | 12/31/04: 15.05% |

---

[11] 2008 data is not provided for this investment because it only became available to Plaintiffs sometime in 2009.