UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

)

DANIELLE SANTOMENNO, et al.,   )

)

Plaintiffs,     )     Civil Action No. 2:10-cv-01655-WJM-MF

)

vs.     )     *Document electronically filed.*

)

John Hancock Life Insurance Company )

(U.S.A.), John Hancock Life Insurance )

Company of New York, John Hancock )     ***ORAL ARGUMENT REQUESTED***

Investment Management Services, LLC, )

John Hancock Funds, LLC, and John )

Hancock Distributors, LLC, )

)

Defendants.     )

_____)

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Kevin J. McKenna, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500

James O. Fleckner, Esq. (admitted *pro hac vice*)
Alison V. Douglass, Esq. (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Attorneys for John Hancock Life Insurance
Company (U.S.A.), John Hancock Life Insurance
Company of New York, John Hancock
Investment Management Services, LLC, John
Hancock Funds, LLC, and John Hancock
Distributors, LLC

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND.................................................................2

I.      John Hancock's Mutual Fund Business .........................................2

    A.      JHT and JHFII ...............................................................2

    B.      JHIMS's Role as Investment Adviser to JHT and JHFII.....................4

    C.      Trustee Approval of Advisory Fees and Services................................6

    D.      Plaintiff's Claim Alleging Excessive Mutual Fund Fees.....................7

II.     John Hancock's Group Variable Annuity Business .........................8

    A.      Group Variable Annuity Contracts Generally....................................8

    B.      Bundle of Services Offered Under John Hancock's Group
        Variable Annuity Contracts................................................9

    C.      The Primary Fiduciary's Decision to Hire JHUSA/JHNY ............... 10

    D.      Plaintiff's Claims Alleging Violation of ICA § 26(f)
        and Breaches of ERISA Fiduciary Duty ........................................ 12

ARGUMENT .................................................................................13

I.      Standard of Review as to All Claims .................................................13

II.     Plaintiff's Claim Under ICA § 36(b) Should Be Dismissed .........................15

    A.      Plaintiff Lacks Standing to Bring an ICA § 36(b) Claim ................. 15

        1.      Only Security Holders Have Standing to Bring Private
            Actions Under ICA § 36(b)......................................... 15

        2.      Plaintiff's Allegations Do Not Establish That She
            Is a Security Holder of JHIMS-Advised Funds ...................... 17

        3.      Plan Participants Are Not Mutual Fund Security Holders ...... 17

    B.      Plaintiff Also Lacks Standing to Bring an ICA § 36(b)
        Claim on Behalf of Funds in Which She Alleges No Interest .......... 19

    C.      Plaintiff Fails to State an ICA § 36(b) Claim..................................... 21

        1.      Plaintiff Bears the Pleading Burden Under ICA § 36(b)......... 21

        2.      Plaintiff Fails to Address All *Gartenberg* Factors.................. 22

LIBA 2094803

3.     Plaintiff's Allegation that JHIMS Performs No Services for the Funds is Contradicted by the Public Record ............... 23

4.     Plaintiff Fails to Address the Total Advisory Fee ................... 24

5.     Plaintiff's Pleadings as to the Conscientiousness of the Trustees Are Also Insufficient to State a Claim ..................... 25

D.     Plaintiff Fails to Plead an ICA § 36(b) Claim Occurring Within the One Year Statutory Period ............................... 27

III.     Plaintiff's Claim Under ICA § 47(b) Should Be Dismissed ........................28

A.     Plaintiff Fails to Plead a Violation of ICA § 26 ................................. 29

B.     Plaintiff Is Not Entitled to Seek Rescission Under ICA § 47(b) ....... 30

C.     The ICA Confers no Private Right of Action for Alleged Violations of ICA § 26 ..................................................... 32

IV.     All of Plaintiff's ERISA Claims Should Be Dismissed ................................35

A.     Plaintiff Fails to Plead Facts Sufficient to Establish She Has Standing to Assert Her ERISA Claims ................................ 35

B.     Plaintiff Fails to Plead that JHUSA/JHNY Have Relevant ERISA Fiduciary Status with Respect to the Challenged Conduct ........................................................................................... 37

1.     Alleged Ability to Change Investment Options Does Not Confer ERISA Fiduciary Status ............................. 38

2.     JHUSA/JHNY Are Not ERISA Fiduciaries Based on the Allegation that Primary Fiduciaries Just "Rubberstamp" JHUSA/JHNY's Investment Selections .................................... 40

3.     JHUSA/JHNY Are Not ERISA Fiduciaries Because They Maintain Assets in a Separate Account .......................... 42

C.     Plaintiff's ERISA Claims Should Be Dismissed Because She Fails to State a Claim .................................... 43

1.     Plaintiff Fails to Plead Any Fiduciary Breach ......................... 43

2.     Plaintiff Fails to Plead Any Prohibited Transaction ............... 45

D.     Plaintiff Fails to Plead that the Primary Fiduciary of Her Plan Has Improperly Refused to Sue JHUSA/JHNY ................. 47

V.     JHD and JHF Should Be Dismissed ............................................................51

VI.     Either JHUSA or JHNY Should Be Dismissed ..........................................52

LIBA 2094803

CONCLUSION ...................................................................................................54

iii

# TABLE OF AUTHORITIES

CASES

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..................................................................... 32-33, 34

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
    No. 04 Civ. 4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ..........................28

*In re Am. Mut. Funds Fee Litigs.*,
    No. CV 04-5593 GAF, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005)..............19

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006) ................................................... 25-26, 44

*In re Arbinet-thexchange, Inc.*,
    No. 05-4404, 2006 WL 3831396 (D.N.J. Dec. 28, 2006) ..................................14

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).................................................................14, 36

*Ballentine v. U.S.*,
    486 F.3d 806 (3d Cir. 2007) ........................................................ 14-15

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) ...............................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................13

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007) ...............................................................34

*Benak v. Alliance Capital Mgmt. L.P.*,
    No. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004)........................22, 23, 25

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    916 F. Supp. 1343 (D.N.J. 1996).......................................................33

*Brecher v. Citigroup Global Mkts., Inc.*,
    No. 09-1344, 2010 WL 1291940 (S.D. Cal. Mar. 29, 2010)..............................37

iv

*Brever v. Federated Equity Mgmt. Co. of Pa.*,
233 F.R.D. 429 (W.D. Pa. 2005) ....................................................................19

*Chauffeurs, Helpers & Teamsters Local No. 391 v. Terry*,
494 U.S. 558 (1990)...................................................................................49

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ....................................................................39

*Cotton v. Mass. Mut. Life Ins. Co.*,
402 F.3d 1267 (11th Cir. 2005) .............................................................. 38-39

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
232 F.3d 173 (3d Cir. 2000) .......................................................................3

*In re Dreyfus Mut. Funds Fee Litig.*,
428 F. Supp. 2d 342 (W.D. Pa. 2005)........................................................34

*Firestone v. Galbreath*,
976 F.2d 279 (6th Cir. 1992) .....................................................................49

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)...................................................................................48

*Flacche v. Sun Life Assurance Co. of Can.*,
958 F.2d 730 (6th Cir. 1992) .....................................................................38

*Forsythe v. Sun Life Fin., Inc.*,
417 F. Supp. 2d 100 (D. Mass. 2006)..................................................... 53-54

*In re Franklin Mut. Funds Fee Litig.*,
388 F. Supp. 2d 451 (D.N.J. 2005).................................................15, 33, 34, 53

*In re Franklin Mut. Funds Fee Litig.*,
478 F. Supp. 2d 677 (D.N.J. 2007).......................................................24, 27, 28

*Gardner v. U.S. Food Serv., Inc.*,
No. 08-CV-5381, 2010 WL 1050168 (D.N.J. Mar. 19, 2010) ..........................13

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir. 1982) .......................................................6, 22, 23, 25, 27

v

*Gladstone Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979) ............................................................................16

*Graden v. Conexant Sys., Inc.*,
    496 F.3d 291 (3d Cir. 2007) ...............................................................48

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ...........................................................................51

*Green v. Fund Asset Mgmt., L.P.*,
    286 F.3d 682 (3d Cir. 2002) ...............................................................27

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ..................................................31

*Harrow v. Prudential Ins. Co. of Am.*,
    279 F.3d 244 (3d Cir. 2002) ...............................................................51

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ................................... 38, 43, 44, 45, 47

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ................................................24

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
    661 F. Supp. 2d 861 (S.D. Ohio 2009) ...............................................44

*Jones v. Harris Assocs., L.P.*,
    130 S. Ct. 1418 (2010) ...........................................................6, 21, 22

*Kauffman v. Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970) ...............................................................16

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
    129 S. Ct. 865 (2009) .........................................................................48

*Kent v. Tabafunda*,
    No. 07-4973 (JAG), 2008 WL 2510723 (D.N.J. June 19, 2008) ................14, 23

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ...........................................................................48

LIBA 2094803

*In re Lord Abbett Mut. Funds Fee Litig.*,
    407 F. Supp. 2d 616 (D.N.J. 2005) ............................................................3, 19, 34

*McMahon v. McDowell*,
    794 F.2d 100 (3d Cir. 1986) ................................................................................50

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ............................................................................................37

*Mertens v. Kaiser Steel Ret. Plan*,
    744 F. Supp. 917 (N. D. Cal. 1990) ....................................................................51

*Mintz v. Baron*,
    No. 05 Civ. 4904, 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) ..................22, 27

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995) ..................................................................................48

*Olmsted v. Pruco Life Ins. Co. of New Jersey*,
    283 F.3d 429 (2d Cir. 2002) ....................................................................32, 33, 34

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ............................................................................................37

*Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v.
Comm'r*,
    523 F.3d 140 (3d Cir. 2008) ..........................................................................16, 18

*Rahm v. Halpin*,
    566 F.3d 286 (2d Cir. 2009) ................................................................................50

*Reich v. Compton*,
    57 F.3d 270 (3d Cir. 1995) ..................................................................................48

*Renfro v. Unisys Corp.*,
    No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) ..........................39, 44

*Ruppert v. Principal Life Ins. Co.*,
    No. 07-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) ............................47

*Schulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) ............................................................................39

LIBA 2094803

*In re Scudder Mut. Funds Fee Litig.*,
  No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)..........19

*SEC v. Lucent Techs., Inc.*,
  363 F. Supp. 2d 708 (D.N.J. 2005) .....................................................................13

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
  578 F.3d 505 (7th Cir. 2009) ..................................................................... 36-37

*Simmons v. Cmty. Serv. Providers, Inc.*,
  847 F. Supp. 351 (E.D. Pa. 1994)......................................................................31

*Srein v. Frankford Trust Co.*,
  323 F.3d 214 (3d Cir. 2003) ........................................................................38, 40

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005)........................................................... 19-20

*Three Rivers Ctr. for Indep. Living*, *Inc. v. Housing Auth. of the City of Pittsburgh*,
   382 F.3d 412 (3d Cir. 2004)....................................................................... 33-34

*Tinsley v. FleetBoston Fin. Corp.*,
  No. 2:01cv215, 2001 U.S. Dist. LEXIS 25103 (E.D. Va. July 17, 2001)..........16

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*,
  317 F. App'x 169 (3d Cir. 2009) ......................................................................52

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3d Cir. 1996) ...............................................................................36

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
  No. 03-3924, 2007 WL 2071876 (E.D. Pa. July 16, 2007)................................52

*Williams v. Bank One Corp.*,
  No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 11, 2003).........................20

