UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 2:10-cv-01655 WJM-MF

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock Trust and John Hancock Funds II; DANIELLE SANTOMENNO, individually and on behalf of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by John Hancock Life Insurance Company (U.S.A.), or John Hancock Life Insurance Company of New York, and the participants and beneficiaries of all such ERISA covered employee benefit plans, and DANIELLE SANTOMENNO individually and on behalf of any person or entity that is a party to, or has acquired rights under, an individual or group variable annuity contract that was issued/sold by John Hancock Life Insurance Company (U.S.A.) or John Hancock Life Insurance Company of New York, where the underlying investment was a John Hancock proprietary mutual fund contained in the John Hancock Trust

    Plaintiffs,

    vs.

John Hancock Life Insurance Company (U.S.A.), John Hancock Life Insurance Company of New York, John Hancock Investment Management Services, LLC, John Hancock Funds, LLC, and John Hancock Distributors, LLC,

    Defendants.

## BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Robert L. Lakind, Esquire
Robert E. Lytle, Esquire
Arnold C. Lakind, Esquire
Mark A. Fisher, Esquire
Szaferman, Lakind, Blumstein &
Blader, PC
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
(609) 275-0400

Moshe Maimon, Esquire
Levy, Phillips & Konigsberg
101 Grovers Mill Road
Lawrenceville, New Jersey 08648
(609) 720-0400
Attorneys for Plaintiffs

# TABLE OF CONTENTS

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.   Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Legal Argument

   POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       PLAINTIFF'S ERISA CLAIMS ARE VIABLE BECAUSE
       JHUSA IS A FIDUCIARY AND IT VIOLATED ERISA

       A.   Plaintiff Has Plead Sufficient Facts to
           Demonstrate Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.   Plaintiff Has Established that JHUSA
           is an ERISA Fiduciary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.   Plaintiff Has Adequately Stated Her ERISA Claims . . . . . . . 21

       D.   A Pre-Suit Demand on the "Primary Fiduciary" Is Not
           Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

       E.   Equitable Relief is Available Against JHD and JHF . . . . . . . 33

       F.   Plaintiffs Dismisses Her Claims Against JHNY . . . . . . . . . . 33

   POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

       PLAINTIFF HAS STANDING TO PURSUE, AND
       HAS STATED CLAIMS UNDER ICA §36(b)

       A.   As a Security Holder of the JHT and the
           JHFII, Plaintiff Has Standing to Bring a
           Derivative Claim Under ICA §36(b) . . . . . . . . . . . . . . . . . . 33

B.    Plaintiff' Has Standing to Sue On Behalf Of
      The JHT and JHFII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

C.    Plaintiff Has Stated A Claim under ICA §36(b) . . . . . . . . . 40

D.    Plaintiff's Claim is Timely . . . . . . . . . . . . . . . . . . . . . . . . . . 45

POINT III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE
INVESTMENT COMPANY ACT OF 1940

A.    The Plaintiff Has an Express Private Right of Action Under
      ICA§47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

B.    Plaintiff Is Entitled to the Remedies Available Under ICA
      §47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

C.    The Plaintiff Has Sufficiently Alleged a
      Violation of ICA§26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

### TABLE OF AUTHORITIES

<u>Abromowitz v. Posner</u>, 672 F.2d 1025 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 54

<u>Acosta v Pacific Enterprises</u>, 950 F2d. 611 (9th Cir. 1991) . . . . . . . . . . . . . . . 27

<u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

<u>Armon v. Morgan Stanley Inv. Advisors Inc.</u>, 464 F.3d 338 (2d. Cir. 2006) . . . 44

<u>Ashcroft v. Iqbal</u>, ___U.S. ___, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . 51

<u>Bank of New York v. Janowick</u>, 430 F.3d 264 (6th Cir. 2007) . . . . . . . . . . . . . . 52

<u>Barrett v. Van Kampen Merritt, Inc.</u>, No. 93 C 366,
      1993 WL 95382, (N.D. Ill., Mar. 30, 1993) . . . . . . . . . . . . . . . . . . . . . . . 38

Batra v. Investors Research Corp., No. 89-0528-CV-W-6,
        1992 WL 278688 (W.D. Mo., Oct. 4, 1991) . . . . . . . . . . . . . . . . . . . . . . . 37, 38

Benak v Alliance Capital Mgmt. L.P.,
        No. 01-5734 2004 WL 1459249 (D.N.J., Feb. 9, 2004) . . . . . . . . . . . 40, 44

Beye v. Horizon BC/BS of New Jersey,
        568 F.Supp. 2d 556 (D. N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bixler v. Central Penn. Teamsters, 12 F.3d 1292 (3rd Cir. 1993) . . . . . . . . . . . . . 11

Boeckman v A.G. Edwards, Inc., No. 05-658-GPM,
        2007 WL 4225740 (S.D. Ill., Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . 22, 24

Braden v. Walmart Stores, Inc.,
        588 F.3d 585 (8th Cir. 2009) . . . . . . . . . .   21,22,24,25,26,28,29,30,31,32,40

Brever v. Federated Mgmt. Co. Of Pa., 233 F.R.D. 429 (W.D. Pa. 2005) . . . . . . 36

Burlington N. R.R. Co. v Hyundai Merch. Marine Co., Lt.,
        63 F.3d 1227 (3rd Cir 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cannon v. University of Chicago, 441 U.S. 677 (1979) . . . . . . . . . . . . . . . . . . . . 48

Charters v. John Hancock Life Ins. Co.,
        583 F.Supp.2d 189 (D. Mass. 2008) . . . . . . . . . . . . . . . . . 2, 4, 13-18, 20, 25

Cotton v Mass. Mutual Life Ins. Co., 402 F.3d. 1267 (11th Cir. 2005) . . . . . . . . 19

Coan v Kaufman, 457 F.3d 250 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 32

Curran v. Principal Mgm't Corp., No. 4:09-cv-00433,
        2010 WL 2889752 (S.D.Iowa, Jun. 8, 2010) . . . . . . . . . . . . . . . . 34, 35, 41

Donovan v. Mercer, 747 F.2d 304 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 14

Dreyfus Mutual Funds Fee Litig., 428 F.Supp.2d 342 (W.D. Pa. 2002) . . . . . . . 41

First Jersey Nat'l Bank v Brown, 951 F.2d. 564 (3rd Cir. 1991) . . . . . . . . . . . . . 14

Flacche v Sun Life Assurance Co. of Can., 958 F.2d. 730 (6th Cir 1992) . . . . . . 19

Gartenberg v. Merrill Lynch Asset Mgmt. Inc.,
      694 F.2d 923 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41, 43

Gilliam v. Edwards, 492 F.Supp. 125 (D. N.J. 1980) . . . . . . . . . . . . . . . . . . . . . 26

Goldenberg v. Indel, Inc.,
      Civ. A. 09-5202 (JBS) (D.N.J., Sept. 17, 2010) . . . 16, 20, 25, 26, 28, 31, 33

Great-West Life & Annuity Ins. Co. v Knudson, 534 U.S. 204 (2002) . . . . . . . 32

Haddock v Nationwide Fin. Servs.,
      419 F. Supp. 2d. 156 (D. Conn. 2006) . . . . . . . . . . 14-17, 20, 24, 29, 30, 31

Haddock v Nationwide Fin. Servs., Inc.,
      262 F.R.D. 97 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 19, 20

Hamilton v. Allen, 396 F.Supp.2d 545 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . 52

Harris Trust and Savs. Bank v. Salomon Smith Barney,
      530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 33

Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244 (3rd Cir. 2002) . . . . . . . . . 32

Hecker v Deere & Co., 556 F 3d 575 (7th Cir. 2009) . . . . . . . . . . . . . . . 14, 25, 29

In re AEP ERISA Litig., 327 F. Supp. 2d 812 (S.D. Ohio 2004) . . . . . . . . . . . . 32

In re Evergreen Mutual Funds Fee Litig.,
      423 F.Supp.2d 249 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

In re Franklin Mutual Funds Fee Litig., 478 F.Supp.2d 677 (D.N.J. 2007) . . 37, 45

In re Franklin Mut. Funds Fee Litig., 388 F.Supp.2d 451 (D.N.J. 2005) . . . . . . . 39

In re Lord Abbett, 407 F.Supp. 2d 616 (D.N.J. 2005),
    vacated on other grounds, 463 F. Supp. 2d 505 (D. N.J. 2006) . . . . . . . . . 40

In re Mutual Funds Investment Litig.,
    519 F.Supp.2d 580 (D. Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

In re Regions Morgan Keegan ERISA Litigation,
    692 F.Supp.2d. 944 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . 11, 14, 25-27

In re Unisys Corp. Retiree Medical Benefits ERISA Litig.
    579 F.3d 220 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Unisys Savs. Plan Litig., 74 F.3d 420 (3rd Cir. 1996) . . . . . . . . . . . . . . . 21, 22

John Hancock Mut. Life Ins. Co. v Harris Trust and Savs. Bank,
    510 U.S. 86 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17, 19, 27

Jones v. Harris Assoc., ___U.S. ___, 130 S.Ct. 1418 (2010) . . . . . . . . . . . . . . . 41

Kanawi v Bechtel, Corp., 590 F.Supp.2d. 1213 (N.D. Cal. 2008) . . . . . . 25, 28, 31

Kaufman v Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970) . . . . . . . . . . . . 36, 39

Kayes v Pacific Lumber Co., 51 F.3d 1449 ( 9th Cir.)
    cert. den. 516 U.S. 914 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

LaRue v. DeWolff, Boberg & Assoc., 552 U.S. 248 (2008) . . . . . . . . . 11, 25, 31

Midwest Comty. Health Servs. v Am.United Life Ins. Co.,
    255 F.3d 374 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 30

Mutchka v. Harris, 373 F.Supp. 2d 1021 (C.D. Cal 2005) . . . . . . . . . . . . . . . . . 38

Norman v. Saloman Smith Barney, 350 F.Supp2d 382 (S.D.N.Y. 2004) . . . . . . 37

Olmstead v. Pruco Life Ins. Co. of New Jersey,
    283 F.3d 429 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

Pension Fund Mid Jersey Trucking Indus. Local 701 v Omni Funding Group,
    731 F. Supp. 161 (D. N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phones Plus Inc. v. Hartford Fin. Svs. Group, Inc.,
    No. 2:06CV01835(AVC), 2007 WL 3124733
    (D.Conn., Oct. 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20, 29-31

Procacci v Drexel Burnham Lambert, Inc.,
    C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) . . . . . . . . 20

Raytech Corp. v White, 54 F.3d 187 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 13

Regions Morgan Keegan ERISA Litigation,
    692 F.Supp.2d 944 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . 14, 25, 26, 27

Renfro v Unisys Corp., No. 07-2098,
    2010 WL 1688540 (E. D. Pa., Apr. 26, 2010)
    app. docketed No. 10-2447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ross v. Benhard, 396 U.S. 531 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Ruppert v Principal Life Ins. Co., No. 07-00344,
    2009 WL 5667708 (S.D. Iowa, Sep 5, 2009) . . . . . . . . . . . . . . . . . . . . . . 31

Schulist v. Blue Cross of Iowa, 717 F.32d 1127 (7th Cir. 1983) . . . . . . . . . . . . . 18

Sharp Elecs. Corp. v Metro Life Ins Co., 578 F.3d 505 (7th Cir 2009) . . . . . . . . 12

