## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIELLE SANTOMENNO, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 2:10-cv-01655-WJM-MF |
| | ) |
| vs. | ) |
| | ) ***Document electronically filed.*** |
| John Hancock Life Insurance | ) |
| Company (U.S.A.), John Hancock | ) |
| Investment Management | ) **ORAL ARGUMENT REQUESTED** |
| Services, LLC, John Hancock | ) |
| Funds, LLC, and John Hancock | ) |
| Distributors, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Kevin J. McKenna, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500

James O. Fleckner, Esq. (admitted *pro hac vice*)
Alison V. Douglass, Esq. (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Attorneys for John Hancock Life Insurance
Company (U.S.A.), John Hancock Investment
Management Services, LLC, John Hancock Funds,
LLC, and John Hancock Distributors, LLC

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.........................................................................1

FACTUAL BACKGROUND...........................................................................3

I.    John Hancock's Mutual Fund Business...................................................3

    A.    JHT and JHFII...............................................................................3

    B.    JHIMS's Role as Investment Adviser to JHT and JHFII
        Funds..........................................................................................4

    C.    Plaintiffs' Claim Alleging Excessive Mutual Fund Fees...................7

II.    John Hancock's Group Variable Annuity Business....................................7

    A.    JHUSA Provided Products and Services Under Group
        Variable Annuity Contracts with Plaintiffs' Plan
        Trustees. .....................................................................................7

    B.    The Contracts Were Owned, and Were Subsequently
        Terminated, by the Trustees of Plaintiffs' Plans. ............................12

    C.    Plaintiffs' Claims Alleging Violations of ICA § 26(f)
        and Breaches of ERISA Fiduciary Duty. ........................................13

PROCEDURAL POSTURE..........................................................................15

ARGUMENT ..........................................................................................16

I.    Standard of Review as to All Claims....................................................16

II.    Plaintiffs' Claim Under ICA § 36(b) Should Be Dismissed. .....................17

    A.    Plaintiffs Lack Standing to Bring an ICA § 36(b) Claim. .................17

        1.    Plaintiffs Were Never Security Holders of Any of
            the Mutual Funds. ...........................................................18

            a.    Plaintiffs' Allegations Do Not Establish That They
                Were Security Holders of any JHIMS-Advised
                Funds..................................................................18

            b.    Retirement Plan Participants Are Not Mutual Fund
                Security Holders....................................................19

            2.    Plaintiffs Have No Current Relationship With Any
            of the Mutual Funds. .........................................................21

            3.    Plaintiffs Never Had an Interest in 193 Funds........................22

B.  Plaintiffs Fail to State an ICA § 36(b) Claim. .................................. 24

    1.  Plaintiffs' Allegation that JHIMS Performs No Investment Management and Advisory Services Is Contradicted by the Public Record ....................................... 24

    2.  Plaintiffs' Pleadings Regarding a 2007 SEC Settlement Are Insufficient to State a Claim. ........................ 26

III.  Plaintiffs' Claim Under ICA § 47(b) Should Be Dismissed. ..................... 27

  A.  Plaintiffs Are Not Parties to Any Contract. .................................... 28

  B.  The Relief Plaintiffs Seek is Unavailable. ...................................... 29

  C.  Plaintiffs Have Not Pleaded that They Invested in a Variable Annuity Governed by the ICA. .......................................... 30

  D.  The ICA Confers no Private Right of Action for Alleged Violations of ICA § 26 ................................................................. 31

IV.  All of Plaintiffs' ERISA Claims Should Be Dismissed ............................. 32

  A.  Plaintiffs Fail to Plead that the Trustees of Their Plans Have Improperly Refused to Sue JHUSA. ..................................... 32

  B.  Plaintiffs Fail to Plead that JHUSA Is an ERISA Fiduciary with Respect to the Challenged Conduct .......................... 36

    1.  JHUSA Neither Possessed nor Exercised Any Requisite Discretionary Authority or Control With Respect to Plaintiffs' Plans .................................................... 38

      a.  The Contracts Established that JHUSA Did Not Have Discretion over Investment Selection ................. 39

      b.  JHUSA Did Not Exercise Discretion Over Plaintiffs' Plans by Offering a Product to the Marketplace. ................................................................... 41

      c.  JHUSA Did Not Exercise Discretion Over Plaintiffs' Plans by Updating the Product that It Sold ................................................................................... 44

      d.  JHUSA Did Not Have Discretion Over the Challenged Fees ........................................................... 47

    2.  Plaintiffs Fail to Plead that JHUSA Rendered Relevant Investment Advice for a Fee ................................... 48

3.      Maintaining Assets in Insurance Company
                Separate Accounts Did Not Make JHUSA an
                ERISA Fiduciary. ................................................................ 51

V.      JHD and JHF Should Be Dismissed Entirely. ............................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ........................................................................ 31-32

*Allee v. Medrano,*
  416 U.S. 802 (1974) ............................................................................ 47

*Am. Corporate Soc. v. Valley Forge Ins. Co.,*
  No. 09-5568, 2010 WL 2950367 (D.N.J. July 22, 2010) ...................... 9

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ........................................................................ 16

*Baraka v. McGreevey,*
  481 F.3d 187 (3d Cir. 2007) ................................................................ 16

*Beddall v. State St. Bank & Trust Co.,*
  137 F.3d 12 (1st Cir. 1998) .................................................................. 39

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................... 16, 19

*Brever v. Federated Equity Mgmt. Co. of Pa.,*
  233 F.R.D. 429 (W.D. Pa. 2005) .......................................................... 21

*Briglia v. Horizon Healthcare Servs., Inc.,*
  No. 03-6033, 2005 WL 1140687 (D.N.J. May 13, 2005) ...................... 39

*Charters v. John Hancock Life Ins. Co.,*
  583 F. Supp. 2d 189 (D. Mass. 2008) .............................................. 46-47

*Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,*
  494 U.S. 558 (1990) ............................................................................ 33

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
  474 F.3d 463 (7th Cir. 2007) ................................................................ 45

*Consolidated Beef Indus. Inc. v. New York Life Ins. Co.,*
  949 F.2d 960 (8th Cir.1991) ................................................................ 49

*Cotton v. Mass. Mutual Life Ins. Co.,*
  402 F.3d 1267 (11th Cir. 2005) ............................................................ 41

*DelRio-Mocci v. Connolly Props. Inc.*,
   No. 08-2753, 2009 WL 2989537 (D.N.J. Sept. 16, 2009) ......................................17

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000)......................................................................................4

*Elliott v. Mitsubishi Cement Corp.*,
   No. 07-03509, 2008 WL 4286985 (C.D. Cal. Sept. 15, 2008) ..........................49-50

*F.W. Webb Co. v. State St. Bank & Trust Co.*,
   No. 09-cv-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)......................42, 44

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ................................................................................................33

*Firestone v. Galbreath*,
   976 F.2d 279 (6th Cir. 1992) ...................................................................................34

*Flacche v. Sun Life Assur. Co. of Can.*,
   958 F.2d 730 (6th Cir.1992) ...............................................................................48-49

*Forsythe v. Sun Life Fin. Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) ......................................................................22

*Garland v. Enterprise Leasing Co. of Phila.*,
   No. 99-CV-4013, 1999 WL 1077075 (E.D. Pa. Nov. 24, 1999) ............................19

*Graden v. Conexant Sys., Inc.*,
   496 F.3d 291 (3d Cir. 2007)......................................................................................33

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ................................................................................................54

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) .......................................................................28

*Harrow v. Prudential Ins. Co. of Am.*,
   279 F.3d 244 (3d Cir. 2002)......................................................................................35

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ..........................................................................40-41, 53

*Hoffman v. UBS-AG*,
   591 F. Supp. 2d 522 (S.D.N.Y. 2008).......................................................................25

*In re Am. Mut. Funds Fee Litig.*,
   No. CV 04-5593, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) ............................22

*In re Arbinet-thexchange, Inc.*,
   No. 05-4404, 2006 WL 3831396 (D.N.J. Dec. 28, 2006).......................................16

*In re Benefit Mgmt., Corp.*,
   No. 87-03292, 1988 WL 384076 (Bankr. W.D. Wis. Nov. 21, 1988)....................51

*In re Franklin Mut. Funds Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005) ....................................................................32

*In re Franklin Mut. Funds Litig.*,
   478 F. Supp. 2d 677 (D.N.J. 2007) ................................................................26, 27

*In re Ins. Brokerage Antitrust Litig.*,
   Nos. 04-5184, 05-1079, 2008 WL 141498 (D.N.J. Jan. 14, 2008) .............. 39, 43-44

*In re Lord Abbett Mut. Funds Fee Litig.*,
   407 F. Supp. 2d 616 (D.N.J. Dec. 28, 2005)....................................................4, 22

*In re RCN Litig.*,
   No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) .......................................38

*In re Scudder Mut. Funds Fee Litig.*,
   No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)...........................22

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   No. 03-3924, 2007 WL 2071876 (E.D. Pa. July 16, 2007) ...................................54

*Invengineering, Inc. v. Foregger Co.*,
   184 F. Supp. 366 (D.N.J. 1960) ........................................................................29

*Katz v. Fifield Realty Corp.*,
   No. 07-61626-CIV, 2010 WL 3835009 (S.D. Fla. Sept. 29, 2010) ........................29

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970)........................................................................18, 47

*Kent v. Tabafunda*,
   No. 07-4973, 2008 WL 2510723 (D.N.J. June 19, 2008) ........................... 16-17, 25

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) .......................................................................................32

*Lessler v. Little*,
   857 F.2d 866 (1st Cir. 1988)............................................................................28

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
   982 F.2d 1031 (6th Cir. 1993) .........................................................................38

*McMahon v. McDowell,*
   794 F.2d 100 (3d Cir. 1986)................................................................................34

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248 (1993)........................................................................................36

*Moench v. Robertson,*
   62 F.3d 553 (3d Cir. 1995)..........................................................................33, 37

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
   615 F.3d 1106 (9th Cir. 2010) ...................................................................31-32

*Olmsted v. Pruco Life Ins. Co. of New Jersey,*
   283 F.3d 429 (2d Cir. 2002).........................................................................31

*Pegram v. Herdrich,*
   530 U.S. 211 (2000) ..................................................................................37-38

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
   998 F.2d 1192 (3d Cir. 1993).........................................................................9

*Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r,*
   523 F.3d 140 (3d Cir. 2008)................................................................. 17, 20-21

*Rahm v. Halpin,*
   566 F.3d 286 (2d Cir. 2009)..........................................................................34

*Reich v. Compton,*
   57 F.3d 270 (3d Cir. 1995).............................................................................33

*Renfro v. Unisys,*
   No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010)...........................44-45

*Ruppert v. Principal Life Ins. Co.,*
   No. 07-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) ..............................53

*Schulist v. Blue Cross of Iowa,*
   717 F.2d 1127 (7th Cir. 1983) ......................................................................48

*Seidel v. Lee,*
   954 F. Supp. 810 (D. Del. 1996) ...................................................................27

*Siemers v. Wells Fargo & Co.,*
   No. C 05-04518, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006)........................21

*Siemers v. Wells Fargo & Co.,*
   No. C 05-04518, 2007 WL 760750 (N.D. Cal. Mar. 9, 2007) ...........................21

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*,
   661 F. Supp. 2d 1076 (D. Ariz. 2009) ...................................................................54

*Srein v. Frankford Trust Co.*,
   323 F.3d 214 (3d Cir. 2003) ................................................................37, 39, 52

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) ................................................................23

*Struble v. N.J. Brewery Employees' Welfare Trust Fund*,
   732 F.2d 325 (3d Cir. 1984) ................................................................33, 35

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*,
   317 F. App'x 169 (3d Cir. 2009) ................................................................54

*Trustees of the I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of New
   York and New Jersey LLC*,
   No. 07-4262, 2008 WL 4601792 (D.N.J. Oct. 15, 2008) .................................39, 52

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ................................................................38

*Verizon Employee Benefits Comm. v. Adams*,
   No. 3:05-cv-1793, 2006 WL 66711 (N.D. Tex. Jan. 11, 2006)............................54

*Warren Distrib. Co. v. InBev USA LLC*,
   No. 07-1053, 2007 WL 4554245 (D.N.J. Dec. 20, 2007)......................................14

*Wells v. Genesis Health Ventures, Inc*,
   No. 05-697, 2005 WL 3150259 (E.D. Pa. Nov. 23, 2005) ...................................13

