UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 2:10-cv-01655 WJM-MF

---

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock Trust and the John Hancock Funds II; KAREN POLEY and BARBARA POLEY, for the use and benefit of the John Hancock Funds II; DANIELLE SANTOMENNO, KAREN POLEY and BARBARA POLEY individually and on behalf of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by John Hancock Life Insurance Company (U.S.A.), and the participants and beneficiaries of all such ERISA covered employee benefit plans; and DANIELLE SANTOMENNO individually and on behalf of any person or entity that is a party to, or has acquired rights under, an individual or group variable annuity contract that was issued/sold by John Hancock Life Insurance Company (U.S.A.) where the underlying investment was a John Hancock proprietary fund contained in the John Hancock Trust

      Plaintiffs,

      vs.

John Hancock Life Insurance Company (U.S.A.), John Hancock Investment Management Services, LLC,   John Hancock Funds, LLC, and John Hancock Distributors, LLC,

      Defendants.

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

Robert L. Lakind, Esquire
Robert E. Lytle, Esquire
Arnold C. Lakind, Esquire
Mark A. Fisher, Esquire
Szaferman, Lakind,
Blumstein & Blader, PC
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
(609) 275-0400

Moshe Maimon, Esquire
Danielle Disporto, Esquire
Levy, Phillips & Konigsberg
101 Grovers Mill Road
Lawrenceville, New Jersey 08648
(609) 720-0400
Attorneys for Plaintiffs

575760.1

# TABLE OF CONTENTS

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.    JHUSA's 401(k) Operations/The Fund Selection Process . . . 1

        2.    The Operation of the JHUSA Group Annuity . . . . . . . . . . . . 3

        3.    Plaintiffs' Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        4.    JHUSA's Fees Were Excessive . . . . . . . . . . . . . . . . . . . . . . . 6

        5.    Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Point I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        PLAINTIFF'S ERISA CLAIMS ARE VIABLE BECAUSE
        THERE IS NO REQUIREMENT FOR A PRE-SUIT
        DEMAND AND JHUSA IS AN ERISA FIDUCIARY

    A.    A Pre-Suit Demand Is Not Required To Sue a Fiduciary . . . . . . . 12

    B.    Plaintiffs Have Sufficiently Alleged that JHUSA is an ERISA
        Fiduciary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    Fiduciary Status Should Not Be Decided on a Motion to
            Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.    Factors Relevant to Assessing Fiduciary Status . . . . . . . . . . 16

        3.    JHUSA is An ERISA Fiduciary . . . . . . . . . . . . . . . . . . . . . 17

        4.    Equitable Relief is Available Against JHD and JHF . . . . . . . 36

Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      PLAINTIFF S HAVE STANDING TO PURSUE AND
      HAVE STATED CLAIMS UNDER ICA §36(b)

A.    As Security Holders of the JHT and JHFII, Plaintiffs
      Have Standing to Bring Derivative Claims On Behalf Of
      The JHT and JHFII, Under ICA §36(b) . . . . . . . . . . . . . . . . . . . . . 38

B.    Plaintiffs Do Not Lose Standing By Virtue of
      Terminating Their Interests and Mitigating Damages . . . . . . . . . . 42

C.    Plaintiffs Have Standing to Sue On Behalf Of The JHT
      and JHFII With Regard to All Funds Within Those
      Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

D.    Plaintiffs' Allegations State an ICA §36(b) Claim . . . . . . . . . . . . 47

E.    The 2007 SEC Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Point III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

      PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR
      RESTITUTION AND RESCISSION UNDER ICA
      §47(b)

A.    Plaintiffs Have a Private Right of Action for Equitable Relief . . . . 50

B.    Plaintiffs Have Standing Under ICA§47(b) to Obtain
      Equitable Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

C.    Plaintiffs May Seek Relief on a Terminated Contract . . . . . . . . . . 53

D.    Plaintiffs Have Plead That They Are Invested in a
      Registered Separate Account . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

# TABLE OF AUTHORITIES

## FEDERAL CASES

Adkins v. John Hancock Mutual Life Insurance Co.,
    957 F. Supp. 211 (M.D.Fl. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

America United Life Insurance Co., 255 F.3d 374 (7th Cir. 2001) . . . . . . . . . . 21

Archawski v. Hanioti, 350 U.S. 532 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Beddall v. State St. Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998) . . . . . . . . . 35

Beye v. Horizon BC/BS of New Jersey, 568 F.Supp. 2d 556 (D. N.J. 2008) . . . 15

Braden v. Walmart Stores, Inc., 588 F.3d 585 (8th Cir. 2009) . . . . . . . . . . . . 15, 36

Brever v. Federated Equity Mgmt Co. of Pa.,
    233 F.R.D. 429 (W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Brink v. DaLesio, 667 F.2d 420 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 14

Briscoe v. Fine, 444 F.3d 478 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 18

Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Lt.,
    63 F.3d 1227 (3rd Cir 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.H. Sanders Co., Inc. v. BHAP Housing Development Fund Co., Inc.,
    903 F.2d 114 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Chauffers, Teamsters and Helpers Local No. 391 v. Terry,
    494 U.S. 558 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Charters v. John Hancock Life Ins. Co.,
    583 F.Supp.2d 189 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23

Chicago District Counsel of Carpenters Welfare Fund v. Caremark, Inc.,
    474 F.3d 463 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Coan v.Kauffman</u>, 457 F.3d 250 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Decker et al v. Independence Shares Corporation et al</u>,
    311 U.S. 282 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

<u>Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.</u>,
    805 F.2d 732 (7th Cir 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Erie Telecommunication, Inc. v. City of Erie</u>,
    853 F.2d 1084 (3d. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

<u>F.H. Kraer & Col. v. Nineteen Named Trustees</u>,
    810 F.2d 1250 (2nd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Firestone Tire and Rubber Co. v. Brunch</u>,
    489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Firestone v. Galbreath</u>,
    976 F.2d 279 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>First Jersey National Bank v. Brown</u>,
    951 F.2d 564 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Forsythe v. Sun Life Fin. Inc.</u>, 417 F.Supp.2d 100 (D. Mass. 2006) . . . . . . . . . . 43

<u>Goldenberg v. Indel</u>, __ F.Supp.2d__, 2010,
    WL 3732974 (D.N.J. Sep. 7, 2010) . . . . . . . . . . . . . . . . . . . . . 13, 15, 36, 37

<u>Graden v. Conexant Systems, Inc.</u>,
    574 F.Supp.2d 456 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 36

<u>Great-West Life & Annuity Insurance Co. v . Knudson</u>,
    534 U.S. 204 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Haddock v. Nationwide Finance Services, Inc.</u>,
    419 F.Supp.2d 156 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . 24, 25, 36

<u>Haddock v. Nationwide Finance Services, Inc.</u>,
    262 F.R.D. 97 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 27, 29

Hamilton v. Allen, 396 F.Supp.2d 545 (ED. Pa 2005) . . . . . . . . . . . . . . . . . . . . 53

Harold Ives Trucking Co. v. Spradley & Coker, Inc.,
178 F.3d 523 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,
530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Harrow v. Prudential Insurance Co. of Am.,
279 F.3d 244 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009) . . . . . . . . . . . . . . . 7, 26, 37

Hershey Foods Corp. v. Ralph Chapek, Inc.,
828 F.2d 989 (3d. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

In re AEP ERISA Litig., 327 F.Supp.2d 812 (S.D. Ohio 2004) . . . . . . . . . . . 14, 36

In re Franklin Mut. Funds Litig. 478 F.Supp.2d 677 (D.N.J.,2007) . . . . . . . . . . 43

In re Lord Abbett Mutual Funds Fee Litig., 407 F.Supp.2d 616 (D.N.J. 2005) . . 46

In re Mutual Funds Investment Litig. 519 F.Supp.2d 580 (D. Md. 2007) . . . 42, 46

Invengineering, Inc. v. Foregger Co., 184 F. Supp. 366 (D.N.J. 1960) . . . . . . . 54

John Hancock Mutual Life Insurance Co. v. Harris Trust and Savings Bank,
510 U.S. 86 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 29

Jones v. Harris Associate, ___ U.S. ___, 130 S. Ct. 1418 (2010) . . . . . . . . . . . 47

Kanawi v Bechtel, Corp., 590 F.Supp.2d. 1213 (N.D. Cal. 2008) . . . . . . . . . . . 36

Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970) . . . . . 42, 43, 44, 46

Kayes v. Pacific Lumber Co., 51 F.3d 1449 ( 9th Cir.)
cert. den. 516 U.S. 914 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LaRue v. DeWolff, Boberg & Associate, 552 U.S. 248 (2008) . . . . . . . . . . . . . 13

McMahon v. McDowell, 794 F.2d 100 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . 13

Mertens v. Hewitt Associates, 508 U.S. 248 (1993) . . . . . . . . . . . . . . . . . . . . . 17

Moeckel v. Caremark Rx, Inc., 385 F.Supp.2d 668 (M.D. Tenn. 2005) . . . 14, 36

Moench v. Robertson, 62 F.3d 553 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 13

Mutchka v. Harris, 373 F.Supp. 2d 1021 (C.D. Cal 2005) . . . . . . . . . . . . . . . . 45

Norman v. Saloman Smith Barney, 350 F.Supp.2d 382 (S.D.N.Y. 2004) . . . 42, 53

Pension Fund Mid Jersey Trucking Industrial Local 701 v. Omni Funding Group,
 731 F. Supp. 161 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Phil. Marine Trade Association, v.
 International Longshoremen's Association Pension Fund v Comm'r.,
 523 F.3d 140 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Porter v. Warner Holding Co., 328 U.S. 395 (1946) . . . . . . . . . . . . . . . . . . . . 51

Prudential Insurance Co. of America v. Securities and Exchange Com.,
 326 F.2d 383 (3rd Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Raytech Corp. v. White, 54 F.3d 187 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . 23

Regions Morgan Keegan ERISA Litig.,
 692 F.Supp.2d. 944 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 36

Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983) . . . . . . . . . . . . 23

Srein v. Frankford Trust Co., 323 F.3d 214 (3rd Cir. 2003) . . . . . 15, 16, 18, 20, 26

Stanton v. Shearson Lehman/ America Express,
 631 F. Supp. 100 (N.D. Ga. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Stegall v. Ladner, 394 F.Supp. 2d 358 (D.Mass. 2005) . . . . . . . . . . . . . . . . . 45

<u>Struble v. N.J. Brewery Employees' Welfare Trust Fund,</u>
   732 F.2d 325 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Sullivan v. Stroop,</u> 496 U.S. 478 (U.S. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 44

<u>Transamerica Mortg. Advisors, Inc. v. Lewis,</u>
   444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

<u>U.S. v. Parise,</u> 159 F.3d 790 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 43

<u>In re Unisys Corp. Retiree Medical Ben. ERISA Litigation,</u>
   57 F.3d 1255 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,</u>
   579 F.3d 220 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Varity Corp. v. Howe,</u> 516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

<u>Woods v. Southern Company,</u> 396 F.Supp. 2d 1351 (N. D. Ga. 2005) . . . . . . . . 15

## DOCKETED CASES

<u>Barrett v. Van Kampen Merritt, Inc.,</u>
   No. 93  C 366, 1993 WL 95382 (N.D. Ill. Mar. 30, 1993) . . . . . . . . . . . . 45

<u>Batra v. Investors Research Corp.,</u>
   No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991)  . . . . . 45

<u>In re Benefit Mgmt., Corp.,</u>
   No. 87-03292, 1988 WL 384076 (Bankr. W.D. Wis. Nov. 21, 1988) . . . . 33

<u>Briglia v. HorizonHealthcare Service Inc.,</u>
   No. 03-6033, 2005 WL 1140687 (D.N.J. May 13, 2005)  . . . . . . . . . . . . 35

