UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| DANIELLE SANTOMENNO, et al., | ) |
| | ) |
| Plaintiffs, | ) Civ.A.2:10-cv-01655-WJM-MF |
| | ) |
| vs. | ) *Document electronically filed.* |
| | ) |
| John Hancock Life Insurance Company | ) |
| (U.S.A.), John Hancock Investment | ) ***ORAL ARGUMENT REQUESTED*** |
| Management Services, LLC, John | ) |
| Hancock Funds, LLC, and John | ) |
| Hancock Distributors, LLC, | ) |
| | ) |
| Defendants. | ) |

_____)

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Brian J. McMahon, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500

James O. Fleckner, Esq. (admitted *pro hac vice*)
Alison V. Douglass, Esq. (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Attorneys for John Hancock Life Insurance
Company (U.S.A.), John Hancock Investment
Management Services, LLC, John Hancock
Funds, LLC, and John Hancock Distributors,
LLC

# <u>TABLE OF CONTENTS</u>

INTRODUCTION..............................................................................................1

ARGUMENT .................................................................................................1

I.     Plaintiffs' ICA § 36(b) Claim Should Be Dismissed ....................................1

     A.     The Opposition Does Not Salvage ICA § 36(b) Standing Because
Plaintiffs Are Not Invested in any JHIMS-Advised Fund ...................1

     B.     The Opposition Does Not Establish that Plaintiffs Were
"Security Holders" with Standing to Sue under ICA § 36(b) ..............3

     C.     Plaintiffs Are Incorrect in Arguing that They May Sue on
Behalf of Funds in Which They Did Not Invest .................................4

     D.     Plaintiffs Concede that They Fail to State an ICA § 36(b) Claim .........6

     E.     The 2007 SEC Settlement Is Legally and Factually Irrelevant ............6

II.     Plaintiffs' ICA § 47(b) Claim Should Be Dismissed ....................................7

     A.     Plaintiffs Improperly Rely on an Unpled Common Law
Unjust Enrichment Theory .................................................................7

     B.     Plaintiffs' Authorities Do Not Establish a Right under
ICA § 47(b) for Non-Contractholders .................................................8

     C.     Plaintiffs Cite No Case Finding a Private Right of
Action under ICA § 47(b) ..................................................................10

III.     Plaintiffs' ERISA Claims Should Be Dismissed ..........................................11

     A.     Plaintiffs' Arguments Do Not Obviate the Need for Pre-Suit Demand
on the Trustees Who Entered the Challenged Contracts......................11

     B.     JHUSA Is Not a Relevant Fiduciary ...................................................14

           1.     Plaintiffs' Failure to Plead any Relevant Fiduciary Status Can
Be Determined on a Motion to Dismiss ...................................14

2.  Plaintiffs Do Not Rectify Their Failure to Plead
    that JHUSA Is a Fiduciary by Controlling Assets ..................... 14

    a.   Plaintiffs Misstate and Misapply *Srein* ........................... 14

    b.   Plaintiffs' Authorities Do Not Impose Fiduciary Status
         Simply by Maintaining Separate Accounts ..................... 16

    c.   Plaintiffs' New Arguments that JHUSA Could Alter
         Fees Is Not Relevant to the Pleaded Claims.................... 17

    d.   Plaintiffs Concede that Providing Investment
         Options Does Not Create Fiduciary Status...................... 18

3.  Plaintiffs Do Not Rectify Their Failure to Plead that
    JHUSA Is an Investment Advice Fiduciary .............................. 22

C.  Plaintiffs Cannot Establish that ERISA Relief Is
    Available from JHD, JHF, and JHIMS .............................................. 24

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Adkins v. John Hancock Mut. Life Ins. Co.*,
   957 F. Supp. 211 (M.D. Fla. 1997) ....................................................... 16-17

*Alexander v. Sandoval*,
   532 U.S. 275 (2001).................................................................................. 10

*Barrett v. Van Kampen Merritt, Inc.*,
   No. 93-0366, 1993 WL 95382 (N.D. Ill. Mar. 30, 1993) ................................. 5

*Batra v. Investors Research Corp.*,
   No. 89-0528, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991) ........................... 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................... 5, 14, 20

*Beye v. Horizon Blue Cross Blue Shield of N.J.*,
   568 F. Supp. 2d 556 (D.N.J. 2008) ............................................................. 14

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ...................................................................... 14

*Briglia v. Horizon Healthcare Servs.*,
   No. 03-1685, 2005 WL 1140687 (D.N.J. May 13, 2005) .............................. 14

*Brink v. DaLesio*,
   667 F.2d 420 (4th Cir. 1981) ...................................................................... 13

*Briscoe v. Fine*,
   444 F.3d 478 (6th Cir. 2006) ...................................................................... 15

*Burlington N. R.R. Co. v Hyundai Merch. Marine Co.*,
   63 F.3d 1227 (3d Cir. 1995) ....................................................................... 22

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) .................................................................... 18

*Charters v. John Hancock Life Ins. Co.*,
   583 F. Supp. 2d 189 (D. Mass. 2008)........................................9, 17-18, 21, 22

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ........................................................................ 19

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) .................................................................... 11, 12

*Coar v. Kazimir*,
990 F.2d 1413 (3d Cir. 1993) ..................................................................... 12

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ........................................................................ 18

*Curran v. Principal Mgmt. Corp.*,
No. 09-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010) ............................ 3

*Curran v. Principal Mgmt. Corp.*,
No. 09-0433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) .............................. 3

*Darrick Enters. v. Mitsubishi Motors Corp.*,
No. 05-4359, 2007 WL 2893366 (D.N.J. Sept. 28, 2007)..................... 6, 10, 24

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)................................................................................. 12

*Forsythe v. Sun Life Fin., Inc.*,
417 F. Supp. 2d 100 (D. Mass. 2006)........................................................... 2

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...................................................................... 17

*F.W. Webb Co. v. State Street Bank & Trust Co.*,
No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)..................... 19, 21

*Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
No. 08-6160, 2009 WL 3233427 (D.N.J. Sept. 30, 2009)................................ 14

*Goldenberg v. Indel, Inc.*,
No. 09-05202, 2010 WL 3732974
(D.N.J. Sept. 17, 2010)..........................................................4, 6-7, 14, 21, 23

*Haddock v. Nationwide Fin. Servs.*,
419 F. Supp. 2d 156 (D. Conn. 2006) ................................................... 9, 20, 21

iv

*Hailey v. AGL Res., Inc.*,
   No. 07-2352, 2008 WL 482331 (D.N.J. Feb. 19, 2008)...............................6, 24

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005)............................................................... 8

*Harrow v. Prudential Ins. Co. of Am.*,
   279 F.3d 244 (3d Cir. 2002) ........................................................................ 12

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ........................................................14, 19, 21, 24

*In re AEP ERISA Litig.*,
   327 F. Supp. 2d 812 (S.D. Ohio 2004) ......................................................... 11

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   No. 04-4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005)............................. 5

*In re Blackrock Mut. Funds Fee Litig.*,
   No. 04-0164, 2006 WL 4683167 (W.D. Pa. Mar. 29, 2006) ............................ 2

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................ 2

*In re Ins. Brokerage Antitrust Litig.*,
   Nos. 04-5184, 05-1079, 2008 WL 141498 (D.N.J. Jan. 14, 2008) ................. 17

*In re Lord Abbettt Mut. Funds Fee Litig.*,
   407 F. Supp. 2d 616 (D.N.J. 2005) ................................................................ 2

