UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE SANTOMENNO, *for the use and benefit of the John Hancock Trust and John Hancock Funds II*, *et al*., <br><br>         Plaintiffs, <br><br> v. <br><br> JOHN HANCOCK LIFE INS. CO. (U.S.A.), *et al*., <br><br>         Defendants. | Civil Action Number: <br> 2:10-cv-01655 <br><br><br><br> OPINION <br><br> HON. WILLIAM J. MARTINI |

## OPINION

### I.    INTRODUCTION

Plaintiffs are beneficiaries or participants in employer-sponsored 401(k) retirement plans. The trustees of these plans made contracts with Defendants to supply a variety of investment services to the plans. The gravamen of the Plaintiffs' Second Amended Complaint is that Defendants purportedly charged the plans excessive fees for investment services. Counts I through VII are brought under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and relate to Defendants' operation of their group annuity accounts. Count VIII is brought under Section 36(b) of the Investment Companies Act (ICA), Pub. L. No. 76-768, 54 Stat. 841 (1940), and count IX is brought under Section 47(b) of the ICA. Counts VIII and IX relate to Defendants' operation of both their group and individual annuity accounts. Defendants have moved to dismiss. For the reasons elaborated below, the Court will **GRANT** the motion.

### II.    FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

Defendant John Hancock Life Insurance Company (U.S.A.) (JHUSA), a Michigan corporation, operates 401(k) plans through group annuity contracts (GACs). JHUSA establishes a GAC by selecting a menu of investment options or funds. The options may be affiliated with JHUSA or independent of JHUSA. JHUSA provides the menu of options to the employer who then selects a subset of the funds. Generally, the investment options are drawn from three John Hancock Series Trusts (JH Trusts), including: John Hancock Trust

1

(JHT), John Hancock Funds II (JHFII), and John Hancock Funds III (JHFIII). Each trust contains a portfolio of funds. Defendant John Hancock Investment Management Services, LLC (JHIMS), a Delaware limited liability company, provides investment advice to the JH Trusts and to the funds within them. Defendants John Hancock Distributors, LLC (JHD) and John Hancock Funds, LLC (JHF), Delaware limited liability companies and affiliates of JHIMS, make distributions from the JH Trusts' individual funds or portfolios to participants or beneficiaries. Participants in a portfolio offered by JHUSA direct their monies into their own separate sub-accounts, where they are allocated into particular funds within the portfolio. JHUSA charges plan sponsors (a contract level fee) and charges plan participants fees for their investment in the sub-accounts.

Plaintiff Danielle Santomenno invested assets in two JHT Funds: a sub-account of the Money Market Portfolio, and a sub-account of the Small Cap Growth Portfolio. She also invested assets in a single JHFII Fund: a sub-account of the Blue Chip Growth Portfolio. Plaintiff Karen Poley invested assets in a JHFII Fund: a sub-account of the Lifestyle Fund-Balanced Portfolio. Plaintiff Barbara Poley also invested assets in JHFII Funds: a sub-account of the Lifestyle Fund-Balanced Portfolio, a sub-account of the Lifestyle Fund-Aggressive Portfolio, and a sub-account of the Lifestyle Fund-Growth Portfolio.

Count I alleges that Defendant JHUSA's sales and service is excessive and in violation of ERISA. In regard to Count I, the purchased funds are John Hancock funds. Count II differs from Count I in that the funds purchased are independent funds.

Counts III alleges that Defendants JHUSA, JHIMS, JHD, and JHF allowed payment of 12b-1 fees in violation of ERISA. Count IV makes a similar allegation, but here the 12b-1 fees were tied to independent funds.

Count V alleges that JHUSA wrongfully allowed JHIMS to charge Plaintiffs an advisory fee in violation of ERISA.

Count VI alleges that JHUSA wrongfully received revenue sharing payments from Plaintiffs' investments into sub-accounts in violation of ERISA.

Count VII alleges that JHUSA wrongfully selected JHT Money Market Trust as an investment option notwithstanding poor performance, high fees, and wrongfully retained JHIMS as an advisor, notwithstanding that it had been disciplined by the SEC, all purportedly in violation of ERISA. In regard to Counts I through VII, Plaintiffs assert that the Defendants were ERISA fiduciaries (or otherwise knowingly participated in a breach of duty by a fiduciary).

Count VIII seeks recovery of purportedly excessive investment management fees charged by JHIMS under ICA § 36(b). Count IX seeks relief for unjust enrichment and rescission under ICA § 47(b).

### III. STANDARD OF REVIEW

The Defendants' motion to dismiss is brought pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

## IV.   ANALYSIS

The nine-count complaint alleges liability under ERISA and the ICA. Each theory of liability is discussed in turn.