## CONSTITUTION, STATUTES, RULES & REGULATIONS

U.S. CONST. Art. III. ......................................................................................16, 53

15 U.S.C. § 77e ....................................................................................................18

15 U.S.C. § 80a-26 (ICA § 26) ..........................................................28, 29, 30, 32

LIBA 2094803

15 U.S.C. § 80a-26(a) (ICA § 26(a)) .................................................29, 30

15 U.S.C. § 80a-26(f) (ICA § 26(f)) ............................... 12, 29, 30, 32, 33

15 U.S.C. § 80a-26(f)(2)(a) (ICA § 26(f)(2)(a))................................. 29-30

15 U.S.C. § 80a-26(f)(3) (ICA § 26(f)(3))..........................................29

15 U.S.C. § 80a-35(b) (ICA § 36(b))........................................ *passim*

15 U.S.C. § 80a-35(b)(3) (ICA § 36(b)(3)) ........................................27

15 U.S.C. § 80a-41 (ICA § 42) ........................................................34

15 U.S.C. § 80a-46(b) (ICA § 47(b))................................. 12, 28, 30, 31, 32, 33, 34

15 U.S.C. § 80a-46(b)(1) (ICA § 47(b)(1)) ....................................30, 31

29 U.S.C. § 1002(7) (ERISA § 3(7)) ..............................................36

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) ........................ 36, 37-38, 43

29 U.S.C. § 1002(21)(A)(i) (ERISA § 3(21)(A)(i)) ..............................47

29 U.S.C. § 1002(21)(A)(ii) (ERISA § 3(21)(A)(ii)) ...........................41

29 U.S.C. § 1102(a)(1) (ERISA § 402(a)(1)) ....................................11

29 U.S.C. § 1103(a) (ERISA § 403(a))............................................11

29 U.S.C. § 1104 (ERISA § 404)...............................................36, 37

29 U.S.C. § 1104(a) (ERISA § 404(a)).............................................51

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B)) ...........................36

29 U.S.C. § 1106 (ERISA § 406)...............................................36, 37

29 U.S.C. § 1106(a) (ERISA § 406(a))...........................................46

29 U.S.C. § 1106(b) (ERISA § 406(b)) ......................................46, 47

29 U.S.C. § 1106(b)(1) (ERISA § 406(b)(1))...............................46, 47

29 U.S.C. § 1106(b)(3) (ERISA § 406(b)(3))................................46, 47

29 U.S.C. § 1108(c)(2) (ERISA § 408(c)(2)) .........................................................46

29 U.S.C. § 1109(a) (ERISA § 409(a))..........................................................48, 51

29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) ...................................... 35-37, 48, 50

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ...............................................35, 36, 52

Fed. R. Civ. P. 11 ...................................................................................................19

Fed. R. Civ. P. 12(b)(1)...............................................................................13, 14, 15

Fed. R. Civ. P. 12(b)(6)......................................................................................13, 14

17 C.F.R. § 240.10b-10...........................................................................................18

17 C.F.R. § 270.12b-1.............................................................................................10

29 C.F.R. § 2510.3-21(c)(1)(ii)................................................................................42

29 C.F.R. § 2550.401c-1(a)(1)................................................................................43

29 C.F.R. § 2550.401c-1(d)(2)................................................................................43

29 C.F.R. § 2550.401c-1(d)(2)(c) ......................................................................42, 43

29 C.F.R. § 2550.408b-2(c) ....................................................................................11

## OTHER AUTHORITIES

*Confirmation of Transactions*, SEC Release No. 34-34962, 1994 WL
635201 (Nov. 10, 1994)................................................................................18

DOL Adv. Op. 97-16A (May 22, 1997) ........................................................ 39-40

*Exemptions for Certain Registered Open-End Mgmt. Inv. Cos.*, SEC Release
No. IC-16619, 1988 WL 1000041 (Nov. 2, 1988) ......................................21

*Exemption from Shareholder Approval for Certain Sub-advisory Contracts*,
SEC Release No. 33-8312, 2003 WL 22423216 (Oct. 23, 2003) .................5, 24

*Fair and Equitable Treatment of Series Type Investment Company
Shareholders*, SEC Release No. IC-7276, 1972 WL 125428
(Aug. 8, 1972)......................................................................................... 20-21

H.R. Rep. 1381, 91st Cong., 2d Sess., 8 (1970) .....................................................24

*In the Matter of Hartford Inv. Fin. Servs., LLC*, SEC Release No. 33-8750,
2006 WL 3228690 (Nov. 8, 2006).........................................................................26

*In the Matter of John Hancock Inv. Mgmt. Servs., LLC*, SEC Release No. 34-
55946, 2007 WL 1814127 (June 25, 2007) ........................................................26

*In the Matter of Lawrence J. Lasser*, Release No. 2578, 2007 WL 57083
(June 9, 2007)........................................................................................................26

*Meeting Your Fiduciary Responsibilities*, United States Dept. of Labor .................11

*Principal Investors Fund Inc.*, SEC No-Action Letter, 2005 WL 1160193
(May 13, 2005).......................................................................................................21

*Protecting Investors:  A Half-Century of Investment Company Regulation*,
SEC Division of Investment Management (May 1992) .......................................18

Restatement (Second) of Trusts § 82 ........................................................................50

Restatement (Second) of Trusts § 177 ......................................................................50

Restatement (Second) of Trusts § 192 ......................................................................50

Restatement (Second) of Trusts § 282(2) ............................................................48, 49

Restatement (Second) of Trusts § 282(2) cmt. (a)....................................................49

Restatement (Second) of Trusts § 282(2) cmt. (e)...............................................48, 49

*In re Salomon Bros. Inc.*, SEC No-Action Letter, 1995 WL 329631
(May 26, 1995).......................................................................................................21

5 Scott & Ascher on Trusts § 28.2 (2008) ................................................................49

Sen. Rep.  No. 91-184 (1969) *reprinted in* 1970 U.S.C.C.A.N. 4897, 4910..........25

The Law of Life and Health Insurance, Harnett & Lesnick (2009) ..........................8

## PRELIMINARY STATEMENT

Plaintiff Danielle Santomenno's ("Plaintiff") putative class and derivative action should be dismissed in its entirely because she lacks standing and she fails to state claims upon which relief can granted.

Plaintiff alleges that she participates in a retirement plan for which affiliates of John Hancock Financial Services (together with affiliates, "John Hancock") provide services and investment products.  She challenges various aspects of the fees charged for those services and products.  Her claims all fail for lack of standing because (i) she has not alleged direct ownership of any of the challenged mutual funds; (ii) she cannot show that she is a John Hancock contractholder; and (iii) she has not shown that she has made pre-suit demand on the retirement plan fiduciary that actually engaged John Hancock for its services and investment products.

Plaintiff also fails to state a claim for a host of other reasons:  she fails to plead all the elements of her claims; she challenges only portions of the fees paid under the relevant contracts where the applicable federal statutes require consideration of total fees; public filings refute her core assertion that John Hancock provides no services to the mutual funds subject to her challenge; and she cannot establish that any defendant is a relevant fiduciary under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Just as Plaintiff's claims overreach, so does her choice of defendants.  John Hancock Distributors, LLC ("JHD") and John Hancock Funds, LLC ("JHF") should be dismissed because the relief Plaintiff seeks as to them is not available under ERISA.  Moreover, Plaintiff cannot sue both John Hancock Life Insurance Company (U.S.A.) ("JHUSA") and John Hancock Life Insurance Company of New York ("JHNY"), as she does not allege that she has had a relationship with each of those two parties.

As such, Plaintiff's First Amended Class Action Complaint ("Amended Complaint" or "AC") should be dismissed.

## FACTUAL BACKGROUND

**I.    John Hancock's Mutual Fund Business.**

### A.    JHT and JHFII.

Plaintiff's claims focus in large part on the fees paid by mutual funds within the John Hancock Trust ("JHT") and John Hancock Funds II ("JHFII") trusts to their investment adviser, John Hancock Investment Management Services ("JHIMS").  *See, e.g.*, AC at 65-68, ¶¶ 268-284.[1]  JHT and JHFII are organized as series trusts – a structure pursuant to which a single entity is composed of several

---

[1] Citations to the Amended Complaint are to page and paragraph numbers because the paragraphs in the Amended Complaint are not consecutively numbered.  This is but one of the problems with Plaintiff's Amended Complaint:  At 168 pages, it is unwieldy, contains irrelevant and confusing allegations, and would impose undue burdens on the Court and parties should litigation proceed with it as the operative pleading.

2

separate mutual funds (also known as portfolios or series within this structure). *See* Certification of Alison V. Douglass ("Douglass Cert."), Ex. A (JHT Semi-Annual Report for Bond Trusts (Jun. 30, 2009)) at 67; *id.*, Ex. B (JHFII Annual Report (Aug. 31, 2009)) at 422.[2]

As of the trusts' 2009 filings, there were 77 separate mutual funds within the JHFII series trust, and 122 separate mutual funds within the JHT series trust.  *See* Douglass Cert., Ex. B at 422; *id.*, Ex. C (JHT Prospectus (May 1, 2009)) at cover page.  Each fund within a series trust maintains its own distinct economic structure, with separate overall fees, unique investment strategies and differing portfolios of investments.  *Id.*, Ex. C at 3-12; *id.*, Ex. D (JHFII Prospectus (Dec. 31, 2009)) at 2-5; *id.*, Ex. G ("Your Investment Options") at 15-162.

---

[2] Plaintiff's Amended Complaint includes several references to and/or excerpts from (i) John Hancock's public filings with the United States Securities and Exchange Commission ("SEC") and (ii) its disclosures to retirement plans and plan participants.  *See, e.g.*, AC at 58-60, 75-79, 86-87 (referencing and excerpting John Hancock's "SEC filings") and 33-36, 39-49, 51, 80-82, 116 (referencing "Your Investment Options," among other disclosures).  The Court may consider such documents in deciding this motion to dismiss.  *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 177 n.2 (3d Cir. 2000) ("[i]nasmuch as the complaint references and relies on the content of certain documents, [the court will] consider them"); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 618-19 (D.N.J. Dec. 28, 2005) (considering on a motion to dismiss SEC filings referenced in action brought under the Investment Company Act of 1940).  Citations herein are to 2009 John Hancock public filings that were publicly available at the time Plaintiff filed her Amended Complaint.

3

## B.   JHIMS's Role as Investment Adviser to JHT and JHFII.

JHIMS acts as the investment adviser to each of the funds in the JHT and JHFII series trusts pursuant to advisory contracts with both JHT and JHFII.  AC at 14, 25, ¶¶ 24, 82; Douglass Cert., Ex. B at 422; *id.*, Ex. C at 220.  Under these contracts, JHIMS administers the business and affairs of JHT, JHFII, and the funds within these trusts.  AC at 75, ¶ 285; Douglass Cert., Ex. B at 473; *id.*, Ex. C at 220.  JHIMS also performs a host of advisory, investment management and administrative services, as described in the funds' public filings and publicly available advisory contracts.  *See, e.g.*, Douglass Cert., Ex. D at 127-28; *see also id.*, Ex. E at ¶ 2 (Amended and Restated Advisory Agreement dated April 28, 2008 between JHFII and JHIMS, filed December 24, 2008 as Exhibit (d)(1) to post-effective amendment number 22 to JHFII Registration Statement (the "JHFII Agreement")); *id.*, Ex. F at ¶ 2 (Amended and Restated Advisory Agreement dated September 26, 2008 between JHT and JHIMS, filed February 13, 2009 as Exhibit (d)(1) to JHT Registration Statement (the "JHT Agreement")).