Stanton  v. Shearson Lehman/American Express,
    631 F.Supp. 100 (N.D. Ga. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Stegall v. Ladner, 394 F.Supp. 2d 358 (D.Mass. 2005) . . . . . . . . . . . . . . . . . . . 38

Sullivan v. Stroop,  496 U.S. 478  (U.S. 1990) . . . . . . . . . . . . . . . . . . . . . . . 37, 38

Tibble v. Edison Int'l., Cv. 07-5359 SVW,
    2010 WL 2757153 (C. D. Cal., Jul. 9, 2010) . . . . . . . . . . . . . . . . . . . . 24, 25

Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11 (1979) . . . . . . . . . . . 50

Varity Corp. v. Howe, 516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Williams v. Bank One Corp., No. 03 C 8561,
    2003 WL 22964376  (Dec. 15, 2003, N.D.Ill) . . . . . . . . . . . . . . . . . 38, 39

## RULES OF COURT

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## STATUTES

ERISA §3(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 23

ERISA §401(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

ERISA §404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

ERISA §406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 27

ERISA §408(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ERISA §§409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ERISA §§502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IAA §215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

ICA §26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47-49, 53-55

ICA §36(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-45

ICA §47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47-50, 54

Securities and Exchange Act of 1934, Section 3(a)(10) . . . . . . . . . . . . . . . . . . . 35

Securities and Exchange Act of 1934, Section 3(a)(12)(A)(iv) . . . . . . . . . . . . . 35

## REGULATIONS

29 <u>C.F.R.</u> 2550.401c-1(d)(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Other Authorities

<u>In Matter of John Hancock Investment Management Services, LLC, et al.</u>
        SEC No. 3-12644, June 25, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

<u>Owens Illinois, Inc.</u> SEC No-Action Letter Nov. 4, 1994, 1995 WL 693324 . . . 35

SEC Release No. 33-6188, 1980 WL 29482 . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# STATEMENT OF THE CASE

## A.    Introduction

This brief is submitted in opposition to a motion to dismiss the putative class action and derivative complaint filed by Danielle Santomenno against Defendants, John Hancock Life Insurance Company (U.S.A.) (JHUSA), and its subsidiaries, John Hancock Life Insurance Company of New York (JHNY), John Hancock Investment Management Services, LLC (JHIMS), John Hancock Funds, LLC (JHF) and John Hancock Distributors, LLC (JHD).  This case arises from excessive fees extracted by Defendants from group and individual annuity contracts issued by JHUSA.[1]

Plaintiff's First Amended Class Action Complaint (AC) contains nine Counts. Counts I-VII arise under the Employee Retirement Income Security Act of 1974 (ERISA) and relate to Defendants' operation of their group variable annuity contracts; Counts VIII and IX arise under the Investment Company Act of 1940 (ICA) and are attributable to JHUSA's operation of its group and individual annuity contracts, and relate to excessive fees charged by its subsidiary, JHIMS.[2]  The

---

[1]  Although widely sold by JHUSA, Defendants have acknowledged to the FINRA (formerly the NASD)  that the product is only suitable in limited circumstances (Declaration of Robert Lakind, ¶2, Exh. A p. 3).

[2]  The organization of the Defendants' brief is inconsistent with the order of the Counts in the AC.  This brief follows the organization of the AC.

threshold question for resolution of Plaintiff's ERISA claims is whether JHUSA is a fiduciary to 401(k) plans operated through its group annuity contracts. In <u>Charters v. John Hancock Life Ins. Co.</u>, 583 F.Supp.2d 189 (D. Mass. 2008) (<u>Charters</u>), the Court answered this question in the affirmative with regard to a substantially identical JHUSA 401(k) plan.  For this and other reasons stated below, JHUSA is a fiduciary.

Defendants' principal challenge to Plaintiff's ICA claims is based on standing. As a security holder of two registered investment companies, Ms. Santomenno has standing to advance claims under Count VIII. As a party or person who has acquired rights under a JHUSA annuity contract, she may advance claims under Count IX.

**B.    Factual Background**

**1.    The Fund Selection Process**

JHUSA operates 401(k) plans through its group annuity contracts for small and medium size employers (AC¶96).  Under JHUSA's contracts, plan participants (i.e. Plaintiff) invest their retirement savings in a menu of funds selected by JHUSA (AC¶99).  The process begins with JHUSA's selection of this menu from over 100 of its proprietary funds and several independent funds (AC¶¶115-16).  Promising to exercise great care, JHUSA claims the funds

> 1. [a]re selected and maintained by standards that equal or exceed the ERISA prudent man requirements for investments [,] 2. [a]re appropriate for long-term investors [,and] 3. [o]ffer a broad range of investment alternatives. (Declaration

of Robert Lakind ("Decl. RL"), ¶3, Exh. B p.1).

The menu is generally comprised of 29 funds, at least 19 are John Hancock funds, the remaining 10 are independent funds (JHUSA receives fees from investments in ll funds) (AC¶¶115-116 and 176).  From this menu, an employer may then offer all or some of the 29 funds selected by JHUSA (AC¶117).  However, JHUSA provides a free Fiduciary Standards Warranty (FSW) only to employers who offer 19 select John Hancock funds (AC¶149-51). Ms. Santomenno's menu offered the 19 John Hancock funds (AC¶116).  The FSW obligates JHUSA to defend the employer against ERISA claims, except for claims that "any expenses paid directly or indirectly by the plan are unreasonable" (Decl. RL, ¶4, Exh. C, p.2).

JHUSA's involvement with the construction of the investment menu continues after the initial selection. JHUSA retains the authority to add and delete mutual funds available to all plans, and has exercised this authority on several occasions (AC¶¶140-145).  In addition, JHUSA promises that:

> Twice per year you will receive our award winning FundCheck Fund Review Scorecard, which presents the results of our most recent due diligence analysis of all investment options offered through your plan. **It also highlights any Fund changes....** FundCheck[TM] is a trademark of John Hancock Life Insurance Company" (U.S.A.)(Def. Exh. H, p. 885) (Emphasis added).

## 2.    The Operation of the JHUSA Group Annuity

A JHUSA group annuity contract differs from a traditional 401(k) plan in two

general ways. First, when participants elect to invest in a mutual fund offered in the JHUSA plan, their investments are first passed through a sub-account that corresponds to the desired mutual fund. <u>Charters</u>, 583 F. Supp. 2d at 191. The sub-accounts are accounting mechanisms; one for each underlying mutual fund. JHUSA provides three different types of sub-accounts for investments: (1) sub-accounts where the underlying mutual fund is a John Hancock proprietary fund that has been cloned from an independent mutual fund (AC, Table I); (2) sub-accounts where the underlying fund is an original John Hancock mutual fund (AC, Table II) and; (3) sub-accounts in which the underlying mutual fund is independent of John Hancock (AC, Table III). Each sub-account cumulates the funds from all retirement plans intended for investment in the corresponding underlying mutual fund, and the sub-account's performance substantially tracks that of the underlying mutual fund (AC¶138).

The second difference between a 401(k) investment through a JHUSA contract and one into a mutual fund is that participants in a JHUSA plan pay far higher fees for no added benefits (AC¶12).

### 3.    JHUSA's Fees Were Excessive-General Explanation

JHUSA charges plan sponsors a contract level fee and charges participants additional fees for their investments into each of the sub-accounts.  Only the latter fees, which are derived from an Expense Ratio (or ER), is at issue in this litigation.

The ER is charged on an annual basis and, depending on the investment option, ranges from 1.06% to 2.11% of a sub-account balance (AC, Table I-III). While the ER varies among the sub-accounts, it significantly exceeds the expenses paid by others who invest directly in an underlying mutual fund (AC¶197).  By way of example, the investment of a person who selects the JHUSA Mid Value Investment Option would be allocated to a sub-account for that fund, a clone of an independent mutual fund.  This sub-account has an ER of 1.63% (AC, Table I).  The ER for the John Hancock fund which underlies that sub-account is 1.13%. Id.  The ER for the fund from which the John Hancock Fund was cloned, the T.Rowe Price Mid Cap Value Fund, is .83%. Id. Therefore, a 401(k) participant pays, by way of annual expenses, twice as much as an individual who invested directly in the T.Rowe Price mutual fund.  This pattern holds with regard to every single investment option offered under JHUSA's annuity contract.   With respect to the sub-accounts where the underlying investment is a John Hancock fund, this problem is exacerbated by the fact that a participant pays two advisory fees: (1) an appropriate fee to its sub-advisor and (2) a substantially greater and inappropriate fee to a JHUSA subsidiary, JHIMS (AC¶¶268-89) (AC, Tables I-III).

### 4.    The Specific Fees That Are Excessive

The annual Expense Ratio of each sub-account is comprised of three fees, each

excessive. The first is the Fund Expense Ratio, or FER, which is either identical, or very close, to the Total Expense Ratio of an underlying mutual fund (AC¶183,Tables I-III).   The second component of the ER is the AMC, or the Administrative Maintenance Charge (AC¶184, Tables I-III). The third component is the S&S, or Sales and Service fee; it equals .50% (AC¶182).

### a.     The Excess and Illusory AMC Fees

The AMC, addressed in Count VI, allows JHUSA to convert revenue sharing payments that, by law, must be paid to a plan.  These revenue sharing payments are made to JHUSA by the advisors to the 10 independent mutual funds and the sub-advisors to the 11 John Hancock funds that underlie the sub-accounts (AC¶¶311-12). In all cases, these payments equal .50% (the "Revenue Sharing Payments.") (AC¶310-13). Defendants claim that the Revenue Sharing Payments offset the AMC (AC¶¶313).  Yet, there is no, or a minimum AMC for nearly all sub-accounts which do not receive Revenue Sharing Payments (Decl. RL, ¶¶5-6. Exhs. D and E).  The AMC is a fiction used to facilitate JHUSA's retention of Revenue Sharing Payments.

JHUSA has provided contradictory descriptions of the "expenses" covered by the AMC.  In one document, JHUSA states that the AMC is the cost it incurs for "record keeping services such as employer statements, participant statements...." (AC¶314).  This is contradicted by JHUSA's "Your Investment Option" (YIO)

booklet which states that the ER, of which the AMC is a component, "does not include any . . . participant record keeping charge" (AC¶316).  A third - and likely truthful - explanation is provided in the deposition testimony of JHUSA's Pricing Actuary whose role is to see that the "pricing structure of the products... hits (sic) the profit targets"  (Decl. RL, ¶7, Exh. F, pp. 6:21-24).  He describes the AMC as a "revenue component." (Id. at p. 16:19).

Plaintiffs have plausibly plead that the AMC is a fiction created to facilitate JHUSA's unlawful retention of Revenue Sharing Payments

### b.   The Inflated and Unnecessary S&S Fees

JHUSA claims that the Sales and Service, or  S&S fees, of .50%, are charged to cover expenses "for the distribution and marketing of the Fund's units" (AC, ¶185).  This charge was improper and excessive for three reasons.

First, through the FER[3], Plaintiff was already paying for this service.  According to the Securities and Exchange Commission ("SEC"), 12b-1 fees are used to recoup a mutual fund's marketing and distribution expenses (AC¶218).  In fact, for the John Hancock mutual funds, Defendants informed the SEC that the 12b-1 fee was approved for the distribution of the sub-account units (AC¶¶ 228-31).  Since the

---

[3] The FER is a component of the ER (the sub-account expense ratio). The FER component of the sub-account fee is defined as the underlying mutual fund's fees (Tables I-II), which includes the fund's 12b-1 fees.