*Zang v. Paychex, Inc.*,
   No. 08-cv-6046L, 2010 WL 3021909 (W.D.N.Y. Aug. 2, 2010).....................41-42


STATUTES, RULES & REGULATIONS

15 U.S.C. § 77e ................................................................20

15 U.S.C. § 80a-3(c)(11) (ICA § 3(c)(11))................................................................31

15 U.S.C. § 80a-26 (ICA § 26) ................................................................27, 29-31

15 U.S.C. § 80a-26(a) (ICA § 26(a)) ................................................................30

15 U.S.C. § 80a-26(f) (ICA § 26(f)) ................................................................13, 30

15 U.S.C. § 80a-26(f)(2)(a) (ICA § 26(f)(2)(a))................................................................30

15 U.S.C. § 80a-35(b) (ICA § 36(b)) ....................................................1, 7, 15, 17-24, 26-27, 32

15 U.S.C. § 80a-35(b)(3) (ICA § 36(b)(3)) ...............................................................27

15 U.S.C. § 80a-46(b) (ICA § 47(b)) ..........................................................2, 7, 13, 27-31

15 U.S.C. § 80a-46(b)(3) (ICA § 47(b)(3)) ...............................................................29

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) ....................................................37-38, 45, 51-52

29 U.S.C. § 1002(21)(A)(i) (ERISA § 3(21)(A)(i)) ...........................................................38

29 U.S.C. § 1002(21)(A)(ii) (ERISA § 3(21)(A)(ii)) ......................................................48-49

29 U.S.C. § 1002(21)(A)(iii) (ERISA § 3(21)(A)(iii)) ........................................................38

29 U.S.C. § 1101(b)(1) (ERISA § 401(b)(1)) ...............................................................53

29 U.S.C. § 1101(c)(5)(B) (ERISA § 401(c)(5)(B)) ...........................................................51

29 U.S.C. § 1102(a)(1) (ERISA § 402(a)(1)) .................................................................8

29 U.S.C. § 1103(a) (ERISA § 403(a)) ...................................................................8, 35

29 U.S.C. § 1104(a) (ERISA § 404(a)) ................................................................35-36

29 U.S.C. § 1106(a) (ERISA § 406(a)) ...................................................................36

29 U.S.C. § 1106(b) (ERISA § 406(b)) ...................................................................36

29 U.S.C. § 1109(a) (ERISA § 409(a)) .................................................................33, 35

29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) ...........................................................32-33

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ...........................................................53-54

Fed. R. Civ. P. 12(b)(6) .................................................................................16

Fed. R. Civ. P. 12(f) ...................................................................................27

17 C.F.R. § 240.10b-10 ..................................................................................20

17 C.F.R. § 270.12b-1 ...................................................................................11

29 C.F.R. § 2509.75-8, D-2 ...............................................................................51

29 C.F.R. § 2509.75-8, D-3 ...............................................................................40

29 C.F.R. § 2509.96-1 ...................................................................................50

29 C.F.R. § 2510.3-21(c)(1)(i) ................................................................49

29 C.F.R. § 2510.3-21(c)(1)(ii) ...............................................................50

29 C.F.R. § 2510.3-21(c)(1)(ii)(B) ..........................................................49

29 C.F.R. § 2550.401c-1 ........................................................................51

29 C.F.R. § 2550.401c-1(d)(2) ...............................................................52

29 C.F.R. § 2550.408b-2(c)(3) ................................................................47

## OTHER AUTHORITIES

Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants,
   *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. Apr. 2, 2008) .................................................53

*Confirmation of Transactions*, SEC Release No. 34-34962, 1994 WL
   635201 (Nov. 10, 1994) .................................................................20

DOL Adv. Op. 97-16A (May 22, 1997) (the "Aetna Letter") .................................................45-46

*Exemptions for Certain Registered Open-End Mgmt. Inv. Cos.*, SEC Release No. IC-
   16619, 1988 WL 1000041 (Nov. 2, 1988) .................................................24

*Exemption from Shareholder Approval for Certain Sub-advisory Contracts*, SEC Release
   No. 33-8312, 2003 WL 22423216 (Oct. 23, 2003) ...........................................6, 25

*Fair and Equitable Treatment of Series Type Investment Company Shareholders*, SEC
   Release No. IC-7276, 1972 WL 125428 (Aug. 8, 1972) .........................................23

*Mutual Fund Distribution Fees; Confirmations*, SEC Proposed Rule, 75 Fed. Reg. 47064
   (Aug. 4, 2010) .......................................................................11, 52

H.R. Rep. 1382, 91st Cong., 2d Sess., 8 (1970) .................................................26

*In the Matter of Hartford Inv. Fin. Servs., LLC*, SEC Release No. 33-8750, 2006 WL
   3228690 (Nov. 8, 2006) .................................................................26

*In the Matter of John Hancock Inv. Mgmt. Servs., LLC*, SEC Release No. 34-55946, 2007
   WL 1814127 (June 25, 2007) .............................................................26

*In the Matter of Lawrence J. Lasser*, Release No. 2578, 2007 WL 57083 (Jan. 9, 2007)............26

*Protecting Investors: A Half-Century of Investment Company Regulation*, SEC Division
   of Investment Management (May 1992)....................................................20

*Meeting Your Fiduciary Responsibilities,* United States Dept. of Labor ......................................8

Restatement (Second) of Trusts § 82 ........................................................................34

Restatement (Second) of Trusts § 177 ......................................................................35

Restatement (Second) of Trusts § 192 ......................................................................35

Restatement (Second) of Trusts § 282(2) .............................................................33-34

Restatement (Second) of Trusts § 282(2) cmt. (a)....................................................33

Restatement (Second) of Trusts § 282(2) cmt. (e)...............................................33-34

5 Scott & Ascher on Trusts § 28.2 (2008) ................................................................34

The Law of Life and Health Insurance, Harnett & Lesnick (2009)................................8

## PRELIMINARY STATEMENT

Plaintiffs participate in employer-sponsored retirement plans. The trustees of those plans contracted with defendant John Hancock Life Insurance Company (U.S.A.) ("JHUSA") for certain products and services. The trustees have since terminated their contracts. In a 215-page Second Amended Class Action Complaint ("SAC"), Plaintiffs challenge various fees paid under those contracts and fees paid to JHUSA's affiliated mutual fund adviser, John Hancock Investment Management Services, LLC ("JHIMS"). Plaintiffs purport to sue on behalf of all participants and all retirement plans whose trustees contracted with JHUSA for retirement plan services. They also purport to sue on behalf of 199 mutual funds that paid JHIMS advisory fees and all parties to variable annuity contracts with JHUSA holding certain funds managed by JHIMS, without regard to whether the contract was purchased for a retirement plan. Plaintiffs bring nine counts under several federal statutes, challenging widely-utilized practices in the insurance, mutual fund and retirement plan services industry.

Plaintiffs' claims should be dismissed because their allegations do not state a claim. As a threshold matter, Plaintiffs are not entitled to assert their claims. Plaintiffs are not, nor were they ever, "security holders" of the 199 mutual funds; thus, they lack standing under Section 36(b) of the Investment Company Act of 1940, as amended ("ICA"), 15 U.S.C. § 80a-35(b). Plaintiffs are not, nor were

they ever, parties to variable annuity contracts; thus, they lack standing under ICA § 47(b), 15 U.S.C. § 80a-46(b).  Further, in the absence of any pre-suit demand on their plan trustees who were parties to the retirement plan services contracts with JHUSA, Plaintiffs cannot maintain suit against JHUSA under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Plaintiffs' claims have additional deficiencies.  For example, they cannot rescind terminated contracts.  They cannot rely on an unrelated 2007 regulatory settlement to impugn mutual fund fees charged in 2009-2010.  Their allegations are refuted by public filings showing that (i) advisory services were provided to the mutual funds by JHIMS in return for the challenged advisory fees, and (ii) the separate accounts that are the subject of their ICA § 47(b) claim are not even governed by the ICA.  Finally, as to their ERISA claims, companies like JHUSA do not become ERISA fiduciaries simply by offering a platform of products and services to retirement plan trustees and thus JHUSA is not subject to the liability asserted here.

For these and the other reasons described herein, the broad, industry-wide challenges contained in the SAC should all be dismissed with prejudice.

2

## FACTUAL BACKGROUND

### I.    John Hancock's Mutual Fund Business.

#### A.    JHT and JHFII.

The SAC alleges that Plaintiff Danielle Santomenno "was invested" in three

funds, the John Hancock Funds II ("JHFII") Blue Chip Growth Fund, and the John

Hancock Trust ("JHT") Money Market Trust and Small Cap Growth Trust funds.

SAC at 17, ¶ 34.[1]   The SAC also alleges "on information and belief" that Plaintiff

Karen Poley "was invested" in the JHFII Lifestyle Fund-Balanced Portfolio, *id.* at

17-18, ¶ 35, and that Plaintiff Barbara Poley "was invested" in three JHFII funds,

the Lifestyle Fund-Aggressive Portfolio, the Lifestyle Fund-Growth Portfolio, and

the Lifestyle Fund-Balanced Portfolio, *id.* at 18, ¶ 36.  The SAC does not allege

that Plaintiffs Barbara Poley and Karen Poley were invested in any funds after

January 2010, or that Plaintiff Santomenno was invested in any funds after June

2010.

Plaintiffs do not allege how they became invested in these six funds,

although it appears to be through a JHUSA group variable annuity contract issued

to the trustees of their employers' retirement plans.  *See* SAC at 10, ¶ 4; 14, ¶ 21;

---

[1] Citations to the SAC are to page and paragraph numbers because the paragraphs
in the SAC are not consecutively numbered.  This is but one of the problems with
Plaintiffs' SAC:  at 215 pages, the SAC is unwieldy, contains irrelevant and
confusing allegations, and would impose undue burdens on the Court and parties
should litigation proceed with it as the operative pleading.

17-18, ¶¶ 34-35, 37; 19-20, ¶ 42.

JHT and JHFII are organized as series trusts – a structure involving a single entity composed of several separate mutual funds (also known as portfolios or series within this structure).  *See* SAC at 17, ¶¶ 32-33.  As of the trusts' 2009 public filings with the Securities and Exchange Commission ("SEC"), there were 77 separate mutual funds within the JHFII series trust and 122 separate mutual funds within the JHT series trust.  *See id.* at 81, ¶ 347.  Each fund within a series trust maintains its own distinct economic structure, with separate overall fees, unique investment policies, and differing portfolios of investments.[2]

## B.   JHIMS's Role as Investment Adviser to JHT and JHFII Funds.

JHIMS is the investment adviser to each of the funds in the JHT and JHFII series trusts pursuant to publicly-available advisory contracts.  *See* SAC at 18, ¶ 37; Douglass Cert., Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000053; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000317; *see generally* Ex. C (JHT

---

[2] *Compare* Certification of Alison V. Douglass ("Douglass Cert."), Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000073-99 *with id.* at MTD-000102-08; *compare* Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000197-233 *with id.* at MTD-000236-57; *see also* Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000010, MTD-000053-54; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000120, MTD-000321. Plaintiffs' SAC includes several references to and/or excerpts from public filings with the SEC.  The Court may consider such public filings in deciding this motion to dismiss.  *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 177 n.2 (3d Cir. 2000) ("[i]nasmuch as the complaint references and relies on the content of certain documents, [the court will] consider them"); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 618-19 (D.N.J. Dec. 28, 2005) (considering SEC filings on motion to dismiss).

Agreement);[3] Ex. D (JHFII Agreement).[4]  JHIMS administers the business and affairs of JHT and JHFII and performs a host of advisory, investment management and administrative services.  *See* SAC at 83-84, ¶ 364; Douglass Cert., Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000053; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000317; Ex. C (JHT Agreement) at MTD-000339-41; Ex. D (JHFII Agreement) at MTD-000374-76.

One of JHIMS's principal advisory functions is the selection and oversight of sub-advisers to the JHT and JHFII funds.  Under this manager-of-managers structure, JHIMS oversees approximately twenty-nine different sub-advisers who invest the assets of the funds on a day-to-day basis.  *See* Douglass Cert., Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000054; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000139-95.  The SEC has recognized the prevalence of this structure, particularly with respect to funds offered as investment options for variable annuity products:

> [In 2003] more than 100 fund complexes offer[ed] these types of funds [utilizing sub-advisers], which hold more than 400 billion dollars in assets.  Many of these funds are sponsored by insurance companies and operate as funding vehicles for separate accounts

[3] Amended and Restated Advisory Agreement dated September 26, 2008 between JHT and JHIMS, filed February 13, 2009 as Exhibit (d)(1) to JHT Registration Statement (the "JHT Agreement").