<u>Curran v. Principal Mgm't Corp.,</u>
   No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa Jun. 8, 2010) . . . . 10, 40

<u>Elliot v. Mitsubishi Cement Corp.,</u>

No. 07-03509, 2008 WL 4286985 (C.D. Cal. Sept. 15, 2008) . . . . . . . . . 32

F.W. Webb Co. v. State St. Bank & Trust Co.,
    No. 09 Civ. 1241, 2010 WL 3219284 (S.D. N.Y. Aug 12, 2010) . . . . . . . 26

In re Insurance Brokerage Antitrust Litigation,
    Nos. 04-5184, 05-1079, 2008 WL 141498 (D. N.J. Jan. 14, 2008) . . . . . . 15

In re Mut. Funds Fee Litig.,
    No. Cv 04-5593, 2005 WL 3989803 (C.D, Cal. Dec. 16, 2005) . . . . . . . . 46

In re Scudder Mut. Funds Fee Litig.,
    NO. 04 Civ. 1921, 2007 WL 2325862 (S.D. N.Y. Aug. 14, 2007) . . . . . . 46

Katz v. Fifield Realty Corp.,
    No. 07-61626-CIV, 2010 WL 3835009 (S.D. Fla. Sept. 29, 2010) . . . . . . 53

Phones Plus Inc. v. Hartford Finance Svs. Group, Inc.,
    No. 2:06CV01835, 2007 WL 3124733 (D.Conn. Oct. 23, 2007) . . . . . . . 24

Procacci v. Drexel Burnham Lambert, Inc.,
    C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) . . . . . . . . 34

Renfro v. Unisys Corp.,
    No. 07-2098, 2010 WL 1688540 (E.D.Pa. April 26, 2010)
    app. docketed No. 10-2447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ruppert v. Principal Life Insurance Co.,
    No. 4:07CV00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) . 24, 31, 37

Siemers v. Wells Fargo & Co.,
    No. C 05-04518, 2006 WL 2355411 (N.D.Cal. Aug. 14, 2006) . . . . . 43, 49

Trustees of the I.A.M. District No. 15 v. Operant
    Material Solutions of New York and New Jersey, LLC,
    No. 07-4262, 2008 WL 4601792 (D. N.J., Oct. 15, 2008) . . . . . . . . . . . . 15

Williams v. Bank One Corp.,
    No. 03 C 8561, 2003 WL 22964376  (Dec. 15, 2003 N.D.Ill) . . . . . . . . . 46

Zang v. Paychex, Inc.,
          No. 08-cv-60461, 2010 WL 3021909 (W.D.N.Y. Aug. 2, 2010) . . . . . . . . 26

## FEDERAL STATUTES

15 U.S.C. 80a-08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

ERISA §3(21)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

I.R.C. §72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ICA §26(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 49, 50-54

ICA §36(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 28, 38, 40, 42-47, 49

ICA §47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-52

## FEDERAL REGULATIONS

29 C.F.R. 2509.96-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33

29 C.F.R. §2510-3.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

29 C.F.R. §2550.401c-1(d)(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

29 C.F.R. §2550.408b-2(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL COURT RULES

Fed.R.Civ.P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## OTHER AUTHORITIES

DOL. Adv. Op. 93-13A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Restatement (Second) of Trusts, §282 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

40 Fed. Reg. 50842 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

75 Fed. Reg. 65268, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

In Matter of John Hancock Investment Mgmt. Services, LLC,
        S.E.C. No. 3-12644 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Owens Ill, Inc. SEC No-Action Letter Nov. 4, 1994, 1995 WL 693324 . . . . . . . 40

## STATEMENT OF THE CASE

**A.    Introduction**

This brief is submitted in response to Defendants' motion to dismiss the class

action and derivative complaint filed by Danielle Santomenno ( Santomenno), Karen

Poley (K. Poley) and Barbara Poley (B. Poley) against John Hancock Life Insurance

Company (U.S.A.) (JHUSA), and its subsidiaries, John Hancock Investment

Management Services, LLC (JHIMS), John Hancock Funds, LLC (JHF) and John

Hancock Distributors, LLC (JHD). This case arises from excessive fees extracted by

Defendants from group and individual annuity contracts issued by JHUSA.

Plaintiffs' Second Amended Class Action Complaint (SAC) contains nine

Counts.  Counts I-VII arise under the Employee Retirement Income Security Act of

1974 (ERISA) and relate to Defendants' operation of their group annuity contracts;

Counts VIII and IX arise under the Investment Company Act of 1940 (ICA) and

relate to Defendants' operation of their group and individual annuity contracts.

**B.     Factual Background**

**1.     JHUSA's 401(k) Operations/The Fund Selection Process**

JHUSA operates 401(k) plans through its group annuity contracts (GAC) for

small and medium size employers (Second Amended Complaint ("SAC")¶¶

22,57,112).  JHUSA establishes a GAC by first selecting a menu of investment

options (SAC¶¶129-30). Promising to exercise great care in the selection process,

JHUSA claims the investment options

> 1. [a]re selected and maintained by standards that equal or exceed the ERISA prudent man requirements for investments [,] 2. [a]re appropriate for long-term investors [,and] 3. [o]ffer a broad range of investment alternatives. (Declaration of Robert Lakind ("Decl. RL"), ¶2, Ex. A; see also SAC ¶120).

JHUSA promises that, in this process, it will "scour a large universe of funds, applying our proprietary selection process to bring you a select group of investment choices that meet very stringent criteria" (SAC ¶187). JHUSA then provides this menu to an employer who selects a subset of funds (SAC¶132). JHUSA offers those employers, who include at least 19 John Hancock funds, a Fiduciary Standards Warranty (FSW) that "warrants . . .that the investment options . . .satisfy the prudence requirement of . . . ERISA . . ." (SAC ¶¶167-68) .

After a plan is established, JHUSA retains the authority to add and delete investment options and to revise its fees; authority it has exercised on numerous occasions after Plaintiffs selected their investments (SAC¶¶155-66; Tables I-III). JHUSA claims to thereafter monitor plan investments on an ongoing basis and to provide periodic reports to Plan sponsors on the performance of their investments (SAC¶189). JHUSA uses these reports as the basis for its decision to delete investment options (SAC¶¶188-90; DecRL, ¶¶3-4; Ex. B p. 7[1] and C p.3 ).

---

[1] All page references in exhibits are to the page numbers inserted on the documents by Plaintiffs. Therefore, Plaintiffs' page citations may differ from the original page numbers in a document.

## 2.    The Operation of the JHUSA Group Annuity

The investment options that JHUSA offers to the participants are generally drawn from one of three John Hancock series trusts.  A series trust is a registered investment company that contains unregistered fund/portfolios[2], each with its own investment strategy (SAC ¶353;Defendants' Brief ("Db")4). The three John Hancock series trusts/registered investment companies are: John Hancock Trust (JHT), John Hancock Funds II (JHFII) and John Hancock Funds III (JHFIII) (collectively the "JH Trusts").  JHIMS is the advisor to each of the JH trusts and to the unregistered portfolios within them.  JHUSA also offers several independent funds to Plan participants, provided those funds share revenue derived from investments made by JHUSA plan participants (SAC¶¶10, 96, 185).

When a participant selects a portfolio offered by JHUSA, his or her savings are directed into one of several "separate accounts," where they are allocated to a specific sub-account that corresponds to the desired portfolio.  The performance of each sub-account substantially tracks that of the underlying portfolio (SAC¶¶ 19-21, 153).

There are three different types of JHUSA sub-accounts: (1) sub-accounts where

---

[2]  In SEC filings (e.g., MTD338) Defendants refer to the unregistered funds in the JH Trusts as "portfolios." Plaintiffs use the portfolio terminology in this brief except when referring to independent mutual funds. MTD is the abbreviation Defendants used to identify the page numbers of their exhibits; Plaintiffs also use that acronym in this brief.

575607.1                                     -3-

the underlying investment is for a portfolio in a JH Trust, which is based on an independent fund (a "cloned fund"); (2) sub-accounts where the underlying investment is for a portfolio in a JH Trust where the portfolio is an original John Hancock portfolio, and (3) sub-accounts where the underlying fund is provided by a company other than John Hancock (SAC¶¶140-53, 214; Tables I-III).

All of the sub-accounts are held in JHUSA's separate accounts (MTD 416;479). Sub-accounts that correspond to portfolios in the JHT are in JHUSA's registered separate accounts (SAC¶424). Sub-accounts that correspond to portfolios in the JHFII are in JHUSA's unregistered separate accounts (SAC ¶181). At this time Plaintiffs lack knowledge as to whether sub-accounts which correspond to portfolios in JHFIII are held in registered or unregistered separate accounts.

### 3.   Plaintiffs' Investments

The manner in which JHUSA handled Plaintiffs' savings is depicted in a flow chart on the following page.



A portion of Santomenno's retirement assets was placed in a JHUSA registered separate account, and allocated to the sub-accounts, titled by JHUSA, as the Small Cap Growth Fund and the Money Market Fund (SAC¶¶226, 228). Santomenno's contribution to the sub-accounts was then pooled with the savings of others, and used to purchase shares of the unregistered John Hancock Trust-Small Cap Growth Trust and John Hancock Trust-Money Market Trust. Both portfolios were held in the registered JHT (SAC¶¶32-4, 226, 228). Another portion of Sanotmenno's retirement assets was placed in a JHUSA's unregistered separate account, allocated to the sub-account entitled the Blue Chip Growth Fund, pooled with the investments of others, and used to purchase the unregistered John Hancock Funds II-Blue Chip Growth Fund in the registered JHFII (SAC¶¶33-4, 181, 216).

K. Poleys' retirement assets were also placed in a JHUSA unregistered separate account; allocated to the Lifestyle Fund-Balanced Portfolio sub-account; pooled with the investments of others, and used to purchase shares in the unregistered John Hancock Funds II-Lifestyle Fund Balanced Portfolio in the JHFII (SAC ¶¶33, 35, 181, 222). B. Poley invested in several Lifestyle Funds in the same manner as K. Poley (SAC¶¶33, 36, 181, 220, 222-23).

### 4.   JHUSA's Fees Were Excessive

JHUSA charges fees to plan sponsors (a contract level fee) and charges participants fees for their investments into each of the sub-accounts (SAC¶¶199-213)

(regardless of whether the ultimate investment is for a John Hancock portfolio or an independent mutual fund) (SAC ¶6, Table III).  Only the latter fees, which JHUSA calls its Expense Ratio (or ER), are at issue in this litigation (SAC¶204). The ER is charged to each plan participant on an annual basis and, depending on the investment option, ranges from 1.06% to 2.11%[3] of a sub-account's balance (SAC, Tables I-III). In all cases, the expenses paid by plan participants significantly exceed the expenses paid by others who invest directly in an underlying portfolio/fund (SAC Tables I-III).[4] This pattern holds with regard to every single investment option offered under JHUSA's GACs (SAC¶269).  With respect to the sub-accounts where the underlying investment is for a portfolio of a JH Trust, the fees are even greater because a participant pays two advisory fees: an appropriate fee to the portfolio's sub-advisor and a substantially greater and unlawful fee to the portfolio's advisor, JHUSA subsidiary, JHIMS (SAC¶¶364-77).

_____

[3]   This range exceeds, at its low end, the highest fee at issue in <u>Hecker v. Deere & Co.</u>, 556 F.3d 575, 581 (7th Cir. 2009), upon which Defendants' rely.