*In re Mut. Funds Inv. Litig.*,
   519 F. Supp. 2d 580 (D. Md. 2007) ............................................................4-5

*In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*,
   57 F.3d 1255 (3d Cir. 1995) ........................................................................ 15

*John Hancock Mut. Ins. Co. v. Harris Trust & Sav. Bank*,
   510 U.S. 86 (1993) ................................................................................16, 19

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970) .......................................................................... 5

*Kayes v. Pac. Lumber*,
    51 F.3d 1449 (9th Cir. 1995) ........................................................................ 11

*Keeley v. Loomis Fargo & Co.*,
    183 F.3d 257 (3d Cir. 1999) ......................................................................... 9

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993).................................................................................... 15

*Midwest Cmty. Health Serv., Inc. v. Am. United Life Ins. Co.*,
    255 F.3d 374 (7th Cir. 2001) ...............................................................16, 21

*Moeckel v. Caremark Rx Inc.*,
    385 F. Supp. 2d 668 (M.D. Tenn. 2005)...................................................... 11

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995) ......................................................................... 12

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005)........................................................ 5

*N.L.R.B. v. Long Island Coll. Hosp.*,
    20 F.3d 76 (2d Cir. 1994) ........................................................................... 23

*Orentreich v. Prudential Ins. Co. of Am.*,
    713 N.Y.S.2d 330 (N.Y.A.D. 2000)............................................................. 9

*Pain & Surgery Ambulatory Surgical Ctr. v. Liberty Mut. Ins. Co.*,
    No. 06-1501, 2007 WL 1814083 (D.N.J. June 19, 2007) ........................7-8, 18

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979).................................................................................... 22

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..............................................................................14, 16

*Penneco Pipeline Corp. v. Dominion Transmission, Inc.*,
    Nos. 05-49, 05-537, 2007 WL 1847391 (E.D. Pa. June 25, 2007) ................. 22

*Pension Fund-Mid Jersey Trucking Ind.-Local 701 v. Omni Funding Grp.*,
    731 F. Supp. 161 (D.N.J. 1990).................................................................. 19

*Phones Plus, Inc. v. Hartford Fin. Servs. Group, Inc.*,
    No. 06-1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007) ................... 9, 20-21

*Procacci v. Drexel Burnham Lambert, Inc.*,
    No. 89-0555, 1989 WL 121984 (E.D. Pa. Oct. 16, 1989) ............................... 19

*Prudential Ins. Co. v. Sec. & Exch. Comm'n*,
    326 F.2d 383 (3d Cir. 1964) ........................................................................ 4

*Rahm v. Halpin*,
    566 F.3d 286 (2d Cir. 2009) ........................................................................ 9

*Renfro v. Unisys Corp.*,
    No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) ....................... 18, 19

*Ricke v. Armco, Inc.*,
    882 F. Supp. 896 (D. Minn. 1995) ............................................................. 12

*Ruppert v. Principal Life Ins. Co.*,
    No. 07-344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) ................... 9, 20, 23

*Shrader v. Legg Mason Wood Walker, Inc.*,
    No. 93-3967, 1993 WL 532911 (E.D. Pa. Dec. 20, 1993) ....................... 8-9, 13

*Siemers v. Wells Fargo & Co.*,
    No. 05-04518, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ..................... 3, 7

*Siemers v. Wells Fargo & Co.*,
    No. 05-04518, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ......................... 5

*Siemers v. Wells Fargo & Co.*,
    No. 05-04518, 2007 WL 760750 (N.D. Cal. Mar. 9, 2007) ........................... 3

*Slaughter v. Swicegood*,
    591 S.E.2d 577 (N.C. App. Ct. 2004).......................................................... 13

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008)...................................................................................... 8

*Srein v. Frankford Trust Co.*,
    323 F.3d 214 (3d Cir. 2003) ...................................................... 15, 16, 18, 19

*Stanton v. Shearson Lehman/Am. Express*,
    631 F. Supp. 100 (N.D. Ga. 1986) ................................................................ 19

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) ........................................................... 5-6

*Suppan v. Dadonna*,
    203 F.3d 228 (3d Cir. 2000) ..................................................................... 21-22

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ................................................................................... 10

*Trs. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
    783 F. Supp. 899 (D.N.J. 1992) .................................................................. 17

*Woods v. Southern Co.*,
    396 F. Supp. 1351, 1365 (N.D. Ga. 2005) .................................................... 14

*Wright v. Oregon Metallurgical Corp.*,
    360 F.2d 1090 (9th Cir. 2004) .................................................................... 14

*Zang v. Paychex, Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) .............................................. 14, 19, 21

*Zavolta v. Lord, Abbett & Co.*,
    No. 08-04546, 2010 WL 686546 (D.N.J. Feb. 24,  2010) .......................... 11-12

## STATUTES, REGULATIONS AND RULES

15 U.S.C. § 80a-3(c)(11) (ICA § 3(c)(11)) ........................................................ 4

15 U.S.C. § 80a-35(b) (ICA § 36(b)) ................................................... 1, 2, 3, 4, 6

15 U.S.C. § 80a-46(b) (ICA § 47(b)) ...........................................................7, 8, 10

15 U.S.C. § 80a-46(b)(1) (ICA § 47(b)(1)) ........................................................ 9

15 U.S.C. § 80b-2(a)(11) (IAA § 202(a)(11)).................................................... 23

15 U.S.C. § 80b-15 (IAA § 215)....................................................................... 2

29 U.S.C. § 1002(17) (ERISA § 3(17)) ............................................................ 16

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) ................................................ 16

29 U.S.C. § 1002(21)(A)(ii) (ERISA § 3(21)(A)(ii)) ......................................... 23

29 U.S.C. § 1101(c)(5) (ERISA § 401(c)(5)) .................................................... 16

29 U.S.C. § 1132 (ERISA § 502) ...................................................................... 12

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) .................................................... 24

29 C.F.R. § 2510.3-21(c) .................................................................................. 22

29 C.F.R. § 2510.3-21(c)(1)(ii) ........................................................................ 23

FED. R. CIV. P. 12(b)(6).............................................................................. 14, 21

FED. R. CIV. P. 23.1 .......................................................................................2, 11

## OTHER AUTHORITIES

DOL Adv. Op. 97-16A (May 22, 1997) .............................................................. 19

DOL Adv. Op. 2005-22A, 2005 WL 3751637 (Dec. 7, 2005) ............................ 16

*Emp. Benefit Plans,* SEC Release No. 33-6188, 1980 WL 29482
(Feb. 1, 1980) .................................................................................................... 4

75 Fed. Reg. 65263 (Oct. 22, 2010) .................................................................. 22

76 Fed. Reg. 2142 (Jan. 12, 2011) .................................................................... 22

*In the Matter of John Hancock Inv. Mgmt. Servs., LLC,* SEC Release No.
34-55946, 2007 WL 1814127 (June 25, 2007) ................................................... 7

*Owens-Illinois, Inc.,* SEC No-Action Letter, 1995 WL 693324 (June 24, 1994) .... 4

Restatement (Second) of Trusts, § 223(2)(c) ..................................................... 13

Restatement (Second) of Trusts, § 223, cmt. d .................................................. 13

Restatement (Second) of Trusts, § 282(1) .......................................................... 11

5 Scott & Ascher on Trusts, § 28.2 (2008) ........................................................ 13

## INTRODUCTION

Where are the trustees?  The Opposition[1] concedes that the Plans' trustees selected JHUSA to provide services to the Plans and entered into the challenged Contracts.  Plaintiffs do not contest that the Contracts required the trustees alone to determine the investments available to Plaintiffs, and allowed the trustees to terminate the Contracts at any time, as they ultimately did.  Putting aside conclusory allegations and arguments, Plaintiffs allege no facts that, even if true, would demonstrate that the trustees allocated to JHUSA control over Plan assets, or that JHUSA wrested such control from them.  On these undisputed facts, the SAC should be dismissed.