### A.   COUNTS I THROUGH 7: THE ERISA THEORIES OF LIABILITY

Defendants argue that Plaintiffs' ERISA counts are derivative. That is, these claims belong to the plans and Plaintiffs as plan participants or beneficiaries are asserting claims which belong to the plan and, should relief be granted, the relief would be awarded to the plan. *See* ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ("A civil action may be brought -- by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title"); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008) (authorizing "plan participants [and] beneficiaries . . . to bring actions on behalf of a plan"). Defendants argue that in such circumstances, Plaintiffs, before bringing the derivative claim, must first make demand upon the trustees of the plan. Apparently no such demand has been made, nor are the trustees listed as defendants in this action. Plaintiffs take the position that ERISA's statutory language nowhere expressly requires demand on a plan's trustees, although it otherwise authorizes suit by a plan's beneficiaries. Furthermore, Plaintiffs point to persuasive authority where courts in other circuits have rejected imposing pre-suit demand grounded in application of Federal Rule of Civil Procedure 23.1.

The Third Circuit has not spoken to this precise question. *Struble v. N.J. Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 338 (3d Cir. 1984) ("We are not called upon to decide at this time whether beneficiaries in the present type of derivative action are required to make a 'demand' on the Trustees to bring suit in the name of the Trust Fund or whether, if such demand is generally required, it should be excused [as futile] in the present

Case 2:10-cv-01655-WJM -MF   Document 54   Filed 05/23/11   Page 4 of 6 PageID: 3561

circumstances."), *overturned on other grounds Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The Second Circuit has held that in relation to an ERISA § 502(g) claim, which is akin to the Section 502(a) claims here, "[a] participant in a fund governed by ERISA can sue derivatively on behalf of the fund only if the plaintiff first establishes that the *trustees* breached their fiduciary duty." *Diduck v. Kaszycki & Sons Contractors, Inc*., 874 F.2d 912, 916 (2d Cir. 1989) (emphasis added). Arguably, this would seem to preclude suit here – because Plaintiffs' complaint makes no allegations against the Plans' trustees. More importantly, *Diduck* was applying the well-known rule mandating demand on the trustees, except when such demand is futile. Again, this would seem to preclude suit here: Plaintiffs have made no allegations against the trustees (as opposed to the named Defendants who Plaintiffs allege to be non-trustee fiduciaries) suggesting that they (the trustees) violated any fiduciary duty or that demand is otherwise futile. Judge Van Graafeiland was more explicit:

> Because the right to sue for promised [ERISA] contributions belongs to the trustees, fund participants such as Diduck cannot exercise the right derivatively without first giving the trustees the opportunity to compel payment. . . . Before a participant such as Diduck can sue an employer for promised fund contributions, he must show either that he made a demand upon the trustees for suit or that such a demand would have been futile.

*Id*. at 923 (Van Graafeiland, J., dissenting).

To the extent that gap filling the meaning of the ERISA statute is a matter of federal common law, it would appear to follow the common law of trusts. Indeed, in expounding on ERISA law, courts often seek guidance from the common law of trusts. *See, e.g*., *LaRue*, 552 U.S. at 253 n.4; *Zavolta v. Lord, Abbett & Co. LLC*, 2010 WL 686546, at *5 (D.N.J. Feb. 24, 2010) (same). "Ordinarily the *trustee*, and he alone, is permitted to sue the wrongdoer." GEORGE T. BOGERT, TRUSTS 610 (6th ed.1987) (emphasis added); RESTATEMENT (SECOND) OF TRUSTS § 282 cmt. a (1959) ("As long as the trustee is ready and willing to take the proper proceedings against . . . third persons [who wrong the trust], the beneficiary cannot maintain a suit in equity against [third parties]."). The broad language of these authorities -- using "wrongdoer" and "third persons" -- would seem to extend to JHUSA and to the other John Hancock defendants, even if they are, as alleged by Plaintiff, non-trustee fiduciaries vis-à-vis the ERISA plans.

Alternatively, to the extent that gap filling the meaning of the ERISA is a matter of substantive state law, one would turn to the choice of law provision of the plan or the law under which the plan was organized (assuming it is formally organized). *Cf. Kamen v. Kemper Fin. Servs., Inc*., 500 U.S. 90, 97 (1991) (holding that contours of the demand requirement under the ICA follow state law in which the entity was organized). Although, the plans at issue here have not been filed as exhibits, the Court is aware of no state which does not impose a demand requirement. Generally, the variations in state law in regard to the demand requirement go not to the existence of the demand requirement, but to the

extent, if any, of the futility exception to the demand requirement. *See, e.g.*, *Va. M. Damon Trust v. N. Country Fin. Corp.*, 325 F. Supp. 2d 817, 821 (W.D. Mich. 2004) ("Michigan has adopted a universal demand rule, mandating pre-suit demand upon the corporation in all circumstances and providing no possibility for circumvention of this rule by assertions of futility . . . ."); *Lola Cars Int'l Ltd. v. Krohn Racing, LLC*, 2009 WL 4052681, at *7 (Del. Ch. Nov. 12, 2009) ("Because [plaintiff] did not make a demand upon [the limited liability company's] board, the inquiry then turns to whether it alleged demand excusal with particularity.").