One of JHIMS's principal advisory functions is the selection and oversight of sub-advisers to the JHT and JHFII funds.  Under this manager-of-managers structure, JHIMS oversees thirty-six different sub-advisers who invest the assets of the funds on a day-to-day basis.  *See* Douglass Cert., Ex. B at 478; *id.*, Ex. C at

LIBA 2094803

221-44.  The SEC has recognized the prevalence of this structure, particularly for funds offered as investment options for variable insurance products:

> [In 2003] more than 100 fund complexes offer these types of funds [utilizing sub-advisers], which hold more than 400 billion dollars in assets.  Many of these funds are sponsored by insurance companies and operate as funding vehicles for separate accounts offering variable annuity and variable life insurance contracts.  They represent one of the more recent innovations in managed asset arrangements.

SEC Release No. 33-8312, 2003 WL 22423216, at *2 (Oct. 23, 2003).

JHIMS has several responsibilities as a manager of managers.  For example, related to its oversight of sub-advisers, JHIMS selects and contracts with sub-advisers.  Douglass Cert., Ex. C at 220; *id.*, Ex. D at 128.  Under JHIMS's supervision, the sub-adviser develops an investment program for the fund and reports to JHIMS concerning the implementation of the investment program.  *See, e.g.*, *id.*, Ex. D at 128.  JHIMS oversees sub-adviser performance, ensuring sub-adviser compliance with the fund's investment objectives, and reports on sub-adviser performance to the trustees.  *See id.*, Ex. E at ¶ 2(a); *id.*, Ex. F at ¶ 2(a).

The fees JHIMS charges for these and other advisory services are set forth in the relevant advisory contracts and disclosed in the trusts' public filings.  *See, e.g.*, Douglass Cert., Ex. A at 101; *id.*, Ex. D at 2-5; *id.*, Ex. E at Appendix A; *id.*, Ex. F at Appendix A.  Although Plaintiff challenges the advisory fees paid by each fund within the two trusts, she does not identify the aggregate advisory fee of any fund.

C.    **Trustee Approval of Advisory Fees and Services.**

The trustees for JHT and JHFII, including all of the independent trustees,

annually review and approve the trusts' advisory contracts and the fees paid by the

mutual funds.  AC at 75, ¶ 287; Douglass Cert., Ex. A at 109-10; *id.*, Ex. B at 495-

97.  In describing their review and approval of the advisory contracts and the fees

thereunder, the JHT and JHFII trustees explicitly referenced the factors set forth in

the Second Circuit's decision in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,

694 F.2d 923 (2d Cir. 1982) (the "*Gartenberg* factors").[3]  *See* Douglass Cert., Ex.

A at 109; *see also id.*, Ex. B at 495.

Specifically, the JHT and JHFII trustees disclosed that they considered,

among other things:  (1) the nature, extent and quality of the services to be

provided by JHIMS and the sub-advisers; (2) the investment performance of the

funds; (3) the extent to which economies of scale would be realized as a fund

grows and whether fee levels reflect these economies of scale; (4) the costs of the

services to be provided and the profits to be realized by JHIMS and its affiliates

(including any affiliated sub-advisers) from JHIMS's relationship with the funds,

including any indirect benefits; and (5) comparative services rendered and

comparative advisory and sub-advisory fee rates.  Douglass Cert., Ex. A at 109-10;

*id.*, Ex. B at 495-96.  Moreover, with respect to each mutual fund as to which a

_____

[3] The Supreme Court recently endorsed the *Gartenberg* factors in *Jones v. Harris Assocs. L.P.*, 130 S. Ct. 1418, 1426 (2010).

LIBA 2094803

sub-adviser is retained, the trustees also review and approve the contracts between

JHIMS and the sub-adviser, including the amount of sub-advisory fees.  *Id.*, Ex. A

at 110; *id.*, Ex. B at 496-97.

### D.    Plaintiff's Claim Alleging Excessive Mutual Fund Fees.

Plaintiff alleges that she "was invested" in one JHT fund, the Money Market

Trust, and two JHFII funds, the Blue Chip Growth Fund and the Small Cap

Growth Trust.  AC at 14, 67, ¶¶ 23, 277.  Plaintiff does not allege how she became

invested in these funds, though it appears to be through a John Hancock group

variable annuity contract issued to her retirement plan or its sponsor.  AC at 11, 14-

15, ¶¶ 12, 23, 28.  Plaintiff does not allege whether she remains invested in these

funds today or whether her plan's contract is still in effect.

Plaintiff alleges that the advisory fees paid by each of the funds in the JHT

and JHFII series trusts – including the other 196 funds in which she does not allege

any investment – are excessive in violation of § 36(b) of the Investment Company

Act of 1940, as amended ("ICA") on the ground that JHIMS provided no

investment management services to any of those funds.  AC at 124-127, ¶¶ 15-20.

Plaintiff purports to bring her claim derivatively on behalf of the entire JHT and

JHFII series trusts, and seeks recovery of all advisory fees paid by each fund

within those trusts in excess of the fees paid by JHIMS to those funds' sub-

advisers.  AC at 124, ¶ 14.

7

## II.   John Hancock's Group Variable Annuity Business.

Plaintiff's other ICA claim (Count IX) and her ERISA claims (Counts I-VII) challenge fees paid under a variable annuity contract issued by one of the two insurance company defendants, JHUSA or JHNY.[4]  AC at 9, ¶ 4.

### A.   Group Variable Annuity Contracts Generally.

Group variable annuity contracts are often procured by plan sponsors, trustees, or other named fiduciaries who are charged with primary decision-making responsibility for employee retirement plans (the plan's "Primary Fiduciary") to provide benefits for the individuals covered by such retirement plans.  *See, e.g.*, "The Law of Life and Health Insurance," Harnett & Lesnick (2009) at § 10.07. Consistent with industry practice, JHUSA/JHNY provide services to 401(k) and other retirement plans through group variable annuity contracts issued to the plans' Primary Fiduciaries.  AC at 17-18, 28, ¶¶ 40-41, 96-98.  While Plaintiff alleges abstractly that she is a participant in a "Plaintiff Plan," AC at 15, ¶ 28, she fails to provide any information whatsoever about the plan – including the name of the plan, the identity of her employer (the plan sponsor), her plan's Primary Fiduciary, the purported contract between JHUSA/JHNY and the plan or its Primary Fiduciary.

---

[4] "JHUSA/JHNY" is used herein to refer to either JHUSA or JHNY; Plaintiff does not specify which entity issued her plan a group variable annuity contract.

8

### B.   Bundle of Services Offered Under John Hancock's Group Variable Annuity Contracts.

JHUSA/JHNY offer a bundled product of investment options and administrative services to retirement plans under their group variable annuity contracts.  As to investments, JHUSA/JHNY make available a platform of approximately 165 different options, called sub-accounts.  *See* Douglass Cert., Ex. G at 1, 15-162 (cited at AC at 33-36, 39-49, 51, 80-82, 116); AC at 11, ¶ 10.  Each sub-account invests in specific underlying mutual funds ("Underlying Funds").  AC at 11, ¶ 10.  These Underlying Funds include JHIMS-advised funds as well as funds advised by unaffiliated companies.  *See* Douglass Cert., Ex. G at 15-162.  Contributions to a plan that holds a JHUSA/JHNY group variable annuity contract are allocated to a particular sub-account that pools contributions from all plans into that investment option.  AC at 11, ¶ 11; Douglass Cert., Ex. G at 1, 163.  JHUSA/JHNY then "purchase shares in the [chosen] mutual fund[]" with the assets in the sub-account.  AC at 11, ¶¶ 10-11; Douglass Cert., Ex. G at 163.

The administrative and recordkeeping services JHUSA/JHNY provide under a group variable annuity contract "relieve the plan sponsor of benefit [payment] obligations, administration and other related tasks and fees associated with maintaining" a retirement plan.  AC at 30, ¶ 107.  For example, JHUSA/JHNY "(A) provide recordkeeping services, (B) provide 'plan installation' services (if necessary), (C) provide for the enrollment of participants under such plans, (D)

9

distribute educational materials, (E) provide customer service and (F) provide other participant services" such as the development of participant communications.  AC at 28, 30, ¶¶ 98, 106.

Not surprisingly, JHUSA/JHNY charge for these services.  Fees include contract-level fees, participant fees, and fees associated with the investment options made available under the contract.[5]  *See, e.g.*, Douglass Cert., Ex. G at 2.  Plaintiff identifies a number of these component fees, including the sales and service fee and the administrative maintenance charge, AC at 41, ¶¶ 168-69, but does not plead whether she or her plan were charged all of these component fees.  Nor does she allege the aggregate fees charged to her or her plan.

## C.      The Primary Fiduciary's Decision to Hire JHUSA/JHNY.

The decision to enter into a JHUSA/JHNY group variable annuity contract for a retirement plan is made by the plan's Primary Fiduciary.

ERISA requires that employee benefit plans be established by a written plan document, which must "provide for one or more named fiduciaries [the Primary

---

[5]  JHUSA/JHNY, or their affiliates, may also receive revenue sharing payments from an Underlying Fund or its underwriter in connection with investments in an Underlying Fund through a JHUSA/JHNY group variable annuity contract.  AC at 80-82, ¶¶ 309-312.  These payments can be made in the form of payments made under 17 C.F.R. § 270.12b-1 ("12b-1 fees"), sub-transfer agency payments, or other payments.  *See* Douglass Cert., Ex. G at 2.  This is not a separate charge under a group variable annuity contract, and where JHUSA/JHNY (or their affiliates) receive such a payment, they reduce otherwise applicable charges to plans or their participants.  *See* Douglass Cert., Ex. G at 163.

LIBA 2094803

Fiduciary] who jointly or severally shall have authority to control and manage the operation and administration of the plan," 29 U.S.C. § 1102(a)(1), as well as "authority and discretion to manage and control assets of the plan," *id.* § 1103(a) (introductory language).  Typically, the Primary Fiduciary is the plan's trustee or the plan sponsor, as specified in the plan documents.  *Id.*[6]  Plaintiff has not identified her plan's Primary Fiduciary.

Among other things, the Primary Fiduciary is typically responsible for engaging service providers and monitoring their performance, determining and monitoring the investments made available to participants, and agreeing to the fee structure for those service providers and investment options.  *See* Douglass Cert., Ex. H ("Fiduciary Responsibility:  An Employer's Guide") at 12-13 (cited at AC at 30, ¶ 106); *see also* "Meeting Your Fiduciary Responsibilities," at 2, United States Department of Labor[7] ("Fiduciary Responsibilities").  The Primary Fiduciary can select any administrative service provider or investment platform he desires, and can terminate any such arrangements if dissatisfied.  *See* 29 C.F.R. § 2550.408b-2(c) (plan's service contracts must be terminable on reasonably short notice without penalty).

---

[6] The Amended Complaint indicates that, in this context, the employer sponsoring the plan is commonly the Primary Fiduciary.  *See* Am. Compl. at 1, 11, 15, 17-18, 28, 32, 38, ¶¶ 1, 5, 9, 12, 27, 40, 41, 97, 100, 117-19, 151-53.

[7] Available at http://www.dol.gov/ebsa/publications/ fiduciaryresponsibility.html.

11

A Primary Fiduciary who contracts with JHUSA/JHNY to be the plan's service provider not only has chosen to utilize the JHUSA/JHNY investment platform described *supra* at 9, but also remains responsible for selecting from among the investment options available on that platform. *See* Douglass Cert., Ex. H at 1, 19; AC at 11, ¶ 9. A Primary Fiduciary also may elect to utilize a JHUSA/JHNY product called the Fiduciary Standards Warranty. *See* AC at 28-9, ¶¶ 100-101. Where a plan is covered by the Fiduciary Standards Warranty, JHUSA/JHNY promise "to restore any losses to the plan and pay litigation costs related to the suitability of [JHUSA/JHNY's] investment process and fund lineup for 401(k) plans." *Id.* Plaintiff does not allege that her plan's Primary Fiduciary elected the Fiduciary Standards Warranty.