Plaintiffs paid the underlying mutual funds' 12b-1 fees (AC¶¶200-01), they already paid the marketing and distribution expenses - the S&S fees were duplicative (AC¶¶222-35).

Second, the SEC has opined that the S&S fee for a sub-account should not exceed the corresponding 12b-1 fee of the underlying mutual fund (AC, ¶¶208-09). In many instances, the S&S fee was 10 times higher than the underlying funds' 12b-1 fee, for precisely the same services (AC Tables I-III). While a mutual fund's 12b-1 fee is approved by independent directors acting as fiduciaries (17 C.F.R. 270.12b-1), the sub-accounts' S&S fees are set unilaterally by JHUSA and are excessive. (AC¶221).

Third, Plaintiffs should not have been paying any 12b-1 or S & S fees (AC¶¶ 236-53; 254-67). The SEC has opined that an S&S fee should equal a mutual fund's 12b-1 fee (AC¶209). According to the SEC, "institutional classes . . . do not typically charge 12b-1 fees" (Plaintiffs Table of Unreported Authorities (App.) A, Fn. 452). While retail share classes of funds generally charge 12b-1 fees, institutional share classes, which are open to 401(k)'s, do not (AC¶¶240-52). Since the S&S fees should equal the 12b-1 fees, and the proper share class for 401(k) investments is the institutional class, the Defendants should not have charged any S&S or 12b-1 fees.

### c.   The Inflated FER Fees

The last component of the ER, the sub-account expense ratio, is the FER, which is the expense ratio of the underlying mutual fund. The FER is excessive for two reasons. First, JHUSA routinely invests in retail share classes, where plan participants pay 12b-1 fees. Since "[i]nvestors in one class of shares have the same investment experience as investors in the other classes, except for expenses,"(App. A, p. 23), JHUSA should have invested in the institutional share class, with no 12b-1 fee.

Second, plan participants pay excessive advisory fees, in violation of ERISA and the ICA. Participants in JHUSA 401(k) plans receive a share of a series trust. A series trust is a registered-open end investment company under the ICA that contains multiple funds or, as described in JHUSA's SEC filings, portfolios (Def. Exh. B, p. 506 and 508).[4] The series trusts in this case are: John Hancock Trust (JHT), John Hancock Funds II (JHFII) and John Hancock Funds III (JHFIII) (collectively the "JH Trusts") (AC¶268). These series trusts contain the John Hancock funds offered with JHUSA's group annuity contracts (i.e., the funds that underlie the sub-accounts), and individual annuity contracts (AC¶¶268; 329-32); and

---

[4]  Defendants did not number the pages of their exhibits; therefore, all page citations are to the page number listed on the top of each exhibit page that is inserted by the ECF system.

receive contributions from investors in both types of annuity contracts. Although the trusts are registered entities, the portfolios within them are not (AC¶¶21-23).

JHUSA subsidiary, JHIMS, is a registered investment advisor under the ICA and serves as the adviser to all of the JH Trusts and to each portfolio within them (AC¶¶268 to 276). In each instance, with regard to the JH Trusts (AC, Tables IV-VI), the underlying funds paid an appropriate sub-advisory fee to each of its managers, and a second improper advisory fee to JHIMS. By way of example, the Blue Chip Growth Fund (a fund within JHFII) paid a sub-advisor's fee of $4,974,391 to an independent party (AC, Table V, p. 72) and an advisor's fee of $15,303,935 to JHIMS. Id. According to SEC filings, for this $4,974,391 payment, the sub-advisor formulated and implemented the investment program for the fund, purchased and sold securities, managed the investment and reinvestment of the fund's assets and regularly reported to the fund's board; all at the sub-advisor's expense (AC¶289). According to JHIMS, the $15,303,935 it received was for overseeing the sub-advisor and reporting to the Trustees on the sub-advisor's performance (Db5). Even assuming JHIMS performed these activities, they did not warrant an advisory fee that was more than triple the fee paid to the sub-advisor who exercised investment

judgment.[5]

## POINT I
## PLAINTIFF'S ERISA CLAIMS ARE VIABLE BECAUSE JHUSA
## IS A FIDUCIARY AND IT VIOLATED ERISA

**A.    Plaintiff Has Plead Sufficient Facts to Demonstrate Standing**

Plaintiff alleges that she, and other class members, are or were participants and beneficiaries of Defendants' 401(k) Plans (AC¶¶1 to 3, 23, 28 and 35). Clearly, one who participates in an ERISA plan has standing to bring a lawsuit alleging an ERISA violation. LaRue v. DeWolff, Boberg & Assoc., 552 U.S. 248, 256 (2008) and Bixler v. Central Penn. Teamsters, 12 F.3d 1292 (3rd Cir. 1993).

The AC does not, as Defendants allege, set forth the title of the named Plaintiff's 401(k) plan.  Defendants know the title of her plan since they provide her quarterly statements (Decl. RL, ¶9, Exh. G) and there is no reason to have plead the name of Plaintiff's plan as it is irrelevant to the viability of her claims.  Accord, In re Regions Morgan Keegan ERISA Litigation, 692 F.Supp.2d. 944, 952 (W.D. Tenn. 2010) (Regions Morgan) (specific facts are not necessary, as complaint need only give fair notice of what the claim is). That being said, the name of the plan is J & H Berge, Inc. 401(k) Profit Sharing Plan, and Ms. Santomenno's employer is J & H

---

[5]  This is not the first occasion JHIMS has received improper fees.  In June of 2007, the SEC cited JHIMS for engaging in a scheme of fraud and deceit with respect to fee disclosures it made to the board of directors of JHT (AC¶288).

Berge, Inc., (Decl. RL, ¶8, Exh. G).

<u>Sharp Elecs. Corp. v Metro Life Ins Co.</u>, 578 F.3d 505, 513 (7th Cir 2009), cited by the Defendants, does not require any more information than is alleged here. That case was dismissed because plaintiff, unlike Ms. Santomenno, did not allege facts sufficient to support the defendant's fiduciary status or the harm suffered.

**B.    Plaintiff Has Established that JHUSA is an ERISA Fiduciary**

ERISA §3(21)(A) provides that a person is a fiduciary to the extent

(i) he exercises **any discretionary authority** or discretionary control respecting management of such plan ..., (ii) he **renders investment advice for a fee**..., direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has **any discretionary authority** or discretionary responsibility in the administration of such plan.  (Emphasis added).

When assessing fiduciary status, courts employ a functional test that examines whether the entity has performed the tasks listed in ERISA 3(21)(A). <u>In re Unisys Corp. Retiree Medical Benefits ERISA Litig</u>.  579 F.3d 220, 228 (3d Cir. 2009). Given the factual nature of this analysis, the determination of fiduciary status should await completion of discovery:

[T]he determination of whether a party is an ERISA fiduciary is a 'functional one', the determination will not typically be resolved at the motion to dismiss stage . . . [but rather],  the Court will be able to undertake the fiduciary duty inquiry only after full discovery. <u>Beye v. Horizon BC/BS of New Jersey</u>, 568 F.Supp. 2d 556, 576 (D. N.J. 2008).

It would be inappropriate, on a motion to dismiss, to find that JHUSA is not an ERISA fiduciary. However, based on the holding of <u>Charters</u> and admissions in Defendants' appendix, it is clear that JHUSA is an ERISA fiduciary.

### 1.    JHUSA is Estopped to Contest Its Fiduciary Status

In <u>Charters</u>, 583 F.Supp.2d 189, the Court granted plaintiff's summary judgment motion and found that JHUSA was an ERISA fiduciary with respect to a 401(k) plan it operated in the same fashion as the instant plan. The Court reached this conclusion on two independent grounds: (1) JHUSA had "control over factors that determine the amount of its compensation [by being able to adjust the AMC fee]" and (2) JHUSA retained the power to substitute investment options. <u>Id</u>. at 197-99.

A comparison of the ER of the sub-account fees for the 29 investment options, based upon JHUSA disclosures, reveals that between 2008 and 2009, JHUSA adjusted the fees applicable to 23 of those options (AC, Tables I-III); and increased the AMC five times. (AC, Table III). In addition, as the AC states, based upon JHUSA disclosures, Defendant has unilaterally changed the Plaintiff's investment options (AC¶141-45). Given the findings in <u>Charters</u>, JHUSA is precluded from relitigating its fiduciary status. <u>Burlington N. R.R. Co. v Hyundai Merch. Marine Co., Lt.</u>, 63 F.3d 1227 (3rd Cir 1995) (offensive collateral estoppel is available to prevent relitigation of issue determined on summary judgment); <u>Raytech Corp. v White</u>, 54

F.3d 187 (3rd Cir. 1995) and First Jersey Nat'l Bank v Brown, 951 F.2d. 564, 570 (3rd Cir. 1991).

### 2.    JHUSA Is A Fiduciary For Additional Reasons

An assessment of whether a person or an entity is an ERISA fiduciary must be informed by two considerations.  First,

> Congress...imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive. John Hancock Mut. Life Ins. Co. v Harris Trust and Savs. Bank, 510 U.S. 86, 96 (1993).

Second, to achieve ERISA's goals, the term "fiduciary" must be broadly construed. Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir. 1984).

For several reasons, Plaintiff has plausibly asserted that JHUSA is an ERISA fiduciary. First, insurance companies, such as JHUSA, that provide variable annuity investment contracts and retain the authority to alter the menu of mutual fund investments are ERISA fiduciaries, Charters, Haddock v Nationwide Fin. Servs., 419 F. Supp. 2d. 156, 166 (D. Conn. 2006) (Haddock I); Haddock v Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 108 (D. Conn. 2009) (Haddock II), Phones Plus Inc. v. Hartford Fin. Svs. Group, Inc., No. 2:06CV01835(AVC), 2007 WL 3124733 (D.Conn. Oct. 23, 2007) (Hartford) (App. B).  The retirement plans at issue in these cases were operated in the same fashion as the plans before this Court.

By way of example, in Charters, JHUSA deposited retirement assets into a

"Separate Account," distinct from its general funds.  JHUSA then created "sub-accounts" that corresponded to different mutual funds. JHUSA retained the "right to substitute alternative mutual funds." Charters, 583 F. Supp.2d at 191. See also Haddock I, 419 F. Supp. 2d at 161.  In Charters, the Court granted plaintiff's summary judgment motion and found that JHUSA's ability to substitute different funds rendered it a fiduciary. Id., 583 F. Supp2d at199.

Similarly, in Haddock I, 419 F. Supp. 2d. at 166, the Court denied Nationwide's motion for summary judgment addressed to its fiduciary status:

> [A] reasonable jury could conclude that Nationwide exercises authority or control respecting disposition of plan assets by controlling which mutual funds are available investment options for the Plans and participants. Although Nationwide does not invest the pension contributions in particular mutual funds, Nationwide does exercise some control over the selection of mutual funds that are available for the Plans' and participants' investments.

The cases upon which Defendants rely, such as Hecker v Deere & Co., 556 F 3d 575 (7th Cir. 2009), involved plans that afforded participants a brokerage window with virtually unlimited investment alternatives.  As a result, the breadth of the options eliminated the ability of the fiduciary to "affect the amount of retirement benefits," a factor which the Supreme Court found to be dispositive of fiduciary status. John Hancock Mut. Life Ins., supra4, 510 U.S. at 96. The Hecker Court, in fact, distinguished Haddock I on this ground, describing the latter case as one in

which

> the service provider . . . had the authority to delete and substitute mutual funds
> from the plan without seeking approval from the named fiduciary. Hecker, 556
> F.3d. at 584.