[4] Amended and Restated Advisory Agreement dated April 28, 2008 between JHFII and JHIMS, filed December 24, 2008 as Exhibit (d)(1) to post-effective amendment number 22 to JHFII Registration Statement (the "JHFII Agreement").

> offering variable annuity and variable life insurance contracts. They
> represent one of the more recent innovations in managed asset
> arrangements.

SEC Release No. 33-8312, 2003 WL 22423216, at *2 (Oct. 23, 2003).

Pursuant to sub-adviser contracts, sub-advisers develop investment programs for JHIMS advised funds. *See, e.g.*, SAC at 84, ¶ 365. JHIMS oversees sub-adviser performance, ensuring compliance with the fund's investment objectives and reporting on sub-adviser performance to the funds' boards of trustees. *See id.*, Ex. C (JHT Agreement) at MTD-000339; Ex. D (JHFII Agreement) at MTD-000374.

JHIMS receives fees for its services pursuant to advisory contracts. The trustees of JHT and JHFII, including all of the independent trustees, annually review and approve the trusts' advisory contracts with JHIMS and the fees paid thereunder. The trusts' public filings disclose those fees. The public filings also disclose the process by which they are approved.[5] With respect to each mutual fund as to which a sub-adviser is retained, the trustees also review and approve the contracts between JHIMS and the sub-adviser, including the amount of fees paid to sub-advisers. *Id.*, Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000066-69; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000113-16.

---

[5] *See* SAC at 89-90, ¶ 376; *see also, e.g.* Douglass Cert., Ex. A (JHT N-CSR (Dec. 31, 2009)) at MTD-000053-54, MTD-000066-69; Ex. B (JHFII N-CSR (Aug. 31, 2009)) at MTD-000113-115, MTD-000123; Ex. C (JHT Agreement) at MTD-000346-71; Ex. D (JHFII Agreement) at MTD-000381-98.

### C.    Plaintiffs' Claim Alleging Excessive Mutual Fund Fees.

Plaintiffs allege that the advisory fees paid to JHIMS by each of the funds in the JHT and JHFII series trusts are excessive in violation of ICA § 36(b), based primarily on the claim that JHIMS performed no investment management services.[6]  *See* SAC at 163-67, ¶¶ 17-23.  Plaintiffs purport to bring their claims derivatively on behalf of the JHT and JHFII series trusts, with respect to all funds in those trusts, and seek to recover all advisory fees in excess of the sub-advisory fees.  *Id.* at 163, ¶¶ 15-16.  Plaintiffs also seek rescission of JHIMS's advisory contracts pursuant to ICA § 47(b) on the grounds that they violated ICA § 36(b). *Id.* at 166-67, ¶¶ 22-23.

## II.    John Hancock's Group Variable Annuity Business.

In addition to challenging fees paid by the mutual funds, Plaintiffs also challenge fees paid under variable annuity contracts issued by JHUSA.

### A.    JHUSA Provided Products and Services Under Group Variable Annuity Contracts with Plaintiffs' Plan Trustees.

Typically, 401(k) and other retirement plans need to obtain from third-party vendors administrative services and access to investment options.  Under ERISA, the plan's trustees have responsibility to select and monitor an administrative

---

[6] Plaintiffs allege that compensation paid by the funds to JHIMS was excessive to the extent that it was assessed additive to the fees paid to each fund's sub-adviser. *See* SAC at 85, ¶ 366.  Tables IV and V to the SAC, however, indicate that JHIMS collected no separate management fee from several of the funds.  *See id.* at 90-93, 96-98.

service provider and investment options from the thousands available in the marketplace.[7]  JHUSA is in the business of providing such administrative services and investment options to retirement plan trustees through group variable annuity contracts, as is common in the industry.  *See* SAC at 32-34, ¶¶ 112-14; *see also* "The Law of Life and Health Insurance," Harnett & Lesnick (2009) at § 10.07.

The trustees of Plaintiffs' Plans entered into contracts with JHUSA for these services.  Plaintiff Santomenno is a participant in the J&H Berge, Inc. 401(k) Profit Sharing Plan ("J&H Berge Plan"); Plaintiffs Barbara and Karen Poley are participants in the Scibal Associates, Inc. 401(k) Plan ("Scibal Plan," and together with the J&H Berge Plan, the "Plans").  *See* SAC at 21-22, ¶¶ 51-52.  JHUSA issued group annuity contracts[8] on March 24, 2008 to the "Trustees of J&H Berge, Inc. 401(k) Profit Sharing Plan" (the "J&H Berge Contract"), and on January 8,

---

[7] *See* ERISA § 403(a), 29 U.S.C. § 1103(a) (trustees have exclusive authority to control plan assets); ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ("named fiduciaries," such as trustees, "have authority to control and manage the operation and administration of the plan"); *see also* "Meeting Your Fiduciary Responsibilities," at 2, United States Department of Labor ("DOL"), available at http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html (a named fiduciary's responsibilities include hiring service providers).  In some cases, a plan's named fiduciary could be the plan sponsor (*i.e.*, the employer maintaining the plan).  However, because the named fiduciaries of Plaintiffs' Plans are trustees, Defendants use the term trustee to refer to the primary decision-maker for the plan.

[8] While Plaintiff Santomenno purports to assert claims on behalf of a class that includes persons who acquired rights under certain individual annuity contracts issued or sold by JHUSA, she does not plead that she holds, or has any rights under, any individual annuity contract.

2004 to the "Trustees of Scibal Associates, Inc. 401(k) Plan" (the "Scibal

Contract," collectively, the "Contracts"), relative to these Plans. *See* Douglass

Cert., Ex. E (J&H Berge Contract) at MTD-000399; Ex. F (Scibal Contract) at

MTD-000457.[9]

     As to investments, JHUSA made available to the Plans' trustees a platform

of different options, called sub-accounts, each of which invests in a specific

underlying mutual fund. *See* SAC at 13-14, ¶¶ 18-19. These funds include

JHIMS-advised funds as well as funds advised by unaffiliated companies. *See id.*

at 61-65, ¶¶ 247-268.[10]

---

[9] When a "complaint is based on [a] contract" the court can consider the contract, filed by the defendant, even if it was not attached to the complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *see also Am. Corporate Soc. v. Valley Forge Ins. Co.*, No. 09-5568, 2010 WL 2950367, at *3-4 (D.N.J. July 22, 2010) (Martini, J.) (considering contract plaintiffs sought to rescind on a motion to dismiss). Consideration of the Contracts is warranted here because the SAC repeatedly references the Contracts and/or their terms, and seeks rescission of the Contracts. *See* SAC at 10, ¶ 4; 14-15, ¶¶ 21, 23, 29; 16, ¶ 31; 17, ¶ 32; 19-20, ¶¶ 41-43, 45; 21, ¶¶ 49-50; 22-23, ¶¶ 56-59; 25, ¶ 72; 32-33, ¶¶ 112, 115; 35, ¶¶ 126-27; 37-38, ¶ 141; 46-47, ¶¶ 183, 185; 50-51, ¶¶ 199-213; 62-63, ¶¶ 251-56; 67, ¶ 278; 80, ¶ 341; 112, ¶ 422; 113-15, ¶¶ 424, 429-30, 432; 116, ¶ 434; 121-123, ¶¶ 441-44, 446; 123-25, ¶ 449; Count II: 134-35, ¶ 4; Count VI: 153, ¶¶ 9-10; Count VII: 156-57, ¶ 4; Count IX: 168-77, ¶¶ 6-8, 10, 12-13, 15, 17, 19-22.

[10] Plan assets allocated to a particular investment option are credited to the JHUSA sub-account that pools the assets of all plans that have been allocated to that investment option by the decisions of plan trustees and participants. *See* SAC at 14, ¶ 20. As necessitated by the plan-directed allocations, JHUSA then "purchase[s] shares in the chosen [mutual] fund" with the assets in the sub-account. *Id.* at 14, ¶¶ 19-20.

The number of investment options available on the JHUSA platform changes over time.  For example, 154 were offered to the trustees of the J&H Berge Plan.  *See* Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000416-56. The Plans' trustees remained responsible for selecting the investment options for their Plans from these available options.  *See* SAC at 13-14, 36, ¶¶ 18, 132.  The Contracts stated that "[c]ontributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder [the trustee]." Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000404; Ex. F (Scibal Contract) at MTD-000461.

JHUSA also provided administrative services under its Contracts, including, for example, (i) "record keeping services," (ii) "plan installation" services, (iii) "the enrollment of participants," (iv) "distribut[ion of] educational materials," (v) "customer service," and (vi) "other participant services."  SAC at 33, ¶ 114; *see also* Douglass Cert., Ex. F (Scibal Contract) at MTD-000470 (Service Schedule). The scope of services with respect to any specific plan is determined by the plan trustees.

As is the case with any business, JHUSA receives compensation in connection with providing services and offering investment options to plans.  This compensation includes fees charged to plans, and revenue received from investment options selected by the trustees.  *See*, *e.g.*, SAC at 50-51, ¶¶ 199-200,

202, 207, 209; Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000412-14,

MTD-000416-56.  As to the latter, JHUSA, or its affiliates, may receive revenue

sharing payments from a mutual fund or its underwriter.  *See* SAC at 107-8, ¶¶

399-402.  These payments can take the form of payments made under 17 C.F.R. §

270.12b-1 ("12b-1 fees"), sub-transfer agency payments, or other payments.

Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000416-56.  12b-1 fees are

widely used in the retirement plan services industry as recognized recently by the

SEC:

> A common use of 12b-1 fees is to pay for the fund to be included on
> third-party platforms for purchasing mutual funds, such as employer-
> sponsored retirement plans . . . [where the recordkeeper] assume[s]
> many of the recordkeeping and ongoing servicing and support
> functions . . . that funds otherwise would perform.

75 Fed. Reg. 47064, 47071 (Aug. 4, 2010) (footnotes omitted).[11]

These 12b-1 fees and other revenue sharing payments were not a separate

charge under the Contracts.  Where JHUSA or its affiliates received such revenue,

they reduced otherwise applicable charges; the Contracts stated explicitly that fees

"will be reduced if [JHUSA] or an affiliate receives asset based distribution

charges ('12b-1 fees') or sub-transfer agency fees."  Douglass Cert., Ex. E (J&H

Berge Contract) at MTD-000416-56.

_____

[11] While the SEC has proposed eliminating Rule 12b-1, it has also proposed a new
Rule 12b-2 "permitting funds to continue to pay for . . . a fund's participation in
distribution channels . . . such as fund supermarkets and retirement plans."  *Id.* at
47111 (footnotes omitted).

**B.     The Contracts Were Owned, and Were Subsequently
            Terminated, by the Trustees of Plaintiffs' Plans.**

The Plans' trustees held all rights of ownership in the Contracts.  Each

Contract identified the respective trustees as the "Contractholder," and  provided:

> All rights of ownership in the contract will vest in and be exercised by
> the Contractholder.  Participants will have no rights of ownership in
> this Contract . . .

Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000411; Ex. F (Scibal

Contract) at MTD-000469.  Both Contracts specified that JHUSA did "not assume

the responsibility of the Contractholder, Plan Administrator, Plan Sponsor or any

other Fiduciary of the Plan."  *Id.*, Ex. E (J&H Berge Contract) at MTD-000410;

Ex. F (Scibal Contract) at MTD-000468.

The Contracts allowed the trustees to terminate their agreements with

JHUSA at any time and obtain administrative services and access to investment

options for their plans through a different vendor.  Douglass Cert., Ex. E (J&H

Berge Contract) at MTD-000411 (permitting contractholder to "terminate this

Contract by requesting a withdrawal of" the participants' account balances); Ex. F

(Scibal Contract) at MTD-000469 (same).  The respective trustees of each of

Plaintiffs' Plans have exercised this right to terminate, with the Scibal Contract

being terminated effective February 2010 by letter dated December 30, 2009, and

the J&H Berge Contract being terminated effective June 2010 by letter dated May

11, 2010.  *Id.*, Ex. H (Scibal Termination letter); Ex. G (J&H Berge Termination

letter).[12]

Notwithstanding the SAC's generalized allegation that JHUSA "charges contract termination fees if a contract is terminated within a certain period of time," SAC at 51, ¶ 213, the actual Contracts for Plaintiffs' Plans imposed no fees for their termination at any time, nor does the SAC plead that any termination fee was actually charged to Plaintiffs or their Plans.  *See* Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000414, Withdrawal Charge Scale; Ex. F (Scibal Contract) at MTD-000474.