[4]   By way of example, the annual ER on the sub-account which corresponds to the JHUSA Mid Value Investment Option is 1.63%.  The expense ratio for the John Hancock fund which underlies that sub-account is 1.13%.  The expense ratio for the fund from which the John Hancock Fund was cloned, the T.Rowe Price Mid Cap Value Fund, is .83% (SAC, Table I). Therefore, a JHUSA 401(k) participant annually pays approximately twice the expenses charged to an individual who invests directly in the T.Rowe Price fund, which is in addition to the fee paid to JHUSA by the plan sponsor.

## 5.    Plaintiffs' Complaint

The annual ER is comprised of three components, each is excessive, and most are impermissible (SAC ¶¶204, 245-421). The first is the Sales and Service fee, or S &S, which generally equals .50% of the sub-account balance (SAC ¶270). The next is the Fund Expense Ratio, or FER, which is either identical, or very close, to the total expense ratio of the underlying portfolio (SAC ¶252; Tables I-III). The last component of the ER is the Administrative Maintenance Charge, or AMC (SAC ¶251).

### a.    The Inflated and Unnecessary S&S Fees - Counts I and II

Count I alleges that JHUSA breached its fiduciary duties and committed prohibited transactions under ERISA by charging excessive S&S fees on investments into sub-accounts which were used to purchase John Hancock portfolios in the three JH Trusts. Count II differs only insofar as the allegation relates to the S&S fee paid on investments in an independent fund. JHUSA claims that the S&S fees cover expenses "for the distribution and marketing of the Fund's units" (SAC¶207).

The S&S fee was improper and excessive for three reasons. First, through the FER[5], Plaintiffs were already paying for distribution and marketing by paying the

---

[5]  The FER is a component of the ER (the sub-account expense ratio). The FER component of the sub-account fee is defined by JHUSA as the underlying portfolio's fees (Tables I-III), which includes the underlying fund's 12b-1 fees.

12b-1 fees of the underlying portfolio/funds.  According to the SEC, 12b-1 fees are used to recoup a fund's distribution and marketing costs (SAC¶290).  In fact, Defendants here informed the SEC that the 12b-1 fee was approved for the distribution of sub-account units for the John Hancock portfolios(SAC¶¶ 302-05). Since the Plaintiffs paid each underlying portfolios' 12b-1 fees, the S&S fees were duplicative.

Second, the SEC has opined that the S&S fee for a sub-account should not exceed the corresponding 12b-1 fee of the underlying fund (SAC¶281).  In many instances, JHUSA's  S&S fee was 10 times higher than the underlying funds' 12b-1 fee (SAC Tables I-III).  Third, Plaintiffs should not have been paying 12b-1 or S & S fees (SAC¶¶ 296-347).  According to the SEC, "institutional classes [of funds]. . . do not typically charge 12b-1 fees" (Plaintiffs' Unreported Authorities ("App.") A, fn. 452).  Since JHUSA was making large investments, it should have purchased institutional (rather than retail) shares of each fund since the former is normally available to large purchasers such as 401(k) plans (SAC¶339). Alternatively, JHUSA should have  negotiated the removal of 12b-1 fees.

### b.    Payment of 12b-1 Fees - Counts III and IV

Count III alleges that JHUSA violated its fiduciary duties and committed prohibited transactions under ERISA by allowing the payment of 12b-1 fees on

investments in the portfolios in the JH Trusts, and that JHIMS, JHD and JHF knowingly participated in this violation.  Count IV maintains that JHUSA breached its ERISA fiduciary duty by investing Plaintiffs' retirement monies in the retail share class of independent funds (SAC Tables I-III).

### c.   Excessive Advisory Fees - Count V

Count V charges that JHUSA breached its fiduciary duty and committed a prohibited transaction by allowing JHIMS to charge Plaintiffs an advisory fee on investments into sub-accounts where the ultimate investment was for a portfolio in any of the JH Trusts.  All of the trusts and the portfolios within them were advised by JHUSA subsidiary, JHIMS (SAC¶37).  In each instance  (SAC, Tables IV-VI), the underlying portfolios paid an appropriate sub-advisory fee to each of its managers, and a second improper advisory fee to JHIMS.[6]  By way of example, the Blue Chip Growth Fund (a fund within JHFII) paid a subadvisor's fee of $4,691,202 to an independent entity, and an advisor's fee of $10,187,034 to JHIMS  (SAC, Table V, p. 96).  According to SEC filings, for this $4,691,202 payment, the subadvisor formulated and implemented the investment program for the fund, purchased and sold securities, managed the investment of the fund's assets, and regularly reported to the fund's board; all at the sub-advisor's expense (SAC¶365).

---

[6]  See discussion of this practice at Curran v. Principal Mgm't Corp., No. 4:09-cv-00433, 2010 WL 2889752 (S.D.Iowa, Jun. 8, 2010)(App. B).

575607.1                                          -10-

### d.   Improper Receipt of Revenue Sharing Payments – Count VI

This Count alleges that JHUSA breached its fiduciary duties and committed a prohibited transaction by virtue of its receipt of revenue sharing payments from Plaintiffs' investments into the sub-accounts. These payments were made to JHUSA by the advisors to the 10 independent funds as well as the sub-advisors to the 11 John Hancock funds that underlie the sub-accounts. In all cases, these payments equaled .50% (the "Revenue Sharing Payments") (SAC¶¶400-02).

One of the three components of the ER is the Administrative Maintenance Charge (AMC). Defendants claim that the Revenue Sharing Payments offset the AMC (SAC¶399). Inexplicably, there was no, or a minimum, AMC for nearly all sub-accounts which corresponded to funds which make no Revenue Sharing Payments (SAC¶411). Moreover, JHUSA has provided contradictory descriptions of the "expenses" it claims are covered by the AMC: at times claiming the AMC covers participant record keeping expenses; at other times claiming it does not; at other times acknowledging it to be a revenue source (SAC¶¶406-10). The SAC alleges that the AMC is a fiction manufactured to facilitate JHUSA's unlawful retention of Revenue Sharing Payments (SAC¶ 411).

### e.   Use of the JHT Money Market Trust  - Count VII

Count VII charges that JHUSA breached its fiduciary duty by using the JHT

Money Market Trust as Plaintiffs' money market investment option notwithstanding its poor performance, high fees, and its decision to retain an advisor, JHIMS, who had been disciplined by the Security and Exchange Commission (SEC).

### f.    The Claims Under ICA §36b and §47b - Counts VIII and IX

Count VIII seeks recovery, under ICA §36(b), of the excessive investment management fees that JHIMS charged the portfolios in the JHT and JHFII, both of which are registered investment companies. Count IX seeks relief for unjust enrichment and rescission of unlawful portions of the GACs. ICA §26(f)(2) provides that it is unlawful for any "registered separate account funding variable insurance contracts, or for the sponsoring insurance company. . . to sell such contract" unless the fees are reasonable. Santomenno placed her funds in a JHUSA registered separate account which held shares of the JHT and, by virtue of ICA §47, has standing to advance unjust enrichment and rescission claims (SAC ¶424) for violations of ICA §26(f)(2).

### POINT I

### PLAINTIFF'S ERISA CLAIMS ARE VIABLE BECAUSE THERE IS NO REQUIREMENT FOR A PRE-SUIT DEMAND AND JHUSA IS AN ERISA FIDUCIARY

### A.    A Pre-Suit Demand Is Not Required To Sue a Fiduciary

Plaintiffs have standing to sue JHUSA, a plan fiduciary under ERISA §502(a)(2), ("participant [may] bring an action for breach of fiduciary duty") and

575607.1                                    -12-

ERISA §409 ( "[a]ny person who is a fiduciary with respect to a plan who breaches . . . shall be personally liable to make good [for] . . . losses . . . resulting from such breach . . . ."). LaRue v. DeWolff, Boberg & Assoc., 552 U.S. 248, 250 (2008). Neither ERISA §502(a) nor ERISA §409 contain a requirement for a pre-suit demand in order to sue a fiduciary.  Defendants' brief ignores the applicable statutes and instead relies upon common law precedent and cases which assert claims against third party non-fiduciaries.[7]

The resolution of this argument should turn on (1)  the language of ERISA Varity Corp. v. Howe, 516 U.S. 489, 528 (1996) ("though we have recognized that Congress borrowed from the common law of trusts in enacting ERISA we must not

---

[7] Defendants rely upon Restatement (Second) of Trusts, §282, Struble v. N.J. Brewery Employees' Welfare Trust Fund, 732 F.2d 325 (3rd Cir. 1986) overturned on other grounds by Firestone Tire and Rubber Co. v. Brunch, 489 U.S. 101 (1989) (court did not hold pre-suit demand was required; it held that ERISA §502(g)(2) (29 U.S.C. §1132(g)(2), (a statute not at issue here that relates to delinquent contributions to a multi-employer plan) only provides a remedy for fiduciaries. Id at 337-38); and several cases that do not discuss pre-suit demands: Moench v. Robertson, 62 F.3d 553 (3rd Cir. 1995); Chauffers, Teamsters and Helpers Local No. 391 v. Terry, 494 U.S. 558 (1990); Firestone v. Galbreath, 976 F.2d 279 (6th Cir. 1992) and McMahon v. McDowell, 794 F.2d 100 (3rd Cir. 1986).  As the Court in Goldenberg v. Indel, __ F.Supp.2d __, 2010 WL 3732974 (D.N.J. Sep. 7, 2010) at n.6 (App. C) ruled, McMahon and similar cases are distinguishable because they involve actions against a "third party from whom [the] fiduciary was to collect contributions."  The action here is against the fiduciary itself. Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244 (3rd Cir. 2002), cited at Db 35, fn. 25, did not involve a pre-suit demand.  The Court there held that, where ERISA statutory violations are alleged, a claimant need not exhaust his administrative remedies. Id. at 252.

forget that ERISA is a statute, and in every case involving construction of a statute, the starting point . . . is the language itself") (internal citations and quotations omitted) and <u>Great-West Life & Annuity Ins. Co. v . Knudson</u>, 534 U.S. 204, 209 (2002) (Court should not "tamper with the enforcement scheme" of ERISA); as well as (2) ERISA's purpose and (3) relevant ERISA §502(a) case law.

ERISA §502(a) contains no requirement for a pre-suit demand. Any effort to engraft such a requirement would "tamper with the enforcement scheme," <u>id</u>, and is improper. Second, the statutory purpose of ERISA, to protect employees, would be frustrated by requiring a pre-suit demand. Third, Courts have uniformly held, based on analogous Supreme Court precedent, that there is no requirement for a pre-suit demand in order to bring a §502(a) claim against a fiduciary. See <u>e.g.</u> <u>Coan v.Kauffman</u>, 457 F.3d 250, 257 (2nd Cir. 2006); <u>Kayes v. Pacific Lumber Co.</u>, 51 F.3d 1449, 1462 ( 9th Cir.) <u>cert. den.</u> 516 U.S. 914 (1995); <u>Brink v. DaLesio</u>, 667 F.2d 420, 428 (4th Cir. 1981); <u>Moeckel v. Caremark Rx, Inc.</u>, 385 F.Supp.2d 668, 684-685 (M.D. Tenn. 2005) and <u>In re AEP ERISA Litig.</u>, 327 F.Supp.2d 812, 820 (S.D. Ohio 2004). Since JHUSA is a fiduciary (not a non-fiduciary third party as Defendants suggest), there is no requirement for a pre-suit demand.

**B.   Plaintiffs Have Sufficiently Alleged that JHUSA is an ERISA Fiduciary**

    **1.   Fiduciary Status Should Not Be Decided on a Motion to Dismiss**

When assessing fiduciary status, courts employ a functional test that examines

whether the entity has performed the tasks listed in ERISA §3(21)(A). In re Unisys

Corp. Retiree Medical Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009).