## ARGUMENT

### I.  Plaintiffs' ICA § 36(b) Claim Should Be Dismissed.

#### A.  The Opposition Does Not Salvage ICA § 36(b) Standing Because Plaintiffs Are Not Invested in any JHIMS-Advised Fund.

Plaintiffs concede that they have no current interest in the funds on whose behalf they have sued.[2]  This undisputed fact is fatal to their ICA § 36(b) claim.

---

[1] "Opposition" or "Opp." refers to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the Complaint [Docket # 47].  Defined terms are taken from Defendants' Opening Brief ("Mem.") [Docket # 46-1].

[2] Plaintiffs argue that they are suing on behalf of the JHF and JHII trusts, not any fund within those trusts.  Opp. at 39.  Such distinction cannot be made, as described *infra* § I.C, but is in any event irrelevant for purposes of this argument and the next, as Plaintiffs are not, and never were, security holders under ICA § 36(b) for either the funds or the trusts.

The Opposition first sets up and knocks down a straw man.  Contrary to Opp. at 42, Defendants do not contend that FED. R. CIV. P. 23.1 applies here.

Plaintiffs next suggest that principles applied under a different statute trump the need for continuous ownership under ICA § 36(b).  Opp. at 42-44.  They are incorrect.  While Section 215 of the statute they reference, the Investment Advisors Act of 1940 (IAA), permits direct causes of action, Plaintiffs here sue derivatively. SAC at 163, ¶¶ 15-16 (action brought derivatively).  Indeed, "a Section 36(b) claim can be maintained only as a derivative (as opposed to a direct) claim."  *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 632 (D.N.J. 2005) (Martini, J.), *partially vacated on other grounds*, 463 F. Supp. 2d 505.

The distinction between a direct and derivative claim is dispositive.  As this Court has observed: "any recovery obtained in a § 36(b) action will go to the company rather than the plaintiff."  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 468 (D.N.J. 2005) (Martini, J.) (internal citations and quotes omitted).  As such, "[p]resent shareholders find the value of their shares proportionately increased by a damage recovery by the fund; past shareholders, who have become present non-shareholders, do not."  *In re Blackrock Mut. Funds Fee Litig.*, No. 04 Civ. 164, 2006 WL 4683167, at *8 (W.D. Pa. Mar. 29, 2006) (dismissing complaint) (quoting *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 n.15 (D. Mass. 2006)).  Because Plaintiffs here have no interest that could

"proportionately increase" by a recovery to the fund, they cannot sue.  Mem. at 21-22.[3]

### B.    The Opposition Does Not Establish that Plaintiffs Were "Security Holders" with Standing To Sue under ICA § 36(b).

Plaintiffs also concede they never held shares of the challenged funds.  Opp. at 39.  Instead, they argue that a "security holder" under ICA § 36(b) does not need to hold securities.  They are wrong on this point as well.

The decision upon which Plaintiffs substantially rely, *Curran v. Principal Management Corp.*, No. 09-0433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), has been vacated.  On January 24, 2011, the *Curran* court held that its prior "interpretation" of ICA § 36(b) as broadly defining "security holder" to include anyone with a "financial interest" in a fund – the interpretation Plaintiffs advocate here – "was clearly erroneous."  No. 09-0433, 2011 WL 223872, at *1 (S.D. Iowa Jan. 24, 2011) (referring to 2010 WL 2889752, at *4-6).  It therefore dismissed the § 36(b) claims, holding explicitly that indirect owners of funds were not security holders entitled to bring suit under § 36(b).  2011 WL 223872, at *4.

---

[3] In addition, contrary to Plaintiffs' suggestion, Opp. at 43, *Siemers v. Wells Fargo & Co.*, did not focus exclusively on the status of a plaintiff when commencing litigation.  *Siemers* dismissed claims where a plaintiff did not hold funds "at the time he filed this action *or now*," No. 05-04518, 2006 WL 2355411, at *21 (N.D. Cal. Aug. 14, 2006) (emphasis in original), and only allowed claims for a fund that plaintiff "continues to hold" because, "[f]or Section 36(b) standing purposes, it is important that the fund be *continuously owned during the pendency of the action*." No. 05-04518, 2007 WL 760750, at *20-21 (N.D. Cal. Mar. 9, 2007) (emphasis added).

Plaintiffs' other authorities, Opp. at 40-42, do not address whether interests in retirement plans confer security holder status under ICA § 36(b) for securities held within separate accounts covered by a variable annuity contract issued to a trustee to fund the plans.[4]  This disposes entirely of Plaintiffs' ICA § 36(b) claim.[5]

### C.  Plaintiffs Are Incorrect in Arguing that They May Sue on Behalf of Funds in Which They Did Not Invest.

Plaintiffs contend that they can sue on behalf of funds in which they were never invested based principally on a decision, *Batra v. Investors Research Corp.*, No. 89-0528, 1992 WL 278688, at *1-3 (W.D. Mo. Oct. 4, 1991), that their own cases do not follow.  *See, e.g.*, *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d 580,

---

[4] *Prudential Ins. Co. v. Sec. & Exch. Comm'n*, 326 F.2d 383 (3d Cir. 1964), only addressed whether an account funding a variable annuity contract was an investment company.  *Goldenberg v. Indel, Inc.*, No. 09-5202 (JBS/AMD), 2010 WL 3732974 (D.N.J. Sept. 17, 2010), and SEC Release No. 33-6188, 1980 WL 29482, at *2 (Feb. 1, 1980), addressed whether interests in retirement plans are securities; an interest that the SEC distinguished from a plan's interest in other investments.  1980 WL 29482, at *2.  *Owens-Illinois, Inc.*, SEC No-Action Letter, 1995 WL 693324, at *10 (Nov. 4, 1994), addressed whether 401(k) plan beneficiaries are security holders of group trusts established to hold plan assets.  *Owens-Illinois* also refutes Plaintiffs' argument, Opp. at 41, that because both the Securities Act of 1933 and the Securities and Exchange Act of 1934 exempt most 401(k) retirement plans from their definition of "security" but the ICA does not, then, *a fortiori*, "Plaintiffs' [sic] are security holders under the ICA."  *Owens-Illinois* describes ICA § 3(c)(11), which, in fact, provides a parallel ICA exemption for 401(k) plans.  1995 WL 693324, at *8.  *See also* Mem. at 30-31 (citing ICA § 3(c)(11)).

[5] Plaintiffs' chart, Opp. at 5, is misleading in a number of respects; most notably, because it omits the Plans' trustees who entered into (and have subsequently terminated) the Contracts, and who had the sole authority to determine the accounts to be made available thereunder.  Mem. at 8-10 (citing Contracts).

590 n.12 (D. Md. 2007) (declining to follow *Batra*).   Other courts have also

rejected *Batra*.  *See, e.g.*, *Siemers v. Wells Fargo & Co.*, No. 05-04518, 2006 WL

3041090, at *7 n.2 (N.D. Cal. Oct. 24, 2006) ("disagrees with . . . *Batra*"); *In re*

*AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2005 WL

2677753, at *10 (S.D.N.Y. Oct. 19, 2005) (declining to follow *Batra*).[6]

Plaintiffs' attempt to distinguish a case directly on point, *Stegall v. Ladner*,

394 F. Supp. 2d 358 (D. Mass. 2005), fails.  They argue that, unlike *Stegall*, here

they "allege they were security holders" in the trusts, not the underlying funds.