If demand on the Plans' trustees in this case were futile, then there would be some reason to consider excusing demand. But here, the complaint fails to name the plans' trustees, fails to make well-pled allegations as to whether they joined in the alleged fiduciary breaches by the named Defendants, and fails to join the trustees as defendants. Even assuming that demand on the trustees is not required, the Third Circuit has required such trustee-related factual allegations. "Under traditional trust law doctrine, *incorporated into ERISA*, if a trustee holds in trust a . . . right against a third person and the trustee *improperly* refuses to bring an action to enforce the [right], the beneficiaries can maintain a suit . . . against the *trustee* joining the [third person] as co-defendant." *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986) (emphasis added). In short, absent demand, or allegations going to demand futility, or some allegations, which if proven, would establish that the trustees improperly refused to bring suit, it would appear that the beneficiaries of an ERISA plan cannot bring a claim under Section 502. Likewise, any such suit must join the plan's trustees. *McMahon*, 794 F.2d at 110. Here, because there are no such factual allegations and because the trustees have not been joined, dismissal of the ERISA counts, counts I through VII, would seem to be proper.

### B.  COUNT VIII: THE INVESTMENT COMPANIES ACT SECTION 36(b) CLAIM

ICA § 36(b), 15 U.S.C. § 80a-35(b), authorizes an "action . . . under this subsection by the Commission, or by a security holder of such registered investment company on *behalf of such company*." Because such a suit is brought upon behalf of the company, it can be broadly characterized as derivative. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 (1984). Following both the statutory language and the well-known rule in derivative actions requiring continuous ownership of stock as a precondition of suit, other courts have dismissed Section 36(b) claims where the plaintiff, although holding stock at the commencement of the action, no longer holds stock at some point thereafter during the pendency of the suit. *See, e.g.*, *Siemers v. Wells Fargo & Co.*, 2007 WL 760750, at *20 (N.D. Cal. Mar. 9, 2007) ("For Section 36(b) standing purposes, it is important that the fund be continuously owned during the pendency of the action.").

Plaintiffs' position is that Section 36(b) standing exists if a plaintiff is a security holder merely at the time suit is filed, even if the plaintiff loses his security holder status during the pendency of the litigation. However, because "*any* recovery obtained in a § 36(b) action will go to the company rather than the plaintiff," *Daily Income Fund*, 464 U.S. at 535 n.11

(emphasis added), a former security holder would have no concrete interest in the outcome of the litigation. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 543-544 (1986) (school board member who "has no personal stake in the outcome of the litigation" has no standing). It would seem to follow that a former security holder -- where all sought after relief flows to the entity -- would seem to lack Article III standing. *Cf. Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983) ("[A]s a practical matter, the continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own. This equitable principle reflects a *shareholder's real interest in obtaining a recovery for the corporation which increases the value of his holdings*." (emphasis added)). This strongly counsels in favor of interpreting the statutory standing provisions of the Investment Companies Act along the lines suggested by the *Siemers* court, and, therefore, requiring continuous ownership throughout the pendency of the litigation as an element of statutory standing. *See Siemers*, 2007 WL 760750, at *20. *But see* In re *Am. Mut. Funds Fee Litig.*, 2009 WL 8099820, at *1 (C.D. Cal. July 14, 2009) (rejecting the *Siemers* position, but failing to consider the implications for Article III standing).

It is not contested that the contracts between the Plans' trustees and the Defendants have been terminated. *I.e.*, Plaintiffs do not currently own any interests in the Defendants' funds. In these circumstances it would appear that the Section 36(b) claim must be dismissed.

### C.   COUNT IX: THE INVESTMENT COMPANIES ACT SECTION 47(b) CLAIM

Count IX is brought pursuant to ICA § 47(b). *See* Plts.' Br. 50 ("Plaintiffs are not suing under ICA § 26."). "A plaintiff can seek relief under Section 47 only by showing a violation of some other section of the Act." *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005) ("Moreover, to the extent Plaintiffs' other Investment Company Act claims fail, their Section 47(b) claim must necessarily fail because a violation of the Act is a predicate to the remedy provided therein. A plaintiff asserting a claim under the Investment Company Act may seek relief under Section 47 only after a violation of some other section of the Act has been established."). Because this Court has already dismissed Plaintiffs' Section 36(b) claim, the only other cause of action under the ICA, the Section 47(b) claim would seem to fail also.

### V.   CONCLUSION

For the reasons elaborated above, the Court **GRANTS** Defendants' motion to dismiss. This terminates this action.

|  |  |
|---|---|
|  | s/ William J. Martini |
| **DATE: May 23, 2011** | **William J. Martini, U.S.D.J.** |