### D.    Plaintiff's Claims Alleging Violation of ICA § 26(f) and Breaches of ERISA Fiduciary Duty.

Plaintiff alleges that group and individual variable annuity contracts issued by JHUSA/JHNY may be rescinded pursuant to ICA §§ 26(f) and 47(b) due to the allegedly excessive advisory fees paid by mutual funds available under these contracts (Count IX). This claim is brought as a putative class claim.

Plaintiff separately alleges that JHUSA/JHNY breached ERISA fiduciary duties and engaged in prohibited transactions by charging a Sales and Service Fee under its group variable annuity contracts. AC at 95-102. (Counts I-II). She further alleges that JHUSA/JHNY breached ERISA fiduciary duties and engaged

12

in prohibited transactions by failing to negotiate fund fees that did not include 12b-1 fees and/or that had lower advisory fees, by accepting revenue sharing payments, and by offering on its platform a fund that had higher fees than a comparable fund offered by a different provider.  AC at 103-122 (Counts III-VII).  Plaintiff's ERISA claims are brought derivatively and as putative class claims.  AC at 17, ¶ 36.  Count III also asserts that JHIMS, JHD and JHF are liable under ERISA for "knowingly participating" in allowing 12b-1 fees to be charged.  AC at 107, ¶ 15.

## ARGUMENT

The Amended Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because Plaintiff lacks standing and fails to adequately plead claims upon which relief can be granted.

## I.    Standard of Review as to All Claims.

To state a claim sufficient to survive dismissal under Rule 12(b)(6), a plaintiff must provide "direct or inferential allegations respecting all the material elements" of her claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  When a plaintiff pleads allegations satisfying some but not all of the elements of a claim, the claim should be dismissed.  *See Gardner v. U.S. Food Serv., Inc.*, No. 08-CV-5381, 2010 WL 1050168, at *3-4 (D.N.J. Mar. 19, 2010) (dismissing claim for failure to plead an element); *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 713 (D.N.J. 2005).

13

Even complaints pleading all the necessary elements should be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  A plaintiff must "state a claim to relief that is plausible on its face." *Id.* at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short" "of demonstrating entitlement to relief." *Id.*

Under Rule 12(b)(6), a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S. Ct. at 1949; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).  A court also need not accept as true allegations that are contradicted by documents relied upon in the complaint or the public record:  "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *In re Arbinet-thexchange, Inc.*, No. 05-4404(JLL), 2006 WL 3831396, at *2 n.5 (D.N.J. Dec. 28, 2006) (dismissing complaint) (internal citations omitted). *See also Kent v. Tabafunda*, No. 07-4973 (JAG), 2008 WL 2510723, at *2 (D.N.J. June 19, 2008) (pleaded facts that are contradicted by public records "are not to be deemed as true" in ruling on a motion to dismiss).

Fed. R. Civ. P. 12(b)(1) provides a separate basis to dismiss claims where the court lacks subject-matter jurisdiction.  A court lacks subject-matter jurisdiction if the plaintiff lacks standing. *See, e.g.*, *Ballentine v. U.S.*, 486 F.3d

14

806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."). At the pleading stage, the plaintiff "bear[s] the burden" of showing an entitlement to subject-matter jurisdiction. *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460 (D.N.J. 2005).

Under these standards, the Amended Complaint should be dismissed in its entirety.

## II.   Plaintiff's Claim Under ICA § 36(b) Should Be Dismissed.

Plaintiff's claim under ICA § 36(b) should be dismissed for a number of reasons:  (i) she lacks standing because she is not a security holder of any JHIMS-advised mutual fund; (ii) she has no interest in the overwhelming majority of mutual funds on whose behalf she purports to sue; (iii) her principal assertion – that JHIMS performs no services for sub-advised funds – is demonstrably false, and she fails to sufficiently plead the other essential factors necessary for ICA § 36(b) liability; and (iv) she does not plead, as she must, that any breach occurred within a year of filing the action.

### A.   Plaintiff Lacks Standing to Bring an ICA § 36(b) Claim.

#### 1.   Only Security Holders Have Standing to Bring Private Actions Under ICA § 36(b).

Plaintiff's ICA § 36(b) claim fails because she is not a "security holder" within the meaning of ICA § 36(b) and the federal securities laws.

LIBA 2094803

Standing has both constitutional and statutory dimensions.  To satisfy the "case or controversy" requirement of Article III of the Constitution, a federal court claimant must show a "distinct and palpable injury."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100 (1979).  To assert claims under a federal statute, the plaintiff must also show that she falls within the class of persons on whom Congress conferred the right of private action.  *See, e.g.*, *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 143-44 (3d Cir. 2008) ("Statutory standing asks whether Congress has accorded *this injured plaintiff* the right to sue the defendants to redress *his injury*.") (emphasis added) (internal quotations omitted).

ICA § 36(b) authorizes an action by the SEC "*or by a security holder* of such registered investment company on behalf of such company."  15 U.S.C. § 80a-35(b) (emphasis added).  The statute's clear language mandates that the class of private actors entitled to sue under ICA § 36(b) is "limited to persons who are shareholders in the defendant investment company."  *Tinsley v. FleetBoston Fin. Corp.*, No. 2:01cv215, 2001 U.S. Dist. LEXIS 25103, at *15 (E.D. Va. July 17, 2001).  "[O]ne who does not own shares" "is not qualified to bring a derivative action" under the ICA.  *Kauffman v. Dreyfus Fund*, *Inc.,* 434 F.2d 727, 735 (3d Cir. 1970).  Therefore, statutory standing under ICA § 36(b) requires a private plaintiff to be a security holder.

16

### 2.    Plaintiff's Allegations Do Not Establish That She Is a Security Holder of JHIMS-Advised Funds.

Plaintiff is not a security holder of any of the mutual funds on whose behalf she purports to sue.  According to Plaintiff's own allegations, she is a participant in a retirement savings plan that holds a group variable annuity contract issued by JHUSA/JHNY.  AC at 11, 15, 18, ¶¶ 12, 28, 41.  Plaintiff alleges that contributions made through this contract were deposited in JHUSA/JHNY sub-accounts, and that JHUSA/JHNY "purchase[d] shares in the mutual funds" with the pooled assets in those sub-accounts.  AC at 11, ¶¶ 10-11; 124, ¶ 11.

These allegations do not establish that Plaintiff is a security holder of any mutual fund underlying a JHUSA/JHNY sub-account; to the contrary, they show that she is not.  Plaintiff at best pleads that she has an interest in her retirement plan, the assets of which were in turn invested in JHUSA/JHNY sub-accounts whose assets are, in turn, invested in three mutual funds.  AC at 124, ¶¶ 8-10.  Her conclusory assertion that she is a "security holder" of these underlying mutual funds is thus contradicted by her factual allegations.

### 3.    Plan Participants Are Not Mutual Fund Security Holders.

Moreover, under the federal securities laws, retirement plan participants are not treated as security holders of mutual funds owned by their plans.

For example, Rule 10b-10 of the Securities and Exchange Act of 1934 requires that confirmations of the sale of "any security" be delivered to the

17

purchaser.  17 C.F.R. § 240.10b-10.  The SEC has interpreted this rule as requiring only that sales confirmations be sent to the trustee of a retirement plan, not the individual participants, as the trustee is considered to be the shareholder of record. *See* SEC Release No. 34-34962, 1994 WL 635201, n.38 (Nov. 10, 1994).

Similarly, Section 5 of the Securities Act of 1933 requires that any person selling a security deliver to the purchaser a current prospectus before or at the time of the sale.  15 U.S.C. § 77e.  The SEC staff distinguish retirement "plan participants" from "investors who directly purchase securities issued by investment companies" in terms of delivery obligations.  *Protecting Investors:  A Half-Century of Investment Company Regulation*, SEC Division of Investment Management, at 151 (May 1992).  As the SEC staff have explained, the federal securities laws do not "require the delivery of prospectuses for the underlying investment vehicles to plan participants who direct their investments."  *Id.*

Because Plaintiff pleads no factual basis to support her assertion that she is a security holder within the meaning of ICA § 36(b), and the legal authority demonstrates that as a retirement plan participant she is not a security holder, this claim should be dismissed for her lack of statutory standing.  *See Phila. Marine Trade Ass'n*, 523 F.3d at 143-44 (no standing where Congress has not accorded "this injured plaintiff" the right to sue).[8]

---

[8] Even if Plaintiff had, or could, plead that she was a security holder of any John

18

**B.    Plaintiff Also Lacks Standing to Bring an ICA § 36(b)
Claim on Behalf of Funds in Which She Alleges No Interest.**

Even if Plaintiff were a current security holder of certain funds, which she is

not, she still lacks standing to sue on behalf of funds in which she alleges no

interest whatsoever.

This Court has explained that a shareholder of one mutual fund cannot bring

ICA § 36(b) claims derivatively on behalf of funds in which she has no interest.

*See In re Lord Abbett*, 407 F. Supp. 2d at 633, *partially vacated on other grounds*,

463 F. Supp. 2d 505 (D.N.J. 2005).  Other courts agree.  *See, e.g., In re Scudder

Mut. Funds Fee Litig.*, No. 04 Civ. 1921 (DAB), 2007 WL 2325862, at *9

(S.D.N.Y. Aug. 14, 2007) ("As to the Funds in which Named Plaintiffs own no

shares, Named Plaintiffs' suit fails . . . ."); *In re Am. Mut. Funds Fee Litigs.*, No.

CV 04-5593 GAF, 2005 WL 3989803, at *1 (C.D. Cal. Dec. 16, 2005) ("Plaintiffs

lack standing to assert claims with respect to the 10 funds in which none of them

have any interest.").

This rule applies equally where, as here, the funds are organized within

series trusts.  The decision in *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass.

---

Hancock fund, which she cannot, she also has not and cannot plead consistent with
Fed. R. Civ. P. 11 that she remains such a security holder to this day.  The absence
of status as a current security holder also precludes standing to maintain this suit.
*See Brever v. Federated Equity Mgmt. Co. of Pa.*, 233 F.R.D. 429, 431 (W.D. Pa.
2005) (plaintiff who had sold his shares "divested himself of standing to maintain
an action under § 36(b)").

2005) is instructive.  In *Stegall*, the plaintiff invested directly in one mutual fund within a John Hancock series trust and asserted ICA § 36(b) claims with respect to multiple other funds within the trust.  *Id.* at 362.  The plaintiff argued that the individual mutual fund was a "mere shell" and that, "as an owner of a fund within . . . the Trust, he ha[d] individual standing to pursue claims involving all of the funds within the [Trust]."  *Id.*  The *Stegall* court rejected this theory.  It held that "one clearly may not use the corporate structure of the broader investment company to confer standing across all funds within that company."  *Id.*  It further explained that plaintiff's interest "extends only to the investment decisions of the fund in which the plaintiff invested," and does not permit a plaintiff "to bootstrap claims arising out of investment decisions made in relation to other funds in which he was not a participant."  *Id.* at 363.  *Accord Williams v. Bank One Corp.*, No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 11, 2003) (rejecting shareholder's attempt to bring an ICA § 36(b) claim on behalf of funds within a series trust in which he owned no shares).

The SEC similarly treats each fund within a series trust as a separate investment company:  "[t]he individual series of [a registered investment company] are, for all practical purposes, separate investment companies . . . [with each] series of stock represent[ing] a different group of stockholders with an interest in a registered portfolio of securities."  SEC Release No. IC-7276, 1972

20

WL 125428, at *1 (Aug. 8, 1972); *see also* SEC Release No. IC-16619, 1988 WL 1000041, at *17 (Nov. 2, 1988) ("The individual series of a series fund are, as a practical matter, separate investment companies.").[9]

Here, Plaintiff alleges no interest in any fund other than the Blue Chip Growth Fund, the Money Market Trust, and the Small Cap Growth Trust.  AC at 14, 67, ¶¶ 23, 277.  Accordingly, Plaintiff lacks both constitutional and statutory standing as to the other 196 funds within the JHT and JHFII series trusts.