In a subsequent decision, the Haddock Court reiterated this very distinction from

Hecker.  See Haddock II, 262 F.R.D. at 108, n. 6. See also Goldenberg v. Indel, Inc.,

Civ. A. 09-5202 (JBS) (D.N.J. Sept. 17, 2010) at *, 32-33 (Goldenberg) (App.C).

Hecker is also distinguishable because the service provider was (1) not an

insurance company and (2) plaintiff's investments were not kept in "separate

accounts," as they are here (AC¶¶ 157-58).  In Midwest Comty. Health Servs. v

Am.United Life Ins. Co., 255 F.3d 374 (7th Cir. 2001) the same Court which decided

Hecker held that, in the case of a group annuity, if the insurance company can affect

the value of retirement benefits, it is a fiduciary: "we twice held that an insurer's

...control over group insurance contracts purchased by employee benefit plans

subjects the insurer to ERISA fiduciary standards." Id at 376.

Three factors distinguish the Department of Labor (DOL) opinion cited by

Defendants.  First, as the Court in Charters observed, the plan that was the subject of

DOL Advisory Opinion 97-16A allowed the sponsor to "accept or reject" the

proposed changes in investment options. See  Charters, 534 F. Supp. 2d at 171,

which is not the case here. Second, the DOL opinion addressed a plan in which the

insurance company fiduciary could be terminated without penalty. Id at 199. Here, a plan must pay a penalty of up to 6% of its assets to terminate JHUSA (Def. Ex. I, p. 922; 976-980). Furthermore, the company there did not offer a warranty or hold investors' assets in a "Separate Account." See pp.18-19 below.

Nor is the decision in Renfro v Unisys Corp., No. 07-2098, 2010 WL 1688540 (E. D. Pa., Apr. 26, 2010) app. docketed No. 10-2447, inconsistent with Charters and Haddock. In Renfro, there was no indication that a participant would incur a penalty by switching to a different investment manager. Nor did Renfro involve an insurance company which held investments in a separate account. See pp 18-19 below.

Second, JHUSA is a fiduciary because it can affect the value of Plaintiff's retirement benefits by unilaterally altering the AMC and S&S fees it charges on investment options and by altering the 12b-1 fees by selecting between the retail and institutional share classes (AC¶175 and Table III). In John Hancock Mut. Life Ins. Co., supra, 510 U.S. at 96, the Court wrote that "Congress . . . imposed fiduciary standards on persons whose actions affect the amount of retirement benefits participants will receive." It ruled that JHUSA was a fiduciary for funds in group annuity contracts which lacked guaranteed rates of return because JHUSA retained the authority to set prices and the participant bore the risk of fluctuations in value. Id at 105. By retaining the right to invest in retail rather than institutional shares and/or

adjust other fees, JHUSA influences the "amount of retirement benefits participants will receive." Id. at 96.  See Charters, supra, 583 F.Supp.2d at 198, holding that JHUSA is a fiduciary because

> it is undisputed that Hancock retained sole discretion to change the maximum administrative maintenance charge [AMC] at any time upon three-months prior written notice to Charters.

See also, Midwest Comty Health Service, Inc., supra, 255 F.3d at 378.[6]

JHUSA is also a fiduciary because it holds participant investments in unregistered "Separate Accounts" (only the trusts which contain the underlying mutual funds are registered) (AC¶¶154-158). 29 C.F.R. 2550.401c-1(d)(2)(c) provides:

> In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account (**other than a separate account registered under the Investment Company Act of 1940**) to the extent that the investment performance of such assets is passed directly through to the plan policyholders. ERISA requires insurers, in administering separate account assets, to act solely in the interest of the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and requires insurers to adhere to a prudent standard of care. (Emphasis added).

This regulation is consistent with ERISA §401(c)(5) which provides:

---

[6] Neither of the 7th Circuit cases cited by the Defendants in fn. 15 of their brief support their position because in those cases the courts held that **health** insurers were not fiduciaries since they lacked the authority to unilaterally alter their fees/compensation.  JHUSA's reading of Schulist v. Blue Cross of Iowa, 717 F.32d 1127 (7th Cir. 1983) was rejected in Charters, 583 F. Supp.2d at 197.

> No person shall be subject to liability under [ERISA].. on the basis of a claim that the assets of an insurer (**other than plan assets held in a separate account**) constitute assets of the plan, except– (i) as otherwise provided by the Secretary in regulations. (Emphasis added).

Since Plaintiff's investments are held in Separate Accounts and the investment performance of the funds in those Separate Accounts is passed through to her, JHUSA is a fiduciary for those investments.

Defendants' reliance on Flacche v Sun Life Assurance Co. of Can., 958 F.2d. 730, 734 (6th Cir 1992)[7] and Cotton v Mass. Mutual Life Ins. Co., 402 F.3d. 1267, 1278 (11th Cir. 2005) is misplaced because there (1) the contracts were for a guaranteed benefit; (2) defendants lacked the authority to affect the value of the participants' benefits (except to correct calculation errors); (3) defendants performed entirely ministerial functions; and (4) there were no allegations that any of the investments were held in Separate Accounts.

Fourth, by negotiating Revenue Sharing Payments that were derived from Plaintiff's investments, JHUSA made investment decisions and is a fiduciary.  See Haddock II, supra, 262 F.R.D. at 107 (insurer can be a fiduciary if "it used its control of plan assets to bargain for revenue sharing payments from the mutual funds...it offers").

---

[7]  This case was decided before John Hancock Mut. Life Ins., 510 U.S. 86.

In addition, JHUSA is a fiduciary because it offers the FSW to the Plaintiff Plans. In order to qualify for this warranty, a sponsor must include 19 specific classes of mutual funds "offered by John Hancock (U.S.A.)." An employer has an overwhelming incentive to avail itself of the free warranty and include the John Hancock funds, irrespective of whether they are superior to other funds. JHUSA's recommendations, with regard to which funds should be offered to participants are, therefore, rubber stamped by employers and JHUSA is a fiduciary. See e.g. Pension Fund Mid Jersey Trucking Indus. Local 701 v Omni Funding Group, 731 F. Supp. 161 (D. N.J. 1990); Stanton v. Shearson Lehman/American Express, 631 F.Supp. 100 (N.D. Ga. 1986); and Procacci v Drexel Burnham Lambert, Inc., C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) (App. D).

Sixth, JHUSA acts as a fiduciary when it composes the investment menu by "scour[ing] a large universe of Funds, applying our proprietary selection process to bring to you a group of investment options that meet very stringent criteria" (Def. Exh. H, p. 885), ERISA(3)(21)(A)(ii) and Goldenberg at *11-12. Finally, JHUSA admits that it is a fiduciary because, in Def. Ex. H, p. 894, it lists as "fiduciary responsibilities" the selection and monitoring of investment options and then, on page 885 of that exhibit, states that it performs those tasks. Charters, Haddock I, Haddock II, and Hartford are on point and were correctly decided.

## C.    Plaintiff Has Adequately Stated Her ERISA Claims

ERISA's purpose, "to protect and strengthen the rights of employees, to enforce strict fiduciary standards," In re Unisys Savs. Plan Litig., 74 F.3d 420, 434 (3rd Cir. 1996), is achieved by the imposition of a duty of loyalty, ERISA §§404(a)(1)(A)(i) and (ii), a duty of prudence, ERISA §404(a)(1)(B),  and the preclusion of "prohibited transactions," ERISA §406. An ERISA fiduciary must act "solely in the interest of [plan] participants...." Braden v. Walmart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009) (Braden), as ERISA fiduciary obligations "are the highest known to the law." Id at 598.

Defendants would have this Court impose an unachievable level of detail at the pleading state.  However, an ERISA plaintiff cannot be required to plead facts that show "precisely how the defendant's conduct was unlawful." Id.  This is so because

> Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties-duties which have been described as 'the highest known to the law.' In giving effect to this intent, we must be cognizant of the practical context of ERISA litigation. No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before

concluding that they do not support a plausible inference that the plaintiff is entitled to relief. ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Id. at 598. (Citation omitted).

1.     **Plaintiff's Excessive Fee Claim**

An ERISA fiduciary must make "such investments and only such investments as a prudent person would make of his own property." In re Unisys Savs. Plan Litig., 74 F3d 420, 434 (3rd Cir. 1996).  A claim that a fiduciary failed to fulfill its duties requires a Court to consider, among other things, whether the fiduciary: (1) would have made the same investment with its own property; (2) used due care in its investigation; (3) considered the safety of and income  potential of the investment; and (4) secured "reliable information...with a view of the safety of the principal and to the securing of a reasonable and regular income." Id at 434.  These factors cannot be fully addressed prior to completion of discovery.  Braden 588 F.3d  at 598 and Boeckman v A.G. Edwards, Inc., No. 05-658-GPM, 2007 WL 4225740, *4 (S.D. Ill., Aug. 31, 2007) (App. E) ("The Court does not believe that Boeckman's claims for breach of the fiduciary duty of loyalty can be resolved on summary judgment"). Thus, it is inappropriate to dismiss a breach of fiduciary duty claim at this pleading stage, Braden, 588 F.3d at 595.  Plaintiff has nonetheless plausibly established that she was deprived of the full value of her retirement benefits since each of the

components of the ER were excessive.

The ER, paid on an annual basis, consists of three components denominated by Defendants as the Sales and Service (S&S) fee, the Administrative Maintenance (AMC) fee and the underlying mutual fund expense ratio (FER) (AC ¶182). "In all instances," the AC alleges, "the fees paid by the Plaintiff Participants . . . exceed the fees paid in arm's length transactions." (AC¶188 and ¶197). The AC goes on to explain how each component is excessive.

The basis for the excessive fee claim for the S&S fee is addressed at ¶¶198 to 267 of the AC. That fee was excessive because it (1) offered no benefit to Plaintiff (AC¶199); (2) was duplicative of each underlying funds' 12b-1 fee (AC¶¶222-34); (3) should have been equal to the 12b-1 fee of the proper share class to receive the Plaintiff's investments (i.e., the institutional share class), which was no fee (AC¶204-14 and 236-66) ; and for a host other reasons detailed in the AC¶¶215-21 and at pp. 7-9 above.

The second component of the ER, the AMC, was also excessive. Defendants justify their retention of Revenue Sharing Payments on the ground that they reduced the AMC that would otherwise be charged to Plaintiff (AC¶309). However, as alleged in AC¶¶309-321, the AMC fee is illusory, assessed to allow Defendants to retain the benefit of Revenue Sharing Payments that rightly belong to plan

participants. See, Haddock I and at pp. 6-7 above.

The third component is the FER, a pass through of the charges assessed by the underlying mutual fund. That fee is excessive for two reasons. First, Defendants invested in the retail rather than the less expensive institutional fund class in nearly all instances. (AC¶¶19, 201, 236-267). This allegation states a claim. Braden, 588 F.3d at 595-98 (failure to invest in institutional share class is a fiduciary breach), Regions Morgan and Tibble v. Edison Int'l., Cv. 07-5359 SVW, 2010 WL 2757153,*25-26 (C. D. Cal., Jul. 9, 2010) (Tibble) (App. F).[8]

The second component of the FER is the advisor's fee paid to JHIMS from Plaintiff's investments into John Hancock mutual funds. The AC alleges that these fees were unnecessary and excessive (AC¶¶268-89) because all the investment management services were performed by the sub-advisors, who themselves received a substantially smaller fee than the one paid to JHIMS. (AC¶284). Had the fiduciary retained the sub-advisors directly, it could have eliminated the advisory fee. See AC¶303 and pp. 9-11 above.