### C.   Plaintiffs' Claims Alleging Violations of ICA § 26(f) and Breaches of ERISA Fiduciary Duty.

Plaintiffs allege that all group and individual variable annuity contracts issued by JHUSA which held underlying investments in a JHT mutual fund may be rescinded pursuant to ICA § 26(f), 15 U.S.C. 80a-26(f), and § 47(b) due to allegedly excessive advisory fees paid by the mutual funds underlying those contracts.  *See* SAC at 168-77, ¶¶ 1-22 (Count IX).[13]  This count is brought on

---

[12] The Court may consider these letters on a motion to dismiss.  *See Wells v. Genesis Health Ventures, Inc.*, No. 05-697, 2005 WL 3150259, at *2 n.4 (E.D. Pa. Nov. 23, 2005) (termination letter "integral to [plaintiff's] claims" considered on motion to dismiss).

[13] The SAC does not allege that Plaintiffs were invested in any "registered unit investment trusts" governed by ICA § 26(f), and states that Plaintiffs are unaware whether the Scibal Contract was operated through registered separate accounts. *See* SAC at 20, ¶ 45 ("Plaintiffs . . . are unable to determine if this contract was also operated through registered separate accounts").  A search of the SEC's publicly-available website, EDGAR (http://www.sec.gov/edgar.shtml), confirms

behalf of a putative class defined as "any person that was a party to, or non-party that acquired rights under, a group or individual annuity contract issued/sold by [JHUSA] where the underlying investment was in any of the funds/portfolios of the JHT." *Id.* at 122, ¶ 446.

Plaintiffs also bring ERISA claims derivatively and as putative class claims on behalf "of ERISA covered employee benefit plans, the Plaintiff Plans, that held, or continue to hold, group annuity contracts with [JHUSA] and on behalf of the participants and beneficiaries of all such ERISA covered employee benefit plans (i.e., the Plaintiff Participants)." SAC at 122, ¶ 445. Plaintiffs allege that JHUSA acted as an ERISA fiduciary, and that it breached ERISA fiduciary duties and engaged in prohibited transactions by: (i) charging a sales and service fee under its contracts, *id.* at 130-36 (Counts I-II); (ii) failing to negotiate the elimination of 12b-1 fees, *id.* at 137-44 (Counts III-IV);[14] (iii) failing to negotiate lower mutual

---

that none of the separate accounts available under either of the Contracts were registered. *See Warren Distrib. Co. v. InBev USA LLC*, No. 07-1053, 2007 WL 4554245, at *5 (D.N.J. Dec. 20, 2007) (Kugler, J.) (appropriate to cite EDGAR on a motion to dismiss).

[14] Count III also asserts that JHIMS, and defendants John Hancock Distributors, LLC ("JHD") and John Hancock Funds, LLC ("JHF") are liable for "knowingly participating" in this alleged breach. *Id.* at 141, ¶ 17. Unlike JHUSA, none of these Defendants is alleged to be an ERISA fiduciary. JHD and JHF are the distributors of JHT and JHFII funds, respectively. *See* SAC at 23, ¶¶ 60, 61.

fund advisory fees, *id.* at 145-51 (Count V);[15] (iv) receiving revenue sharing payments, *id.* at 152-55 (Count VI); and (v) offering the JHT Money Market Trust as an investment option, *id.* at 156-60, ¶¶ 1-13 (Count VII).

## PROCEDURAL POSTURE

On March 31, 2010, Plaintiff Santomenno filed a 142 page Class Action Complaint ("CAC") against JHUSA, JHIMS, JHD, and John Hancock Life Insurance Company of New York ("JHNY"). The CAC contained ten counts – seven under ERISA, two under the ICA, and one under common law. The ICA § 36(b) claim was brought on behalf of 19 mutual funds within three series trusts.

On April 23, 2010, Plaintiff Santomenno filed a 168-page First Amended Complaint ("FAC"). Among other changes, the FAC dropped the common law claim; added a new defendant, JHF; and brought the ICA § 36(b) claim on behalf of all 199 funds in two series trusts, JHT and JHFII. Defendants moved to dismiss the FAC on July 16, 2010 (Docket Entry #23), and Plaintiff opposed that motion on September 22, 2010 (Docket Entry #24).

On October 22, 2010, Plaintiff Santomenno, along with Plaintiffs Karen Poley and Barbara Poley, filed the 215-page SAC, which supersedes the prior pleading and mooted the preceding motion practice. (Docket Entry #35). The SAC no longer named JHNY as a defendant, and added new alleged bases for

---

[15] Count V also asserts that JHIMS is liable under ERISA as a non-fiduciary for "knowingly participating" in this alleged breach. *See* SAC at 151, ¶ 15.

JHUSA's purported ERISA fiduciary status.  The SAC made other alterations from the FAC, such as including the name of the retirement plan in which Plaintiff Santomenno participated.

## **ARGUMENT**

The SAC should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) because Plaintiffs are not entitled to maintain suit and they fail to state claims upon which relief can be granted.

## I.    **Standard of Review as to All Claims.**

To survive dismissal under Rule 12(b)(6), a plaintiff must provide "direct or inferential allegations respecting all the material elements" of her claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  A plaintiff must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Under Rule 12(b)(6), a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal,* 129 S. Ct. at 1949-50 (internal quotations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). Allegations need not be credited if they are contradicted by documents relied upon in the complaint or the public record.  *In re Arbinet-thexchange, Inc.*, No. 05-4404, 2006 WL 3831396, at *2 n.5 (D.N.J. Dec. 28, 2006) (allegations contradicted by cited documents); *Kent v. Tabafunda*, No. 07-4973, 2008 WL 2510723, at *3

(D.N.J. June 19, 2008) (public records).

Dismissal should be with prejudice where, as here, a plaintiff has twice

amended her complaint.  As this Court recently explained:

> [W]here the plaintiff has already amended plaintiff's complaint and
> yet failed to allege sufficient facts, the court may find that three bites
> at the apple is enough, and conclude that it is proper to deny leave to
> replead.

*DelRio-Mocci v. Connolly Props. Inc.*, No. 08-2753, 2009 WL 2989537, at \*2

(D.N.J. Sept. 16, 2009) (Martini, J.) (denying motion for reconsideration of order

dismissing complaint with prejudice) (internal quotations and citations omitted).

## II.   <u>Plaintiffs' Claim Under ICA § 36(b) Should Be Dismissed.</u>

Plaintiffs' claim under ICA § 36(b) (Count VIII) should be dismissed

because Plaintiffs lack standing to sue and have failed to state a claim.

### A.   <u>Plaintiffs Lack Standing to Bring an ICA § 36(b) Claim.</u>

To assert claims under a federal statute, the plaintiff must show that she falls

within the class of persons on whom Congress conferred the right of private action.

*See, e.g.*, *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v.*

*Comm'r*, 523 F.3d 140, 143-44 (3d Cir. 2008) ("Statutory standing asks whether

Congress has accorded *this injured plaintiff* the right to sue the defendants to

redress *his injury*.") (emphasis added) (internal quotations omitted).

ICA § 36(b) authorizes an action by the SEC "*or by a security holder* of

such registered investment company on behalf of such company."  15 U.S.C. §

17

80a-35(b) (emphasis added).  In examining statutory claims regarding mutual

funds, the Third Circuit explained that "one who does not own shares" "is not

qualified to bring a derivative action."  *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d

727, 735 (3d Cir. 1970).

### 1.   Plaintiffs Were Never Security Holders of Any of the Mutual Funds.

#### a.   Plaintiffs' Allegations Do Not Establish That They Were Security Holders of any JHIMS-Advised Funds.

According to their own factual allegations (as opposed to conclusory and

legal assertions), the three Plaintiffs were never security holders of any of the

challenged funds.  Plaintiffs allege that they were participants in retirement savings

plans serviced through a group variable annuity contract issued by JHUSA.  *See*

SAC at 19-21, ¶¶ 41-42, 51-52.  Contributions made under these contracts were

deposited in JHUSA sub-accounts whose assets were used to "purchase shares in

the chosen [mutual] funds."  *Id.* at 14, ¶ 20.

These allegations are insufficient to establish that Plaintiffs were security

holders of the challenged mutual funds.  Plaintiffs at best plead that they have

interests in their retirement plans, the assets of which were invested in JHUSA

group annuity contracts, which contracts were in turn invested in JHUSA sub-

accounts whose assets were then invested in six mutual funds (three for Plaintiff

Santomenno and three for the Poley Plaintiffs).  *See* SAC at 82-83, ¶¶ 357-61.  The

Contracts vested all rights of ownership in the Plans' trustees, not the Plans' participants, including Plaintiffs:  "All rights of ownership in this contract will vest in and be exercised by the Contractholder.  Participants will have no rights of ownership in this Contract . . . ."  *See* Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000411; Ex. F (Scibal Contract) at MTD-000469.

Thus, Plaintiffs' conclusory assertions that each is a "security holder" of the underlying mutual funds are contradicted by their factual allegations and the Contracts' terms.[16]

> ### b.   Retirement Plan Participants Are Not Mutual Fund Security Holders.

Plaintiffs cannot in any event plead statutory standing because, as a matter of law, retirement plan participants are not security holders of mutual funds purchased through group variable annuity contracts issued to retirement plan trustees.  Defendants are aware of no court that has ever held that retirement plan participants are security holders under ICA § 36(b).  A review of the complex federal regulatory and statutory scheme governing investments in registered

---

[16] Plaintiffs' attempt to label themselves "security holders" is unavailing.  The "Court is only required to accept [plaintiff's] pleaded facts, not her conclusions of law."  *Garland v. Enterprise Leasing Co. of Phila.*, No. 99-CV-4013, 1999 WL 1077075, at *1 (E.D. Pa. Nov. 24, 1999) (allegation that defendants was a "debt collector" was a legal conclusion and insufficient to state a claim).  *See generally Twombly*, 550 U.S. at 555 (2007) ("plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions") (internal quotations omitted).

securities forecloses such a result.

For example, Rule 10b-10 of the Securities Exchange Act of 1934 requires that confirmations of the sale of "any security" be delivered to the purchaser.  17 C.F.R. § 240.10b-10.  The SEC has interpreted this as requiring that confirmations be sent to the trustee of a retirement plan, not the individual participants for whose account the sales were effected, as the trustee is considered to be the shareholder. *See* SEC Release No. 34-34962, 1994 WL 635201, at *5 n.38 (Nov. 10, 1994).

Similarly, Section 5 of the Securities Act of 1933 requires that any person selling a security deliver to the purchaser a current prospectus before or at the time of the sale.  15 U.S.C. § 77e.  The SEC staff distinguish retirement plan participants from "investors who directly purchase securities issued by investment companies" in terms of delivery obligations.  *Protecting Investors:  A Half-Century of Investment Company Regulation*, SEC Division of Investment Management, at 151 (May 1992).  As the SEC Staff has explained, the federal securities laws do not "require the delivery of prospectuses for the underlying investment vehicles to plan participants."  *Id.*

Because the relevant legal authority demonstrates that retirement plan participants are not holders of the securities purchased through contracts issued to service their plans, Plaintiffs' ICA § 36(b) claim should be dismissed for lack of statutory standing.  *See Phila. Marine Trade Ass'n*, 523 F.3d at 143-44 (no

standing where Congress has not accorded "this injured plaintiff" the right to sue).

### 2.    Plaintiffs Have No Current Relationship With Any of the Mutual Funds.

Even if the retirement plan interests alleged here could have made Plaintiffs security holders at one time, which they did not, Plaintiffs would nevertheless lack standing because Plaintiffs allege no current interest in any JHT or JHFII fund.

Courts have consistently held that plaintiffs do not have standing to maintain an ICA § 36(b) claim for mutual funds that they do not currently own.  In *Siemers v. Wells Fargo & Co.*, No. C 05-04518(WHA), 2007 WL 760750, at *20-21 (N.D. Cal. Mar. 9, 2007), for example, the plaintiff asserted § 36(b) claims with respect to several Wells Fargo mutual funds.  The court dismissed the claims on the ground that "plaintiff had not alleged that he held or continued to hold any securities in any Wells Fargo fund at the time the action was filed."  *Id.* at *3 (referencing *Siemers v. Wells Fargo & Co.*, No. C 05-04518(WHA), 2006 WL 2355411, at *20-21 (N.D. Cal. Aug. 14, 2006)).  It held that, "[f]or Section 36(b) standing purposes, it is important that the fund be *continuously owned* during the pendency of the action."  *Id.* at *20 (emphasis added).