Given the fact intensive nature of this inquiry, the determination of fiduciary status

should await completion of discovery:

> [T]he determination of whether a party is an ERISA fiduciary is a 'functional one', the determination will not typically be resolved at the motion to dismiss stage . . . [but rather],  the Court will be able to undertake the fiduciary duty inquiry only after full discovery.

Beye v. Horizon BC/BS of New Jersey, 568 F.Supp. 2d 556, 576 (D. N.J. 2008). See,

also, cases collected at Woods v. Southern Company, 396 F.Supp. 2d 1351, 1365 (N.

D. Ga. 2005); Accord, Goldenberg v. Indel, __ F.Supp.2d__, No. 09-5202, 2010 WL

3732974, *11 (D.N.J. Sept. 7, 2010) ("Goldenberg") (App. C)   This is so because,

public information only reveals some of those tasks performed by JHUSA, and

"ERISA plaintiffs generally lack the inside information necessary to make out their

claims in detail unless and until discovery commences." Braden v. Walmart Stores,

Inc., 588 F.3d 585, 598 (8th Cir. 2009).

Defendants' citation to Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3rd Cir.

2003),[8] for the proposition that a determination of fiduciary status is a matter of law

---

[8] Defendants' reliance on In re Insurance Brokerage Antitrust Litigation, Nos. 04-5184, 05-1079, 2008 WL 141498 (D. N.J., Jan. 14, 2008) is also misplaced as that case was decided after discovery.  In Trustees of the I.A.M. Dist. No. 15 v. Operant Material Solutions of New York and New Jersey, LLC, No. 07-4262, 2008 WL 4601792, at *4 (D. N.J., Oct. 15, 2008), the Court found fiduciary

is incorrect.  First, fiduciary status in <u>Srein</u> was determined after trial, not on a motion to dismiss. Second, the language quoted at Db37 is a partial quotation from a post trial decision in which the Sixth Circuit ruled that fiduciary status is normally an issue of fact. Third, Defendants' quotation excises critical language from <u>Srein</u> that leads to a very different meaning:

> **Where the facts are not in question**, a party's status as a fiduciary is purely a question of law.  <u>Srein</u>, 323 F.3d at 220 (Bolded language is not included in Defendants' quote)

## 2. Factors Relevant to Assessing Fiduciary Status

Several factors inform the assessment of whether a person is an ERISA fiduciary.  Foremost, as the Supreme Court observed in <u>John Hancock Mut. Life Ins. Co. v. Harris Trust and Savs. Bank</u>, 510 U.S. 86, 96 (1993), is Congress' desire to impose

> fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive.

Second, the term, "fiduciary," is to be broadly construed. <u>In re Unisys Corp. Retiree Medical Ben. ERISA Litig.</u>  57 F.3d 1255, fn 10 (3d Cir. 1995).  Third, while a contractual description of duties may be sufficient to render one a fiduciary, fiduciary status may be found even if plan documents state to the contrary.  Thus

> allegations of functional fiduciary status are sufficient to withstand a motion

--------

status based upon the defendant's conduct.

to dismiss in spite of plan documents to the contrary.

Graden v. Conexant Systems, Inc., 574 F.Supp.2d 456, 469 (D.N.J. 2008). Accord,

Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993) ("ERISA. . . defines

"fiduciary" not in terms of control and trusteeship, but in **functional** terms")

(emphasis in original).

### 3.   JHUSA is An ERISA Fiduciary

ERISA §3(21)(A) provides that a person is an ERISA fiduciary to the extent

(i) he exercises **any discretionary authority** or discretionary control respecting management of such plan **or exercises any authority or control** respecting management or disposition of its assets, (ii) he **renders investment advice for a fee**..., direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has **any discretionary authority or discretionary responsibility in the administration of such plan**. (Emphasis added).

Four of the provisions of ERISA §3(21)(A) apply to make JHUSA an ERISA

fiduciary. First, JHUSA exercises "discretionary authority or discretionary control"

respecting management of the plans. ERISA §3(21)(A) (i) (first clause). Second,

JHUSA exercises "authority or control respecting management or disposition of

[Plan] assets." ERISA §3(21)(A)(i) (second clause). Third, JHUSA provides

investment advice for a fee. ERISA 3(21)(A)(ii). Fourth, JHUSA has discretionary

authority or responsibility in the administration of the Plaintiffs' plans. ERISA

3(21)(A)(iii) (SAC ¶¶154-95).

### a.   JHUSA Exercises Control Over Plan Assets

Each of the provisions of ERISA §3(21)(A) is independent of the other. As the

Third Circuit held in <u>Srein</u>, 323 F.3d at 221, there is a

> significant difference between the two clauses [of subsection (i)] in that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets.

There, the defendant, who administered an ERISA plan that invested in viatical

settlements, misapplied the proceeds of an insurance policy and was sued for

breaching its ERISA fiduciary duty. The Court found the defendant to be a fiduciary

under the second clause of ERISA §3(21)(A)(i), because it (1) made representations

regarding its expertise; (2) charged a fee and (3) possessed the various insurance

policies. <u>Id</u>. at 222.

Measured by the criteria set forth in <u>Srein</u>, JHUSA is a fiduciary because it (1)

made representations about its expertise (SAC¶¶ 111, 116-17, 119-24; DecRL ¶¶3,

5-6; Ex. B p. 3-7, 9-12; Ex. D-E, p.3); (2) charged a fee (SAC¶¶198-213) and (3)

possessed Plan assets (SAC¶¶140-53, 181, 424). Indeed, the Circuit Courts have

found a defendant to be a fiduciary where authority and control has been far more

modest. <u>See, e.g.</u>, <u>Briscoe v. Fine</u>, 444 F.3d 478, 494 (6th Cir. 2006)(ability to change

fee).   Here, JHUSA's "authority and control" exceeded that discussed in <u>Srien</u>

because JHUSA also (1) changed the composition of Plan menus; (2) selected

between investments in the institutional and retail share classes; (3) extracted revenue sharing payments and (4) rendered investment advice (SAC¶¶155-58, 163, 186-94, 399-413). As discussed below, each of these activities alone suffice to render JHUSA a fiduciary.

### b. JHUSA is an ERISA Fiduciary To Assets In Its Separate Account(s)

Plaintiffs' investments are placed in JHUSA "separate accounts." ERISA §401(c)(5) provides that:

> No person shall be subject to liability under [ERISA].. on the basis of a claim that the assets of an insurer **(other than plan assets held in a separate account)** constitute assets of the plan, except– (i) as otherwise provided by the Secretary in regulations. (Emphasis added).

Thus, money which JHUSA collected on group annuity contracts and placed in a separate account are plan assets, <u>Adkins v. John Hancock Mut. Life Ins. Co.</u>, 957 F.Supp. 211, 214-15 (M.D.Fl. 1997), for which JHUSA has fiduciary responsibilities. <u>See also</u> Dept. of Labor Advisory Opinion (DOL Adv. Op.) 2005-22A (App. D).

29 <u>C.F.R.</u> §2550.401c-1(d)(2)(c) takes a somewhat more limited view, suggesting that ERISA fiduciary responsibilities extend only to unregistered separate accounts:

> In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account (other than a separate account registered under the Investment Company Act of 1940) to the extent that the investment performance of such assets is passed directly through to the plan policyholders. ERISA requires insurers, in administering separate account

575607.1                                                    -19-

assets, to act solely in the interest of the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and requires insurers to adhere to a prudent standard of care.

Under this regulation, JHUSA is a fiduciary with regard to those participant investments held in its unregistered "separate accounts" because (1) those investments are plan assets and (2) the investment performance of the funds in those separate accounts is passed through to the variable annuity policyholders.[9] While some of Plaintiffs' assets were placed in unregistered separate accounts, others were placed in registered separate accounts (see pp. 4-5 above).  Moreover, the distinction drawn in the DOL regulation between registered and unregistered separate accounts has no statutory basis, is inconsistent with the holding in Adkins, and the policy articulated in John Hancock Mut. Life Ins. Co., 510 U.S. at 96. Assets in all separate accounts are plan assets.

JHUSA asserts that holding assets in a separate account does not warrant fiduciary status under ERISA "in the absence of any pleaded allegations of requisite **discretionary** control...." (Db 52) (emphasis added).  This argument is contradicted

---

[9] In Charters v. John Hancock Life Ins. Co., 583 F.Supp.2d 189 (D. Mass. 2008) the Court declined to rule on the issue of whether insurance companies are figuciaries with respect to assets held in a separate account because it found JHUSA to be a fiduciary on other grounds and noted that "discretion [is] the touchstone of fiduciary status." Id. at 197. In the Third Circuit, proof of discretion is not required under the second clause of ERISA 3(21)(A)(i). Srein. Additionally, in Charters, the Court did not address the statute, Adv. Op. 2005-22A, or Adkins.

in Adkins and by Srein, 323 F.3d at 221, (proof of discretionary authority is not required under the second clause of ERISA §3(21)(A)(i)). In any event, JHUSA has discretionary control with regard to its fees, its ability to amend the GAC's, whether to invest in retail or institutional fund classes, and the negotiation of revenue sharing payments. See Am. United Life Ins. Co. 255 F.3d 374, 376 (7th Cir. 2001) ("we have twice held that an insurer's discretionary authority [to amend contract] or control over group insurance benefit plans subjects the insurer to ERISA fiduciary standards"). Thus, as JHUSA has "control respecting...disposition of...[plan] assets," through its unregistered, 29 C.F.R. §2550.401c-1(d)(2)(c), and registered separate accounts, Adkins, it is a fiduciary for those assets.

### c. JHUSA is a Fiduciary Because It Can Alter Fees

A party who can "affect the amount of benefits retirement plan participants will receive" is an ERISA fiduciary. John Hancock Mut. Life Ins. Co. , 510 U.S. at 96 and 116 (JHUSA was a fiduciary for funds in group annuity contracts which lacked guaranteed rates of return because JHUSA retained the authority to set prices and the participant bore the risk of fluctuations in value). JHUSA had the ability to unilaterally alter its fees, thus affecting the value of Plaintiffs' retirement benefits, and therefore is a fiduciary under ERISA (SAC¶184). See also Midwest Comty Health Service, Inc., 255 F.3d at 379 (defendant is ERISA fiduciary by virtue of authority to amend contract) and F.H. Kraer & Col. v. Nineteen Named Trustees, 810

F.2d 1250, 1259 (2nd Cir. 1987):

> On the other hand, after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.

The GACs for all Plaintiff plans reserve broad authority to JHUSA to alter its fees (e.g., MTD 410, 413, 416, 417-456, 468, 473, 480-497), including the authority "at our sole discretion [to] charge the maximum administrative maintenance charge at any time provided we give you three months . . . ." (MTD 426, 479). In Charters 583 F.Supp.2d at 198, the Court construed a similar contract provision and held that

> it is undisputed that Hancock retained sole discretion to change the maximum administrative maintenance charge [AMC] at any time upon three-months prior written notice to Charters. That discretion was sufficient to make Hancock an ERISA fiduciary.[10]

Based upon JHUSA 2008 and 2009 sub-account fee disclosures to Plaintiffs, JHUSA unilaterally altered the ER of the sub-account fees on 23 of the 29 investment options (SAC-Tables I-III); and increased the AMC five times. (SAC- Table III).[11] In addition, JHUSA had and exercised the power to change the share class of the underlying portfolios and mutual funds in which Plaintiffs' assets were invested. (SAC ¶163).   While each share class provided the same investment vehicle, the

---

[10]   While the plaintiffs in Charters would incur a fee if they terminated JHUSA, that possibility was not mentioned in the Court's discussion of JHUSA's fiduciary status by virtue of its control over fees. See id at pp. 196 to 198.

difference in fees between the classes affected Plaintiffs' returns (SAC ¶¶184, 319, Table III).  Therefore, JHUSA could impact benefits by changing fees and altering the share class in which it invested.