Opp. at 46.  *Stegall*, in fact, addressed – and rejected – that very argument.  Mem.

at 23 (quoting *Stegall*).  Just as in *Stegall*, Plaintiffs here cannot use the broader

JHT and JHFII structure "to confer standing across all funds within" those trusts,

regardless of whether Plaintiffs characterize their claim as one on behalf of the

---

[6] In addition to rejecting its holding outright, courts also have distinguished *Batra* because the management fees there were assessed uniformly for the entire trust, rather than separately for each portfolio.  *See In re AllianceBernstein*, 2005 WL 2677753, at *10 (explaining *Batra*).  Plaintiffs here allege that each fund pays a different aggregate fee, and they challenge the fees and services provided to the "funds/portfolios," not the trusts.  SAC at 164, ¶¶ 18-19; Tables I and II.

Plaintiffs' other authorities are also of no avail.  *Mutchka v. Harris* expressly refused to decide at the pleading stage whether plaintiffs could sue on behalf of other funds.  373 F. Supp. 2d 1021, 1024 (C.D. Cal. 2005).  But in the Third Circuit it is appropriate to determine on a motion to dismiss whether a plaintiff has standing to sue on behalf of funds he does not own.  *See Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970).  *Barrett v. Van Kampen Merritt, Inc.* is inconsistent with the more recent authorities, and addressed standing allegations under the pre-*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), pleading standard. No. 93-0366, 1993 WL 95382, at *1-3 (N.D. Ill. Mar. 30, 1993).

trusts or the funds.  394 F. Supp. 2d at 362.

### D.    Plaintiffs Concede that They Fail to State An ICA § 36(b) Claim.

Plaintiffs also doom their ICA § 36(b) claim by abandoning the central

pleaded assertion that JHIMS "was providing no investment advisory services."

SAC at 102, ¶ 385.[7]  Instead, they now argue that JHIMS's services were

"*insignificant* in comparison to those of the subadvisors."  Opp. at 48 (emphasis

added).  Having abandoned their claim as pleaded, the SAC should be dismissed.

*See, e.g.*, *Hailey v. AGL Res., Inc.*, No. 07-2352 (JLL), 2008 WL 482331, at *5

n.12 (D.N.J. Feb. 19, 2008) (plaintiff's failure to oppose portion of defendant's

motion to dismiss a proper ground to dismiss); *Darrick Enters. v. Mitsubishi*

*Motors Corp.*, No. 05-4359 (NLH), 2007 WL 2893366, at *20 (D.N.J. Sept. 28,

2007) (where defendant's other arguments "vigorously opposed," court may treat

unaddressed argument as unopposed and dismiss on that basis).[8]

### E.    The 2007 SEC Settlement Is Legally and Factually Irrelevant.

Plaintiffs' hollow argument, Opp. at 49, as to the relevance of a 2007 SEC

settlement is undercut by their own case, *Goldenberg*, that dismissed claims, like

here, based on unrelated activities occurring years before the challenged conduct.

---

[7] *See also, e.g.*, SAC at 101, ¶ 381; 102, ¶ 384; 103, ¶ 386; 116, ¶ 435; 145-46, ¶ 3; 164-65, ¶¶ 18-20; and 169, ¶ 9.

[8] Plaintiffs also protest that their ICA § 36(b) allegations do not challenge common, industry-wide practices, Opp. at 47, but they point to no fact separating their allegations from those common in any other manager-of-managers structure.

2010 WL 3732974, at *17.[9]  Further, as a practical matter, Plaintiffs elevate the SEC settlement to a corporate death sentence for an investment adviser – imposing a penalty far beyond that actually imposed by the regulator – and, if their view was adopted, it would chill advisers from future negotiated settlements.[10]

## II.   Plaintiffs' ICA § 47(b) Claim Should Be Dismissed.

Plaintiffs cannot resurrect their other ICA claim.  They admit that the Contracts were terminated, and that they are not, and never were, contractholders.  Opp. at 51-53.  These concessions are dispositive.  Mem. at 27-30.

### A.   Plaintiffs Improperly Rely on an Unpled Common Law Unjust Enrichment Theory.

Unable to defend their ICA § 47(b) claim as pleaded, Plaintiffs now assert a new claim for restitution under a *common law* theory of unjust enrichment.  Opp. at 51.  Plaintiffs concede that this claim is not created by statute:  "ICA § 47(b) does not expressly create [a right for unjust enrichment]."  Opp. at 52.  However, Plaintiffs *do not plead a common law claim for unjust enrichment in the SAC*.  They may not assert any such new claim in an opposition brief.  *Pain & Surgery Ambulatory Surgical Ctr. v. Liberty Mut. Ins. Co.,* No. 06-1501 (WJM), 2007 WL

_____

[9] Plaintiffs' other case, *Siemers*, Opp. at 49, allowed that fee data prior to the statutory period may be a relevant comparator for data from the relevant period. 2006 WL 2355411, at *19.  Here, however, Plaintiffs attempt to draw no mathematical or relative comparison from the unrelated SEC settlement.

[10] Moreover, the SEC settlement expressly states that JHIMS did not admit to the SEC findings.  *In the Matter of John Hancock Inv. Mgmt. Servs., LLC,* SEC Release No. 34-55946, 2007 WL 1814127, at *2 (June 25, 2007).

1814083, at *3 n.1 (D.N.J. June 19, 2007) (declining to consider claim first asserted in opposition brief).

**B.    Plaintiffs' Authorities Do Not Establish a Right under ICA § 47(b) for Non-Contractholders.**

Nor does the Opposition salvage the ICA § 47(b) claim actually pleaded in the SAC.  Plaintiffs cannot circumvent the holding of *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005), that nonparties to a contract "do not have standing to pursue [an ICA § 47(b) claim]."[11]  The Opposition incorrectly posits that the actual parties to the Contracts – the Plan trustees – "sustained no injury and thus lack standing."  Opp. at 53.  It grievously errs.  In analyzing Article III standing, all nine Supreme Court justices disagreed with Plaintiffs' position:

> Trustees hold legal title to the assets in the trust estate and have an independent fiduciary obligation to sue to preserve those assets.  The trustee's discharge of its legal obligation is an independent, personal benefit that supports the trustee's standing to sue in federal court.

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287, 304 n.2 (2008) (quotation from Roberts, C.J., dissent).[12]

---

[11] The Opposition argues that *Hamilton* is distinguishable because "there plaintiff sought to rescind a contract between an advisor and a mutual fund, not a GAC to which plaintiff was a party."  Opp. at 53.  But Plaintiffs are not parties to the Contracts.  *See* Mem. at 12 (quoting Contracts).  Moreover, their admission that only parties to an advisory contract may rescind such contract independently warrants dismissal of Count VIII's claim under ICA § 47(b).  *See, e.g.*, SAC at 166, ¶ 22 (seeking rescission of advisory contracts under ICA § 47(b)).