### C.   **Plaintiff Fails to State an ICA § 36(b) Claim.**

Even if Plaintiff had standing to assert any claim under ICA § 36(b), which she does not, Count VIII still should be dismissed because Plaintiff fails to allege facts sufficient to state a claim for excessive advisory fees.

### 1.   **Plaintiff Bears the Pleading Burden Under ICA § 36(b).**

An adviser, such as JHIMS, may be liable under ICA § 36(b) only if it charges "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones*, 130 S. Ct. at 1426.  The plaintiff bears the burden of showing a breach of duty under ICA § 36(b).  *Id.* at 1427.

At the pleading stage, courts analyze allegations of breach under the six-

---

[9] *See also Principal Investors Fund Inc.,* SEC No-Action Letter, 2005 WL 1160193, at *3 (May 13, 2005); *In re Salomon Bros. Inc.,* SEC No-Action Letter, 1995 WL 329631, at *2 (May 26, 1995).

factor test first set forth by the Second Circuit in *Gartenberg,* as adopted by

*Jones*.[10]   In ruling on a motion to dismiss, the court should "test[ ] the specific

factual allegations of section 36(b) complaints in relation to each of the

*Gartenberg* factors."   *Mintz v. Baron*, No. 05 Civ. 4904, 2009 WL 735140, at *2

(S.D.N.Y. Mar. 20, 2009) (dismissing § 36(b) claim).   As Judge Linares held in

granting a motion to dismiss § 36(b) claims:   "[A]*ll six [Gartenberg] factors* are to

be considered by a court in determining whether a defendant has breached his or

her fiduciary duty under § 36(b)."   *Benak v. Alliance Capital Mgmt. L.P.*, No. 01-

5734, 2004 WL 1459249, at *9 (D.N.J. Feb. 9, 2004) (emphasis added).

## 2.   Plaintiff Fails to Address All *Gartenberg* Factors.

As a threshold matter, Plaintiff has completely failed to address certain

*Gartenberg* factors.   For example, Plaintiff entirely ignores the factor relating to

economies of scale, even though the public record specifically notes that the board

considered the extent to which economies of scale would be realized as a fund

grows and that fee levels reflect these economies of scale for the benefit of fund

shareholders.   *See* Douglass Cert., Ex. A at 118; *Id*., Ex. B at 495.   This failure to

address each of the *Gartenberg* factors – as approved by the Supreme Court in

---

[10] The *Gartenberg* factors are: (1) nature and quality of the services provided to
fund shareholders; (2) economies of scale of operating the fund as it grows larger;
(3) the profitability of the fund to the adviser/manager; (4) fee structures of
comparable funds; (5) the independence and conscientiousness of the trustees; and
(6) fall-out benefits (*i.e.*, indirect profits to the adviser or its affiliates attributable
in some way to the existence of the fund).   *Gartenberg*, 694 F.2d at 928-32.

*Jones* – is itself fatal to Plaintiff's claims and requires dismissal.  *See Benak*, 2004

WL 1459249, at *9.

### 3.    Plaintiff's Allegation that JHIMS Performs No Services for the Funds is Contradicted by the Public Record.

Count VIII also fails because the core assertion underlying the *Gartenberg*

factors that Plaintiff does address – that JHIMS performs no advisory services (AC

at 125-27, ¶¶ 16-20) – is flatly refuted by publicly-available documents, including

those cited in the Amended Complaint.

Here, the funds' SEC filings describe in detail the host of advisory,

investment management, and administrative services that JHIMS performs for each

of the mutual funds.  *See supra* at 4-5 and Douglass Cert., Ex. E, at ¶ 2 and Ex. F,

at ¶ 2.  Those services include selecting and overseeing sub-advisers, supervising

the implementation of the funds' investment programs, conducting fund

performance evaluations and other analyses, reporting to the funds' boards of

trustees, and the contribution of other resources to fund management.  *See id.*

These facts contradict Plaintiff's allegation that JHIMS performs no services.

Where Plaintiff's core allegation is "contradicted by facts that can be judicially

noticed" – including publicly-filed documents that Plaintiff cites in her Amended

Complaint, *see, e.g.*, AC at 58-60, 75-79, 86-87 – such facts "are not to be deemed

as true," and Plaintiff fails to state a claim.  *Kent*, 2008 WL 2510723, at *2

(dismissing claims with prejudice).

23

Moreover, the SEC has observed the prevalence of the manager-of-managers structure in insurance products, and it is well-established that "investment advisers and sub-advisers perform distinct services."  *See Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008); *see also* SEC Release No. 33-8312, 2003 WL 22423216 (recognizing distinct roles of adviser and sub-adviser in management of fund).  As such, Plaintiff's bare and unsupported allegation that an advisory fee in excess of payments to a sub-adviser is *per se* excessive should also be foreclosed as an improper strike suit.  This Court has dismissed such bald claims in recognition of the "stated intent of the drafters of the 1970 amendments [to the ICA] . . . to 'prevent the harassment of investment advisors by ill-founded or nuisance law suits, the so-called strike suit.'"  *In re Franklin Mut. Funds Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007) (dismissing claims that mutual funds paid "some of the highest fees in the industry") (quoting H.R. Rep. 1382, 91st Cong., 2d Sess., 8 (1970)).  Plaintiff's ICA § 36(b) claim should be dismissed as well.

### 4.    Plaintiff Fails to Address the Total Advisory Fee.

Further, by focusing entirely on one aspect of the advisory fee and service arrangement – and suggesting erroneously that the adviser performs no services – Plaintiff also fails to state a claim by failing to plead that the total advisory fee is unreasonable in light of the total package of advisory services as is required under ICA § 36(b).  As one court in this district has already held in dismissing ICA §

36(b) claims, a plaintiff must address "the *overall* nature and quality of the services provided by the investment adviser that is at issue – not merely" one aspect of those services. *Benak*, 2004 WL 1459249, at *8 (emphasis in original). And in *Gartenberg* itself, the Second Circuit Court of Appeals affirmed the district court's decision regarding reasonableness of fees based on a comparison of "the total fee" to the "package of services." 694 F.2d at 927; *see also* Sen. Rep. No. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4910 ("it is intended that the court look at . . . all services rendered to the fund or its shareholders and all compensation and payments received"). Plaintiff's ICA § 36(b) claim should thus be dismissed for the additional reason that she does not challenge the total advisory fee, instead she attacks only a component of such fee.

### 5.   Plaintiff's Pleadings as to the Conscientiousness of the Trustees Are Also Insufficient to State a Claim.

Plaintiff also challenges the conscientiousness of the JHT and JHFII trustees. AC at 126, ¶ 18. Her allegations are insufficient to state a claim as to this *Gartenberg* factor as well.

*First*, the Amended Complaint fails to include any allegations as to the actual fee negotiations between JHIMS and the trustees – allegations that courts deem critical to an ICA § 36(b) analysis. *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 342 (2d Cir. 2006) (affirming dismissal where "conspicuously absent from either of the complaints are any factual allegations as

25

to the *actual* fee negotiations or management and distribution services rendered by *these* defendants") (emphasis in original).

*Second*, Plaintiff's attempt to indict the trustees' process by pointing to a 2007 settlement with the SEC should also fail.  AC at 78, ¶ 298.  That settlement did not address the advisory fees challenged here, but instead related to disclosure of the allocation of fund brokerage transactions to certain broker-dealers involved in the sale of fund shares, a practice that the SEC challenged with respect to John Hancock and several other mutual fund sponsors.  *See, e.g.*, SEC Release No. 33-8750, 2006 WL 3228690 (Nov. 8, 2006); SEC Release No. 2578, 2007 WL 57083 (June 9, 2007).  As the SEC order itself notes, the boards receive quarterly reports relevant to the SEC settlement, so the trustees were well aware of this unrelated settlement in any event.  *See* SEC Release No. 34-55946, 2007 WL 1814127, ¶ 36 (June 25, 2007).

*Third*, Plaintiff's allegation that the trustees failed to consider sub-adviser fees, AC at 126-27, ¶ 18, is not supported by the public filings Plaintiff cites.  The cited filings state only that the trustees did not believe the *profits* realized by a sub-adviser was a material factor in reviewing and approving sub-advisory agreements.  The trustees did consider sub-advisory *fees* as part of their review and approval of both the advisory and sub-advisory contracts.  *See* Douglass Cert., Ex. A at 109-10; *id.*, Ex. B at 495-97.  Plaintiff's confusion of sub-adviser profitability with sub-

26

adviser fees is an insufficient basis to allow these ICA § 36(b) claims to proceed. *See Mintz,* 2009 WL 735140, at *3 (dismissing where the ICA § 36(b) "allegations are conclusory and bereft of sufficient factual support to render plausible any contention premised on the first *Gartenberg* factor . . . in light of [the content of] public SEC filings"). For these reasons as well, Count VIII should be dismissed.

### D.   Plaintiff Fails to Plead an ICA § 36(b) Claim Occurring Within the One Year Statutory Period.

Plaintiff's failure to plead that any alleged breach took place during the one-year statutory period preceding the filing of the action provides yet another independent ground for dismissal of her ICA § 36(b) claim.

Section 36(b)(3) of the ICA states that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Accordingly, "[t]o survive a motion to dismiss a § 36(b) claim . . . [p]laintiffs must plead facts showing that . . . violations occurred during the statutory one-year period under § 36(b)(3)." *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d at 686; *see also Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 686 n.4 (3d Cir. 2002) (affirming dismissal of claim as "not cognizable" where complaint alleged conduct occurred outside one year period). This one year period "begins when a plaintiff institutes a derivative action under" ICA § 36(b). *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d at 684.

27

Here, Plaintiff fails to allege that any violation occurred during the relevant time. The fee tables upon which Plaintiff relies do not identify any time period, and instead claim only to represent "an illustrative period." *See, e.g.*, AC at 50, ¶ 179 (referring to Table I). As this Court has recognized, dismissal is appropriate where, as here, "[t]he data relied upon in making [the] claim is undated, and therefore the Court cannot know whether it pertains to the Funds' fees during the relevant one-year period." *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d at 687; *accord In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006) (dismissing claims where statistics pleaded in support of excessive fees claim did not fall squarely within the applicable one-year period).

## III.   **Plaintiff's Claim Under ICA § 47(b) Should Be Dismissed.**

Separately, Plaintiff's claim for rescission under ICA § 47(b) should also be dismissed. Just as her ICA § 36(b) claim fails for multiple reasons, so, too, does her claim under ICA § 47(b) for alleged violation of ICA § 26 suffer from multiple infirmities. To wit, (i) Plaintiff fails to state a violation of ICA § 26 because she does not allege that aggregate fees are excessive; (ii) she lacks standing because she is not a contract holder entitled to the remedy afforded by ICA § 47(b); and (iii) there is no private right of action under ICA § 47(b) for alleged violations of ICA § 26.

LIBA 2094803

## A.     <u>Plaintiff Fails to Plead a Violation of ICA § 26.</u>

Plaintiff's claim for rescission should be dismissed because she has not alleged a violation of ICA § 26.