---

[8]While all of the independent mutual funds offered institutional share classes without 12b-1 fees, the John Hancock mutual funds did not. However, given JHUSA's strong negotiating power, its failure to negotiate to remove these fees with its own subsidiary violates ERISA §404 (Count III, ¶7). Boeckman v. A.G. Edwards, Inc., supra, 461 F.Supp. 2d at 805 and 811 (S.D. Ill. 2006) and Tibble , supra, at *29-31.

Under LaRue, a participant may bring claims for these fees since ERISA "authorize[s] recovery for breaches of fiduciary duty that impair the value of plan assets in a participant's individual account." LaRue, 552 U.S. at 256.  As these excessive fees impaired the value of the assets in Plaintiff's account, she may bring suit for their recovery.  Braden, 588 F.3d at 595-96 (allegation that the selected mutual funds of a 401(k) plan charged participants excessive 12b-1 fees stated a claim under ERISA §404); Kanawi v. Bechtel, 590 F.Supp.2d 1213, 1229 (N.D. Cal. 2008) ("[a] decision to pay the mutual fund management fees must be guided by consideration of what would be in the best interest of Plan  participants, and the process used to make that decision must be prudent"); Boekman v. A.G. Edwards, 461 F.Supp.2d at 811-816 (S.D. Ill. 2006) (failure to invest in less costly share class states a claim under ERISA §404); Charters; Regions Morgan; Goldenberg and Tibble.

Defendants' reliance on Hecker is unavailing.  First, Defendants contend that Hecker holds that "a plaintiff must plead the total fees paid by her plan were unreasonable."  However, the court there held that plaintiff's **non-disclosure claim** failed because the defendant had disclosed the total fee charged by the fund.  This analysis was independent of the excessive fee claim. Hecker 556 F.3d at 586.  The court dismissed the excessive fee claim because defendants offered over 2,500 mutual

fund options and "at the low end, the expense ratio was .07%; at the high end, it was just over 1%." Id. at 590. Here, there were 29 investment options with fees ranging from 1.06% to 2.11% (AC¶ Tables I-III); which, at their lowest (1.06%), may have exceeded the fees charged in Hecker at their highest ("over 1%"). In all events, Plaintiff challenges the total fee.

In sum, Plaintiff has put forth sufficient evidence that Defendants violated ERISA §404 on account of excessive fees.

### 2.    Defendants Committed Prohibited Transactions

Without relying on any case law, Defendants argue that all of Plaintiff's prohibited transaction ("PT") claims should be dismissed under ERISA §408(c)(2), because Plaintiff is not challenging the reasonableness of the "total compensation." Defendants err for three reasons. First, Plaintiff contests the entirety of Defendants' recurring fees on the investment options, the ER, and all three of its components. Second, it is inappropriate to dismiss a PT claim on the basis of ERISA §408, since that statute creates a "defense which must be proven by the defendant." Braden, 588 F.3d at 601; Regions Morgan, 692 F.Supp.2d at 961, and Goldenberg at *25. Third, ERISA §408 (c)(2) is not a defense to Plaintiffs' PT claims under §406(b). Gilliam v. Edwards, 492 F.Supp. 125, 1263-64 (D. N.J. 1980).

Defendants next allege that the PT claims in Counts I and II should be

dismissed because that statute only prohibits a fiduciary from "dealing with the assets of the plan in his own interest" and the claim fails because Plaintiff alleges that the sales and service fees "are paid to 'financial intermediaries.' AC at p. 12, ¶18." Defendants misread this paragraph of the AC, which refers to **commissions** paid to financial intermediaries, not to **sales and service fees**. The fees were charged on plan assets and benefitted JHUSA and they violate ERISA §406(b).

Finally, the Defendants argue that the PT claims in Counts III (plan assets used to pay 12b-1 fees to JHUSA affiliates), Count V (plan assets used to pay excessive management fees to JHUSA subsidiary, JHIMS) and Count VI (receipt by JHUSA of the Revenue Sharing Payments) should be dismissed because these fees are not paid from plan assets, but are paid from assets of the underlying mutual fund.

Defendants err. First, the phrase "assets of the plan" is to be broadly construed to encompass all items which may be used to benefit a fiduciary at the expense of plan participants. Acosta v Pacific Enterprises, 950 F2d. 611, 620 (9th Cir. 1991) and Regions Morgan, supra, 692 F.Supp.2d at 960. Only in this manner can the salutary purpose of ERISA be fulfilled. John Hancock Mut. Life Ins. Co. v Harris Trust and Savs. Bank, supra, 510 U.S. 86. Second, the purpose of the PT provisions is to inhibit fiduciary conduct that " might be inclined to favor [related entities] at the expense of the plan's beneficiaries." Harris Trust and Savs. Bank v. Salomon Smith

<u>Barney</u>, 530 U.S. 238, 242 (2000) (<u>Harris</u>). Third, in <u>Goldenberg</u> at *26, this Court, consistent with the authorities cited below, held that an investment in a fiduciary's affiliate's mutual fund states a claim for a PT. Fourth, JHUSA, places participants' investments in the underlying funds into sub-accounts, which are contained in "separate accounts," and under ERISA §401(c)(5), assets in a separate account are plan assets (AC¶¶155-57 and 331).

The PT claim for the payment of the excessive management fees (Count V), is plausible. Prohibited Transaction Exemption (PTE) 77-4 (App. G), provides that, unless waived, the payment of "investment advisory, or similar fee[s]" to the investment advisor of a mutual fund, that is an affiliate of the fiduciary, is a PT. <u>See also</u> DOL. Adv. Op. 93-13A  (App. H) (investment in mutual fund where the investment manager is an affiliate of the fiduciary, and  affiliate does not waive its fees, is a PT and <u>Kanawi v Bechtel, Corp.</u>, 590 F.Supp.2d. 1213, 1227-28 (N.D. Cal. 2008) (payment of fees to investment manager owned by fiduciary is PT). Here JHIMS, the investment advisor to all of the John Hancock funds, is a subsidiary of JHUSA, (AC¶238).

Similarly, the 12b-1 fees were paid to JHUSA subsidiaries, JHT, JHD and JHIMS are PT's (AC, Count III, ¶5). , <u>Braden</u> 558 F.2d at 600-01 and <u>Regions Morgan</u>, 692 F.Supp.2d at 961-62.

Finally, <u>Braden</u>, <u>Haddock I</u>, and <u>Hartford</u>, all indicate that receipt of revenue sharing payments is a PT.  The <u>Haddock I</u> court held that a fiduciary's receipt of revenue sharing payments from an unaffiliated mutual fund is a PT since the revenue sharing payments are plan assets. <u>Haddock I</u> 419 F.Supp.2d at 170.  Responding to the same argument Defendants make here, the Court stated:

> I conclude that 'plan assets' include items a defendant hold or **receives** (1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants....
>
>        \*          \*          \*
>
> Moreover,... [these] **claims are not entirely dependent on their theory that the challenged payments are plan assets.  If Nationwide is an ERISA fiduciary, it may not engage in prohibited transactions even if the payments Nationwide receives are not themselves plan assets**
>
>        \*          \*          \*
>
> The transactions at issue here are Nationwide's contractual arrangements with the mutual funds. Those contracts involve the plaintiffs' shares in Nationwide variable accounts- **indisputably plan assets** -or their proxies, the so-called accumulation units, because they are premised on the offering of the mutual funds as investment options for those plan assets.
>
> Viewing the evidence in the light most favorable to the Trustees, a reasonable fact-finder could conclude that Nationwide received consideration ( *i.e.,* the revenue-sharing payments) from a party dealing with the Plans ( *i.e.,* the mutual funds whose shares are available for investment by the Plans and participants) in connection with a transaction ( *i.e.,* the so-called service contracts) involving assets of the plan ( *i.e.,* the shares of the variable accounts, represented by the accumulation units).... <u>Id</u> at 170 - 72 (emphasis added).

<u>also</u> <u>Braden</u> 588 F.3d 590 at 600-01 (receipt of revenue sharing payments states a PT

claim) and Hartford, 2007 WL 3124733, at *5.  For purposes of determining if a PT

has occurred, the source of the payments is irrelevant.  Even were the source relevant,

here, the payments are derived from participants' investments in sub-accounts, which

are in JHUSA's Separate Account, and therefore are plan assets.  ERISA §401(c)(5).

The 7th Circuit's decision in Hecker  is irrelevant.  Hecker did not allege that

the defendants committed a PT; the discussion of the definition of plan assets dealt

with whether Fidelity was a fiduciary, which it was not.  Thus, the transfers there at

issue were between non-fiduciaries.  The issue before this Court does not center on

the payment of fees between non-fiduciaries, but upon the propriety of the fiduciary

placing plan assets with mutual funds in exchange for its receipt of payments derived

from the participants' investment in those funds.

In light of Midwest Community Health Serv., Inc. v. American United Life

Insurance Co. , supra, 255 F.3d 374, 7th Circuit jurisprudence is consistent with

Haddock I, Braden, and Hartford. In Midwest Cmty Health Serv., Inc., an insurer that

issued group annuity contracts argued that, since it kept the plaintiffs' assets in its

**general account**, (not a separate account), it was not a fiduciary because ERISA

§401(c)(5) only provides that assets held in an insurer's separate account are plan

assets.  Id at 377.  The 7th Circuit rejected this argument on the ground that it is

irrelevant where the funds were held.

Defendants also rely on <u>Ruppert v Principal Life Ins. Co.</u>, No. 07-00344, 2009 WL 5667708 (S.D. Iowa, Sep. 5, 2009)[9], to suggest that their receipt of revenue sharing payments is not a PT.  The Court there held that revenue sharing payments derived from registered investment companies cannot constitute a PT.  This decision contradicts the opinions in <u>Haddock I</u>, <u>Braden</u>, <u>Kanawi</u>, 590 F.Supp.2d at 1227-28, <u>Goldenberg</u> and <u>Hartford</u>.  Moreover, <u>Ruppert</u> also held that revenue sharing payments derived from unregistered separate accounts may constitute at PT.  Some of the revenue sharing payments here derive from JHUSA unregistered separate accounts (AC(¶¶155-57)[10].

**D.      A Pre-Suit Demand on the "Primary Fiduciary" Is Not Required**

The concept of a "primary fiduciary" does not exist in ERISA: Defendants created it in their brief (Db10-11).  There is no requirement for a pre-suit demand.

Plaintiff brings this suit pursuant to ERISA §§502 and 409, which expressly afford her standing to sue any fiduciary that harmed her.  <u>LaRue</u>, 552 U.S. 248 and <u>Goldenberg</u>, at *41.  <u>See</u> <u>also</u>, ERISA §502(a) (which allows a "participant...to bring

---

[9] It is unclear if Defendants are also suggesting that <u>Ruppert</u> serves as a defense to the PT for the investment management fees in Count V; however, even under <u>Ruppert</u> these fees are a PT.  P.T.E 77-4 and DOL. Adv. Op. 93-13A.