Similarly, in *Brever v. Federated Equity Mgmt. Co. of Pa.*, the plaintiff sold his shares of the challenged fund two months after filing suit.  233 F.R.D. 429, 431 (W.D. Pa. 2005).  The court held that he therefore "divested himself of standing to maintain an action under § 36(b) of the ICA."  *Id.*  Quite simply, under ICA §

36(b), "'[s]ecurity holders' means *current* security holders." *Forsythe v. Sun Life Fin. Inc.*, 417 F. Supp. 2d 100, 117 (D. Mass. 2006) (emphasis added) (dismissing claims for funds "that [plaintiffs] formerly held shares in, but no longer do").

Plaintiffs allege no current interest in any JHT or JHFII fund, nor could they as their Plans' trustees terminated the Contracts under which the funds had been purchased. Accordingly, Plaintiffs lack ICA § 36(b) standing.

### 3.    Plaintiffs Never Had an Interest in 193 Funds.

Even if Plaintiffs were current security holders of certain funds, which they are not, they would still lack standing to sue on behalf of the 193 funds in which they never had any interest.

This Court has explained that a security holder of one mutual fund cannot bring ICA § 36(b) claims on behalf of funds in which she has no interest. *See In re Lord Abbett Mutual Funds Fee Litig.*, 407 F. Supp. 2d 616, 633 (D.N.J. 2005), *partially vacated on other grounds*, 463 F. Supp. 2d 505 (D.N.J. 2005). Other courts agree. *See, e.g., In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921, 2007 WL 2325862, at *9 (S.D.N.Y. Aug. 14, 2007); *In re Am. Mut. Funds Fee Litig.*, No. CV 04-5593, 2005 WL 3989803, at *1 (C.D. Cal. Dec. 16, 2005) ("Plaintiffs lack standing to assert claims with respect to the 10 funds in which none of them have any interest.").

This rule is equally applicable where the funds are organized within series trusts. The decision in *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005), is instructive. In *Stegall*, the plaintiff invested directly in one mutual fund within a John Hancock series trust and asserted ICA § 36(b) claims with respect to other funds within the series trust. *Id.* at 362. The plaintiff argued that the individual mutual fund was a "mere shell" and that, "as an owner of a fund within . . . the Trust, he ha[d] individual standing to pursue claims involving all of the funds within the [Trust]." *Id.* The court rejected this theory. It held that "one clearly may not use the corporate structure of the broader investment company to confer standing across all funds within that company." *Id.* It further explained that the plaintiff's interest "extends only to the investment decisions of the . . . fund in which the plaintiff invested," and does not permit a plaintiff "to bootstrap claims arising out of investment decisions made in relation to other funds . . . ." *Id.* at 363.

The SEC similarly treats each fund within a series trust as a separate investment company: "[t]he individual series of [a registered investment company] are, for all practical purposes, separate investment companies . . . [with each] series of stock represent[ing] a different group of stockholders with an interest in a segregated portfolio of securities." SEC Release No. IC-7276, 1972 WL 125428, at *1 (Aug. 8, 1972); *see also* SEC Release No. IC-16619, 1988 WL

1000041, at *17 (Nov. 2, 1988) ("The individual series of a series fund are, as a practical matter, separate investment companies.").

Here, Plaintiffs allege no interest in any fund other than the six held in contractual sub-accounts. *See* SAC at 17-18, ¶¶ 34-6. This failure is yet another bar to Plaintiffs bringing claims on behalf of those other funds.

### B.      Plaintiffs Fail to State an ICA § 36(b) Claim.

Even if Plaintiffs had standing to assert any claim under ICA § 36(b), which they do not, their claims still should be dismissed because they fail to state a claim for excessive advisory fees.

#### 1.      Plaintiffs' Allegation that JHIMS Performs No Investment Management and Advisory Services Is Contradicted by the Public Record.

Plaintiffs' ICA § 36(b) claim fails because their core assertion – that JHIMS administers "the business and affairs" of the mutual funds, but performs no investment management and advisory services, SAC at 84-85, ¶¶ 365-67 – is flatly refuted by publicly-available documents.

The funds' SEC filings describe in detail the host of advisory and investment management services that JHIMS performs for each of the mutual funds, in addition to the administrative services it also provides. *See* Douglass Cert., Ex. C (JHT Agreement); Ex. D (JHFII Agreement). Those services include selecting and overseeing sub-advisers, supervising the implementation of the funds' investment

programs, conducting fund performance evaluations and other analyses, reporting to the funds' boards of trustees, and the contribution of other resources to fund management. *See id*. These facts contradict Plaintiffs' allegation that JHIMS performs no investment management and advisory services, and that all such services are performed by the sub-advisers.[17]

This division of responsibility between an overall investment adviser and one or more sub-advisers is common in the industry. In commenting on this structure, the SEC recognized that advisors continue to play a vital role: "the investment adviser seeks to achieve the funds' investment objectives . . . ." SEC Release No. 33-8312, 2003 WL 22423216, at *2; *see generally Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008) ("investment advisers and sub-advisers perform distinct services").

As such, Plaintiffs' allegation that JHIMS received fees for investment management services it did not perform should be foreclosed as contrary to the public documents and as an improper strike suit challenging widely utilized practices. This Court has dismissed such claims in recognition of the "stated intent of the drafters of the 1970 amendments [to the ICA] . . . to 'prevent the harassment

---

[17] Where plaintiffs' core allegation is "contradicted by facts that can be judicially noticed" – including publicly-filed documents that Plaintiffs excerpt in their pleadings, *see, e.g.*, SAC at 83, ¶ 364; 85-6, ¶¶ 367-69 – such facts "are not to be deemed as true," and plaintiffs fail to state a claim. *Kent*, 2008 WL 2510723, at *2 (dismissing claims with prejudice).

of investment advisors by ill-founded or nuisance law suits, the so-called strike suit.'" *In re Franklin Mut. Funds Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007) (Martini, J.) (quoting H.R. Rep. 1382, 91st Cong., 2d Sess., 8 (1970)).  Plaintiffs' unsupported broadside attack on the entire manager-of-managers structure should be similarly dismissed.

### 2. Plaintiffs' Pleadings Regarding a 2007 SEC Settlement Are Insufficient to State a Claim.

Plaintiffs' allegations regarding a 2007 settlement with the SEC are also insufficient to state a claim under ICA § 36(b).  *See* SAC at 111, ¶¶ 416-17.

Plaintiffs argue that because JHIMS had "previously been cited" by the SEC, the fees charged here by JHIMS were "necessarily" excessive.  SAC at 90, ¶ 377; 164-65, ¶ 20.  Plaintiffs are incorrect.  The cited settlement did not address the advisory fees challenged here, but instead related to disclosure of the allocation of fund brokerage transactions to certain broker-dealers involved in the sale of fund shares, a practice that the SEC challenged with respect to several mutual fund sponsors.  *See, e.g.*, SEC Release No. 33-8750, 2006 WL 3228690 (Nov. 8, 2006); SEC Release No. 2578, 2007 WL 57083 (Jan. 9, 2007).  Plaintiffs' claims are in no way related to fund brokerage transactions.  Also, as the SEC order itself notes, the boards receive quarterly reports relevant to the SEC settlement, so the trustees were well aware of this unrelated settlement in any event.  *See* SEC Release No. 34-55946, 2007 WL 1814127, ¶ 36 (June 25, 2007).

Moreover, a three-year-old settlement cannot legally be related to fees at issue here where ICA § 36(b) by its terms only allows fees charged within a year of filing a complaint to be challenged.  15 U.S.C. § 80a-35(b)(3); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d at 686 ("Plaintiffs must plead facts showing that those violations occurred during the statutory one-year period . . . .").  Indeed, because the 2007 settlement falls well outside the ICA statutory period, allegations relating to it should be stricken under Fed. R. Civ. P. 12(f) as "irrelevant to the claims asserted" and "serving no purpose other than to potentially confuse a jury or prejudice Defendants."  *Seidel v. Lee*, 954 F. Supp. 810, 813 (D. Del. 1996) (granting motion to strike).

## III.    Plaintiffs' Claim Under ICA § 47(b) Should Be Dismissed.

Plaintiffs' claim for rescission and unjust enrichment under ICA § 47(b) (Count IX) should also be dismissed because:  (i) Plaintiffs were not parties to any variable annuity contracts and thus lack standing; (ii) the Contracts have already been terminated and thus cannot be rescinded (and there is no separate statutory right to unjust enrichment); (iii) Plaintiffs have not pleaded, and cannot plead, they ever were invested in a variable annuity subject to the ICA; and (iv) ICA § 47(b) provides no private right of action for alleged violations of ICA § 26, 15 U.S.C. § 80a-26.

## A.    **Plaintiffs Are Not Parties to Any Contract.**

None of the Plaintiffs were ever a party to any contract subject to ICA §

47(b).  They therefore lack standing to bring a § 47(b) claim.

Section 47(b) permits a party to a contract to seek rescission if the contract

violates the ICA or its implementing regulations.  15 U.S.C. § 80a-46(b).  Persons

who are *not* a party to a contract, however, "do not have standing to pursue [an

ICA § 47(b)] claim."  *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005)

(dismissing claim for rescission under § 47(b)); *see also Lessler v. Little*, 857 F.2d

866, 874 (1st Cir. 1988) (same).

Plaintiffs were not parties to the contracts they seek to rescind.  The

Contracts expressly identified the Plans' "trustees" as the "contractholder[s]."

Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000399; Ex. F (Scibal

Contract) at MTD-000457.  The Contracts stated explicitly that participants "will

have no rights of ownership" in them.  Douglass Cert., Ex. E (J&H Berge

Contract) at MTD-000411; Ex. F (Scibal Contract) at MTD-000469.  Because the

Plaintiffs were not contract holders and had no rights of ownership in the

Contracts, their ICA § 47(b) claim should be dismissed for lack of standing.[18]

---

[18] Plaintiff Santomenno likewise cannot maintain a rescission claim under ICA §
47(b) on behalf of persons holding individual annuity contracts issued by JHUSA.
First, Plaintiff Santomenno does not plead that she holds a JHUSA-issued
individual annuity contract.  Second, she does not plead that the fees and services
under such contracts are the same as the fees and services provided to her plan's

## B.    The Relief Plaintiffs Seek is Unavailable.

The relief sought in Count IX is not available.  The Contracts cannot be rescinded because they have already been terminated.  *Supra* at 12-13; *see also* SAC at 17-18, ¶¶ 34-36.  It is black letter law that a terminated contract cannot be rescinded.  *Katz v. Fifield Realty Corp.*, No. 07-61626-CIV, 2010 WL 3835009, at *5 (S.D. Fla. Sept. 29, 2010); *see generally Invengineering, Inc. v. Foregger Co.*, 184 F. Supp. 366, 373 (D.N.J. 1960) ("rescission of [an] already duly terminated agreement [is] futile").

Plaintiffs' separate claim for unjust enrichment under ICA § 47(b) also fails.  Plaintiffs allege that ICA § 47(b)(3), 15 U.S.C. § 80a-46(b)(3), "provides for recovery against any person that has been unjustly enriched" by an applicable contract.  SAC at 31, ¶ 104; 120-21, ¶ 443.  The statute does nothing of the sort.  ICA § 47(b)(3) provides that ICA § 47(b) "shall not apply . . . to *preclude* recovery against any person for unjust enrichment."  ICA § 47(b)(3) (emphasis added).  In other words, rather than creating a right of action for unjust enrichment, § 47(b)(3) simply clarifies that § 47(b) does not bar an unjust enrichment action brought on some independent statutory basis.

---

trustee under the JHUSA group variable annuity product that she challenges (and indeed they are not).  Third, the reasonable fee requirement of ICA § 26 applies to fees and charges "in the aggregate," while Plaintiff Santomenno does not plead all fees associated with JHUSA-issued individual annuity contracts, focusing only on the fees associated with the "underlying investment."  SAC at 122, ¶ 446.

Because the relief sought in Count IX is unavailable, it should be dismissed.

**C.   Plaintiffs Have Not Pleaded that They Invested
in a Variable Annuity Governed by the ICA.**

Count IX should also be dismissed because the ICA does not even apply to

the Contracts.