Given the holding in Charters, granting summary judgment to plaintiff, JHUSA is estopped from contesting its fiduciary status.  Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Lt., 63 F.3d 1227 (3rd Cir 1995) (offensive collateral estoppel is available to prevent relitigation of issue determined on summary judgment); Raytech Corp. v. White, 54 F.3d 187 (3rd Cir. 1995) and First Jersey Nat'l Bank v. Brown, 951 F.2d. 564, 570 (3rd Cir. 1991).

JHUSA's reliance on Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983) is misplaced.  There, the fees were fixed at the outset of the contractual relationship and could not be changed by the putative fiduciary.  For this reason, Charters, 583 F.Supp.2d at 197, found Schulist irrelevant, a view shared by later 7th Circuit jurisprudence.  See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732 (7th Cir 1986)[12] (holding Schulist inapplicable when the claimed fiduciary could amend its contract).  Chicago Dist. Counsel of Carpenters Welfare Fund v. Caremark, Inc. 474 F.3d 463, 473 (7th Cir. 2007) is likewise distinguishable because there, the

---

[12]   The Schulist Court, in fact, distinguished a case in which an insurance broker was found to be a fiduciary because he had the authority to alter his fees. Id at 1132, n 4.

defendant could not unilaterally alter the contract.

       **d.**    **JHUSA is a Fiduciary Because it Had the Authority to Add or Remove Investment Options from the Plaintiffs' Investment Menu after it Had Been Established, as Well as the Authority to Change the Share Class of the Underlying Fund in Which Plaintiffs' Assets Were Invested**

The GACs allow JHUSA to add and remove funds and change share classes, a power it often exercised.[13] (SAC¶¶155-65, 189-90)

Insurance companies that operate GACs and retain the authority to alter the menu of investment options are ERISA fiduciaries, Charters, 583 F.Supp.2d 189 (granting plaintiff's summary judgment motion and finding that JHUSA's ability to substitute different funds as well as its ability to alter its fee schedule rendered it a fiduciary); Haddock v. Nationwide Fin. Servs., 419 F. Supp. 2d. 156, 166 (D. Conn. 2006) (Haddock I); Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 108 (D. Conn. 2009) (Haddock II), Phones Plus Inc. v. Hartford Fin. Svs. Group, Inc., No. 2:06CV01835, 2007 WL 3124733 (D.Conn. Oct. 23, 2007) (Hartford) (App. E); and Ruppert v. Principal Life Ins. Co., No. 4:07CV00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) (Principal) (App. F).

---

    [13] See MTD 410 ("we can change the terms of the Contract without your written agreement, including...the following changes a) [T]he addition, removal and/or substitution of investment options"); MTD 416, 468, 479 ("The Company [JHUSA] reserves the right to substitute shares of another mutual fund, trust or portfolio thereof with similar investment objectives....")

In Haddock I, 419 F.Supp.2d. at 171-72, the Court denied Nationwide's motion for summary judgment addressed to its fiduciary status:

> A rational fact finder...could conclude that Nationwide's ability to select, remove, and replace the mutual funds for the Plan's investment constituted discretionary authority...respecting disposition of plan assets . . ..

See also Haddock II, 262 FRD at 108.  Reaching the same conclusion, the Court in Hartford at *4 found that even where the sponsor can reject a proposed change in the fund menu, the provider of a variable annuity contract may still be a fiduciary:

> Regardless of whether Phones Plus has the power to make the "ultimate decision" about Hartford's changes to the fund menu, a reasonable fact finder could still conclude, for example, that the change notification procedures are inadequate or that the time provided in which to make such a decision is unreasonably short, and that as a result Hartford is an ERISA fiduciary.

Defendants attempt to distinguish Charters because the plan at issue there "imposed a fee upon termination of the contract" (Db46).[14]  Here, both GACs allow JHUSA to charge a penalty in certain situations and/or to amend the contract (MTD 414, 468).  See Haddock II, 262 F.R.D. at 108 (holding in an analogous situation, that "even if such authority was never exercised, by itself constitutes sufficient

---

[14]  At Db 47, fn. 29, Defendants maintain that Charters was wrongly decided because it failed to account for 29 C.F.R. §2550.408b-2(c)(3), which JHUSA cites for the proposition that a "contract provision is not a penalty where it reasonably compensates the service provider for loss upon early termination."  That regulation has nothing to do with assessing fiduciary status.  It states that a contract is unreasonable if it assesses a penalty, and that a minimal fee to recoup start up costs is not a penalty.

authority...."). This claimed "distinction" is particularly puzzling because JHUSA imposed a contract termination fee on Santomenno (Decl. RL, Exh. O, p.3). Even had it not, the presence or absence of a termination fee was irrelevant to the Courts in Haddock I, Haddock II, Hartford and Principal and is inconsistent with the logic of Srein and John Hancock Mut. Life Ins. Co. For these reasons, and as set forth above, JHUSA is collaterally estopped from contesting Charters.

Hecker v. Deere & Co., 556 F. 3d 575 (7th Cir. 2009) is distinguishable. There, plaintiffs had over 2500 investment options, not the small number here. Moreover, the Hecker court, at 556 F.3d at 584, distinguished Haddock I, because as here,

> the service provider . . . had the authority to delete and substitute mutual funds from the plan without seeking approval from the named fiduciary.

In a subsequent decision, the Haddock Court reiterated this very distinction from Hecker. See Haddock II, 262 F.R.D. at 108, n. 6.

In F.W. Webb Co. v. State St. Bank & Trust Co., No. 09 Civ. 1241, 2010 WL 3219284 (S.D.N.Y., Aug 12, 2010) the Court merely held that, by assembling a "big menu" from which a sponsor selects a "small menu," a 401(k) provider does not become a fiduciary. Plaintiffs do not disagree. The F. W. Webb Co. Court distinguished Haddock, and Charters, because, in those cases, defendants had "direct authority to alter the list of funds presented to Plan participants," F.W. Webb Co., at *6, as is the case here. Similarly, in Zang v. Paychex, Inc., No. 08-cv-60461, 2010

WL 3021909 (W.D.N.Y. Aug. 2, 2010), the Court held the defendant was not a fiduciary under ERISA §3(21)(A)(i) because the Plan sponsor had the authority to reject a proposed change before it was added to the fund menu. The Zang Court distinguished Haddock, because, in the latter case, as here, the sponsor could not reject a change. Id. at *10.

Defendants' other cases are also distinguishable. In Chicago Dist. Council of Carpenters Welfare Fund, the plaintiff had final/sole authority regarding proposed changes to the prescription drug menu. Id. at 477. In Midwest Comty. Health Servs., a case involving a retirement plan, the 7th Circuit found an insurance company to be a fiduciary.

Nor is the decision in Renfro v. Unisys Corp., No. 07-2098, 2010 WL 1688540 (E. D. Pa., Apr. 26, 2010) app. docketed No. 10-2447, inconsistent with Charters, Phones Plus, and Haddock. Renfro, rejected a claim of ERISA fiduciary status, alleged only under ERISA §3(21)(A)(iii) and based on plaintiff's assertion that Fidelity could veto proposed changes to the employer's investment line-up. The Court there held that there was no veto power because the contract with Fidelity recognized that the employer had an alternative trust which afforded plaintiffs other investment options without Fidelity's approval. Id. at 4. Moreover, the power to veto a proposed change is very different from the authority to unilaterally delete an

investment option which contains Plan assets in the form of participant contributions. In the latter instance, participants must[15] transfer plan assets from one JHUSA investment option (on account of JHUSA's determination that the option is inferior), to another JHUSA option.

Defendants incorrectly rely on DOL Adv. Op. 97-16A (97-16A), which states that an insurer may retain the ability to add/delete investment options and not be a fiduciary "provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change." Id. at 5. Here, the plans could not reject a change, (MTD 410, 479) and Defendants do not meet 97-16A's other requirements: that the insurer provide 120 days advance notice of the change and disclose any change in its compensation. Also, 97-16A is based on Aetna's representation that it offered no advice on the selection of investment options, id. at 1, which is not the case here.

Finally, unlike the ministerial functions at issue in Defendants' cases, here JHUSA exercised discretionary authority. It claimed an expertise in satisfying fiduciary obligations (SAC¶¶120-24; DecRL¶¶2,3,5,6; Ex. A,B,D,E). It represented that it created its investment menu by scouring the market using its proprietary selection strategy and that it complied with ERISA's prudence requirements

---

[15]   Internal Revenue Code §72 imposes a 10% penalty on withdrawals prior to age $59^{1/2}$, thus, Plaintiffs cannot simply liquidate a deleted investment and invest their funds outside the 401(k).

575607.1                                    -28-

(SAC¶187).  JHUSA issued a fiduciary warranty; it promised to monitor plan investment options  on a daily, quarterly and annual basis; it promised to delete investment options that performed poorly, and it retained the right to unilaterally alter its fees and collect revenue sharing payments. (SAC¶¶119, 184-90, 399-413; Tables I-III).

JHUSA is a fiduciary for a second reason: it retained the right to unilaterally change the share classes of the underlying funds offered to Plaintiffs, (SAC ¶¶163;184).  As discussed above, the institutional and retail share classes charge different fees which produce  different returns, (SAC¶¶ 316;337-38; Table III).  This authority alone renders JHUSA a fiduciary. See John Hancock Mut. Life Ins. Co. 510 U.S. at 116 ("Congress...imposed fiduciary standards on persons whose actions affect the amount of benefits...participants will receive").

### e.   JHUSA is a Fiduciary Because It Extracted Revenue Sharing Payments

An insurance company that pools participant investments and leverages those investments to extract revenue sharing [or other] payments exercises "authority and control over plan assets" and is an ERISA fiduciary. Haddock II, 262 F.R.D. at 106-108.  This is so because the magnitude and disposition of those revenue sharing payments  influence participant benefits.  John Hancock Mut. Life Ins. Co., 510 U.S. at 96.

575607.1                                           -29-

### f.   JHUSA is a Fiduciary Because It Rendered Investment Advice for a Fee

ERISA § 3(21)(A)(ii) provides that a person is a fiduciary if

he renders investment advice for a fee..., direct or indirect, with respect to any moneys or other property of such plan . . ..

According to JHUSA's disclosures, it undertakes several investment reviews, among

them, its "Fund Check"™ program described as follows:

**Annual Contract Review**

We prepare an Annual Contract Review (ACR) that gives you some of the important information you'll need to assess the overall health and performance of **your plan** and fulfill your ongoing fiduciary responsibilities. This tool includes statistics that will provide **insight into your contract at a plan and participant level**, as well as information that will allow you to monitor your plan's investment selections. . . .

Detailed performance and cost information is also presented **on the various investment options you have selected.**

\*                    \*                    \*

**Investment options**

This entails comprehensive examination of each Fund based on their performance, return.... **Twice per year**, you will receive our award-winning FundCheck™ Fund Review and ScoreCard, which presents the results of our most recent due diligence analysis of all the investment options offered through your plan. **It also highlights any Fund changes impacting your plan** (emphasis added) (DecRL ¶3, Ex. B p. 7; <u>see</u> <u>also</u> SAC ¶¶186-192)[16]

---

[16]   JHUSA has in fact trademarked the FundCheck™ name, describing it as an "investment advisory service." DecRL ¶7, Ex.F

In addition, using its "Underlying Fund Replacement Regimen," JHUSA monitors investment options daily, quarterly and annually and, if an option fails certain criteria, it is replaced (SAC¶190).  These programs, JHUSA explains, provide "plan sponsors the confidence that their investment lineup **is being managed by an expert team of professionals. . . ."** (DecRL ¶5, Ex.D)(emphasis added).