[12] *See also Shrader v. Legg Mason Wood Walker Inc.*, No. 93-3967, 1993 WL 532911, at *6 (E.D. Pa. Dec. 20, 1993) ("it is only the trustee who can bring a

Plaintiffs' argument also fails as a matter of statutory construction.  ICA §

47(b)(1) expressly states that contracts are unenforceable by nonparties in only one

specific circumstance, where the nonparty "acquired a right under the contract with

knowledge of the facts by reason of which the making or performance violated or

would violate any provision of this subchapter or of any rule, regulation, or order

thereunder."  ICA § 47(b)(1).  "Under the well-established principle of statutory

construction, *expressio unius est exclusio alterius*, the legislature's explicit

expression of one thing . . . indicates its intention to exclude other[s]."  *Keeley v.*

*Loomis Fargo & Co.*, 183 F.3d 257, 265-66 (3d Cir. 1999).  Because Plaintiffs

have not pleaded, and cannot plead, that they fall within the specific statutory

exception for nonparties, ICA § 47(b) affords them no relief.[13]

---

cause of action for damage to the trust property"); *Orentreich v. Prudential Ins. Co. of Am.*, 713 N.Y.S. 2d 330, 331 (N.Y.A.D. 2000) (affirming dismissal of suit regarding insurance policies because "only the trustee . . . may seek their rescission").  Trustee standing applies equally under ERISA, where plan trustees hold any claim their plans possess.  *See, e.g., Rahm v. Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (plan's claim against another party is a plan asset); Mem. at 34-35 n.24.  Plaintiffs' own ERISA cases illustrate the point:  they were brought by plan trustees.  Opp. at 24-26 (relying on *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156 (D. Conn. 2006), *Phones Plus Inc. v. Hartford Fin. Servs. Group, Inc.*, No. 06-1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007), *Ruppert v. Principal Life Ins. Co.*, No. 07-344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009), and *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008)).

[13] Plaintiffs' party-in-interest argument, Opp. at 52, is unavailing for the additional reason that they do not assert any right to enforce a contract for their benefit as against a third party, but instead argue for rescission and restitution.

### C.    Plaintiffs Cite No Case Finding a <u>Private Right of Action under ICA § 47(b).</u>

Even if Plaintiffs were able to seek redress under ICA § 47(b) (which they cannot), and if they were the proper parties to do so (which they are not), Plaintiffs have not shown that there is a private right of action under § 47(b).  In fact, there is not.  Plaintiffs' only caselaw support for their position, *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979), did not address rights of action under ICA § 47(b), or the ICA at all.  In addition, it was decided prior to the Supreme Court establishing the modern test for statutory private rights of action in *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  Moreover, Plaintiffs identify no court that has followed the amicus brief they cite at Opp. 50.

Finally, no private right of action under § 47(b) would lie here in any event because the SAC points to no registered separate account in which Plaintiffs held an interest.  The single allegation cited in the Opposition (at 54-55) merely states that shares of JHT funds are "offered only to registered separate accounts."  SAC at 113, ¶ 424.  The Opposition does not, and cannot, identify the public registration of the specific separate accounts funding the Contracts.  *Compare* Mem. at 13-14 n.13 (no public record of the separate accounts being registered).[14]

---

[14] Plaintiffs also do not contest their inability to assert claims on behalf of individual variable annuity holders as argued at Mem. at 28-29 n.18, so these claims should in any event be stricken.  *Darrick Enters.*, 2007 WL 2893366, at *20 (court may treat unaddressed argument as unopposed and dismiss on that basis).

**III.    Plaintiffs' ERISA Claims Should Be Dismissed.**

**A.    Plaintiffs' Arguments Do Not Obviate the Need for Pre-Suit Demand on the Trustees Who Entered the Challenged Contracts.**

The Opposition provides no basis for excusing Plaintiffs' failure to allege the required pre-suit demand on their Plans' trustees.

*First*, Plaintiffs' cases noting the obvious inapplicability of FED. R. CIV. P. 23.1[15] to ERISA claims raise the same straw man as discussed *supra*, § I.A. Defendants do not urge dismissal based on Rule 23.1.  Rather, Defendants rely on the structure of ERISA's fiduciary provisions and trust law principles underlying ERISA.  *See* Mem at 32-36.  Indeed, this Court – observing that "[i]n expounding on ERISA law, courts often seek guidance from the common law of trusts" – has recognized that ERISA plans are subject to the general trust law rule that "requires the trustee, rather than the beneficiary, to bring suit . . . against third parties." *Zavolta v. Lord, Abbett & Co.*, No. 08-04546 (WJM), 2010 WL 686546, at *5 (D.N.J. Feb. 24, 2010) (relying on Restatement § 282(1)).

*Second*, Plaintiffs incorrectly assert that application of this trust law rule would impermissibly "tamper with the [ERISA] enforcement scheme" because ERISA § 502(a) does not expressly refer to the rule.  Opp. at 14.  But courts

---

[15] *See* Opp. at 14 (citing *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006); *Kayes v. Pac. Lumber*, 51 F.3d 1449 (9th Cir. 1995); *Moeckel v. Caremark Rx, Inc.*, 385 F. Supp. 2d 668 (M.D. Tenn. 2005); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812 (S.D. Ohio 2004)).

frequently rely on trust principles and the statutory structure in interpreting ERISA's enforcement provisions as incorporating rules not expressly set forth in the text, as this Court did in *Zavolta*. *See also*, *e.g.*, *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (requiring exhaustion of administrative claims procedures before filing suit to recover benefits, even though statute does not mention exhaustion).[16]  To do otherwise would ignore ERISA's trust law roots and the need to read such a complex and reticulated statute as a whole.

*Third*, Plaintiffs are similarly misguided in contending that requiring a pre-suit demand would frustrate ERISA's purpose of protecting plan participants. Opp. at 14.  To the contrary, the requirement *furthers* the interests of plans and participants by allocating decisions concerning the trust's claims to the trustee, who has significant authority (and potential liability) to the plan, as well as the

---

[16] Other examples include: *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) (requiring participants challenging employer stock investment to overcome a presumption of prudence); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (requiring plaintiff challenging benefit denial to show abuse of discretion); *Coan*, 457 F.3d at 259-61 (requiring participant bringing derivative action to show he adequately represents interests of other participants); *Coar v. Kazimir*, 990 F.2d 1413, 1423 (3d Cir. 1993) (authorizing offset against breaching fiduciary's plan benefits, because "Congress stated that it wanted pre-ERISA trust law applied to ERISA's remedial provisions").  *See generally Ricke v. Armco, Inc.*, 882 F. Supp. 896, 901 (D. Minn. 1995) ("federal common law *defines* the scope of an individual's right to sue pursuant to . . . [ERISA] § 502") (emphasis in original), *aff'd on other grounds*, 92 F.3d 720 (8th Cir. 1996).

broader perspective and experience necessary to represent the interests of the plan as a whole, rather than the narrow view of specific participants.  *See* Mem. at 35.[17]

*Fourth*, Plaintiffs wrongly suggest that the trust law requirement is inapplicable to alleged fiduciary breaches.  Opp. at 13, 14.  Plaintiffs point to no authorities finding such an exception.  Indeed, courts routinely hold the opposite.[18] Notably, for example, under the common law of trusts it is the trustee's responsibility to bring actions on behalf of the trust against a former trustee who has breached fiduciary duties.  *See* Restatement § 223(2)(c), and comment *d*.  The underlying rationale for the rule – *i.e.*, the trustee's fundamental authority and control over the trust's assets, including its claims – is present regardless of whether the plan's claim against the third party is for breach of fiduciary duty.

---

[17] Of course, the pre-suit requirement does not apply to actions brought against the trustee himself, as the trustee is not a "third party" to the trust.  Further, there is an exception, for obvious reasons, where the defendant is alleged to have participated in a breach of trust by the trustee.  *See* 5 Scott & Ascher on Trusts § 28.2, at 1942 (2008).  This exception is irrelevant here where Plaintiffs allege no breach by their Plans' trustees.  As such, their reliance on *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981), is misplaced because *Brink* was brought against the plan trustee and parties who participated in his breach.