ICA § 26(a) imposes various requirements regarding the custody and sale of unit investment trusts, a type of registered investment company under the ICA. Section 26(f) provides an exemption from the ICA § 26(a) requirements – if certain conditions are met – for "registered separate account[s] funding variable insurance contracts" and "the sponsoring insurance company principal underwriter of such account[s]." 15 U.S.C. § 80a-26(f). Among the exemption requirements is that "the fees and charges deducted under the [variable insurance] contract, *in the aggregate*, are reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company. . . ." 15 U.S.C. § 80a-26(f)(2)(a) (emphasis added). The statute elaborates that "the fees and charges deducted under the [variable insurance] contract shall include *all fees and charges imposed for any purpose and in any manner*." 15 U.S.C. § 80a-26(f)(3) (emphasis added).

Plaintiff does not allege that fees and charges deducted under the relevant JHUSA/JHNY-issued variable annuity contract, *in the aggregate*, were not "reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company." 15 U.S.C. § 80a-

26(f)(2)(a).  She instead relies on only one component of fees, alleged "Excessive

Adviser Fees."  AC at 129, ¶¶ 9-11.  Although her ERISA claims, described *infra*

at 35-51, address certain other fee components, her purported ICA § 26(f) claim is

devoid of any reference to aggregate fees and services.  The statute simply does not

allow Plaintiff to try to isolate individual charges for individual components within

a variable annuity contract without looking at whether the aggregate fees are

reasonable in light of the entire package of services being provided.

Moreover, even if Plaintiff had adequately alleged that JHUSA/JHNY are

not entitled to the ICA § 26(f) exemption – and she has not – she still has not

alleged an underlying violation of ICA § 26.  The Amended Complaint is silent as

to any of the requirements of ICA § 26(a).  Accordingly, Plaintiff fails to state a

violation of ICA § 26 and for this reason alone Count IX should be dismissed.

### B. <u>Plaintiff Is Not Entitled to Seek Rescission Under ICA § 47(b).</u>

Plaintiff seeks to bring suit for violation of the ICA § 26(f) exemption

through ICA § 47(b).  But Plaintiff is not a party to any contract subject to ICA §

47(b), and thus lacks standing, providing an alternative ground for dismissal.

Section 47(b) provides that a contract violating the ICA is "unenforceable by

either *party* (or by a nonparty to the contract who acquired a right under the

contract with knowledge of the facts by reason of which the making or

performance violated or would violate any provision of this subchapter or of any

LIBA 2094803

rule, regulation, or order thereunder)."  15 U.S.C. § 80a-46(b)(1) (emphasis added).  Individuals who are not a party to the challenged contract "do not have standing to pursue [an ICA § 47(b)] claim."  *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005) (dismissing claim for rescission under § 47(b)).

Plaintiff does not plead that she is a party to any variable annuity contract. To the extent that Plaintiff is a participant in a retirement plan to whom JHUSA/JHNY issued a group variable annuity contract, Plaintiff pleads that such contract was issued or sold to the plan sponsor, AC at 11, 18, ¶¶ 12, 41, not to herself.  Nor does Plaintiff allege, nor could she, that as a non-party she has rights to sue under any such contract.  Notably, Plaintiff does not identify or attach the contract, which itself typically defeats a claim based on contract rights:  "If any part of the plaintiff's claim is based upon a written instrument, that document should be attached as an exhibit to the complaint."  *Simmons v. Cmty. Serv. Providers, Inc.*, 847 F. Supp. 351, 353 (E.D. Pa. 1994) (dismissing the action). Moreover, to the extent that Plaintiff purports to assert claims on behalf of holders of individual variable annuity contracts sold outside of the retirement plan context, she nowhere alleges that she is a party to, or has any rights under, any such contract.[11]

---

[11] Plaintiff's allegations belie her ability to even represent such a class.  The Amended Complaint details the fees related to the group variable annuity contracts issued to plans.  *See* AC at 40-41, ¶¶ 160-174.  The prospectus filed with the SEC

31

Because Plaintiff has not made any non-conclusory allegation that she is a party to any contract that is subject to ICA § 47(b), or that any exception applies to her, her ICA § 47(b) claim should be dismissed for lack of standing.

### C.  The ICA Confers no Private Right of Action for Alleged Violations of ICA § 26.

Even if Plaintiff could plead a violation of ICA § 26 remediable by her under ICA § 47(b), which she cannot, Count IX should still be dismissed because there is no private right of action under ICA § 47(b).

ICA Section 26 confers no right of action.  The statute on its face contains no express grant, and in the leading case to address the issue, the Second Circuit held that no implied right of action exists.  *See Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002) ("No provision of the ICA explicitly provides for a private right of action for violations of . . . § 26(f) . . ., and so we must presume that Congress did not intend one.").  The *Olmsted* decision is consistent with, and relies heavily upon, the Supreme Court's holding in *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) that "private rights of action to enforce

---

for one of the JHUSA/JHNY-issued individual variable annuity contracts, the Venture contract, shows the substantial difference between those contracts and the type alleged in the Amended Complaint.  The Venture contract, for example, includes features and options not available under the group variable annuity contracts covered by the Amended Complaint, such as a standard death benefit, an optional death benefit rider, and an optional "Income Plus for Life" rider providing guaranteed minimum withdrawal benefits for life.  *See* Douglass Cert., Ex. I (Prospectus for Venture Variable Annuity (May 1, 2009)) at 4-8.

32

federal law must be created by Congress" and that absent congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter."

Plaintiff's attempt to make an end-run around *Olmstead* by asserting a claim under ICA § 47(b) for violation of ICA § 26(f) fails. Section 47(b) provides only a remedy, that is rescission, but it does not confer an express right of private action. The Supreme Court's *Sandoval* analysis makes clear that no private right of action should be implied under ICA § 47(b), and since *Sandoval*, no court has explicitly found such a private right of action to exist.[12]

*First*, the controlling test for an implied cause of action is congressional intent:  if Congress did not provide an express right of action, the court must presume that it did not intend to create an implied right. *Sandoval*, 532 U.S. at 286-7; *see also In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 465.  As the Third Circuit has explained, "even when Congress creates rights or obligations (including personal rights), it does not necessarily follow that private parties can enforce them or obtain a direct remedy through the judicial process . . . . Some statutes create rights in individuals that are only enforceable by agencies . . . or not

---

[12] Pre-*Sandoval* authority that implied a right of action under ICA § 47(b) is no longer good authority.  *See Olmsted*, 283 F.3d at 434 & n.4 ("Past decisions [such as *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1349 (D.N.J. 1996)] reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an '*ancien regime.*'").

enforceable at all." *Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of the City of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004).

*Second*, as this Court has recognized in interpreting the ICA, the Supreme Court observed in *Sandoval* "that an express provision for one method of enforcing a substantive rule strongly suggests that Congress intended to preclude others." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 466 (citing *Sandoval*, 532 U.S. 275); *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). Here, ICA § 42 "explicitly provides for enforcement of all ICA sections" by the SEC. *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 466. Thus, under this *Sandoval* test, no private right of action should be implied.

*Third,* "if another section of that statute provides an explicit private method of enforcement, that 'suggests that omission of an explicit private right to enforce other sections was intentional.'" *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d. at 465 (quoting *Olmstead*, 283 F.3d at 433). Here, ICA § 36(b) expressly provides a private right of action. *See* 15 U.S.C. § 80a-35(b). Under this test as well, no private right of action should be implied under ICA § 47(b).[13]

---

[13] This conclusion is consistent with numerous post-*Sandoval* decisions declining to imply private rights of action under provisions of the ICA that contain no such express grant. *See, e.g., In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d at 629-32 (no private right of action under ICA §§ 36(a) and 34(b)); *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 347-49 (W.D. Pa. 2005) (same).

LIBA 2094803

Accordingly, Count IX should be dismissed for the additional ground that no such private right of action exists.

## IV.   **All of Plaintiff's ERISA Claims Should Be Dismissed.**

Not only should Plaintiff's ICA claims be dismissed, but her ERISA claims should be dismissed as well for a number of reasons:  (i) Plaintiff's Amended Complaint lacks basic information necessary to plead standing to assert any ERISA claim; (ii) what Plaintiff does allege is insufficient to raise a plausible inference that JHUSA/JHNY may be ERISA fiduciaries subject to suit with respect to the matters complained of; (iii) Plaintiff fails to plead that JHUSA/JHNY – even if fiduciaries – breached any ERISA fiduciary duties or engaged in prohibited transactions; and (iv) Plaintiff in any event lacks standing to sue third parties selected by her Plan's Primary Fiduciary without having first made demand on such Primary Fiduciary.  Each deficiency independently requires dismissal of Counts I-VII.

### A.   **Plaintiff Fails to Plead Facts Sufficient to Establish She Has Standing to Assert Her ERISA Claims.**

Plaintiff has not pleaded that she is among the class of claimants authorized to bring suit under ERISA because she fails to allege that she is a participant in a specific ERISA-governed plan.

She purports to sue under ERISA §§ 502(a)(2) and (3), which in relevant part confer a cause of action on a claimant who is a "participant."  29 U.S.C. §§

35

1132(a)(2) and (3).  ERISA § 3(7) defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type *from an employee benefit plan*. . . ."  29 U.S.C. §§ 1002(7) (emphasis added).  The fiduciary conduct that Plaintiff seeks to enforce, set forth in ERISA §§ 404 and 406, includes certain duties and prohibitions "with respect to *a plan*."  29 U.S.C. §§ 1104, 1106 (emphasis added).  A defendant is only subject to these fiduciary provisions if it has authority or control with respect to assets of a "*plan*."  29 U.S.C. § 1002(21)(A) (emphasis added).  And fiduciary conduct is evaluated in light of the character and aims of a particular plan.  *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996); 29 U.S.C. § 1104(a)(1)(B).  In short, the cornerstone of any private claim under ERISA is that both the plaintiff and the defendant whose conduct is challenged must be acting with respect to *a plan*.

Here, Plaintiff alleges that she is a participant in a "Plaintiff Plan," AC at 15, ¶ 28, but she does not plead the name of the plan, the identity of her employer (the plan sponsor), the identity of the Primary Fiduciary of her plan, her plan's purported contract with JHUSA/JHNY, or whether that contract is currently in effect.  Plaintiff must plead these threshold facts in order to demonstrate "entitlement to relief."  *Iqbal*, 129 S. Ct. at 1950.  For example, in *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009), the Seventh Circuit Court of Appeals affirmed dismissal of ERISA claims where a complaint

36

"lacked critical details" regarding, among other things, plaintiff's status as a party

entitled to sue under ERISA § 502(a)(2).  Accordingly, all of Plaintiff's ERISA

claims should be dismissed.[14]

### B. Plaintiff Fails to Plead that JHUSA/JHNY Have Relevant ERISA Fiduciary Status with Respect to the Challenged Conduct.

Even beyond this facial pleading deficiency, the Amended Complaint should

be dismissed because Plaintiff has not pleaded, nor could she, JHUSA/JHNY's

ERISA fiduciary status with respect to the challenged conduct.

Claims for breach of fiduciary duty and prohibited transactions under

ERISA §§ 404 and 406 may only be asserted against a party that is an ERISA

fiduciary.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993) (affirming

dismissal).  According to the Supreme Court:  "In every case charging breach of

ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was

acting as a fiduciary (that is, was performing a fiduciary function) when taking the

action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Under ERISA § 3(21)(A), a person is a fiduciary:

> To the extent (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct or indirect, with
> respect to any moneys or other property of such plan, or has any authority or

---

[14] Even where defendants could "fill in the blanks" of facts omitted from a
complaint, it is "inequitable" to require them to do so.  *Brecher v. Citigroup Global
Mkts., Inc.*, No. 09-1344, 2010 WL 1291940, at *7 (S.D. Cal. Mar. 29, 2010).

responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  The question of "a party's status as an ERISA fiduciary

is purely a question of law."  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220 (3d

Cir. 2003) (internal citation omitted).  As a matter of law, each of Plaintiff's

asserted bases for ERISA fiduciary status fails.