[10]    Some sub-accounts are in registered separate accounts (AC¶¶331-32); some sub-accounts are not.

an action for breach of fiduciary duty)" and ERISA §409 (which provides that "[a]ny person who is a fiduciary...shall...make good [for]...losses"). Varity Corp. v. Howe, 516 U.S. 489, 528 (1996) ("Though we have recognized that Congress borrowed from the common law of trusts in enacting ERISA we must not forget that ERISA is a statute, and in every case involving construction of a statute, the starting point ... is the language itself") (internal citations and quotations omitted).

"Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties..." Braden 588 F.3d at 598, and the Court should not "tamper with the enforcement scheme." Great-West Life & Annuity Ins. Co. v Knudson, 534 U.S. 204, 209 (2002). As a result, Courts have uniformly rejected pre-suit demand requirements under ERISA. Coan v Kaufman, 457 F.3d 250 (2nd Cir. 2006); Kayes v Pacific Lumber Co., 51 F.3d 1449 ( 9th Cir.) cert. den. 516 U.S. 914 (1995) and In re AEP ERISA Litig., 327 F. Supp. 2d 812 (S.D. Ohio 2004). None of the Defendants' ERISA or common law cases are to the contrary.[11] As JHUSA is a fiduciary (not a **non-fiduciary** third party as Defendants imply), Plaintiff has standing to sue as a consequence of the deprivation of her retirement benefits, due to

---

[11]  Footnote 25 of Defendants brief cites to Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244 (3rd Cir. 2002). That case did not involve a pre-suit demand and held, under ERISA,: "Where statutory violations are alleged, a claimant need not exhaust his . . . administrative remedies before king relief in . . . court. Id. at 252

excessive fees.

**E.     Equitable Relief is Available Against JHD and JHF**

Count III, among other things, seeks disgorgement of 12b-1 fees paid to JHD

and JHF.  Defendants allege that this claim must be dismissed because that statute

only permits equitable relief (Db51). However, claims for disgorgement of ill gotten

plan assets from a PT are deemed to seek equitable relief:

> [A]ction for restitution against a transferee of tainted plan assets satisfies ...
> 502(a)(3). Such relief is also equitable in nature. Harris, 530 U.S. at 253
> ("Harris").

See, also, Goldenberg at *42-44.  None of the cases cited by the Defendants involve

a PT: Harris controls.  Also, the AC adequately traces the 12b-1 fees to JHF's and

JHD's possession as it identifies the investment options from which these fees were

paid (AC¶¶49 and 228-31).

**F.     Plaintiff Dismisses Her Claims Against JHNY**

Plaintiff dismisses her claims against JHNY.

## POINT II

## PLAINTIFF HAS STANDING TO PURSUE, AND HAS STATED CLAIMS UNDER ICA §36(b)

**A.     As a Security Holder of the JHT and the JHFII, Plaintiff Has Standing to Bring a Derivative Claim Under ICA §36(b)**

Count VIII of the AC alleges that JHIMS breached its fiduciary duty by

charging excessive advisory fees from the funds/portfolios in the JHT and JHFII. Defendants have acknowledged that (1) "shares of JHT" and "JHFII" are "registered under the Securities Act of 1933" (Decl. RL ¶9, Exh. H, pp. 4 and 6); and (2) shares of both JHT and JHFII are sold to separate accounts as the underlying investment vehicle for JHUSA's annuity contracts. Id. at 5-6, see also Def. Ex C, p. 541.

The JHT and JHFII contain multiple portfolios, each with a different investment strategy (Decl. RL ¶9, Ex. H, pp. 4-5). From January 2009 to June 2010, Plaintiff was invested in two unregistered portfolios within the registered investment company of JHT and one unregistered portfolio in the registered investment company of JHFII (AC¶23) (Decl. RL ¶8, Exh. G). As a consequence, Plaintiff was a security holder of the JHT and JHFII (AC¶23) and as "a security holder of such registered investment company..." (Db16), she has standing to bring derivative claims on behalf of JHT and JHFII.

Defendants next attack Plaintiff's standing on the ground that "retirement plan participants are not treated as security holders of mutual funds...." (Db17). To the contrary, under the ICA, retirement plan participants are security holders. "The ICA defines 'security' broadly'" Curran v. Principal Mgm't Corp. No. 4:09-cv-00433, 2010 WL 2889752, *4 ( S.D.Iowa, Jun. 8, 2010) ("Curran") (App. I), including

> any...interest or participation in a profit sharing agreement ...transferable share, investment contract...privilege on any security (including a certificate of

deposit) **or on any group or index of securities (including any interest therein or based on the value thereof)**....ICA 2(a)(36) (emphasis added).

According to the Defendants, "Plaintiff at best pleads she has an interest in her retirement plan, the assets of which are in turn invested in JHUSA/JHNY sub-accounts whose assets, in turn, invested in three mutual funds" (Db17). Even under JHUSA's description of Plaintiff's investment, she is a security holder under the broad definition of security in the ICA, since her investment is "held in a sub-account, which invests solely in the shares of the specified underlying mutual fund." (Decl. RL ¶5, Exh. D, p.4), see also Curran at *5 ("the Court has closely examined the entirety of §36(b), the ICA as a whole and the legislative history and has found no indication that 'security holder' for the purpose of §36(b) claims should be limited to a direct shareholder of the registered investment company") and Owens Illinois, Inc. SEC No-Action Letter Nov. 4, 1994, 1995 WL 693324 (App. J), in which the SEC construed the definition of "security" under the ICA:

> [w]e consider a defined contribution [401(k)] plan beneficiary who decides whether or how much to invest in an issuer...to be the beneficial owner of the issuer's securities. Id. at *10.

Defendants' argument is based upon opinions construing the Securities Act of 1933 and the Securities and Exchange Act of 1934. Section 3(a)(10) of the 1934 Act defines security in substantially the same way as does the ICA. However, section 3(a)(12)(A)(iv) of the 1934 Act exempts from that definition

any **security** arising out of a contract issued by an insurance company, which interest, participation, or security is issued in connection with a qualified plan as defined in subparagraph (c) of this paragraph [a 401(k) plan]...

The 1933 Act contains a similar definition (section 2(a)(1)) and exemption (section 3(c)(2)).[12] "Clearly, there would be no need to provide such an exemption unless the interests were securities." SEC Release No. 33-6188, 1980 WL 29482 *14 (App. K). Congress' decision to refrain from incorporating these same exemptions into the ICA establishes that the named Plaintiff is a security holder under the ICA.[13]

---

[12]   The SEC's view of the 1933 Act's exemption is that it only applies to defined benefit plans, but not defined contribution plans(i.e., Db§C.3 is incorrect):

> [S]ince 1941 the Commission and its staff have adhered to the position that voluntary, contributory pension and profit sharing plans are securities.
>
>     *      *      *      *
>
> The contributions made to employee benefit plans frequently are invested in pools of assets.... These pools...take the form of...insurance company separate accounts. [T]he participation interests...in these...investment vehicles are securities. SEC Rel. No. 33-6188, 1980 WL 29482, *9 and 14.

See also Goldenberg at *53

[13]   In Fn 8 of Db18, Defendants, relying on Brever v. Federated Mgmt. Co. Of Pa., 233 F.R.D. 429, 431 (W.D. Pa. 2005), suggest that because, after the filing of this lawsuit, Plaintiff's security interests in JHT and JHFII were terminated, she cannot maintain her ICA §36(b) claims. Brever is distinguishable because here plaintiff's interest was **involuntarily terminated.** This argument would allow JHUSA to terminate any contract after the filing of an ICA§36(b) claim to avoid liability. Also, Brever, in reaching its conclusion, relied upon Kaufman v Dreyfus Fund, Inc. 434 F.2d 727, 733 (3d Cir. 1970) but misquoted it. The pages of Kaufman cited by Brever hold that, under Fed. R. Civ. P. 23, a plaintiff must be "a shareholder * * * at the time of the transaction of which he complains." Id at 735. Brever is also inconsistent with the well reasoned opinion of In re Mutual Funds

## B. Plaintiff' Has Standing to Sue On Behalf Of The JHT and JHFII

Ms. Santomenno only brought derivative claims on behalf of the registered investment companies in which she is a security holder, the JHT and JHFII.[14] Plaintiff may bring a derivative action on behalf of these trusts, in connection with excess fees paid to JHIMS by all portfolios in those trusts. <u>Batra v. Investors Research Corp.,</u> No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo., Oct. 4, 1991) (<u>Batra</u>) (App. L)

ICA §36(b) provides that Plaintiff, as a security holder in the registered investment companies, the JHF and JHTII, has standing to bring her claims. Since the "statute is clear and unambiguous, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Sullivan v. Stroop</u>  496 U.S. 478  (U.S. 1990).[15]

---

<u>Investment Litig.</u> 519 F.Supp.2d 580, 590 (D. Md. 2007).  Additionally, the contemporaneous ownership interest suggested by Defendants is inconsistent with the plain meaning of ICA §36(b) as well as <u>In re Franklin Mutual Funds Fee Litig.,</u> 478 F.Supp.2d 677, 685 (D.N.J. 2007), where this Court held that ICA §36(b)(3) limits damages to 1 year prior to the filing of the action and bars future damages.  Thus, under the Defendants' logic, a plaintiff would have to continue to be harmed to retain the right to receive her prior damages. <u>Norman v. Saloman Smith Barney</u>, 350 F.Supp2d 382, 389 (S.D.N.Y. 2004).

[14]  Plaintiff did not bring an ICA §36(b) claim on behalf of JHFIII, which is also a series trust with multiple portfolios, in which Plaintiff is not invested.

[15]  Defendants, in reliance of SEC releases, state that the SEC treats each fund within a series trust as a separate investment company (Db20). None of the

Defendants' standing argument was rejected in <u>Batra,</u> where the Court permitted an investor in one of twelve portfolios of a series trust (i.e., JHT and JHFII), to sue on behalf of all its portfolios because it

> agrees with the plaintiff that each series is not an investment company for purposes of the Act, and that by holding stock in TCI [the name of the series trust], he has standing to bring this lawsuit. The plaintiff's standing is not limited to bringing an action for a particular series. Section 36(b) provides that 'an action may be brought under this subsection by a security holder of such *registered investment company* on behalf of such company.' The plaintiff owns shares of TCI, a *registered* investment company as defined in 15 U.S.C. 80a-08. The individual funds are not registered as required. Accordingly, ownership in the registered company is sufficient to satisfy the statutory requirements of 36(b). . . . TCI, not each series, issues or proposes to issue securities. Accordingly, the series do not constitute companies. <u>Id.</u> at *2.

<u>See also</u> <u>Mutchka v. Harris,</u> 373 F.Supp. 2d 1021 (C.D. Cal 2005) and <u>Barrett v. Van Kampen Merritt, Inc.,</u> No. 93 C 366, 1993 WL 95382, (N.D. Ill. Mar. 30, 1993) (App. M).

Defendants rely on two series trust cases, <u>Stegall v. Ladner,</u> 394 F.Supp. 2d 358 (D.Mass. 2005) and <u>Williams v. Bank One Corp.,</u> No. 03 C 8561, 2003 WL 22964376 (Dec. 15, 2003 N.D.Ill). Standing was denied in those cases because:

> There is no precise parallel to the described arrangement in the corporate world, but the closest analogy still seems to be that of separate subsidiaries (the various mutual funds) that share a common parent.... Williams' small holdings

---

cited releases are applicable to Plaintiff's ICA§36(b) claim because in each release the SEC was applying that principal to a specific provision of the ICA; none of the releases address ICA §36(b). Furthermore, even if they had, <u>Sullivan</u> would require that the SEC position be disregarded.

in those two funds provide no justification for...him to act on **behalf of the...trust-indeed, any allegation of Williams' ownership interest in that entity is conspicuously absent.** Id at *1.