ICA § 47 applies only to a "contract that is made, or whose performance

involves, a violation of this title . . . ."  ICA § 47(b).  Plaintiffs allege a violation of

ICA § 26(f) as the basis of their claim for rescission under ICA § 47(b).  *See* SAC

at 32, ¶ 108.  ICA § 26 applies only to "registered unit investment trust[s.]"  ICA §

26(a), 15 U.S.C. § 80a-26(a).[19]  Thus, to plead a violation of the ICA § 26(f)

exemption as a basis for relief under ICA § 47(b), Plaintiffs necessarily have to

plead that they were invested in a registered unit investment trust.  Plaintiffs do not

do so.  To the contrary, they admit that they do not know whether the separate

accounts were registered or unregistered.  *See* SAC at 20, ¶ 45.  They point to no

registered account in which they held an interest.  *See supra* at n.13.  And, in fact,

---

[19] ICA § 26(a) imposes various requirements regarding the custody and sale of
unit investment trusts, a type of registered investment company under the ICA.
Section 26(f) provides an exemption from the ICA § 26(a) requirements – if certain
conditions are met – for "registered separate account[s] funding variable insurance
contracts" and the "sponsoring insurance company principal underwriter of such
account[s]."  15 U.S.C. § 80a-26(f).  Among the exemption requirements is that
"the fees and charges deducted under the [variable insurance] contract, in the
aggregate, are reasonable in relation to the services rendered, the expenses
expected to be incurred, and the risks assumed by the insurance company."
15 U.S.C. § 80a-26(f)(2)(a).

separate accounts used for 401(k)-type retirement plan contributions are excluded

from the ICA's registration requirements by ICA § 3(c)(11), 15 U.S.C. § 80a-

3(c)(11).  As such, Count IX should be dismissed.

> ### D.    The ICA Confers no Private Right of Action
> ### for Alleged Violations of ICA § 26.

Finally, Plaintiffs' ICA § 47(b) claim should also be dismissed because that

section creates no private right of action for an alleged violation of ICA § 26.

On its own, ICA § 26 creates no private right of action.  *Olmsted v. Pruco*

*Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002).  The Supreme Court

made clear in *Alexander v. Sandoval* – relied on by *Olmsted* – that "private rights

of action to enforce federal law must be created by Congress" and that absent

congressional intent, "a cause of action does not exist and courts may not create

one."  532 U.S. 275, 286-87 (2001).   No court that has analyzed an ICA § 47(b)

claim under the interpretive method established in *Sandoval* has expressly held that

this section contains a private right of action.

The last court to find an implied right of action under the ICA was recently

reversed by the Ninth Circuit in *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615

F.3d 1106, 1116-17 (9th Cir. 2010):

> Congress expressly authorized the SEC to enforce all of the provisions
> of the Act by granting the Commission broad authority to investigate
> suspected violations; initiate actions in federal court for injunctive
> relief or civil penalties; and create exemptions from compliance with
> any ICA provision . . . .  This thorough delegation of authority to the

31

SEC to enforce the ICA strongly suggests Congress intended to preclude other methods of enforcement.

The court added, "Congress actually created an express private right of action [in § 36(b)] . . . .  Congress did not intend to imply a private right to enforce other sections of the ICA." *Id.* at 1116.  This Court has agreed:  "[A]n express provision for one method of enforcing a substantive rule strongly suggests that Congress intended to preclude others."  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 466 (D.N.J. 2005) (Martini, J.) (citing *Sandoval*, 532 U.S. at 290).

Absent a private right of action, Count IX should be dismissed.

**IV.    All of Plaintiffs' ERISA Claims Should Be Dismissed.**

Plaintiffs' ERISA claims (Counts I-VII) should also be dismissed because: (i) Plaintiffs cannot sue JHUSA without having first made a demand on their Plans' trustees; and (ii) Plaintiffs fail to plead that JHUSA is an ERISA fiduciary with respect to the challenged conduct.

**A.    Plaintiffs Fail to Plead that the Trustees of Their Plans Have Improperly Refused to Sue JHUSA.**

As a threshold matter, all of Plaintiffs' ERISA claims should be dismissed because Plaintiffs cannot sue JHUSA without first making a demand upon their Plans' trustees to assert claims that they believe the Plans possess.

Plaintiffs purport to bring claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes "actions *on behalf of a plan.*"  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008) (emphasis added); *see* SAC at

22, ¶ 53 (asserting "derivative action" on behalf of plans).[20]  Section 502(a)(2) "codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust." *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 296 (3d Cir. 2007).[21]  Under this classic trust law process, a beneficiary may sue a third party on behalf of a trust only if the trustee improperly refuses to bring that action.  *See* Restatement (Second) of Trusts ("Restatement") § 282(2) (1959); *id.* cmt. (e); *Struble v. N.J. Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 337 (3d Cir. 1984), *overturned on other grounds by Firestone*, 489 U.S. 101.

Accordingly, "[i]n most cases, a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust." *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990) (citation omitted).[22]  Although a beneficiary may sue on behalf of the trust where "the

---

[20] In relevant part, ERISA § 502(a)(2) authorizes claims by plan fiduciaries and participants "for appropriate relief under [ERISA § 409(a), 29 U.S.C. § 1109(a)]," which in turn makes breaching fiduciaries liable "to the plan" for losses caused by their breach.  29 U.S.C. § 1132(a)(2).

[21] In general, courts are to be "guided by principles of trust law" in interpreting ERISA.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *see also Reich v. Compton*, 57 F.3d 270, 278 n.12 (3d Cir. 1995) (Alito, J.) ("Congress engrafted ERISA" upon "the common law of trusts"); *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) ("the common law of trusts in fact guides us" in interpreting ERISA).

[22] *See also* Restatement § 282 cmt. (a) (interest of beneficiary against third parties "ordinarily . . . is protected . . . through proceedings brought against them by the

33

trustee improperly refuses or neglects to bring an action against the third person,"
Restatement § 282(2),[23] this exception applies only if the beneficiary has first made
a demand on the trustee to sue. *See, e.g., Firestone v. Galbreath*, 976 F.2d 279,
283-84 (6th Cir. 1992), *aff'd in relevant part and rev'd in part*, 25 F.3d 323 (6th
Cir. 1994). Indeed, "[u]nder traditional trust law doctrine, incorporated into
ERISA . . . if under the circumstances it is prudent [for the trustee] to refrain from
bringing an action . . . the beneficiaries can neither compel him to sue nor can they
themselves maintain a suit against the third party." *McMahon v. McDowell*, 794
F.2d 100, 110 (3d Cir. 1986).

Moreover, permitting participants to sue third parties on behalf of the plan
without requiring a pre-suit demand on plan trustees would disrupt ERISA's
carefully-crafted fiduciary framework, particularly where a third party's
relationship to the plan is based on a contract with the trustee. Significantly, any
right of action the plan may have against the third party is itself an asset of the
plan,[24] which is subject to the trustee's "authority and discretion to manage and

---

trustee and not by the beneficiary"); 5 Scott and Ascher on Trusts, § 28.2 at 1941
(2008) ("[i]t is for the trustee and not for the beneficiaries to sue the third party").

[23] "If the trustee does not commit a breach of trust in failing to bring an action
against the third person . . . the beneficiary cannot maintain a suit against . . . the
third person." Restatement § 282, cmt. (e).

[24] *See Rahm v. Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (plan's claim against
another party is a plan asset). *Cf.* Restatement § 82 (chose in action a trust asset);

control" plan assets.  29 U.S.C. § 1103(a).  Further, unlike a participant, the trustee

in such a case has:  (i) authority under a plan governance structure mandated by

ERISA, *see supra* at n.7; (ii) experience, understanding, and expertise with respect

to the plan's engagement of the third party; (iii) a view of the relevant issues from

the perspective of the plan as a whole; (iv) an obligation to comply with ERISA's

fiduciary duties – including the duties of prudence and loyalty – in prosecuting any

action brought on behalf of the plan, *see* ERISA § 404(a), 29 U.S.C. § 1104(a); and

(v) accountability (*i.e.*, potential liability) if any of those duties are breached, *see*

ERISA § 409(a), 29 U.S.C. § 1109(a).

The Third Circuit has recognized the underlying rationale for preserving

trustee authority to manage assets and enforce the rights of the plan:

> We recognize the complexity of many trust fund management decisions and
> the need to allow the trustees to make those decisions free from the second-
> guessing of less well-informed beneficiaries.  The trustees are able, and
> indeed are obligated, to consider the collective interests of the [plan] and its
> beneficiaries, and their performance will only be handicapped if we allow
> individuals to file actions protecting narrower interests without first showing
> that the trustees have breached their fiduciary duties.

*Struble*, 732 F.2d at 337.[25]

---

§ 177 (trustee has duty "to take reasonable steps to realize on claims which he
holds in trust"), § 192 (trustee power to compromise or abandon trust's claims).

[25] *Cf. Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002)
(noting in a different context that, because ERISA trustees need the latitude "to
expertly and efficiently manage their funds by preventing premature judicial
intervention in their decision-making processes," issues in plan administration

Because Plaintiffs do not allege (i) that they demanded that their Plans' trustees bring suit against JHUSA – the party with whom the trustees contracted – and (ii) that the trustees have improperly refused to do so, Plaintiffs' ERISA claims should be dismissed.

### B.    Plaintiffs Fail to Plead that JHUSA Is an ERISA Fiduciary with Respect to the Challenged Conduct.

Alternatively, Plaintiffs' ERISA claims all fail because they have not, nor could they, adequately plead that JHUSA is an ERISA fiduciary with respect to any of the challenged conduct.  JHUSA, like thousands of insurers, banks, mutual fund complexes, and others, makes services and products available in the market for retirement plan trustees to utilize for their plans.  Doing so does not make JHUSA an ERISA fiduciary.

All seven ERISA counts in the SAC allege breaches of ERISA § 404(a) fiduciary duties, and five also allege prohibited transactions under ERISA §§ 406(a) and/or 406(b), 29 U.S.C. § 1106(a), (b), (Counts I, II, III, V, and VI).[26] These claims may only be asserted against an ERISA fiduciary.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993) (affirming dismissal).  According to

---

should generally be "first . . . address[ed] . . . to the fiduciaries to whom Congress . . . assigned the primary responsibility" for such matters).

[26] ERISA Section 404(a) governs how "a fiduciary shall discharge his duties with respect to a plan," and ERISA Sections 406(a) and 406(b) enumerate transactions in which "fiduciary with respect to a plan" is prohibited from engaging.  29 U.S.C. §§ 1104(a), 1106(a), 1106(b).

the Supreme Court:  "In every case charging breach of ERISA fiduciary duty . . .

the threshold question is . . . whether [the defendant] was acting as a fiduciary (that

is, was performing a fiduciary function) when taking the action subject to

complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary

with respect to a benefits plan:

> to the extent (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct or indirect, with
> respect to any moneys or other property of such plan, or has any authority or
> responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  In this circuit, "a party's status as an ERISA fiduciary is

purely a question of law."  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220 (3d

Cir. 2003) (internal citation omitted).  Courts routinely dismiss ERISA claims at

the pleading stage where relevant fiduciary status is lacking.  *See, e.g., Pegram*,

530 U.S. at 231-34 (affirming dismissal for failure to plead ERISA fiduciary

status).

"[F]iduciary status is not an all or nothing concept.  A court must ask

whether a person is a fiduciary with respect to the particular activity in question."

*Moench*, 62 F.3d at 561 (internal quotations and citations omitted).  One is "a

fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan."

*Pegram*, 530 U.S. at 225-26; *see also In re RCN Litig.*, No. 04-5068, 2006 WL 753149, at \*7 (D.N.J. Mar. 21, 2006).

Plaintiffs allege that JHUSA is a relevant fiduciary under all three prongs of § 3(21)(A) for conducting a host of activities related to their plan investments. *See* SAC at 42-44, 46-49, ¶¶ 164-66, 175, 184, 185, 192, 194, 195.[27]  Plaintiffs are wrong, and thus, because JHUSA is not an ERISA fiduciary with respect to the challenged conduct, all of Plaintiffs' ERISA claims should be dismissed.

### 1.   JHUSA Neither Possessed nor Exercised Any Requisite Discretionary Authority or Control With Respect to Plaintiffs' Plans.