JHUSA receives fees for its services and therefore, under the statutory test of ERISA §3(21)(A)(ii), "rendered investment advice for a fee."[17]  Based on similar facts, the Court in Principal found a §401(k) provider to be an ERISA fiduciary. 2009 WL 5667708, *4-5 (App. F).

Recently, the DOL construed ERISA 3(21)(A)(ii) in connection with a proposed regulatory amendment:

> [T]he proposal further clarifies that,...the provision of certain information and data to assist a plan fiduciary's selection or monitoring of such plan investment alternatives will not be treated as rendering investment advice **if the person providing such information or data discloses in writing to the plan fiduciary that the person is not undertaking to provide impartial investment advice.**

*               *               *

---

[17]   See 29 C.F.R. 2509.96–1, Interpretive Bulletin; fn. 3 (App. G) (fees "should be deemed to include all fees or other compensation incident to the transaction....); see also 40 Fed. Reg. 50842 (App. H) (the fees may "include, for example, brokerage commissions, mutual fund sales commissions, and insurance sales commissions").

In some cases, consultants receive compensation from the investment companies whose products they recommend to the plan, which could lead them to steer plans towards products for which they receive additional compensation.  These arrangements can be harmful to plan participants, because the plan may pay excessive fees for the provided services which could lower returns.  Participants in participant directed 401(k) plans are especially vulnerable . . .. (Emphasis added)

75 Fed. Reg. 65268, 65270-65271, Oct. 22, 2010 (App. I). JHUSA's FundCheck™ and associated programs are "not undertaking[s] to provide impartial investment advice," rather they are intended to instill in JHUSA's small and medium size clients "the confidence that their investment lineup **is being managed by an expert team of professionals**...." (DecRL ¶5, Ex.D) (emphasis added). The advice and management resulted in JHUSA making unilateral changes to the investment menu, and every single investment JHUSA offered resulted in the payment of fees (SAC¶6), as well as revenue to JHUSA on "its internally managed Funds [which] may be higher than those advised or subadvised exclusively by unaffiliated mutual fund companies" (SAC¶171).

Defendants argue that <u>Elliot v. Mitsubishi Cement Corp.</u>, No. 07-03509, 2008 WL 4286985 (C.D. Cal. Sept. 15, 2008) requires that Plaintiffs plead all factors of the regulation which purports to implement ERISA §3(21)(A)(ii), 29 C.F.R. §2510-3.21. However, these factors are not elements of the statutory definition. Moreover, according to the DOL, this regulation "significantly limited the broad statutory

language [of ERISA §3(21)(A)(ii)]", and "may inappropriately limit the types of investment advice relationship that give rise to fiduciary duties." 75 Fed.Reg. 65270, 65263-4 (App. I).   The DOL has recently proposed a new broader regulation, consistent with the statute, that imposes liability irrespective of whether the advice is provided on a regular basis or is the primary basis for investment decisions. Id. at 65267. Plaintiffs' allegations, in any event, satisfy the statute's requirements and all regulatory factors (SAC¶¶119-24;154-75;186-95).[18]

Defendants cite In re Benefit Mgmt., Corp., No. 87-03292, 1988 WL 384076 (Bankr. W.D. Wis. Nov. 21, 1988) for the proposition that there must be a nexus between the damages and the grounds on which fiduciary status is based. Here, had the FundCheck™ and the Underlying Fund Replacement Regimen worked as promised, investment options which charged excessive fees would have been removed. Defendants' remaining cases stand for the proposition that one does not become a fiduciary by selling a product to a Plan. This is so unless, that product is investment advice as is the case here.

---

[18]   Providing investment related information to participants qualifies as rendering investment advice. 29 C.F.R.2509.96-1 (App. G). This regulation, exempts certain educational activities from the definition of investment advice. Defendants broadly allege (Db50) that (i) directing participants, who elect not to make their own investments, to certain John Hancock funds, in favor of others, and (ii) certain disclosures in the Your Investment Option booklets (SAC ¶¶193-95), satisfy this exemption. Yet, Defendants do not explain how these activities satisfy any of the exemptions contained in the regulation.

### g.   JHUSA is a Fiduciary Because of its Warranty Program

In addition, JHUSA is a fiduciary because it offers a "fiduciary warranty" to the plans. In order to qualify for this warranty, a sponsor must include 19 specific classes of mutual funds offered by JHUSA. An employer has an overwhelming incentive to obtain the protection offered by the warranty and include the John Hancock funds, irrespective of whether they are superior to other funds. JHUSA's recommendations, with regard to which funds should be offered to participants, are therefore rubber stamped by employers and, for that additional reason, JHUSA is a fiduciary. Cf. Pension Fund Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group, 731 F.Supp. 161 (D.N.J. 1990); Stanton v. Shearson Lehman/ Am. Express, 631 F.Supp. 100 (N.D. Ga. 1986) and Procacci v. Drexel Burnham Lambert, Inc., C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) (App. J).

### h.   JHUSA's Remaining Arguments

Finally, JHUSA argues that it cannot be a fiduciary because, under the GACs: (i) JHUSA is not required to question a trustee's actions, (ii) contributions may only be invested in options selected by the trustees, and (iii) JHUSA does not assume responsibility of the "Plan Sponsor or any other Fiduciary." (only the Poleys GAC contains this language) (Db39-40). These claims do not insulate JHUSA from fiduciary status. Plaintiffs are challenging JHUSA's conduct, not that of the trustees.

Moreover, JHUSA is an ERISA fiduciary because of the functions it exercised independently of the plan sponsor: (1) control over a separate account; (2) changing fees; (3) altering the GACs; (4) participating in revenue sharing arrangements; (5) choosing between retail and institutional share classes; (6) altering the fund menu; and (7) providing investment advice.

Beddall v. State St. Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998), upon which Defendants rely, is distinguishable as the Court there held (1) the contractual terms relied upon by plaintiffs did not establish fiduciary status and (2) the allegations of fiduciary status had no nexus to the alleged breach. Id. at 19-22. Here plaintiffs have alleged fiduciary status based on the functions performed by JHUSA which caused Plaintiffs to sustain damages.

Defendants also rely on Briglia v. HorizonHealthcare Serv. Inc., No. 03-6033, 2005 WL 1140687 (D.N.J. May 13, 2005), where the defendant was found not to be a fiduciary because (unlike here), it performed only "administrative and ministerial tasks." Id. at 6-9. Defendants urge that fiduciaries can avoid liability with a disclaimer. This argument is inconsistent with the principal that a party can acquire fiduciary status if it engages in fiduciary activities, irrespective of contractual terms. See Harold Ives Trucking Co. v. Spradley & Coker, Inc., 178 F.3d 523, 526 (8th Cir. 1999); Moeckel v. Caremark Rx.Inc, 385 F.Supp2d. at 682-83 (party can be

functional fiduciary even where contract disclaims fiduciary status); and Graden, 474 F.Supp.2d at 469.

### 4.    Equitable Relief is Available Against JHD and JHF

Count III, among other things, seeks disgorgement of 12b-1fees paid to JHD and JHF. The premise for disgorgement is that payment of these fees constitutes a prohibited transaction ("PT"). Defendants first argue that the fees are not plan assets (Db52-3). Irrespective of whether these fees are plan assets, the receipt of fees which results from the investment of plan assets is prohibited and the fees must be disgorged.

Defendants argument has been rejected by Goldenberg, and a host of other Courts. In Goldenberg,  the Court held that a fiduciary's investment of plan assets in an affiliate's mutual fund constituted a PT under ERISA §406(b). Id. at 9. See also Braden 558 F.3d at 600-01; Regions Morgan Keegan ERISA Litig., 692 F.Supp.2d. 944, 961-62 (W.D. Tenn. 2010); Kanawi v Bechtel, Corp., 590 F.Supp.2d. 1213, 1227-28 (N.D. Cal. 2008); DOL. Adv. Op. 93-13A (App. K) and Haddock I, 419 F.Supp.2d at 191, holding:

> I conclude that 'plan assets' include items a defendant holds or **receives** (1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants . . ..

*            *            *

Moreover,... [these] claims are not entirely dependent on their theory that the challenged payments are plan assets. If Nationwide is an ERISA fiduciary, it may not engage in prohibited transactions even if the payments Nationwide receives are not themselves plan assets.

Defendants argue that Principal holds that revenue sharing payments which are derived from plan investments in a mutual fund cannot constitute a PT. This conclusion is inconsistent with Goldenberg, and all of the other cases cited above. Moreover, Principal also held that payments derived from unregistered separate accounts may form the basis of a PT. 2009 WL 5667708, * 20-21. Some of the 12b-1 fees here derive from JHUSA's unregistered separate account(s) (SAC¶181). Defendants' reliance on Hecker is misplaced. In that case, there were no allegations that the defendant engaged in a PT. The Hecker Court's discussion of the definition of plan assets was relevant only to whether Fidelity was a fiduciary, which it was not. Given the 7th Circuit's later holding in Midwest Community Health Serv., JHUSA is a fiduciary, and its decision to invest assets with affiliated entities which generated fees is a PT.

Defendants also allege that this claim must be dismissed because only equitable relief is available to Plaintiffs (Db53). However, claims for disgorgement of ill gotten plan assets are deemed to seek equitable relief:

[A]ction for restitution against a transferee of tainted plan assets satisfies ... 502(a)(3). Such relief is also equitable in nature.

Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 253 (2000) ("Harris").  See also Goldenberg at *16-7(mutual fund/service provider must disgorge).

Finally, notwithstanding Defendants' claims to the contrary, the SAC adequately traces the unlawful 12b-1 fees to JHF and JHD (SAC¶¶60-3;302-305).

**POINT II**

**PLAINTIFF S HAVE STANDING TO PURSUE AND
HAVE STATED CLAIMS UNDER ICA §36(b)**

**A.    As Security Holders of the JHT and JHFII, Plaintiffs Have Standing to Bring Derivative Claims On Behalf Of The JHT and JHFII, Under ICA §36(b)**

ICA §36(b) authorizes an action by "a security holder of [a] registered investment company on behalf of such company."   Under the ICA, "security":

> means any...stock . . . certificate of interest or participation in any profit-sharing agreement . . . investment contract...certificate of deposit for a security . . . or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the value thereof), . . . or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in . . . any of the foregoing.  ICA §2(a)(36).

JHUSA describes Plaintiffs' investment as follows:

> When you contribute your contributions to an investment option, they are invested in a sub-account which in turn invests solely in shares of the indicated underlying mutual fund (the "Portfolio"). (Decl. RL¶8, Ex.G p. 3)

> An investment in a sub-account will fluctuate to reflect the value of the sub-account's underlying securities and, when redeemed, may be worth more or

less than original cost. (SAC ¶ 153).

Defendants admit that (1)"[s]hares of JHT" and "JHFII" are "registered under the Securities Act of 1933" (Decl. RL ¶9, Exh. H, pp. 4 and 6 (i.e., only the portfolios within them are unregistered) and (2) that "[s]hares" of both JHT and JHFII are sold to separate accounts as the underlying investment vehicle for JHUSA's annuity contracts. Id. at 4-6; MTD 338. Thus, by virtue of the fact that Plaintiffs fund the sub-accounts within the separate accounts which make investments in the JHT and JHFII, they are security holders of those trusts (SAC¶¶353-63), inasmuch as these investments represent a "participation in [a] profit sharing agreement," "investment contract," "privilege on . . . any group or index of securities (including any interest . . . based on the value thereof)," or a "participation in . . . any of the foregoing." ICA §2(a)(36).

Defendants argue (1) that Plaintiffs are not "security holders of any JHIMS-advised funds"; (2) due to the structure of JHUSA's product, Plaintiffs' interest is too attenuated for them to be a "security holder" and (3) that "retirement plan participants are not mutual fund security holders" (Db18 - 19).  Plaintiffs do not allege that they are "security holders" of any "JHIMS-advised funds." Rather, Plaintiffs allege that their standing derives from their status as "security holders" of the registered trusts which contain the unregistered funds/portfolios (SAC¶¶347-63).