[18] *See, e.g.*, *Shrader*, 1993 WL 532911, at *4-5 (dismissing fiduciary breach claim brought by beneficiary); *Slaughter v. Swicegood*, 591 S.E.2d 577, 582-84 (N.C. App. Ct. 2004) (reversing decision that found that beneficiaries, rather than trustee, could bring fiduciary breach claim on behalf of trust) (collecting cases).

### B.   <u>JHUSA Is Not a Relevant Fiduciary.</u>

The Opposition also fails to salvage the ERISA claims even assuming

Plaintiffs can bring them (which they cannot).

> **1.   Plaintiffs' Failure to Plead any Relevant Fiduciary Status Can Be Determined on a Motion to Dismiss.**

Contrary to Opp. at 14-16, courts routinely decide fiduciary status on a Rule

12(b)(6) motion, as the Supreme Court did in a decision cited at Mem. 37 that

Plaintiffs fail to address, *Pegram v. Herdrich*, 530 U.S. 211, 231-34 (2000).[19]

> **2.   Plaintiffs Do Not Rectify Their Failure to Plead that JHUSA Is a Fiduciary by Controlling Assets.**

>> **a.   Plaintiffs Misstate and Misapply *Srein*.**

The Opposition begins at 18-19 by misstating Third Circuit law.

---

[19] *See also*, *e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming dismissal); *Wright v. Oregon Metallurgical Corp.*, 360 F.2d 1090, 1101-02 (9th Cir. 2004) (same) (citing Supreme Court cases); *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 274 (W.D.N.Y. 2010) (dismissing claims for failure to adequately plead fiduciary status), *appeal withdrawn*, No. 10-3556 (2d Cir. Dec. 29, 2010); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 08-6160 (JAG), 2009 WL 3233427, at *6 (D.N.J. Sept. 30, 2009) (formulaic recitation of status insufficient under *Twombly*); *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033 (FLW), 2005 WL 1140687, at *9-10 (D.N.J. May 13, 2005) (dismissing complaint). These decisions alone distinguish Plaintiffs' case, *Beye v. Horizon Blue Cross Blue Shield of New Jersey*, 568 F. Supp. 2d 556, 576 (D.N.J. 2008), which was decided on the ground that defendants there offered no cases "decided at the motion to dismiss stage." Plaintiffs' other cases are also inapposite or wrong: *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) did not involve a challenge to fiduciary status; *Woods v. Southern Co.*, 396 F. Supp. 1351, 1365 (N.D. Ga. 2005) relied on decisions allowing complaints that did "little more than track the statutory definition," which is insufficient under *Twombly*; and *Goldenberg*, 2010 WL 3732974, at *11, involved a dispute over a properly pled fact allegation.

*Srein v. Frankford Trust Co.*, 323 F.3d 214 (3d Cir. 2003), involved two insurance policies in a bank's possession.  As to one policy, for which the bank complied with all directions, it was held *not* to be a fiduciary.  But as to the other policy, for which the bank took "undirected" action by diverting proceeds to another account, it was held to be a fiduciary.  *Id.* at 221.  Thus, the three part *Srein* "criteria" which the Opposition seeks to impose in judging JHUSA's alleged conduct, Opp. at 18 – assessing fees, representing "expertise," and possessing assets – were *not* dispositive in *Srein* itself.  Instead, the critical question was the exercise of "actual control;" the linchpin of the Third Circuit's analysis was whether the challenged "actions [were] taken (or not taken) clearly at the direction of another."  *Srein*, 323 F.3d at 222.  *Accord Briscoe v. Fine*, 444 F.3d 478, 492 (6th Cir. 2006) (fiduciary status based on the unilateral, undirected disposition of plan assets); Mem. at 39.[20]

As described *infra* § III.B.2.d, Plaintiffs plead no undirected action by JHUSA, and thus fail to allege relevant fiduciary status under controlling law.

---

[20] Rather than adopting a "broad[] construction" of ERISA, Opp. at 16, Plaintiff's own cases simply apply the statutory text.  *See, e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261-62 (1993); *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 57 F.3d 1255, 1261 n.10 (3d Cir 1995).

### b.   Plaintiffs' Authorities Do Not Impose Fiduciary Status Simply by Maintaining Separate Accounts.

Plaintiffs' continued insistence that JHUSA is a fiduciary based on ERISA § 401(c)(5) is as baseless as their reading of *Srein*. The authorities cited at Opp. 19-21 simply wrestle with the term "plan asset," which is irrelevant here as the Mem. does not urge dismissal for failure to allege plan assets.[21]  In *John Hancock Mutual Life Insurance Co. v. Harris Trust & Savings Bank*, 510 U.S. 86 (1993), cited at Opp. 20, 21, the Supreme Court agreed with the Second Circuit that the ultimate question regarding fiduciary status was whether – in that unrelated context – a defendant engaged in "the discretionary management of assets" contemplated by ERISA § 3(21)(A).  *John Hancock*, 510 U.S. at 104.[22]  And contrary to Opp. at 19, 20, and 21, *Adkins v. John Hancock Mutual Life Insurance Co.*, 957 F. Supp. 211,

---

[21] DOL Adv. Op. 2005-22A, 2005 WL 3751637 (Dec. 7, 2005), addresses what constitutes a "separate account" under ERISA § 3(17), not fiduciary status.  And *Midwest Community Health Services, Inc. v. American United Life Insurance Co.*, 255 F.3d 374, 379 (7th Cir. 2001), simply explains that ERISA § 401(c)(5) is a "safe-harbor" for insurers holding assets that support insurance contracts in their general accounts.  Defendants also have not asserted this safe harbor as grounds for dismissal.

[22] The Supreme Court did not suggest, as Plaintiffs do, that "[a] party who can 'affect the amount of benefits retirement plan participants will receive' is an ERISA fiduciary."  Opp. at 21 (quoting *Harris Trust*); *see also* Opp. at 29.  The Supreme Court has said precisely the opposite:  "the threshold question is *not* whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest . . . ."  *Pegram*, 530 U.S. at 226 (emphasis added).  Plaintiffs cite no authority (including *Srein*) holding that a person is a fiduciary if – at the direction of others – he takes actions that affect the value of a retirement plans' assets.

212, 214-15 (M.D. Fla. 1997), did not make a finding as to JHUSA's control over

plan assets, or even whether JHUSA was a fiduciary.

### c.   Plaintiffs' New Argument that JHUSA Could Alter Fees Is Not Relevant to the Pleaded Claims.

Plaintiffs' new assertion that JHUSA may be an ERISA fiduciary because it

can increase the administrative maintenance charge ("AMC"), Opp. at 22, is

irrelevant and, in any event, wrong.