### 1.    Alleged Ability to Change Investment Options Does Not Confer ERISA Fiduciary Status.

Plaintiff first asserts ERISA fiduciary status because JHUSA/JHNY

allegedly can change the investment options offered under group variable annuity

contracts.  AC at 35-37, ¶¶ 140-48.  This assertion fails.

Under ERISA, a company does not become an ERISA fiduciary merely by

offering a platform of investment options to Primary Fiduciaries and making

changes to that platform over time.  *See, e.g., Hecker v. Deere & Co.*, 556 F.3d

575, 583 (7th Cir. 2009) (affirming dismissal where service provider did not

control the Primary Fiduciary's "negotiation and approval" of its engagement);

*Flacche v. Sun Life Assurance Co. of Can.*, 958 F.2d 730, 733-35 (6th Cir. 1992)

(offering annuity contracts to fund a plan does not create a fiduciary relationship).

"Simply urging the purchase of its products does not make an insurance company

an ERISA fiduciary with respect to those products."  *Cotton v. Mass. Mutual Life*

38

*Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal quotation omitted).[15]

Judge Schiller of the Eastern District of Pennsylvania recently made precisely this point in dismissing ERISA claims in a similar suit.  In *Renfro v. Unisys Corp.*, the court held that even where a service provider retains the ability to control the investment options available to Plan Fiduciaries on its retirement plan platform – in that case by exercising an alleged "veto" power over investment selection – the provider is not a fiduciary as to any plan so long as the Primary Fiduciary can select a different provider's investment platform.  *Renfro,* No. 07-2098, 2010 WL 1688540, at *4 (E.D. Pa. Apr. 26, 2010), *appeal docketed*, No. 10-2447 (3d Cir. May 27, 2010).  As such, the court dismissed the service provider for lack of relevant ERISA fiduciary status.  *See* 2010 WL 1688540, at *5.

The United States Department of Labor ("DOL"), which has regulatory authority over ERISA, also has issued guidance instructing that a service provider's right to change its investment platform does not, in and of itself, confer ERISA fiduciary status.  *See* DOL Adv. Op. 97-16A (May 22, 1997) (the "Aetna

---

[15] Similarly, receipt of fees under the terms of a contract cannot give rise to fiduciary status without an exercise of authority or control over ERISA plan assets to cause such payment.  *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 476-77 (7th Cir. 2007) (pharmacy benefit manager not a fiduciary by virtue of payments from pharmaceutical companies with respect to drugs authorized for ERISA plan); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1130-32 (7th Cir. 1983) (insurer could not be held liable as an ERISA fiduciary for causing a plan to pay it allegedly "unreasonable compensation" where compensation was paid according to contracted rates).

Letter").  In the Aetna Letter, the DOL stated that an insurer may retain the ability to delete or substitute available investments on its platform without becoming an ERISA fiduciary "provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change."  DOL Adv. Op. 97-16A.

These authorities apply here.  Plaintiff does not plead any fact suggesting that the Primary Fiduciary of her plan was unable to select a different provider or different investments for her retirement plan.  Nor does she plead that JHUSA/JHNY deviated from the Aetna Letter procedures.  To the contrary, she affirmatively alleges that Primary Fiduciaries made their own choices with respect to the selection of investment options to be made available to plan participants. *See* AC at 11, ¶ 9.  Plaintiff nowhere alleges, nor could she, that JHUSA/JHNY exercised undirected control over the investment options made available to her plan.  *Cf. Srein*, 323 F.3d at 220-22 ("undirected" authority or control over plan assets gives rise to fiduciary status).  The relevant authority is therefore dispositive and defeats Plaintiff's claim as to JHUSA/JHNY's relevant ERISA fiduciary status as to their platform.

> **2.      JHUSA/JHNY Are Not ERISA Fiduciaries Based on the Allegation that Primary Fiduciaries Just "Rubberstamp" JHUSA/JHNY's Investment Selections.**

Plaintiff next asserts that JHUSA/JHNY are ERISA fiduciaries of the "Plaintiff Plans" because Primary Fiduciaries "rubberstamp" investment option

recommendations made by JHUSA/JHNY in order to avail themselves of

JHUSA/JHNY's Fiduciary Standards Warranty ("FSW") product.  AC at 37-38, ¶¶

149-53.  Plaintiff alleges that this conduct constitutes investment advice giving rise

to fiduciary status under ERISA § 3(21)(A)(ii).  *Id.*  This assertion also fails.

*First*, Plaintiff does not allege that her plan's Primary Fiduciary elected to

utilize the FSW.  As such, the FSW is irrelevant as to her claim.

*Second*, even had she pleaded that the FSW applied to her plan, she could

not plead that JHUSA/JHNY provided investment advice by offering this product.

ERISA § 3(21)(A)(ii) provides that a person is an ERISA fiduciary if he renders

"investment advice for a fee or other compensation, direct or indirect, with respect

to [assets of a plan]."  29 U.S.C. § 1002(21)(A)(ii).  Under DOL regulations, a

person is considered to be a fiduciary by reason of rendering investment advice

only if, among other things, such person renders "individualized investment advice

to the plan based on the particular needs of the plan," and the advice is rendered

"on a regular basis" and "pursuant to a mutual agreement, arrangement or

understanding . . . that such [advice] will serve as a primary basis for investment

decisions with respect to plan assets."  29 C.F.R. § 2510.3-21(c)(1)(ii).

Plaintiff does not allege facts plausibly suggesting the requirements of the

investment advice regulation are satisfied.  Plaintiff does not allege that

JHUSA/JHNY provide individualized advice to any particular plan.  To the

41

contrary, Plaintiff alleges that the FSW is offered on the same basis to all plans.

AC at 37-38, ¶¶ 149-53. Plaintiff also does not allege that the purported advice is

provided on a regular basis. Further, Plaintiff does not allege, nor could she, any

mutual agreement or understanding between JHUSA/JHNY and her plan's Primary

Fiduciary that any purported advice rendered by JHUSA/JHNY would serve as a

primary basis for investment decisions with respect to that plan.

Accordingly, Plaintiff's allegations of ERISA fiduciary status based on

alleged fiduciary investment advice fail.

### 3. JHUSA/JHNY Are Not ERISA Fiduciaries Because They Maintain Assets in a Separate Account.

Plaintiff's final alleged basis for JHUSA/JHNY's ERISA fiduciary status

also fails because maintaining assets in an insurance company separate account

does not in and of itself give rise to fiduciary status under 29 C.F.R. § 2550.401c-

1(d)(2)(c) as Plaintiff asserts in her Amended Complaint at 38-39, ¶¶ 154-58.[16]

This regulation does not purport to establish fiduciary status, nor could it.

Instead, it addresses whether an insurer's assets "constitute plan assets" under

ERISA. 29 C.F.R. § 2550.401c-1(a)(1). Moreover, the specific subsection to

which Plaintiff cites simply sets forth disclosures necessary to take advantage of a

---

[16] 29 C.F.R. § 2550.401c-1(d)(2)(c) states that, "[i]n general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account (other than a separate account registered under the Investment Company Act of 1940) to the extent that the investment performance of such assets is passed directly through to the plan policyholders."

42

rule applicable to certain "transition policies" issued before 1999, and creates no

substantive rule of law.  29 C.F.R. § 2550.401c-1(d)(2) ("the disclosure [required

by paragraph (c)(3) must] include[] the following information").  This disclosure

required by 29 C.F.R. § 2550.401c-1(d)(2)(c) itself simply refers back to "ERISA's

fiduciary responsibility provisions" which, in turn, require that a party is an ERISA

fiduciary only to the extent that he exercises authority or control over management

or disposition of plan assets, provides investment advice, or exercises discretionary

authority or control over plan administration.  *See* 29 U.S.C. § 1002(21)(A).

Plaintiff's conclusory assertion that 29 C.F.R. § 2550.401c-1(d)(2)(c)

establishes blanket fiduciary status without regard to ERISA § 3(21)(A) fails.

### C.   Plaintiff's ERISA Claims Should Be Dismissed Because She Fails to State a Claim.

Additionally, Plaintiff fails to state a claim for any breach of ERISA

fiduciary duty or prohibited transaction because she fails to allege that the total

fees charged to her plan were unreasonable in light of the total services rendered.

### 1.   Plaintiff Fails to Plead Any Fiduciary Breach.

To state a claim for breach of ERISA fiduciary duty for excessive fees, a

plaintiff must plead that the total fees paid by her plan were unreasonable in light

of all of the services provided.  *See Hecker*, 556 F.3d at 586 ("total fee . . . is the

critical figure for someone interested in the cost").  Moreover, there is no

requirement to select the cheapest services:  "ERISA does not require fiduciaries to

get the best deal imaginable for the Plan; it requires them to act carefully, skillfully, prudently, diligently, and solely in the interest of participants and beneficiaries." *Renfro*, 2010 WL 1688540, at *6; *see also Hecker*, 556 F.3d at 586 ("nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems")); *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009).[17]

Plaintiff's allegations do not meet this test. Although Plaintiff asserts that fees under the JHUSA/JHNY group variable annuity contracts exceed the fees charged to a standalone mutual fund, AC at 53-54, ¶ 197, she does not allege that the services her plan received under its group variable annuity contract are identical to those received by direct investors in a mutual fund. Nor could she. Her own pleading alleges that JHUSA/JHNY "(A) provide recordkeeping services, (B) provide 'plan installation' services (if necessary), (C) provide for the enrollment of participants under such plans, (D) distribute educational materials, (E) provide customer service and (F) provide other participant services." AC at 28, ¶ 98. These allegations alone refute Plaintiff's unsupported assertion that fees are

---

[17] For this reason alone, Count VII's challenge to a fund that incurred a higher expense ratio than a competitor's, Vanguard, should fail. *Cf. Amron*, 464 F.3d at 345-46 (upholding dismissal of ICA § 36(b) claims based on allegation that Vanguard offered a comparable fund with cheaper fees).

LIBA 2094803

the only difference in investing in a mutual fund outside of a JHUSA/JHNY group variable annuity contract.  AC at 34, ¶ 136.

The Amended Complaint also fails entirely to compare the totality of the services provided under a group variable annuity contract to the aggregate fees charged.  Instead, Plaintiff relies on an unwarranted inference:  that multiple fees necessarily mean duplicative fees.  AC at 95-110, Counts I-IV.  The details of the JHUSA/JHNY fee structure are not relevant; what matters are the total fees paid for the total services rendered.  *See Hecker*, 556 F.3d at 586.  Just as Plaintiff's ICA claims fail by identifying and challenging isolated portions of fees without regard to total advisory fees or aggregate contract charges, similarly, her ERISA claims all fail for focusing on individual components without regard to the total fees paid for the total services rendered.

### 2.    Plaintiff Fails to Plead Any Prohibited Transaction.

For these same reasons, Plaintiff's claims in Counts I, II, III, V, and VI of prohibited transactions under ERISA §§ 406(a) and 406(b) also should fail.

ERISA § 408(c)(2) provides that "[n]othing in Section [406] shall be construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered . . . ."  29 U.S.C. § 1108(c)(2).  Because Plaintiff does not challenge the reasonableness of total compensation for a bundled

45

service (and does not allege that any portion of the JHUSA/JHNY service is sold on an unbundled basis), all ERISA §§ 406(a) and 406(b) claims also must fail.