The instant case is distinguishable because, based upon SEC filings, the AC alleges that Plaintiff has an ownership interest in the JHT and JHFII. Furthermore, as the JHT and JHFII are the registered entities (and not the portfolios within them) their corporate form may not be disregarded. Kaufman v Dreyfus Fund, Inc. supra, 434 F.2d at 733 (registered investment companies are not "novel corporate structures" and their corporate form may not be disregarded) and In re Franklin Mut. Funds Fee Litig. 388 F.Supp.2d 451, 463 (D.N.J. 2005).

Defendants' other cases are distinguishable because they did not involve series trusts, but rather, security holders who held an interest in one registered investment company who sought to sue on behalf of other separately registered companies.

Defendants also argue that Plaintiff lacks standing because she cannot show a "distinct and palpable injury" (Db16), since she was impacted by excess fees only from three of the portfolios within the two trusts. However, this is a derivative action. Thus, the only relevant factor is Ms. Santomenno's status as a security holder in an investment company. In a breach of fiduciary duty case for fees charged to a registered investment company

> [t]he claim pressed by the stockholders...'is not his own but the corporation's'" and "it [the investment company] is the real party in

interest, the stockholder being at best the nominal plaintiff." Id at 538.

See also Braden, 588 F.3d at 592:

> So long as [Article III] is satisfied, persons to whom Congress has granted a right of action...may have standing to seek relief on the basis of the legal rights and interests of other...

In any derivative claim, the harm suffered by the company will inevitably exceed that to the plaintiff. Ross v. Benhard, 396 U.S. 531 (1970). Alternatively, since Plaintiff has standing to sue on behalf of the JHT and JHFII for her investment in three of their portfolios, it is premature to entertain a motion to dismiss for lack of standing with regard to other portfolios within those trusts. In Re Lord Abbett, 407 F.Supp. 2d 616 (D.N.J. 2005), vacated on other grounds, 463 F. Supp. 2d 505 (D. N.J. 2006).

### C. Plaintiff Has Stated A Claim under ICA §36(b)

Sections C.1-2 of Defendants' brief argues that Plaintiff's ICA §36(b) claim must be dismissed. Benak v Alliance Capital Mgmt. L.P., No. 01-5734 2004 WL 1459249 (D.N.J. Feb. 9, 2004), they claim, held that a complaint must allege facts that support all six of the factors contained in Gartenberg v. Merrill Lynch Asset Mgmt. Inc., 694 F.2d 923 (2d Cir. 1982) (the "Gartenberg factors"). Benak imposed no such requirement. Rather, the Court there held that a claim will not lie on the basis of a single Gartenberg factor. Benak at *9.

It is not necessary to allege facts supporting all six Gartenberg factors. In Re Evergreen Mutual Funds Fee Litig., 423 F.Supp.2d 249, 258 (S.D.N.Y. 2006) (holding that "[o]n a motion to dismiss a Section 36(b) claim, Plaintiffs need not assert factors supporting each of the six Gartenberg factors") and Dreyfus Mutual Funds Fee Litig. 428 F.Supp.2d 342, 350 (W.D. Pa. 2002) (denying motion to dismiss an ICA §36(b) claim where plaintiffs had made only two allegations related to fees). Nor did the Supreme Court, in Jones v. Harris Assoc., ___ U.S. ___, 130 S.Ct. 1418 (2010), depart from these rulings. In fact, the only opinion to examine an ICA §36(b) claim after Jones stated

> Plaintiffs need not make a conclusive showing of each of the Gartenberg factors but, instead, may state a §36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee. Curran, 2010 WL 2889752 *9.

The Gartenberg factors are merely considerations, not elements of an ICA §36(b) claim; most are, in any event, addressed in the complaint.

The "nature and quality" of the advisor's services are addressed at AC¶¶289, 293 and 296. The AC alleges that the subadvisor (1) formulates the investment program; (2) implements the program; (3) manages the investment and reinvestment of fund assets; (4) reports on fund performance; and (5) furnishes all management and

investment facilities (AC¶275 and 289), all at its expense. Id.[16]  According to Def. Ex.

E, p. 635 and F, p. 665, JHIMS only (1) selects and contracts with the investment

subadviser (which is an infrequent task); (2) monitors compliance with investment

guidelines; and (3) reports to the trustees of the trust (which presumably duplicates

the reports of the sub-advisor).  Although its services pale in comparison to those of

the subadvisors', JHIMS's fees were many times greater (Tables I-II attached to Decl.

of RL): Fees of this magnitude cannot be justified since the subadvisors  manage the

portfolios for a fraction of the fee paid to JHIMS.[17]  Moreover, the extent of  JHIMS

services is a question of fact and not appropriate for resolution at the pleading stage,

especially since JHIMS has been cited by the SEC for making false statements in SEC

filings. In Matter of John Hancock Investment Management Services, LLC, et al. SEC

No. 3-12644, June 25, 2007 (App. M, p. 9).  Finally, the financial statements for the

portfolios within the JHT and JHFII reveal that, in addition to the "investment

---

[16]  For JHT and JHFII, these descriptions are reproduced by Defendants in
several SEC filings; the paragraph that precedes them states the subadvisor
agreements "currently" provide.  The SEC cover sheets state that they are
"effective" as of a specific date.  Thus, these statements are both forward and
backward looking and apply to the period of January 2009 to the present.  (Decl.
RL, ¶¶10-15, Exh. I, p.19; J, p.25; K, p.26; L, p.28; M, p. 20 and N, pp. 20-21).
Page references are to page numbers inserted by Plaintiffs on SEC filings; they are
not based on page numbers that were printed on the actual SEC filings.

[17]  The only occasions where JHIMS' fee did not exceed the subadvisors'
was when a JHIMS affiliate was the subadvisor.  (See Decl. RL, Tables I-II).

management fee" (which is generally equal to the "JHIMS Mgt. Fee" in Tables I-II[18] attached to the Decl. of RL and which are derived from JHIMS' SEC filings[19]), JHIMS received many other fees, including fees that are ambiguously classified as "professional fees" and "miscellaneous fees," as well as accounting fees, legal fees, and custodial fees. (Decl. RL, ¶¶16-17 and Exhs. O and P.  Thus, JHIMS was likely compensated for all or some of these service through other fees.

The second Gartenberg factor, profitability of the funds to JHIMS, is discussed in AC¶¶ 289, 293 and 297. The Complaint plausibly alleges that the funds are profitable to the advisors, as they perform minimal services for substantial compensation.  The comparative fee structures, the fourth Gartenberg factor, is described in AC¶¶289, 293 and 299.

Nor were the boards of JHT and JHFII conscientious, the fifth factor.  These failings are described at AC¶¶288, 289, 293, 298 and 300.  Among other things, the boards failed to consider the costs of the services provided by the subadvisor (AC¶300; Def. Ex. A; B (text reproduced below),[20] the wisdom of retaining the

---

[18]  Tables I- II to the Decl. of RL update data contained in AC Tables' IV-V.

[19]  The JH Trust's SAIs and Financial Statements are separate SEC filings.

[20]  The Boards of JHT and JHFII both stated in 2009 SEC filings:

[T]he Board believes that...the **costs of the services** to be provided and the profits to be realized by those subadvisers that are not affiliated with the

advisor in view of the subadvisor's services, or the implications of JHIMS's fraud violation (AC288; see also (App. N)).

The Defendants next argue that Plaintiff's claim must fail because it does not address the "Total Advisory Fee." This argument is flawed because Plaintiff does complain about the Total Advisory Fee. The total fee was charged by JHIMS, but only a portion of it should have been charged since the subadvisors rendered all of the necessary services. Benak, relied upon by Defendants, is inapposite. There, plaintiffs alleged that a decision to invest in Enron stock violated ICA §36(b). The court dismissed the case because plaintiff was attempting to "shoehorn her claim into ICA 36(b) since '"the complaint..is actually attacking business judgment'." Id at*7-8. In so ruling, the court stated that in evaluating an ICA §36(b) claim the "court must examine the relationship between the fees charged and the services rendered" Id at 6, which is the subject of the allegations of the AC: fees were charged but few services were rendered.

The Defendants next claim that Plaintiff's allegations do not demonstrate that the boards of JHT and the JHFII were not conscientiousness, citing to Armon v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 342 (2d. Cir. 2006). There,

---

Adviser [JHIMS] from their relationship with the Trust generally are not a material factor in the Board's consideration of these subadvisory agreements.... (Def. Ex. A, p489, paragraph following bullet point 5, Def Ex. B, p521, last paragraph of first column of text) (emphasis added).

plaintiffs' case was dismissed because it relied "on speculation, inference and generalized observations ..." Id at 343. Here, Plaintiff's ICA §36(b) claim is supported in the AC by statements from SEC filings: it is not speculative.  Next, Defendants allege that the boards' fee approvals in the face of JHIMS's SEC violation and their failure to consider the subadvisors' costs and profits does not demonstrate a lack of conscientiousness. However, as a consequence of JHIMS' prior violations, the Boards should have exercised greater scrutiny. Finally, the Defendants argue that the boards were only disregarding the profits of the subadvisors. This statement is contradicted by Defendants' exhibit which state that the "**costs of the services** to be provided and the profits to be realized by those subadvisers that are not affiliated with [JHIMS]...are not a material factor in the Board's consideration of these subadvisory agreements.... "(Def. Exhs. A, p.489 and B, p.521)

### D.    Plaintiff's Claim is Timely

This case differs from In re Franklin Mut. Funds Fee Litig., supra, 478 F. Supp. 2d at 687 in a very material way.  There, the only data offered to support plaintiff's claim related to 2004, before plaintiff had even sustained an injury, and the complaint failed to address the defendant's services.  Here, Plaintiff alleges at AC¶¶285 and 288-89, in reliance on SEC filings, that JHIMS' fees were excessive because the subadivsor rendered all of the services.    Thus, Plaintiff has

"allege[d]...facts pertinent to the relationship between the fees charged and the services rendered by the investment advisor...." Id at 686. The statements in AC¶289 are drawn from SEC filings that apply to the entire period from January 2009 to the present date (see p.41 and fn. 16 above) and thus apply to the relevant time period.

Plaintiff included in the AC several tables illustrative of the excess advisory fees, but did not identify the periods during which these fees were paid in some of the tables (Db27). For JHT, undated Table IV sets forth the most recent data available at the time the AC was filed (Decl. RL, ¶13, Exh.K (information used in Table IV of the AC). For some of the portfolios in Table V (JHFII), more recent fee data was available; however, for others that information was not available until after filing the AC (Decl. RL, ¶¶18-19, Exhs. Q p. 5 and R p. 5 (Exh. R became available after the AC was filed). Tables I and II, attached to the Decl. of RL, update Tables IV and V of the AC. A court, ruling on a motion to dismiss, may take judicial notice of documents provided to the Court by plaintiff which a defendant has filed with the SEC. Oran v Stafford, 226 F3d 275, 289 (3rd Cir. 2000).