Plaintiffs do not adequately plead that JHUSA was a fiduciary with respect to the challenged conduct under § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).  To be a fiduciary with respect to the management of a plan or the management or disposition of plan assets within the meaning of ERISA § 3(21)(A)(i), one must

---

[27] While Plaintiffs plead that ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), forms the basis for certain of their allegations regarding JHUSA's alleged fiduciary status, Plaintiffs do not actually challenge any conduct respecting plan administration, to which § 3(21)(A)(iii) is limited by its very terms.  "Plan administration" involves not management of plan assets, but operational issues such as construction of plan documents and claims determinations. *See Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (employer exercised "administrative power" when it conveyed information about likely future of plan benefits); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993).  In any event, because fiduciary status under § 3(21)(A)(iii) requires "discretionary authority or discretionary responsibility," had Plaintiffs challenged any aspect of plan administration – which they do not – fiduciary status still would not lie under this sub-clause of ERISA § 3(21)(A) for the reasons set forth below.

have "'actual decision-making power' on behalf of a plan." *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184, 05-1079, 2008 WL 141498, at *5 (D.N.J. Jan. 14, 2008). Indeed, "the key element of fiduciary status under ERISA is discretionary authority or control over ERISA plan management or assets." *Trustees of the I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of New York and New Jersey LLC*, No. 07-4262, 2008 WL 4601792, at *4 (D.N.J. Oct. 15, 2008) (citing *Srein*, 323 F.3d at 220).

Plaintiffs do not plead that JHUSA exercises the requisite discretion over their Plans merely by offering plan trustees a platform of investment options that JHUSA may update pursuant to its contract with those trustees.

### a.     The Contracts Established that JHUSA Did Not Have Discretion over Investment Selection.

The "starting point for reasoned analysis" of ERISA fiduciary status is the document governing the defendant's responsibilities. *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 19 (1st Cir. 1998); *see also Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033, 2005 WL 1140687, at *7 (D.N.J. May 13, 2005). Here, JHUSA agreed to provide retirement plan products and services through the Contracts. *See, e.g.*, Douglass Cert., Ex. F (Scibal Contract) at MTD-000468.

The Contracts' terms made clear that the Plans' trustees – and not JHUSA – possessed and retained exclusive investment selection discretion, and hence relevant ERISA fiduciary status, with respect to the challenged investments. Each

Contract stated that "[c]ontributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder."  Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000404; Ex. F (Scibal Contract) at MTD-000461. The Contracts explicitly provided that JHUSA "will not be required to question any action of the [trustee]" and "will not be responsible to see that any action of the [trustee] is authorized by the terms of the Plan, or any trust agreement or any other document executed in connection with the Plan."  *Id.*, Ex. E (J & H Berge Contract) at MTD-000411; Ex. F (Scibal Contract) at MTD-000469.  Moreover, JHUSA and the Plans' trustees expressly agreed that JHUSA did not assume the obligations Plaintiffs allege:  "By performing these services, [JHUSA] does not assume the responsibility of the [trustee], Plan Administrator, Plan Sponsor or any other Fiduciary of the Plan . . . ."  *Id.*, Ex. F (Scibal Contract) at MTD-000468. [28]

Accordingly, JHUSA did not possess relevant ERISA fiduciary status, which remained with the Plans' trustees.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming dismissal where the contract gave the employer, not the service provider, the "final say on which investment options will be included").

---

[28] The DOL has long recognized that a plan trustee "by the very nature of his position" is a fiduciary.  29 C.F.R. § 2509.75-8 (Question and Answer D-3).

### b.   JHUSA Did Not Exercise Discretion Over Plaintiffs' Plans by Offering a Product to the Marketplace.

Plaintiffs assert that JHUSA was a fiduciary due to features of the group annuity product that it designs and markets. The features cited by Plaintiffs consist of a platform of investment options, the optional Fiduciary Standards Warranty, JHUSA's assessment of fees for services rendered, and its receipt of revenue sharing from the mutual funds on its investment platform. *See* SAC at 44, ¶ 175; 46, ¶ 184; 48, ¶ 192. None of these allegations establishes ERISA fiduciary status.

A company does not become an ERISA fiduciary merely by offering products or services to retirement plans. *See, e.g., Hecker*, 556 F.3d at 583 (affirming dismissal where service provider did not control the fiduciary's "negotiation and approval" of its engagement); *Cotton v. Mass. Mutual Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) ("[s]imply urging the purchase of its products does not make an insurance company an ERISA fiduciary") (internal quotation omitted).

The specific JHUSA product features that the Plans' trustees selected for the Plans do not alter the fact that the trustees – not JHUSA – exercised relevant discretion over their Plans' investments and fees. For example, a service provider's "mere creation and offering of a menu or lineup of funds cannot legally or logically give rise to fiduciary status." *Zang v. Paychex, Inc.*, No. 08-cv-6046L, 2010 WL 3021909, at *10 (W.D.N.Y. Aug. 2, 2010) (dismissing claims of

41

excessive fees for lack of fiduciary status), *appeal docketed*, No. 10-3556 (2d Cir. Sept. 2, 2010).  A service provider "is free to design the various plan templates and investment menus to offer to prospective clients, who can then decide to contract with [it] or not."  *Id.*

In *F.W. Webb Co. v. State St. Bank & Trust Co.*, No. 09-cv-1241, 2010 WL 3219284, at *4-7 (S.D.N.Y. Aug. 12, 2010) (motion for reconsideration pending), the court also dismissed ERISA claims of allegedly excessive fees because the defendant was not a relevant fiduciary.  There, the service provider made available a "big menu" of investment options from which a plan's trustee selected a "small menu" for his plan.  *Id.* at *5.  The court held that this arrangement – "standard in the industry" – was not a fiduciary act on the part of the defendant investment provider:

> [T]he 'big menu' simply contained a generic list of every fund that defendants made available to their many clients – all the goods in the store, so to speak – rather than a list of investment options specifically tailored to plaintiffs' needs and goals.

*Id.*

By this same reasoning, Plaintiffs' claim that JHUSA is a fiduciary because it selects the investment options that compose its product platform fails.  Plaintiffs' allegations and the Contracts themselves make clear that JHUSA offers a "big menu" of investment options, with the plan trustees selecting "small menus" specifically tailored for their Plans.  *See, e.g.*, Douglass Cert., Ex. E (J&H Berge

42

Contract) at MTD-000404 ("Contributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder."); Ex. F (Scibal Contract) at MTD-000461 (same); SAC at 13-14, ¶ 18 ("Each of the [plans], or their sponsors, selects all or some of the funds on the menu constructed by [JHUSA] to be made available to [participants]"); *Id.* at 36, ¶ 132 (same).

The J&H Berge Contract demonstrates the difference between the "big menu" offered to the J&H Berge Plan trustee, and the "small menu" of funds selected by that trustee for the J&H Berge Plan. The SAC alleges that "the specific menu that was offered to . . . the Plaintiff Plan in which Plaintiff Santomenno was a participant" "contained twenty-nine investment options . . . ." SAC at 11, ¶ 11. However, the J&H Berge Contract reflects 154 investment options available to the Contractholder/trustee. Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000416-56. Thus, it stands to reason from the SAC's allegations that Ms. Santomenno's trustee selected a "small menu" of 29 funds from the larger menu of 154 funds JHUSA then made available.

JHUSA's Fiduciary Standards Warranty, pleaded at SAC at 43-44, ¶¶ 167-75, is nothing more than an optional product feature and does not alter the analysis. It does not make JHUSA a fiduciary where the plan trustees retain the "actual decision-making power" regarding the small menu to offer their plans, whether by "rubberstamping" or not. *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 141498,

43

at *5; *see generally F.W. Webb*, 2010 WL 3219284.  The SAC confirms that the

Fiduciary Standards Warranty applies to the fiduciary responsibilities possessed by

JHUSA's clients – the plan trustees – and does not explicitly or implicitly assume

ERISA fiduciary duties on JHUSA's behalf:  in this product, JHUSA "warrants

and covenants that the investment options *Plan fiduciaries select to offer to Plan*

*participants*" will satisfy ERISA, and the product is designed to "*help[ ] employers*

*meet the highest fiduciary standards* for selection and monitoring of the

investments *they offer their* 401(k) participants."  SAC at 34, ¶ 120; 43, ¶ 170

(emphasis added).

### c.   JHUSA Did Not Exercise Discretion Over Plaintiffs' Plans by Updating the Product that It Sold.

JHUSA also is not a fiduciary by virtue of its ability to update the

investment platform it offers to the market.  *See* SAC at 42, ¶ 164; 48, ¶ 192.

Judge Schiller of the Eastern District of Pennsylvania recently made precisely this

point in dismissing ERISA claims in a similar suit challenging fees and revenue

sharing.  In *Renfro v. Unisys Corp.*, the court held that even where a service

provider retains the contractual ability to control the investment options available

to its customers – in that case by exercising an alleged "veto" power over the

counterparty's investment selection – the provider is not a fiduciary as to any plan

so long as the plan's named fiduciaries can select a different provider's investment

platform.  No. 07-2098, 2010 WL 1688540, at *4 (E.D. Pa. Apr. 26, 2010), *appeal*

*docketed*, No. 10-2447 (3d Cir. May 27, 2010).  As such, the court dismissed the service provider for lack of relevant ERISA fiduciary status.  *Id.* at *5.

Other courts agree.  For example, the Seventh Circuit Court of Appeals has also held that a service provider was not an ERISA fiduciary where it had the ability to make changes to a platform offered to the fiduciary of an ERISA plan. *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007).  The court affirmed dismissal on the ground that the service provider (Caremark) did not exercise the requisite control under ERISA § 3(21)(A) where the contractholder (Carpenters) retained the right to reject any changes:  "As for any ongoing changes . . . Carpenters retained for itself the final authority to administer these programs on an ongoing basis.  . . . Caremark was thus not a fiduciary for this purpose."  *Id.* at 477.

The DOL, too, has confirmed that a service provider's right to change its investment platform does not, in and of itself, confer ERISA fiduciary status.  The DOL stated that an insurer may retain the ability to delete or substitute available investments on its platform without becoming an ERISA fiduciary "provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change."  DOL Adv. Op. 97-16A (May 22, 1997).

These authorities apply here.  Plaintiffs concede that the trustees made the investment selections for their Plans.  *See* SAC at 13-14, ¶ 18.  The Contracts state

45

unequivocally that "[c]ontributions remitted to this Contract may be invested *only* in the Investment Options selected by the [trustee]." Douglass Cert., Ex. E (J&H Berge Contract) at MTD-000404 (emphasis added); Ex. F (Scibal Contract) at MTD-000461 (emphasis added). If the trustees disapproved of JHUSA platform updates, they could terminate the Contracts and hire a different vendor for administrative services and access to investment options – which is precisely what the trustees ultimately did here. *Id.*, Ex. E (J&H Berge Contract) at MTD-000411; Ex.F (Scibal Contract) at MTD-000469; Ex. G (J&H Berge Termination letter); Ex. H (Scibal Termination letter).

This unfettered ability of the Plans' trustees to terminate the Contracts distinguishes this case from one alleged by Plaintiffs, *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008). *See* SAC at 12, ¶ 13. In *Charters*, the court found JHUSA to be an ERISA fiduciary to the Charters, Heck, O'Donnell and Petrulis, P.C. 401(k) Plan ("Charters Plan") by virtue of a termination provision in the Charters Plan contract that imposed a fee upon termination of that contract. *Charters*, 583 F. Supp. 2d at 199. The court deemed that fee a "penalty" that deprived that trustee of a meaningful opportunity to reject JHUSA's proposed fund changes, rendering JHUSA a fiduciary of that plan. *Id.* (DOL Adv. Op. 97-16A did not apply because of "built-in penalties").

Even if *Charters* was correct as a matter of law, which it is not, it is

inapplicable here, where the Contracts contain no such "penalty." *See* Douglass

Cert., Ex. E (J&H Berge Contract) at MTD-000414; Ex. F (Scibal Contract) at

MTD-000474.[29]  Indeed, the J&H Berge Contract expressly assured that the

trustees "may terminate the Contract *without penalty*" if JHUSA added, removed

or substituted any investment options, or proposed other contract changes. *See id.*,

Ex. E (J&H Berge Contract) at MTD-000410 (emphasis added).  The *Charters*

ruling, therefore, does not provide a basis for JHUSA's alleged fiduciary status

here.[30]

### d.   JHUSA Did Not Have Discretion Over the Challenged Fees.

Likewise, JHUSA's receipt of contractual fees does not render it a fiduciary.

The receipt of fees under the terms of a contract does not give rise to fiduciary

---

[29] The *Charters* decision was legally infirm even under its own distinguishable facts because it failed entirely to account for 29 C.F.R. § 2550.408b-2(c)(3), which states that a contract provision is not a penalty where it reasonably compensates the service provider for loss upon early termination (*e.g.*, recoupment of reasonable start-up costs).