Nor is Plaintiffs' security interest attenuated.  By virtue of their investments

in to sub-accounts, Plaintiffs are security holders of the registered trusts.  No matter how JHUSA chooses to structure its product, Plaintiffs bears all of the investment risk (SAC¶153(b)).[19]  As the Third Circuit has held, "Congress intentionally drafted the statutory [ICA] definitions in general terms in order to control such situations [where the investor assumes performance risks] regardless of the legal form or structure of the investment enterprise." Prudential Ins. Co. of America v. Securities and Exchange Com., 326 F.2d 383, 387 (3rd Cir. 1964).   It would defeat the purpose of the ICA to require that Plaintiffs invest directly into each underlying fund.  See Curran v. Principal Mgm't Corp. 4:09-cv-00433, 2010 WL 2889752 ( S.D.Iowa, Jun. 8, 2010) (App. B), where the Court held that the ICA defines security broadly, id at *4 and *5:

> the Court has closely examined the entirety of §36(b), the ICA as a whole and the legislative history and has found no indication that 'security holder' for the purpose of §36(b) claims should be limited to a direct shareholder of the registered investment company."

Finally, contrary to Defendants' assertion, retirement plan participants are security holders (Db19). In Owens Ill, Inc. SEC No-Action Letter Nov. 4, 1994, 1995 WL 693324 , at *10 (App. L), the SEC construed the ICA's definition of "security" as:

---

[19]  Defendants narrowly read the GACs to say that participants have no rights under them and therefore Plaintiffs cannot maintain their ICA§ 36(b) claims.  Yet, both GACs vest rights in Plaintiffs (e.g. MTD 404, 461), and Plaintiffs' investments give rise to an additional contract. See SEC Rel. No. 33-6188, at *9 (App. M).

[w]e consider a defined contribution [401(k)] plan beneficiary who decides whether or how much to invest in an issuer...to be the beneficial owner of the issuer's securities.

Defendants' argument to the contrary is based upon opinions under the Securities Act of 1933 and the Securities and Exchange Act of 1934, which are inapposite. Thus, §3(a)(10) of the 1934 Act defines "security" in substantially the same fashion as the ICA. However, §3(a)(12)(A)(iv) of the 1934 Act exempts:

any **security** arising out of a contract issued by an insurance company, which interest, participation, or security is issued in connection with a qualified plan as defined in subparagraph (c)...[a 401(k) plan].... (Emphasis added).

The 1933 Act contains a similar definition (§2(a)(1)) and exemption (§3(c)(2)). "Clearly, there would be no need to provide such an exemption unless the interests were securities." SEC Release No. 33-6188, *15 (App. M). Congress' decision's to refrain from incorporating these same exemptions in the ICA establishes that Plaintiffs' are security holders under the ICA.

In fact, the SEC has opined that the Security Act exemptions only apply to defined benefit plans, and not to participants in defined contribution 401(k) plans:

[S]ince 1941 the Commission and its staff have adhered to the position that voluntary, contributory pension and profit sharing plans are securities.

*       *       *       *

The contributions made to employee benefit plans frequently are invested in pools of assets.... These pools...take the form of...insurance company separate accounts. [T]he participation interests...in these...investment vehicles are securities.

SEC Rel. No. 33-6188, 1980 WL 29482, *9 and 15 (App. M); See also Goldenberg

at pp. 19-20 (App. C).

Defendants remaining cases arise in different contexts.  Compare Phil. Marine

Trade Ass'n, v. Int'l Longshoremen's Ass'n Pension Fund v Comm'r., 523 F3d 140

(3rd Cir. 2008 (a tax case) and Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 735 (3d

Cir. 1970) (not a series trust case).

**B.   Plaintiffs Do Not Lose Standing By Virtue of Terminating Their Interests and Mitigating Damages**

Defendants' err insofar as they argue that the prosecution of an ICA §36(b)

claim requires continuous ownership of a security.   First, an ICA complaint is not

governed by  Fed.R.Civ.P.  23.1.   Therefore, cases based upon the continuous

ownership requirement of Rule 23.1 are inapplicable.   See In re Mutual Funds

Investment Litig. 519 F.Supp.2d 580, 590 (D. Md. 2007) ( "[b]ecause Rule 23.1 does

not apply to Section 36(b) claims, a contemporaneous ownership requirement exists

only if Section 36(b) *independently* establishes it").  Since "Congress was aware of

the contemporaneous ownership requirement in Fed.R.Civ.P. 23.1and would have

included it in [the ICA], if Congress had intended it to apply," id. at 591, it does not

apply.

Second, a requirement of continuous ownership was expressly rejected under

the Investment Advisor's Act, a statute designed to achieve the same end as the ICA.

See <u>Norman v. Saloman Smith Barney</u>, 350 F.Supp.2d 382, 389 (S.D.N.Y. 2004),

where the Court held that to

> require that an investor maintain his account through the pendency of an action under the IAA, continuing to pay fees after he has become aware of the damaging conduct, so as not to forfeit his remedies under the Act, would be absurd and wholly at odds with the investor-protection purposes of the statute

Third, the continuous ownership requirement is designed to avoid excessive

fee litigation. However, ICA §36(b)(3) already provides protection against excessive

fee litigation by virtue of the limited period during which a plaintiff may recover

damages. <u>In re Franklin Mut. Funds Litig.</u> 478 F.Supp.2d 677, 685-86 (D.N.J.,2007).

Therefore, the purpose of the continuous ownership requirement is fulfilled in other

ways, and a court should not read requirements into a cause of action which Congress

did not include.  <u>Cf.</u> <u>U.S. v. Parise</u>, 159 <u>F3d</u> 790, 800 (3rd Cir. 1998).

The cases Defendants rely upon are distinguishable.  <u>Forsythe v. Sun Life Fin.</u>

<u>Inc.</u>, 417 F.Supp.2d 100 (D. Mass. 2006) dismissed certain of plaintiffs' claims

because  "the complaint lacks any allegation that they had an ownership interest in

any MFS Fund **when the case was initiated."** <u>Id.</u> at 120 (emphasis added). <u>See</u> <u>also</u>,

<u>Siemers v. Wells Fargo & Co.</u>, No. C 05-04518, 2006 WL 2355411, at p.*21

(N.D.Cal. Aug. 14, 2006) (App. N) to the same effect.  Were these cases correct, they

would bar the Poleys' claims but not those of Santomenno. While <u>Brever v. Federated</u>

<u>Equity Mgmt Co. of Pa.</u> 233 F.R.D 429, (W.D. Pa. 2005) did require continuous

ownership, that position was unchallenged by plaintiffs, id. at 431, and the court there reached its conclusion by misconstruing Kauffman, 434 F.2d at 735 where the Third Circuit denied standing because "appellee is not now **nor ever was a stockholder** of any of the 61 funds...." (Emphasis added).

**C.    Plaintiffs Have Standing to Sue On Behalf Of The JHT and JHFII With Regard to All Funds Within Those Trusts**

Plaintiffs agree that generally a security holder in one mutual fund may not bring an ICA §36(b) claim on behalf of "funds in which [it] has no interest" (Db22). Here, however, Plaintiffs, as security holders in the JHT and JHFII, bring derivative claims on behalf of these two registered investment companies, not the funds within them. See Kauffman, 434 F2d at 733 holding that the corporate structure of investment companies may not be disregarded.

ICA §36(b) provides that Plaintiffs, as security holders in the registered investment companies (JHT and JHFII), have standing to bring claims on their behalf. Since the "statute is clear and unambiguous, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Sullivan v. Stroop 496 U.S. 478, 482 (U.S. 1990). Here, the assets of the trusts were impaired by JHIMS' excessive fees. For purposes of this derivative claim, the focus is on Plaintiffs' relationship to the injured parties - the trusts. It does not matter how the trusts were injured. As long as Plaintiffs were security holders in

575607.1                                     -44-

the trusts when the trusts sustained injury, they may bring a derivative claim on their

behalf.

Thus, in <u>Batra v. Investors Research Corp.,</u> No. 89-0528-CV-W-6, 1992 WL

278688 (W.D. Mo., Oct. 4, 1991) (<u>Batra</u>) (App. O), the Court permitted an investor

in one of twelve portfolios of a series trust (i.e., JHT and JHFII), to sue on behalf of

all of its portfolios because it

> agrees with the plaintiff that each series is not an investment company for
> purposes of the Act, and that by holding stock in TCI [the name of the series
> trust], he has standing to bring this lawsuit.  The plaintiff's standing is not
> limited to bringing an action for a particular series.  Section 36(b) provides that
> 'an action may be brought under this subsection by a security holder of such
> *registered investment company* on behalf of such company.'  The plaintiff
> owns shares of TCI, a *registered* investment company as defined in 15 U.S.C.
> 80a-08.  The individual funds are not registered as required.  Accordingly,
> ownership in the registered company is sufficient to satisfy the statutory
> requirements of 36(b). . . . TCI, not each series, issues or proposes to issue
> securities.  Accordingly, the series do not constitute companies.

<u>Id</u>. at *1-2.  <u>See also</u> <u>Mutchka v. Harris,</u> 373 F.Supp. 2d 1021 (C.D. Cal

2005)(upholding standing to bring ICA §36(b) claim on behalf of every series fund

within the trust) and <u>Barrett v. Van Kampen Merritt, Inc.,</u> No. 93 C 366, 1993 WL

95382, at p. * 3 (N.D. Ill. Mar. 30, 1993) (App. P) (unit holder of series has standing

to sue for injury sustained by "entire collection for the funds' series").

Defendants rely on only one series trust case, <u>Stegall v. Ladner</u>, 394 F.Supp.

2d 358 (D.Mass. 2005).  Standing was denied there because

[t]here is no precise parallel to the described arrangement in the corporate

world, but the closest analogy still seems to be that of separate subsidiaries (the various mutual funds) that share a common parent.... Williams' small holdings in those two funds provide no justification for...him to act on **behalf of the...trust-indeed, any allegation of Williams' ownership interest in that entity is conspicuously absent.**  Id at 363, quoting Williams v. Bank One Corp., No. 03 C 8561, 2003 WL 22964376 (Dec. 15, 2003 N.D.Ill) (Emphasis added).

The instant case is distinguishable because Plaintiffs, relying on SEC filings, allege they  were security holders in JHT and JHFII (SAC ¶¶32-6).[20]  Furthermore, as JHT and JHFII are the registered entities (and not the portfolios within them), their corporate form may not be disregarded.  Kauffman, 434 F.2d at 733 (registered investment companies are not "novel corporate structures"; corporate form may not be disregarded) and In re Franklin Mut. Funds Fee Litig. 388 F.Supp.2d at 463.[21]  In re Scudder Mut. Funds Fee Litig., NO. 04 Civ. 1921, 2007 WL 2325862 (S.D. N.Y., Aug. 14, 2007), In re Mut. Funds Fee Litig., No. Cv 04-5593, 2005 WL 3989803 (C.D, Cal. Dec. 16, 2005) and In re Lord Abbett Mutual Funds Fee Litig., 407 F.Supp.2d 616, 633 (D.N.J. 2005), partially vacated on other grounds, 463 F.Supp.2d 505 (D.N.J. 2005), are distinguishable because they are not series trust cases.

---

[20]   This fact also distinguishes this case from the holding In re Mutual Funds Inv. Litig. 519 F. Supp2d  at 589 ("Moreover, no individual investor owns shares in the entity that registers as an investment company that issues separate series....")

[21]   None of the SEC releases cited by Defendants are controlling, each addressed a provision of the ICA, other than ICA §36(b).