The SAC identifies a number of fees, *e.g.*, SAC at 15, ¶ 28, but it only

claims a breach of duty and damages as to certain of them:  the Sales and Service

fee (Counts I and II); 12b-1 fees (Counts III and IV); mutual fund advisory fees

(Count V); revenue sharing (Count VI); and fees paid by the Money Market Trust

(Count VII).  Significantly, the SAC does not allege any breach or seek any

damages based on the AMC.[23]  Plaintiffs cannot rely on such "after-the-fact

---

[23] Nor could it.  Like the funds themselves, the AMC is part of the JHUSA product offering and is contained in the Contracts.  The SAC does not allege, nor could it, that JHUSA changed the AMC without giving trustees advance notice and the opportunity to terminate the Contracts before any fee was effective; indeed, there is no allegation that any fee was hidden from the trustees.  As another court in this district has held, where, as here, a trustee "dissatisfied with any of these proposed changes" could "withdraw from the Contract," an insurer's ability to amend a contract to alter fees does not make it a fiduciary.  *Trs. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 908 (D.N.J. 1992); *see also In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184, 05-1079 (GEB), 2008 WL 141498, at *8 (D.N.J. Jan. 14, 2008) (dismissing complaint because right to change policy terms was insufficient to confer fiduciary status).

allegations."[24]  Thus – unlike the pleaded claim in *Charters*, 583 F. Supp. 2d at 192

– whether JHUSA is a fiduciary with respect to the AMC is irrelevant here.  *See*

*Srein*, 323 F.3d at 221 (defendant must be "a fiduciary with respect to the

particular activity in question"); *Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL

1688540, at *5 (E.D. Pa. Apr. 26, 2010) (provider's alleged discretion over "float"

income irrelevant where allegations of breach involved investment selection).[25]

### d.  Plaintiffs Concede that Providing Investment Options Does Not Create Fiduciary Status.

Plaintiffs concede, as they must, that a service provider does not become a

fiduciary by assembling a line-up of investment options from which plan trustees

may select investments for their plans.  Opp. at 26.[26]  Attempting to avoid

---

[24] *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007); *see also Pain & Surgery*, 2007 WL 1814083, at *3 n.1.  It is "axiomatic" that the SAC "may not be amended by the briefs in opposition to a motion to dismiss."  *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).

[25] While Plaintiffs point generically to other contract provisions relating to fees and amendment rights, Opp. at 22, 25, they do not suggest how these other provisions relate to their claims of breach.  Aside from conclusory rhetoric, they also do not provide any factual allegation that JHUSA ever charged or changed any fee, or amended the Contracts, without providing the Plans' trustees sufficient advance notice and an opportunity to reject any change by terminating the Contracts.

[26] This concession renders irrelevant the Opposition's discussion of (i) the diligence with which JHUSA "created its investment menu," Opp. at 28-29, (ii) revenue sharing arrangements, which are not alleged to be specific to the Plans as opposed to being common platform features, Opp. at 29, and (iii) the "fiduciary warranty," Opp. at 34, particularly where Plaintiffs' documents reveal that the warranty is a general platform feature and "does not guarantee that any particular

dismissal on this conceded ground, Plaintiffs assert that "[i]nsurance companies that operate GACs and retain the authority to alter the menu of investment options are ERISA fiduciaries."  Opp. at 24.  Like their misreading of *Srein*, *Harris Trust*, and ERISA § 401(c)(5), Plaintiffs again seek to impose ERISA fiduciary status well beyond the statutory limit.

Courts and the DOL have expressly rejected the proposition that a service provider's ability to change investments by itself results in fiduciary status.  *See* Mem at 44-45 (citing authorities); *see also Zang*, 728 F. Supp. 2d at 271 n.6. Plaintiffs' attempt to distinguish these and other authorities on the basis that the Plans or their trustees "could not reject a change," *e.g.*, Opp. at 26-28, is not supported by either the SAC or the Contracts.[27]

---

investment option is suited to the needs of any individual plan participant."  Lakind Ex. A at 2.  Plaintiffs' cases addressing brokerage recommendations are not analogous to product features that are offered to all prospective clients and that are not individualized to any particular plan or customer.  *See* Opp. at 34 (citing *Stanton v. Shearson Lehman/Am. Express*, 631 F. Supp. 100, 103-04 (N.D. Ga. 1986); *Procacci v. Drexel Burnham Lambert, Inc.*, No. 89-0555, 1989 WL 121984, at *4-6 (E.D. Pa. Oct. 16, 1989); and *Pension Fund-Mid Jersey Trucking Ind.- Local 701 v. Omni Funding Grp.*, 731 F. Supp. 161, 167-68 (D.N.J. 1990)).

[27] As such, Plaintiffs' basis for distinguishing *Hecker*, *Renfro*, *Zang*, *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007), *F.W. Webb Co. v. State Street Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010), and DOL Adv. Op. 97-16A (May 22, 1997) ("Aetna Letter"), Opp. at 26-28, is without support.  Plaintiffs' other bases for distinguishing *Hecker* – the number of plan investment options and their fees, Opp. at 7, 26 – were irrelevant to *Hecker*'s fiduciary status holding.  Additionally, the Aetna Letter did not, as Plaintiffs suggest, require 120 days notice.  Opp. at 28. The DOL merely confirmed that such notice was adequate.

While Plaintiffs identify Contract provisions allowing JHUSA to make changes, Plaintiffs do not refute that those provisions were agreed upon by the trustees and remained subject to the trustees' right to terminate the Contracts at any time for any reason – even in response to a proposed change.[28]  The Opposition points to no pleaded instance of JHUSA unilaterally changing its platform without providing the Plans' trustees advance notice or reasonable opportunity to reject the change.[29]  As such, dismissal is warranted.  Mem. at 45-46.

Plaintiffs' cases, Opp. at 24-26, do not compel a different result.  *Ruppert* did not address fiduciary status at all.  2009 WL 5667708, at *23 ("For purposes of this motion only, Principal has not denied its ERISA fiduciary status.").  *Haddock* agreed with the DOL that there is no fiduciary exercise of authority or control by making fund changes if "*the appropriate plan fiduciary in fact makes the decision to accept or reject the change.*"  419 F. Supp. 2d at 164-66 (emphasis in original).  *Phones Plus Inc.* also was not based on any *per se* insurer-equals-fiduciary rule,

---

[28] Nor does the SAC allege any change impacting Plaintiffs' accounts – making any fiduciary status based on changes irrelevant as to Plaintiffs and their claims even if they were adequately pleaded generally (which they are not).

[29] Opp. at 29, for example, cites SAC at 42, ¶ 163; 46, ¶ 184, neither of which address the role of the trustees in approving fund or share class changes. Allegations such as SAC at 42, ¶ 164, that discuss JHUSA's "discretion," are conclusory, unsupported by any pleaded fact indicating that the trustees abdicated their exclusive authority, and contradicted by the Contracts.  The Supreme Court "requires more than labels and conclusions" – a "recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 544.

but on specific contract provisions not pleaded here.  2007 WL 3124733, at *4 (citing group annuity contract).[30]

*Charters*, too, is factually distinguishable because it turned on the imposition of a termination fee, which the court deemed a "penalty" that deprived the trustee of a meaningful opportunity to reject proposed changes by terminating the contract.[31]  The Contracts here imposed no such termination fee, and in fact they were terminated without penalty.  *See* Mem. at 13.[32]  This distinction also bars Plaintiffs from estopping JHUSA's denial of fiduciary status here, Opp. at 23, 26,

_____

[30] Additionally, the Southern District of New York expressly rejected the reasoning of *Phones Plus* in favor of that of *Hecker* in a decision with which Plaintiffs "do not disagree."  Opp. at 26 (discussing *F.W. Webb Co.*); *see also Zang*, 728 F. Supp. 2d at 272, n.7 (distinguishing *Haddock* as a case in which the provider had "final authority" over fund selections).

[31] Similarly, in Plaintiffs' case *Midwest Community Health Services*, 255 F.3d 374, Opp. at 21, 27, plans were subject to a fee upon withdrawal of assets from the contract.