The prohibited transaction claims in Counts I and II should be dismissed for the additional reason that the Amended Complaint expressly alleges that the challenged Sales and Service Fees are not paid to JHUSA/JHNY, but instead are "paid to financial intermediaries."  AC at 12, ¶ 18.  ERISA § 406(b)(1) only prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."[18]  29 U.S.C. § 1106(b)(1).  Because Plaintiff's allegations disprove that any Sales and Service Fee benefitted JHUSA/JHNY's "own account," these claims fail.

The self-dealing allegations in Counts III, V, and VI also fail for the independent reason that the challenged 12b-1 fees, revenue sharing, and allegedly excessive advisory fees are not paid from assets of any ERISA plan.  The Amended Complaint alleges, in part, that 12b-1 fees and revenue sharing payments are plan assets.  *See* AC at 105, ¶¶ 10-11, 113, ¶ 8, and 118, ¶ 15.  But prohibited transaction liability under ERISA § 406(b) only lies with respect to fiduciary conduct, *see* 29 U.S.C. § 1106(b) ("[a] fiduciary with respect to a plan shall not

---

[18] For its part, ERISA § 406(b)(3) prohibits a fiduciary from "receive[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b)(3).

LIBA 2094803

. . ."), and conduct is fiduciary in nature only when it is taken with respect to plan assets. *See* 29 U.S.C. 1002(21)(A)(i) ("a person is a fiduciary with respect to a plan to the extent . . .").[19]

Courts and the DOL agree that "the sums paid" from a mutual fund to its investment adviser "do not constitute plan assets."  Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, *Hecker v. Deere & Co.*, No. 07-3605, at 22 (7th Cir. Apr. 2, 2008); *Hecker*, 556 F.3d at 584 (fees drawn from mutual fund assets are not plan assets).  As such, when a mutual fund pays its adviser, and any portion of such revenue is shared with another service provider, the shared revenue does not become a plan asset.  *See Ruppert v. Principal Life Ins. Co.*, No. 07-00344, 2009 WL 5667708, at *20 (S.D. Iowa Nov. 5, 2009) (revenue sharing payments are not plan assets for purposes of ERISA).  Therefore, because the fees challenged in Counts III, V, and VI are not plan assets, the prohibited transaction claims in those counts should fail.

### D.  Plaintiff Fails to Plead that the Primary Fiduciary of Her Plan Has Improperly Refused to Sue JHUSA/JHNY.

All of Plaintiff's ERISA claims also should be dismissed because Plaintiff has not pleaded that she made a pre-suit demand on her Primary Fiduciary.

---

[19] Additionally, ERISA §§ 406(b)(1) and (b)(3) by their very terms only apply to assets of a plan.

Plaintiff purports to bring claims under ERISA § 502(a)(2), which authorizes "actions *on behalf of a plan.*"  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008) (emphasis added); *see* AC at 17, ¶ 36 (asserting "derivative action" on behalf of plan).[20]  Section 502(a)(2) "codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust."  *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 296 (3d Cir. 2007).  As explained below, under this classic trust law process, a beneficiary may sue a third party on behalf of the trust only if the trustee improperly refuses to bring that action on behalf of the trust.  *See* Restatement (Second) of Trusts ("Restatement") § 282(2) (1959); *id.* cmt. (e).  Applying this rule in the ERISA context requires that a participant may sue a third party, such as John Hancock, only if the plan's Primary Fiduciary has improperly refused to do so.

In interpreting ERISA, courts are to be "guided by principles of trust law." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).[21]  Under trust

---

[20] In relevant part, ERISA § 502(a)(2) authorizes claims by plan fiduciaries and participants "for appropriate relief under [ERISA § 409(a)]," which in turn makes breaching fiduciaries liable "to the plan" for losses caused by their breach.  29 U.S.C. §§ 1132(a)(2), 1109(a).

[21] *See also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865, 867 (2009) ("law of trusts that serves as ERISA's backdrop") (internal quotations omitted); *Reich v. Compton*, 57 F.3d 270, 278 n.12 (3d Cir. 1995) (Alito, J.) ("Congress engrafted ERISA" upon "the common law of trusts"); *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) ("the common law of trusts in fact guides us" in interpreting ERISA).

LIBA 2094803

law, "in most cases, a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust." *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990) (citation omitted).[22]  Although a beneficiary may sue on behalf of the trust where "the trustee improperly refuses or neglects to bring an action against the third person," Restatement § 282(2),[23] this exception applies only if the beneficiary has first made a demand on the trustee to sue.  *See, e.g., Firestone v. Galbreath*, 976 F.2d 279, 283-84 (6th Cir. 1992), *aff'd in relevant part and rev'd in part*, 25 F.3d 323 (6th Cir. 1994).

In the ERISA context, application of this rule requires that suits on behalf of the plan against third parties ordinarily be brought by the Primary Fiduciary, to whom ERISA allocates primary authority over plan administration and assets, similar to the authority of a common law trustee.  *See supra* at 10-11 (discussing ERISA provisions concerning plan governance and Primary Fiduciaries).  "Under traditional trust law doctrine, incorporated into ERISA . . . if under the circumstances it is prudent [for the Primary Fiduciary] to refrain from bringing an action . . . the beneficiaries can neither compel him to sue nor can they themselves

---

[22] *See also* Restatement § 282 cmt. (a) (interest of beneficiary against third parties "ordinarily . . . is protected . . . through proceedings brought against them by the trustee and not by the beneficiary"); 5 Scott and Ascher on Trusts, § 28.2 at 1941 (2008) ("[i]t is for the trustee and not for the beneficiaries to sue the third party").

[23] "If the trustee does not commit a breach of trust in failing to bring an action against the third person . . . the beneficiary cannot maintain a suit against . . . the third person."  Restatement § 282, cmt. (e).

maintain a suit against the third party." *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986). The Primary Fiduciary's fundamental responsibility to manage and control the plan's administration and assets necessarily includes determining whether to bring suit on behalf of the plan against the service providers it has engaged and whom it can terminate. Indeed, any right of action the plan may have is itself a plan asset subject to the Primary Fiduciary's management and control. *See Rahm v. Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (plan's claim against employer is a plan asset).[24]

Permitting participants to sue third-party providers under ERISA § 502(a)(2), where the Primary Fiduciary has not improperly refused to do so, would disrupt ERISA's carefully-crafted fiduciary framework. Unlike a plaintiff participant, the Primary Fiduciary has: (i) authority under a plan governance structure established by the sponsoring employer consistent with ERISA; (ii) experience, understanding, and expertise with respect to the plan's engagement of the third party; (iii) a view of the relevant issues from the perspective of the plan as a whole; (iv) an obligation to comply with ERISA's fiduciary duties – including the duty of prudence – in prosecuting any action brought on behalf of the plan, *see* ERISA § 404(a); and (v) accountability (*i.e.*, potential liability) if any of those

---

[24] *Cf.* Restatement § 82 (chose in action a trust asset), § 177 (trustee has duty "to take reasonable steps to realize on claims which he holds in trust"), § 192 (trustee power to compromise or abandon claims).

50

duties are breached, *see* ERISA § 409(a).[25]  29 U.S.C. §§ 1104(a), 1109(a).

Because Plaintiff does not allege that she demanded that the Primary Fiduciary of her plan bring suit, and that the Primary Fiduciary has improperly refused to do so, her ERISA claims must be dismissed.

## V.   <u>JHD and JHF Should Be Dismissed.</u>

In addition to the infirmities of each Count of the Amended Complaint as to all defendants, JHD and JHF should also be dismissed for the independent reason that the relief Plaintiff seeks as to them is not available under ERISA.

ERISA § 502(a)(3) provides only for equitable relief.  *See* 29 U.S.C. § 1132(a)(3) (conferring a right of action to "enjoin any act or practice" violating ERISA or "to obtain other appropriate equitable relief").  Claims for relief that seek "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money" are considered legal, rather than equitable, in nature, and may not be brought under ERISA § 502(a)(3).  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotations omitted).  Section

---

[25] *Cf. Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (because Primary Fiduciaries need the latitude "to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes," issues in plan administration should generally be "first . . . address[ed] . . . to the fiduciaries to whom Congress . . . assigned the primary responsibility" for such matters); *Mertens v. Kaiser Steel Ret. Plan*, 744 F. Supp. 917, 922 (N. D. Cal. 1990) ("[t]here is a clear protective benefit in adverting the trustee to the potential need to seek redress for injuries to the plan") (internal quotations omitted).

502(a)(3) restitution lies only "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* Where a disgorgement claim does not identify a specific *res* in a defendant's possession or control, traceable to the alleged harm, the claim is characterized by courts as a claim for money damages and cannot be brought under ERISA § 502(a)(3). *See Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 F. App'x 169, 171 (3d Cir. 2009); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. 03-3924, 2007 WL 2071876, at *12 (E.D. Pa. July 16, 2007).

Here, the only count naming JHD and JHF – Count III – seeks disgorgement of 12b-1 fees under ERISA § 502(a)(3). *See* AC at 107, ¶ 15. But Plaintiff makes no allegations that the challenged payments made to JHD and JHF are traceable "to particular funds" currently in their possession, nor could she. Therefore, her request for disgorgement under ERISA § 502(a)(3) should fail. Since this is the only relief requested from JHD and JHF, they should be dismissed.

## VI. Either JHUSA or JHNY Should Be Dismissed.

In all events, one of JHUSA or JHNY should be dismissed from the case because Plaintiff lacks standing to assert simultaneous claims against both JHUSA and JHNY on these pleaded facts.

Plaintiff alleges that JHUSA writes business in all states but New York, while JHNY writes business in New York state only.  AC at 17-18, ¶¶ 40-41. Plaintiff fails to allege that she participated in one or more plans that received services from both JHUSA and JHNY.  The mere fact that there may be putative class members who purchased contracts similar to the one purchased by Plaintiff's Primary Fiduciary for her plan from JHUSA and JHNY does not help Plaintiff satisfy the standing requirements under Article III.  "[S]tanding cannot be predicated on an injury which plaintiff has not suffered, nor can it be acquired through the back door of a class action." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461 (internal quotations omitted); *see also Forsythe v. Sun Life Fin.*, *Inc.*, 417 F. Supp. 2d 100, 119 (D. Mass. 2006) ("plaintiffs may not rely on the rules-based class action procedural device as a method to bootstrap themselves into standing they lack merely because in theory some member of the putative class, if it were to be certified, might have a claim . . . .") (internal quotations omitted). Thus, Plaintiff states no connection – and no claim – as to at least one of these entities, and that entity should be dismissed.

LIBA 2094803

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order granting their Motion to Dismiss Plaintiff's Amended Complaint and dismissing Plaintiff's claims with prejudice.

Dated:  July 16, 2010                    Respectfully Submitted,
Newark, NJ

                             s/  Kevin J. McKenna
                         Kevin J. McKenna, Esq.
                         GIBBONS P.C.
                         One Gateway Center
                         Newark, NJ  07102-5310
                         Telephone:  (973) 596-4500
                         Facsimile:  (973) 596-0545
                         KMcKenna@gibbonslaw.com

                         James O. Fleckner, Esq. (admitted *pro hac vice*)
                         Alison V. Douglass, Esq. (admitted *pro hac vice*)
                         GOODWIN PROCTER LLP
                         Exchange Place
                         Boston, MA  02109
                         Telephone:  (617) 570-1000
                         Facsimile:  (617) 523-1231
                         jfleckner@goodwinprocter.com
                         adouglass@goodwinprocter.com

                         **Attorneys for John Hancock Life Insurance
                         Company (U.S.A.), John Hancock Life
                         Insurance Company of New York, John
                         Hancock Investment Management Services,
                         LLC, John Hancock Funds, LLC, and John
                         Hancock Distributors, LLC**

54