In addition to Tables IV and V of the AC, Plaintiff included Tables I and II, which were incorporated into Count VIII. These tables are also based on SEC filings, apply to the relevant time period, list the management fees in percentage terms for several of the funds within JHT and JHFII, approximate damages, are dated, and thus

give Defendants adequate notice of Plaintiff's claim.  Furthermore, the numerical

value of the excessive fees are the damages.  The facts which substantiate Plaintiff's

claim (i.e., the subadvisor's services) are plead in AC¶289 and, as described above,

these allegations apply to the period from of January 2009 to the present date.

Finally, review of the complete copies of the SEC filings, excerpted in Defendants'

appendix, confirm Plaintiff's allegations regarding the lack of services on the part of

JHIMS (Decl. of RL ¶¶11 and 15; Exhs. J p.25 and N pp. 20-21 (page references are

to the page numbers inserted by Plaintiffs on the bottom of Defendants' SEC filings).

## POINT III

### PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE INVESTMENT COMPANY ACT OF 1940

Plaintiff alleges in Count IX that the fees and charges deducted by JHUSA

under the variable annuity contracts violate ICA§26(f)(2)(A) because the fees are not

reasonable "in relation to the services rendered, the expenses expected to be incurred,

and the risks assumed by [JHUSA]."  This claim is brought on behalf of Plaintiff and

similarly situated contract holders under ICA§47(b), which expressly affords a private

right of action for rescission and restitution of the amounts by which Defendants were

unjustly enriched as a result of the performance of the unenforceable contract.

Defendants move to dismiss, advancing a number of arguments related to Plaintiff's

standing and the sufficiency of the allegations in the AC pertaining to ICA§26(f).

## A.   The Plaintiff Has an Express Private Right of Action Under ICA§47(b)

ICA§47(b)(1) expressly provides that, where the performance of a variable annuity contract violates any provision of the Act, that contract is unenforceable "by either party (or by a nonparty to the contract who acquired a right under the contract...)." This type of "rights-creating" language demonstrates that, by enacting ICA§47(b), Congress expressly authorized a private right of action for rescission and unjust enrichment when a contract, in whole or part, violates a provision of the Act. Alexander v. Sandoval, 532 U.S. 275, 288 (2001)(citing Cannon v. University of Chicago, 441 U.S. 677, 690 (1979)). Where the intent of Congress is clearly set forth in a statute's text, that is the end of the inquiry. Id. Compare, Investment Advisers Act of 1940 (IAA) §215 (similar provision under the IAA, which voids contracts that violate that Act, and provides private rights of action for rescission).

Defendants' arguments disregard the express language of the statute. In addition, they fail to cite a single case that specifically supports the position they advance. Instead, they rely upon Olmstead v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429 (2d Cir. 2002), a distinguishable case. There, the court only considered whether a private right of action exists under ICA§26(f). Id at 432-36. In doing so, the court acknowledged that its decision did not address the issue raised here, namely, whether a private right of action exists under ICA§47(b) when the terms of a contract

violate another provision of the Act. Id at 436, fn.5 ("Because the plaintiffs make no claim under §47(b) ... we decline to consider the relevance of §47(b)"). Thus, Count IX of the AC does not, as Defendants suggest, constitute an "end run around Olmstead" insofar as Plaintiff asserts that her right to sue arises under ICA§47(b), not §26(f).

Defendants' brief also fails to consider the position taken by the SEC when it appeared as an *amicus* in Olmstead. See id, 283 F.3d at 436, fn.5. As stated in the SEC's *amicus* brief - which is supported by both Supreme Court precedent and legislative history - ICA§47(b) expressly provides a private right of action for rescission and restitution where performance of a contract violates ICA§26(f).[21] "Brief of the Securities and Exchange Commission, Amicus Curiae, Submitted at the Court's Request" attached hereto as App. O at pp. 5-8. According to the SEC:

> The Court and the parties have focused on implied rights to damages under Sections 26 and 27 themselves. We believe, however, that the most appropriate private remedy for a violation of the requirement that aggregate fees and charges for variable insurance contracts be reasonable is the express remedy set forth in Section 47(b) of the ICA, which permits rescission of the portion of the contract that establishes an unreasonable price, together with restitution of the excess amounts paid. Section 47(b) permits rescission of any contract that is made or whose performance involves a violation of any section of the Act as well as restitution of the consideration paid for such a contract, subject

---

[21] The court in Olmstead explained in a footnote that it ultimately did not consider the SEC's position because: (1) this argument was not raised by the plaintiffs on appeal and (2) although plaintiffs had advanced a claim under ICA§ 26(f), they had not advanced an ICA§47(b) claim. Id at 436, n.5.

to the court's equitable authority. In our view, this express remedy would provide complete relief for the violations alleged in this case . *** Id. at p. 5.

Because of the availability and adequacy of the express Section 47(b) remedy, it is not necessary for the court to decide whether there also are duplicative implied damage remedies under Sections 26 and 27, and we take no position on that question. *** Id.

Indeed, given the explicit language in Section 47(b)(2) that creates a presumption in favor of rescission, the remedy under the current version of Section 47(b) should be viewed as an express rather than an implied one. Id. at p. 8

Thus, Defendants' analysis of whether a private cause of action may be inferred from the language of ICA§47(b) is irrelevant because, as noted above, that section expressly provides for such a right. Nevertheless, even if this Court conducts the analysis suggested by Defendants, it inevitably leads to the same conclusion. See Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 18 (1979)(where the Court found an implied private right of action under a section of the Investment Advisers Act similar in language to ICA§47(b)).

**B.      Plaintiff Is Entitled to the Remedies Available Under ICA §47(b)**

Equally unpersuasive is Defendants' argument that Plaintiff lacks standing to sue under ICA§47(b) because she is allegedly not a party to a variable annuity contract with JHUSA. This contention fails for a number of reasons.

First, Defendants' argument is based upon the faulty premise that Plaintiff "has not plead that she is a party to a variable annuity contract" or "that as a non-party she

has rights to sue under any such contract" (Db 31). A cursory examination of the AC clearly demonstrates otherwise.[22]

Second, at this stage, Plaintiff has alleged sufficient facts to demonstrate that she has standing. AC¶¶1-51, 79-93, 113-138 and 160-176. JHUSA issued a group variable annuity contract (GAC) in which Plaintiff was a participant. Each plan participant in the GAC, including Plaintiff, owns an individual investment portfolio through which he or she makes all of the investment decisions, and bears all of the risk related to their retirement savings. In exchange, JHUSA profits by charging fees and expenses to each participant's account individually, as a function of the costs imposed on the investment options selected. To the extent that such charges are unreasonable, the affected participants are entitled to restitution. These facts are more than sufficient to "plausibly" demonstrate that Plaintiff is a party to a JHUSA variable annuity contract, or that she has otherwise acquired rights under such a contract, and may maintain an ICA §47(b) claim. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).[23]

-------

[22] Paragraph 28 of the AC states that Plaintiff is "a party to a JH Variable Annuity Contract (specifically the group annuity contract associated with the Plaintiff Plan in which she is a participant)" or "has acquired rights under the [aforementioned] JH Variable Annuity Contract." (AC¶ 28).

[23] Given its purported relevance to Defendants' argument, it is significant to note that Defendants do not include a copy of the GAC - a document which Plaintiff was not given- as an exhibit to their moving papers.

Third, even assuming *arguendo* that Plaintiff does not have a direct contractual relationship with Defendants, she is, based upon the facts set forth above, a third party beneficiary of the agreement. <u>Bank of New York v. Janowick</u>, 430 F.3d 264, 271 (6th Cir. 2007) (finding that company employees were third party beneficiaries of group annuity contracts purchased by their employer to fund benefits under an ERISA plan).  As such, Plaintiff is a party with a sufficient contractual interest to maintain an action under ICA §47(b).

Fourth, ICA § 47(b)(3) provides: "This subsection shall not apply...(B) to preclude recovery against any person for unjust enrichment."  This provision is not addressed by the Defendants.  Notably, a party does not need to possess rights under an actual contract in order to maintain a claim for unjust enrichment.  In equity, "quasi-contractual rights [are] created to prevent unjust enrichment." <u>Archawski v. Hanioti</u>, 350 U.S. 532, 536 (1956).

Even if Plaintiff is neither a party nor a third-party beneficiary to the variable annuity contract, she has still suffered a detriment as a result of the unjust benefit taken by JHUSA in the form of unreasonable fees and charges.  Thus, to say that Plaintiff, who was charged all of the unreasonable fees, cannot advance a claim under ICA § 47(b) would be wholly at odds with an Act designed to protect investors from, among other things, excessive charges.

Fifth, Defendants' reliance upon <u>Hamilton v. Allen</u>, 396 F.Supp.2d 545 (E.D. Pa. 2005) is misplaced. There, unlike the instant matter, plaintiffs sought to rescind an investment advisory contract between a fund company and its adviser, alleging that the latter breached its fiduciary duty by failing to advise the fund company to participate in class action settlements. Given the attenuated link between the suing shareholders in <u>Hamilton</u> and the advisory contracts they sought to rescind, the court found that the necessary contractual relationship was lacking. That is not the case here, where the relationship between Plaintiff and JHUSA is much more direct.

For all these reasons, Defendants' contractual standing argument must fail.

## C.    The Plaintiff Has Sufficiently Alleged a Violation of ICA§26(f)

Defendants also argue, incorrectly and without citation to any case law, that Count IX of the Complaint should be dismissed because it purportedly does not allege that the fees and charges at issue were unreasonable "in the aggregate." Plaintiff, however, does in fact advance that very allegation. AC¶¶ 18, 89, 93, 335 and Count IX, ¶ 2. For that reason alone, Defendants' motion should be denied.

Moreover, to the extent Defendants assert that Count IX is deficient because it focuses solely on one component of the aggregate fees and charges (*i.e.* excessive advisory fees), that argument is equally unpersuasive. The fact that advisory fees are a part of the aggregate fees does not undermine Plaintiff's claim under ICA §26(f)(2).

In fact, ICA §26 (f) (3) provides that "all fees and charges imposed for any manner or purpose and in any manner" shall be considered. The language requires consideration of "all fees."  Furthermore, ICA §47(b)(3) protects the "lawful portion of a contract" from rescission.  Therefore, the reasonable portion of the aggregate fee may not be rescinded; only the unreasonable portion may be. This also means that if one component of a fee is unreasonable, that fee component must be returned. Despite the conclusory argument advanced by the Defendants, fees and charges are unreasonable, in the aggregate, if one of the component charges is unreasonable.

Indeed, the protections afforded by ICA §26(f)(2) would be eviscerated if Defendants' argument were accepted.  JHUSA would be free to charge unreasonable fees - no matter how grossly excessive - as long as the fee was limited to only one of the many categories of charges. Such an interpretation would undermine the protections provided to investors by the ICA. Abromowitz v. Posner, 672 F.2d 1025, 1032 (2d Cir. 1982)("The protection of investors is the fundamental purpose of the Investment Company Act"). Finally, the fees and charges deducted for services rendered were  unreasonable since they were duplicative and excessive.

This final claim, in all events, is specifically set forth as part of Plaintiff's ERISA-based causes of action, and is also applicable to her ICA§26(f)(2) claim (AC, Count IX), and can be fairly considered on this motion.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, except with regard

to JHNY, should be denied.

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.


By:    s/Robert L. Lakind
       Robert L. Lakind

Dated: September 22, 2010