[30] Fiduciary status based on JHUSA's ability to substitute funds on its platform with the consent of trustees is irrelevant in any event to Plaintiffs, who have not pleaded that the funds in which their plan accounts were invested were ever changed or substituted. *Cf.* SAC at 17-18, ¶¶ 34-36.  Whether JHUSA may hypothetically be a fiduciary as to putative class members cannot salvage Plaintiffs' own standing. *See, e.g., Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action."); *Kauffman*, 434 F.2d at 734 ("What [plaintiffs] may not achieve [themselves], [they] may not accomplish as [ ] representative[s] of a class.").

status without an exercise of discretionary authority or control over ERISA plan assets.  *See Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1130-32 (7th Cir. 1983) (insurer was not an ERISA fiduciary for compensation paid according to contracted rates).  *Schulist* held that a plan's trustee, not the service provider, is the fiduciary responsible for contractual fees to which the trustee agrees:

> Before entering into the Contract which included the rates alleged to have provided it with unreasonable compensation, [the service provider] had no relationship to the Trust at all.  . . .  [The service provider] had no control over what plan and what hospital service organization were chosen for the Trust.

*Id.* at 1131; *see also Caremark*, 474 F.3d at 473 (applying *Schulist* on a motion to dismiss).

### 2.     Plaintiffs Fail to Plead that JHUSA Rendered Relevant Investment Advice for a Fee.

Plaintiffs also cannot plead that JHUSA is an ERISA fiduciary under the remaining subclause of ERISA's fiduciary definition, § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii), which imposes fiduciary status on a person to the extent he renders investment advice to the plan for a fee.  Even if Plaintiffs could, such status is irrelevant here as Plaintiffs do not, nor could they, connect such purported advice to any challenged conduct.

Courts have long recognized that selling an investment product or service to an ERISA plan does not constitute providing "investment advice" within the meaning of § 3(21)(A)(ii).  *See Flacche v. Sun Life Assur. Co. of Can.,* 958 F.2d

730, 734-35 (6th Cir. 1992) (selling an annuity contract did not give rise to ERISA fiduciary status); *Consolidated Beef Indus. Inc. v. New York Life Ins. Co.,* 949 F.2d 960, 965 (8th Cir. 1991) (a person who markets a 401(k) plan is not a fiduciary). Rather, a person is an ERISA fiduciary under ERISA § 3(21)(A)(ii) for providing investment advice only if: (i) it provided "individualized" investment advice "based on the particular needs of the plan"; (ii) the advice was given "pursuant to a mutual agreement, arrangement or understanding" that the advice would "serve as a primary basis for investment decisions with respect to plan assets"; (iii) the advice was provided "on a regular basis"; (iv) the advice pertained to the value of property or consisted of "recommendations as to the advisability" of investing in certain property; and (v) the advice was rendered "for a fee." 29 U.S.C. § 1002(21)(A)(ii); 29 C.F.R. §§ 2510.3-21(c)(1)(i), (ii)(B). "All five factors must be present in order to support a finding of ERISA fiduciary status [based on investment advice]." *Elliott v. Mitsubishi Cement Corp.*, No. 07-03509, 2008 WL 4286985, at *6 (C.D. Cal. Sept. 15, 2008) (dismissing claim for failure to plead fiduciary status).

Plaintiffs do not plead several of these elements. For example, they do not plead that the purported advice served as a "primary basis for investment decisions with respect to plan assets." 29 C.F.R. § 2510.3-21(c)(1)(ii)(B). Indeed, Plaintiffs make only generalized allegations regarding product features that JHUSA offers to

all plan sponsors and trustees in the market.  *See* SAC at 43-44, ¶¶ 169-73

(Fiduciary Standards Warranty offered to "plan sponsors"); at 42-43, ¶¶ 165, 172-

75, 192 (platform offered to "plan sponsors").  These allegations do not plead that

any purported advice is "individualized" to them or their Plans, or any particular

participant or plan "based on the particular needs of the plan."  29 C.F.R. § 2510.3-

21(c)(1)(ii); *see also Elliott*, 2008 WL 4286985, at *6 (granting motion to dismiss

because "[n]owhere in the [c]omplaint do [p]laintiffs discuss or even allude to the

individualized nature of the 'investment advice'").

    Further, the participant enrollment materials and fund fact sheets alleged by

Plaintiffs to be investment advice, *see* SAC at 48-49, ¶¶ 194-95, are precisely the

types of educational materials that the DOL has expressly excluded from fiduciary

conduct.  In Interpretive Bulletin 96-1, 29 C.F.R. § 2509.96-1, the DOL explained

that materials informing a participant "about the benefits of plan participation,"

"investment alternatives," and other "investment materials" do not constitute "the

rendering of 'investment advice.'"  Providing information does not constitute

"recommendations as to the advisability of . . . purchasing" certain investments.

*Id.*  The DOL has also expressly stated that providing materials such as enrollment

kits does not create investment advice or any other ERISA fiduciary status:

"orientation of new participants and advising participants of their rights and

options under the plan" are "purely ministerial functions" that do not amount to

fiduciary conduct.  Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8 (Question and Answer D-2).

Moreover, because ERISA fiduciary status applies only "to the extent" that the alleged fiduciary activities meet the statutory criteria, whether JHUSA is a fiduciary based on alleged investment advice is wholly irrelevant to this case.  The SAC contains no claim based on any alleged investment advice rendered by JHUSA.  As such, any fiduciary status based on investment advice is irrelevant because such advice does not form the basis of the alleged breaches of fiduciary duty.  *See generally In re Benefit Mgmt., Corp.*, No. 87-03292, 1988 WL 384076, at *9 (Bankr. W.D. Wis. Nov. 21, 1988) (questioning significance of ERISA fiduciary status based on investment advice where allegations at issue concerned handling of plan assets, not investment advice).

### 3.  Maintaining Assets in Insurance Company Separate Accounts Did Not Make JHUSA an ERISA Fiduciary.

Plaintiffs additionally assert that JHUSA is an ERISA fiduciary by virtue of ERISA provisions other than the statutory fiduciary definition.  Specifically, they allege that ERISA § 401(c)(5)(B), 29 U.S.C. § 1101(c)(5)(B), and DOL regulation 29 C.F.R. § 2550.401c-1 issued thereunder confer fiduciary status when an insurer holds assets in a separate account.  SAC, 44-46, ¶¶ 176-182.  Plaintiffs are wrong.

ERISA § 3(21)(A) sets forth the exclusive definition of fiduciary under the statute.  ERISA § 401(c)(5)(B) and 29 C.F.R. § 2550.401c-1 only address the issue

of whether an insurer's general account assets that support certain policies issued prior to 1999 may be considered "plan assets."[31]  These sections nowhere define or describe who is or is not a fiduciary under ERISA.  In the absence of any pleaded allegations of requisite discretionary control, or provision of investment advice for a fee, ERISA fiduciary status does not lie.  *See Srein*, 323 F.3d 214; *Trustees of I.A.M.*, 2008 WL 4601792.

## V.   JHD and JHF Should Be Dismissed Entirely.

In addition to the infirmities of each Count of the SAC as to all Defendants, Plaintiffs' claims against JHD and JHF, and their ERISA claims against JHIMS, should be dismissed for two further reasons.

*First*, the 12b-1 fees that are the sole basis of Plaintiffs' ERISA claims as to JHD, JHF, and JHIMS – fees that are a common feature of retirement plan investment platforms today and allow for plan services to be efficiently provided[32] – do not constitute plan "assets" as alleged at SAC at 139-40, ¶¶ 12, 13.  Mutual fund assets are not plan assets, *see* ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1),

---

[31] The specific sub-paragraph to which Plaintiff cites, 29 C.F.R. § 2550.401c-1(d)(2), simply sets forth disclosures necessary to take advantage of a rule applicable to certain "transition policies" issued before 1999.  The provision itself refers back to "ERISA's fiduciary responsibility provisions," confirming that the statute's fiduciary provisions are the source of any fiduciary duty – *i.e.*, ERISA § 3(21)(A) is the statute's exclusive definition of fiduciary.

[32] *See* 75 Fed. Reg. at 47071 ("A common use of 12b-1 fees is to pay for the fund to be included on third-party platforms for purchasing mutual funds, such as employer-sponsored retirement plans . . . .").

and courts and the DOL agree that "the sums paid" from a mutual fund "do not

constitute plan assets."  Brief of the Secretary of Labor as Amicus Curiae in

Support of Plaintiffs-Appellants, *Hecker v. Deere & Co.*, No. 07-3605, at 22 (7th

Cir. Apr. 2, 2008); *Hecker*, 556 F.3d at 584 (fees drawn from mutual fund assets

are not plan assets).  Accordingly, when a mutual fund pays its adviser or

distributor, and any portion of such revenue is shared with another service

provider, the shared revenue does not become a plan asset.  *See Ruppert v.

Principal Life Ins. Co.*, No. 07-00344, 2009 WL 5667708, at *20 (S.D. Iowa Nov.

5, 2009) (revenue sharing payments are not ERISA plan assets).  Plaintiffs

therefore fail to state a claim against JHD, JHF, and JHIMS for knowingly

participating in any ERISA violation with respect to plan assets, and none possess

any plan assets that may be disgorged.

*Second*, and in any event, the relief that Plaintiffs seek against these

defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), is not statutorily

available.  ERISA § 502(a)(3) provides only for equitable relief.  *See* 29 U.S.C. §

1132(a)(3) (conferring a right of action to enjoin any act or practice violating

ERISA or "to obtain other appropriate equitable relief").  Claims for relief that

seek "to obtain a judgment imposing a merely personal liability upon the defendant

to pay a sum of money" are considered legal, rather than equitable, in nature, and

may not be brought under ERISA § 502(a)(3).  *Great-West Life & Annuity Ins. Co.*

*v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotations omitted).  Section 502(a)(3) restitution lies only "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession."  *Id*.  Where a disgorgement claim does not identify a specific res in a defendant's possession or control, traceable to the alleged harm, the claim is characterized by courts as a claim for money damages and cannot be brought under ERISA § 502(a)(3).  *See Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 F. App'x 169, 171 (3d Cir. 2009); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig*., No. 03-3924, 2007 WL 2071876, at *12 (E.D. Pa. July 16, 2007) (*aff'd*, 579 F.3d 270 (3d Cir. 2009).[33]

Here, Plaintiffs seek disgorgement of 12b-1 fees under ERISA § 502(a)(3).  *See* SAC at 141, ¶ 17.  But Plaintiffs do not allege that the challenged payments made to JHD, JHF, or JHIMS are traceable "to particular funds" currently in their possession, nor could they.  Therefore, Plaintiffs' request for disgorgement under ERISA § 502(a)(3) – the only relief sought against JHD and JHF and the only ERISA relief sought against JHIMS – should fail, and those Defendants should be

---

[33] *See also Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1097 (D. Ariz. 2009) (dismissing claim that "fails to identify any specific fund or property"), *upheld in relevant part on motion for reconsideration*, No. 08-0457, 2007 WL 2710151 (D. Ariz. Aug, 26, 2009); *Verizon Emp. Benefits Comm. v. Adams*, No. 3:05-cv-1793, 2006 WL 66711, at *4 (N.D. Tex. Jan. 11, 2006) (restitution claim fails where complaint "[does] not identify a specific res").

54

dismissed from those counts.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court

enter an Order granting their Motion to Dismiss Plaintiffs' Second Amended

Complaint and dismissing Plaintiffs' claims with prejudice.

Dated:  December 21, 2010          Respectfully Submitted,
Newark, NJ

                                             _____s/  Kevin J. McKenna_____
                                         Kevin J. McKenna, Esq.
                                         GIBBONS P.C.
                                         One Gateway Center
                                         Newark, NJ  07102-5310
                                         Telephone:  (973) 596-4500
                                         Facsimile:  (973) 596-0545
                                         KMcKenna@gibbonslaw.com

                                         James O. Fleckner, Esq. (admitted *pro hac vice*)
                                         Alison V. Douglass, Esq. (admitted *pro hac vice*)
                                         GOODWIN PROCTER LLP
                                         Exchange Place
                                         Boston, MA  02109
                                         Telephone:  (617) 570-1000
                                         Facsimile:  (617) 523-1231
                                         jfleckner@goodwinprocter.com
                                       adouglass@goodwinprocter.com

                                       **Attorneys for John Hancock Life Insurance Company (U.S.A.), John Hancock Investment Management Services, LLC, John Hancock Funds, LLC, and John Hancock Distributors, LLC**

LIBA/2135644

55