Thus, the SAC alleges a plausible derivative complaint on behalf of the registered trusts.

### D.   Plaintiffs' Allegations State an ICA §36(b) Claim

Plaintiffs' ICA §36(b) claim alleges that JHIMS received significant fees which it claimed was for investment management/advisory services, when it performed no, or minimal, services.  Relying on Defendants' SEC filings, the SAC alleges that it was the subadvisor who (1) formulated the investment program; (2) implemented the program; (3) managed the investment of fund assets; (4) reported on fund performance; and (5) furnished all management and investment facilities at its own expense. (SAC ¶¶347-98)[22].  Defendants dispute this claim with generalized arguments about industry practices.  However, Plaintiffs are not challenging an industry practice: They challenge Defendants' conduct and that challenge entails a fact specific inquiry.  Jones v. Harris Assoc. 130 S.Ct. 1418 (2010).

Second, Defendants' exhibits, submitted in an effort to dispute Plaintiffs' allegations, simply raise an issue of fact not appropriate for resolution on a motion

---

[22]   The SEC filings were cited at SAC ¶365, and those annual SEC filings, which describe the services of the subadvisors are attached to the DeclRL. (Decl. RL, ¶¶10-15, Exh. I, p.19; J, p.25; K, p.26; L, p.28; M, p. 20 and N, pp. 20-21).  Page references are to numbers inserted by Plaintiffs on SEC filings; not to the page numbers that were printed on the filings.

to dismiss.  Even if JHIMS were able to ultimately prove that its services were more extensive than Plaintiffs allege, the SAC plausibly asserts that those services were insignificant in comparison to those of the subadvisors, yet in most cases, the former earned fees much greater than the latter (SAC Tables IV-V).[23]  In any event, Defendants' brief (at Db24) exaggerates the description of JHIMS's services as described in the cited exhibits (without page reference).   Under the heading of "Duties of the Adviser," the cited exhibits accurately reveal that the subadviser performs the bulk of the work:

> [T]he Adviser will...**contract with investment subadivsors ("Subadivsors") to manage the investments and determine the composition of the assets of the Portfolios**...monitor compliance of each Subadviser with the investment objectives...and review and report to the Trustees...on the performance of such Subadviser" (emphasis added).

(MTD 339, 374).

**E.     The 2007 SEC Settlement**

Defendants admit that the SEC cited JHIMS for "willfully...[making] untrue statements of material fact in" SEC filings related to fees. In Matter of John Hancock

---

[23]   Moreover, the financial statements for the portfolios in JHT and JHFII reveal that, in addition to the "investment management fee" (which is generally equal to the "JHIMS Mgt. Fee" in SAC  Tables IV-V), JHIMS  received many other fees, including fees that are ambiguously classified as "professional fees" and "miscellaneous fees," as well as accounting fees, legal fees, and custodial fees (SAC ¶¶368-71).

Inv. Mgmt. Servs., LLC, SEC No. 3-12644, June 25, 2007 (App. Q, p. 9). Thus, "the [JHT] trust board was...unable to adequately evaluate the trust's...marketing expenses." Id. at 5. As a result, the SEC fined JHIMS and required it to make a payment to JHT. Id. at 12.

Defendants claim this scheme is irrelevant because it did not occur during the period when Plaintiffs were damaged (Db27). These facts are relevant, however, because it was unconscionable for the boards to continue to rely on the services and disclosures of an entity that had deceived it (SAC ¶¶386, 388). Moreover, this is but one of the factors that Plaintiffs allege in support of their ICA §36(b) claim (SAC¶¶377-88). Finally, facts outside of the one-year damage period can be used as evidence to support Plaintiffs' allegations regarding JHIMS's excessive fees. See Siemers, 2006 WL 2355411 (App. N).

**POINT III**

**PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR RESTITUTION AND RESCISSION UNDER ICA §47(b)**

Plaintiffs allege that the variable annuity contract fees and charges deducted against their investments by JHUSA were unreasonable, and thus, in violation of ICA §26(f)(2)(A) (SAC, Count IX).

ICA §47(b)(1) and (2) states that contract terms that authorize unreasonable fees and charges are unenforceable. ICA §47(b)(3) states that ICA §47(b) does not

"preclude recovery against any person for unjust enrichment." Defendants claim that (1) Plaintiffs were not parties to a variable annuity contract; (2) terminated contracts cannot be rescinded and there is no statutory right to unjust enrichment; (3) Plaintiffs have not plead that they are invested in a variable annuity contract governed by the ICA; and (4) there is no private right of action under ICA§26.  Defendants, for the most part, err.

## A.     Plaintiffs Have A Private Right of Action for Equitable Relief

Plaintiffs are not suing under ICA§26.  They are advancing a claim under ICA §47(b), which recognizes a private right of action for equitable relief to remedy harm caused by the enforcement of a contract that violates the ICA or "any rule, regulation, or order thereunder."  In an amicus brief filed in the Second Circuit Court of Appeals, the SEC opined that it was "clear beyond reasonable dispute that private plaintiffs may seek rescission of a contract provision charging excessive fees" in violation of the ICA §26(f) through the vehicle of ICA §47(b).  (See App. R at 8-9).

The SEC's conclusion was based largely on the Supreme Court's ruling in Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 18 (1979) which held:

> [W]hen Congress declared in [section 215 of the Investment Advisers Act (IAA)] that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." Id. at 19.

The Court in <u>Transamerica</u> was interpreting the IAA §215 [24] which, unlike ICA §47, is silent as to the remedies available when a contract is void.  As a result, the <u>Transamerica</u> Court was left to infer Congress's intent to create a private right of action under IAA §215.  ICA §47(b), in contrast, specifically preserves a right to sue for rescission and unjust enrichment.

Defendants misread the SAC insofar as they argue that Plaintiffs assert that ICA §26 creates a cause of action (Db31-2).   Rather, Plaintiffs are suing under ICA §47(b), not ICA §26.  For this reason, the cases upon which Defendants rely, which address statutory provisions other than ICA §47, are irrelevant.

**B.      Plaintiffs Have Standing Under ICA §47(b) to Obtain Equitable Relief**

Plaintiffs have a claim for restitution under ICA §47(b) whether or not they are parties to a contract.  ICA §47(b)(b)(3) expressly reserves the right to sue for unjust enrichment. "Restitution for unjust enrichment is not provided by federal statute. Its availability is part of the federal common law relating to statutory violations." <u>C.H. Sanders Co., Inc. v. BHAP Housing Development Fund Co., Inc.</u>, 903 F.2d 114, 118 (2nd Cir. 1990); <u>see</u> <u>also</u>   <u>Archawski v. Hanioti</u>, 350 <u>U.S.</u> 532, 536 (1956) ("quasi-contractual rights [are] created to prevent unjust enrichment"). In the absence of clear language abrogating such a right, the right to restitution is preserved:

---

[24]   This provision, IAA §215(b), is substantively identical to ICA §47(b)(1). Both were enacted in 1940 to protecting investors from overreaching.

> [T]he comprehensiveness of [the court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946). Therefore, Plaintiffs' right to seek restitution is preserved notwithstanding the fact that ICA§47(b) does not expressly create such a right.

Moreover, Federal common law does not require that a plaintiff have an express contract with the defendant from whom unjust enrichment is sought (Db28). See Decker et al v. Independence Shares Corporation et al, 311 U.S. 282 (1940) (Securities Act action against third party). Accordingly:

> . . . under a theory of unjust enrichment; the contract is one that is implied in law, and 'not an actual contract at all.' ...    [T]o sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit . . ..(Internal citations omitted).

Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 998-99 (3d. Cir. 1987)

Plaintiffs may also advance their rescission claims under ICA §47(b)(2). They have a sufficient contractual interest to maintain this action because they are the real "parties-in-interest" to the GAC, as third-party beneficiaries. See Richard A. Lord, Williston on Contracts § 37:1 (4th ed.1993) ("the third party is treated no differently with respect to the enforcement of the promise than a party in traditional privity of contract"). The Plan participants are the individuals who invested their retirement

savings in the GAC and who were harmed by Defendants' misconduct. (MTD404-407). Defendants' argument that the trustees – who neither received a benefit nor paid an unreasonable fee under the GAC - are the only individuals who can seek the remedies available under ICA §47(b) lacks merit. The trustees sustained no injury and thus lack standing. For this reason, Hamilton v. Allen, 396 F.Supp.2d 545, 558 (ED. Pa 2005) is distinguishable because there plaintiff sought to rescind a contract between an advisor and a mutual fund, not a GAC to which plaintiff was a party.

## C.   Plaintiffs May Seek Relief on a Terminated Contract

Since a claim for restitution is not dependent upon the existence of a contract, the termination of the annuity contracts is of no consequence to a restitution claim. See Norman v. Salomon Smith Barney, Inc., 350 F. Supp.2d 382. In that case, which arose under the IAA, the Court held "[e]ven where these contracts have been 'terminated' through completion of performance or the action of one party, restitution continues to be available as a remedy to a wronged party." Id at 389. This reasoning applies with equal force under the ICA.

In addition, Plaintiffs may seek to rescind a terminated contract. Otherwise, a defaulting party would be free to terminate an unlawful contract in order to avoid retrospective relief. This is so because the rescission of a contract abrogates the contract from its inception and requires restoration of the status quo ante. Erie Telecommunication, Inc. v. City of Erie, 853 F.2d. 1084, 1092 (3d. Cir. 1988).

The cases upon which Defendants rely are common law cases or arise under different statutory schemes. <u>Katz v. Fifield Realty Corp.</u>, No. 07-61626-CIV, 2010 WL 3835009 (S.D. Fla. Sept. 29, 2010) (rescission action under the Interstate Land Sales Full Disclosure Act where the original contract was expressly terminated via execution of a subsequent contract into which it merged) and <u>Invengineering, Inc. v. Foregger Co.</u>, 184 F.Supp. 366 (D.N.J. 1960) (common law action for breach of contract in which the defaulting party sought to terminate a contract following receipt of a notice of default). Neither case implicated the purposes of the ICA or the IAA, and only the <u>Invengineering</u> decision involved restitution.

**D.     Plaintiffs Have Plead That They Are Invested in a Registered Separate Account**

Pursuant to ICA §26(f)(2) it is unlawful "for any registered separate account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract" unless the fees deducted under the contract are reasonable.[25] Defendants argue that Plaintiffs "point to no registered account in which they held an interest" (Db30).  This is inaccurate. See SAC §424. Moreover, Defendants have stated to the SEC that:

---

[25]  Defendants mischaracterize ICA §26(f)(2)'s reasonable fee provision as part of a test to determine whether a separate account is exempt from the requirements of ICA §26(f)(2).  ICA §26(f)(2) provides that, if a separate account funds variable insurance contracts it is exempt from the requirements of ICA §26(a), but is still subject to ICA §26(f)(2)'s reasonable fee requirements.

575607.1                                        -54-

Shares of JHT are not offered directly to the public.  The are only offered to . . . ("**Registered Separate Accounts**") of [JHUSA]...as the underlying investment vehicles for...variable annuity contracts ("**Variable Contracts**") issued by... [JHUSA].  The Variable Contracts are offered to qualified pension and retirement plans . . .." (Emphasis in the original).

(Decl. RL ¶9, Exh. H, pp. 4-5; SAC ¶424).

Santomenno was invested in two unregistered portfolios in JHT and in exchange was issued shares of JHT (SAC ¶358).  As shares of JHT are only offered to registered separate accounts, Santomenno had an interest in a registered separate account.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss should, in all respects, be denied.

Respectfully Submitted,

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
Attorneys for Plaintiffs

By: _____
Robert L. Lakind, Esq

Dated: January 21, 2011