[32] The Contracts here flatly contradict the SAC's allegations that they imposed any fee upon withdrawal.  Mem. at 13.  As *Goldenberg* made clear:  where contracts "contradict the Complaint's factual allegations, the documents will control."  2010 WL 3732974, at *2.  Plaintiffs' new assertion that JHUSA charged Santomenno a termination fee, Opp. at 26, is specious and demonstrably wrong.  Plaintiffs misrepresent the account statement attached at Lakind Decl. Ex. O, by conflating two separate descriptions.  The account statement does not include a charge for "contract termination fees."  Opp. at 26.  Instead, it reflects *separate* line items for "Contract Termination" and "Fees."  Indeed, Santomenno's account statement for the same quarter of the year prior to termination also reflects "Fees" as an item. *See* Douglass Cert. Ex. A (provided for completeness).  Separately, however, the Court may decline to review Lakind Ex. O because Plaintiffs offer no authority allowing the Court to consider account statements (or marketing materials) in deciding a Rule 12(b)(6) motion.  *Compare* Mem. at 4 n.2, 9 n.9 (authorities allowing for consideration of public filings and contracts).

because nonmutual collateral estoppel requires that the "facts of both cases [be] indistinguishable." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).[33]

### 3.    Plaintiffs Do Not Rectify Their Failure to Plead that JHUSA Is an Investment Advice Fiduciary.

Plaintiffs next argue that JHUSA is an investment advice fiduciary because (in their view) the current regulation, 29 C.F.R. § 2510.3-21(c), is superseded by a proposed new regulation, announced seven months *after* this case was filed that, if finalized in its proposed form, would not become effective for yet another six months.  Opp. at 31-32 (citing 75 Fed. Reg. 65263 *et seq.* (Oct. 22, 2010)).[34] Plaintiffs offer no authority to support the proposition that a proposed, contested regulation that is not yet effective should supersede the current regulation.  Nor

---

[33] Plaintiffs bear the burden to show collateral estoppel applies. *Suppan*, 203 F.3d at 233.  They cannot meet this burden, not simply because the facts materially differ, but also because the incorrectly decided *Charters* order was not "essential to the . . . judgment." *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995).  The ultimate judgment in *Charters* expressly provided that interlocutory orders "were not essential to" its entry.  Douglass Cert. Ex. B (*Charters* judgment).  Further, applying estoppel here would eliminate incentives to resolve litigation by agreement of the parties, and would produce an inequitable result. *See generally Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979) (non-mutual offensive collateral estoppel should not be applied if, among other reasons, it would be unfair); *Penneco Pipeline Corp. v. Dominion Transmission Inc.*, Nos. 05-49, 05-537, 2007 WL 1847391, at *24 (E.D. Pa. June 25, 2007) (collateral estoppel did not apply to partial summary judgment never made final due to settlement, where defendant believed issue wrongly decided and would not have settled if he thought summary judgment would have preclusive effect).

[34] Due to the "considerable interest expressed in the proposed rule," the DOL has extended the comment period and scheduled public hearings for March, 2011.  76 Fed. Reg. 2142, 2143 (Jan. 12, 2011).

22

could they.  Even when finalized, agency rules are not retroactive.  *See generally*

*N.L.R.B. v. Long Island Coll. Hosp*., 20 F.3d 76, 79-81 (2d Cir. 1994).  Plaintiffs'

further suggestion that the current regulation should not be followed because it

contains "factors [that] are not elements of the statutory definition," Opp. at 32, is

contradicted by their own case, *Goldenberg*, which applied this very regulation.

2010 WL 3732974, at *6.[35]

The Opposition next argues that educational materials that provide historical

data about fund fees and performance (the FundCheck™ program) create fiduciary

status.  Opp. at 30, 32.  But the cited materials do not make recommendations, and

the SAC notably contains no allegation that the Plans' trustees expected these

materials to serve as a "primary basis" for their investment decisions or that the

materials were "based on the particular needs of the plan" as required under the

applicable regulations, 29 C.F.R. § 2510.3-21(c)(1)(ii).[36]  As such, these materials

---

[35] Plaintiffs cite no case in support of their investment advice theory other than *Ruppert v. Principal*, about which they say:  "[b]ased on similar facts, the Court in *Principal* found a 401(k) provider to be an ERISA fiduciary."  Opp. at 31.  But *Ruppert* made no such finding, and instead simply recited a complaint's allegations and then analyzed a different legal question.  2009 WL 5667708, at *4-5, 8.

[36] Simply describing FundCheck as an "investment advisory service" in a trademark application, Opp. at 30 n.16, does not make JHUSA an investment advice fiduciary under ERISA.  Investment advice under ERISA § 3(21)(A)(ii) and the DOL regulations is defined more narrowly than investment advice under other regimes, allowing a program to be categorized as advice for one purpose, such as the IAA, but not for other purposes, such as ERISA.  *See, e.g.*, 15 U.S.C. § 80b-2(a)(11) (one who "issues or promulgates analyses or reports concerning securities" renders investment advisory services under the IAA).

do not confer fiduciary status.  Indeed, "[m]any people help develop and manage benefit plans . . . but despite the influence of these professionals we do not consider them to be Plan fiduciaries."  *Hecker*, 556 F.3d at 584.

### C. Plaintiffs Cannot Establish that ERISA Relief Is Available from JHD, JHF, and JHIMS.

Unable to dispute that the ERISA relief sought from non-fiduciaries JHD, JHF, and JHIMS is unavailable because the 12b-1 payments they seek to disgorge are not plan "assets" as alleged in the SAC, *see* Mem. at 52, Plaintiffs abandon this allegation and now seek disgorgement "[i]rrespective of whether these fees are plan assets."  Opp. at 36.  Having abandoned their pleaded claim, Plaintiffs' Count III should be dismissed as to these Defendants.[37]

Plaintiffs also do not dispute the traceable *res* requirement for ERISA § 502(a)(3) disgorgement.  *See* Mem. at 54, 54 n. 33 (citing cases).  The Opposition

---

[37] *See, e.g.*, *Hailey*, 2008 WL 482331, at *5 n.12 (dismissing unaddressed argument); *Darrick Enters.*, 2007 WL 2893366, at *20 (same).

states only that fees were paid to JHD, JHF, and JHIMS.  Opp. at 38 (citing SAC at

24, ¶ 63; 72-73, ¶¶ 302-05).  It does not identify any necessary traceable *res*.  The

ERISA counts (Count III and V) should therefore also be dismissed as to these

Defendants for the independent reason of failure to allege facts required by law.

Dated:  February 4, 2011                Respectfully Submitted,
Newark, NJ


                                        _____s/  Brian J. McMahon_____
                                        Brian J. McMahon, Esq.
                                        GIBBONS P.C.
                                        One Gateway Center
                                        Newark, NJ  07102-5310
                                        Telephone:  (973) 596-4500
                                        Facsimile:  (973) 596-0545
                                        BMcMahon@gibbonslaw.com

                                        James O. Fleckner, Esq. (admitted *pro hac vice*)
                                        Alison V. Douglass, Esq. (admitted *pro hac vice*)
                                        GOODWIN PROCTER LLP
                                        Exchange Place
                                        Boston, MA  02109
                                        Telephone:  (617) 570-1000
                                        Facsimile:  (617) 523-1231
                                        jfleckner@goodwinprocter.com
                                        adouglass@goodwinprocter.com

                                        Attorneys for John Hancock Life Insurance
                                        Company (U.S.A.), John Hancock Investment
                                        Management Services, LLC, John Hancock Funds,
                                        LLC, and John Hancock Distributors, LLC

2148010