# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE SANTOMENNO, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 2:10-cv-01655-WJM-MF |
| ) | |
| vs. ) | |
| ) | ***Document electronically filed.*** |
| John Hancock Life Insurance ) | |
| Company (U.S.A.), John Hancock ) | |
| Investment Management ) | **ORAL ARGUMENT REQUESTED** |
| Services, LLC, John Hancock ) | |
| Funds, LLC, and John Hancock ) | |
| Distributors, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS
# PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Brian J. McMahon, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500

James O. Fleckner, Esq. (admitted *pro hac vice*)
Alison V. Douglass, Esq. (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Attorneys for John Hancock Life Insurance
Company (U.S.A.), John Hancock Investment
Management Services, LLC, John Hancock Funds,
LLC, and John Hancock Distributors, LLC

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND................................................................................1

I.     The Plans' Trustees Contracted With JHUSA to Provide Products and
       Services at Fully Disclosed and Agreed Upon Fees.......................................1

II.    Plaintiffs' Claims Alleging Violations of ERISA. .........................................5

PROCEDURAL POSTURE ................................................................................6

ARGUMENT ........................................................................................................7

I.     Standard of Review.........................................................................................7

II.    Plaintiffs Fail to Plead that They Exhausted
       Administrative Remedies Before Filing Suit. .................................................8

III.   Plaintiffs' Claims Are Time-Barred. .............................................................11

IV.    Plaintiffs Lack Standing to Sue with Respect to
       Investment Options in Which They Did Not Invest
       and Plans in Which They Did Not Participate.................................................14

V.     Defendants JHIMS, JHD, and JHF Should Be Dismissed. ...........................15

VI.    Counts III-VI Concerning Fees Paid by Mutual Funds Are a Back-
       Door Attempt to Revive Previously Dismissed Claims. ................................17

VII.   Counts I, II, and VII Fail to Plead Plausible Claims. ....................................20

       A.     Counts I and II Concerning Sales and Service
              Fees Do Not State a Plausible Claim. ..................................................20

       B.     Count VII Concerning Selection of the Money
              Market Trust Does Not State a Plausible Claim. ................................23

VIII.  Plaintiffs Fail to Plead Essential Elements of Their Claims. .........................24

       A.     Plaintiffs' Breach of Fiduciary Duty Claims
              Fail to Plead Loss Causation. ..............................................................24

       B.     Plaintiffs Fail to Plead Claims for Prohibited Transactions................26

       C.     Plaintiffs Fail to Plead that JHUSA Was an ERISA
              Fiduciary with Respect to the Challenged Conduct.............................28

              1.     Plaintiffs Fail to Link JHUSA's Alleged Fiduciary
                     Status to Any Action with Respect to a Plan............................29

(i)

2.     Plaintiffs Fail to Plead that JHUSA Meets any of the Requirements for Relevant ERISA Fiduciary Status..........30

        a.     Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(i). ...........................30

        b.     Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(ii). ........................35

        c.     Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(iii). ........................37

        d.     Maintaining Assets in Insurance Company Separate Accounts Does Not Make JHUSA an ERISA Fiduciary.......................................................38

CONCLUSION ......................................................................39

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................7, 20, 22

*Bickley v. Caremark, Rx, Inc.*,
    461 F.3d 1325 (11th Cir. 2006) .................................... 10-11

*Boteach v. Socialist People's Libyan Arab Jamahiriya*,
    759 F. Supp. 2d 548 (D.N.J. 2010)....................................23

*Brandt v. Grounds*,
    687 F.2d 895 (7th Cir. 1982) .............................................24

*Briglia v. Horizon Healthcare Servs., Inc.*,
    No. 03-6033, 2005 WL 1140687 (D.N.J. May 13, 2005) ................................29

*Brown v. City of Essex County N.J.*,
    No. 10-03980, 2011 WL 3610268 (D.N.J. Aug. 16, 2011).................................9

*Brown v. Novartis Pharms.*,
    No. 07-365, 2007 WL 2915119 (D.N.J. Oct. 4, 2007) .......................................12

*Charters v. John Hancock Life Ins. Co.*,
    534 F. Supp. 2d 168 (D. Mass. 2007)....................................34

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) ..............................................32

*Connors v. Amax Coal Co.*,
    858 F.2d 1226 (7th Cir. 1988) ...........................................18

*Consol. Beef Indus. Inc. v. New York Life Ins. Co.*,
    949 F.2d 960 (8th Cir. 1991) .............................................35

*D'Amico v. CBS Corp.*,
    297 F.3d 287 (3d Cir. 2002) .............................................11

*Danza v. Fidelity Mgmt. Trust Co.*,
   No. 11-2893, 2012 WL 3599362 (D.N.J. Aug. 20, 2012) ................................. 33

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000) ............................................................................. 5

*Elliott v. Mitsubishi Cement Corp.*,
   No. 07-03509, 2008 WL 4286985 (C.D. Cal. Sept. 15, 2008) ..................... 36-37

*Feret v. Corestates Fin. Corp.*,
   No. 97-6759, 1998 WL 426560 (E.D. Pa. July 27, 1998) ............................... 24

*Ferrer v. Chevron Corp.*,
   484 F.3d 776 (5th Cir. 2007) .......................................................................... 24

*Figas v. Wells Fargo & Co.*,
   No. 08-4546, 2010 WL 9047685 (D. Minn. Apr. 6, 2010) .............................. 12

*Flacche v. Sun Life Assur. Co. of Can. (U.S.)*,
   958 F.2d 730 (6th Cir. 1992) .......................................................................... 35

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
   493 U.S. 331 (1990) ....................................................................................... 14

*Frank Russell Co. v. Wellington Mgmt. Co.*,
   154 F.3d 97 (3d Cir. 1998) ............................................................................. 27

*Friend v. Sanwa Bank Cal.*,
   35 F.3d 466 (9th Cir. 1994) ............................................................................ 24

*Fuller v. Suntrust Banks, Inc.*,
   No. 11-784, 2012 WL 1432306 (N.D. Ga. Mar. 20, 2012) ......................... 12-14

*F.W. Webb Co. v. State St. Bank & Trust Co.*,
   No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ...................... 33, 35

*Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J.*,
   *Inc.*,
   No. 08-6160, 2009 WL 3233427 (D.N.J. Sept. 30, 2009) ............................... 29

*Graden v. Conexant Sys. Inc.*,
   496 F.3d 291 (3d Cir. 2007) ............................................................................. 8

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ................................................................................16

*Grynberg v. Total Compagnie Franciase Des Petroles*,
   No. 10-1088, 2012 WL 4095186 (D. Del. Sept. 18, 2012) ..................9

*Haddock v. Nationwide Fin. Servs.*,
   419 F. Supp. 2d 156 (D. Conn. 2006) ....................................................34

*Harrow v. Prudential Ins. Co. of Am.*,
   279 F.3d 244 (3d Cir. 2002) ........................................................... 9-10

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...............................................................19

*IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*,
   No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) ...............19

*In re Arbinet-thexchange, Inc. Secs. Litig.*,
   No. 05-4404, 2006 WL 3831396 (D.N.J. Dec. 28, 2006) ....................8

*In re ING Groep, N.V. ERISA Litig.*,
   749 F. Supp. 2d 1338 (N.D. Ga. 2010) ................................................15

*In re Ins. Brokerage Antitrust Litig.*,
   Nos. 04-5184, 05-1079, 2008 WL 141498 (D.N.J. Jan. 14, 2008) ....33

*In re Johnson & Johnson Derivative Litig.*,
   865 F. Supp. 2d 545 (D.N.J. 2011) ......................................................23

*In re Lord Abbett Mut. Funds Fee Litig.*,
   407 F. Supp. 2d 616 (D.N.J. 2005) ......................................................14

*In re RCN Litig.*,
   No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) .....................29

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ................................................................14

*In re United States Sugar Corp. Litig.*,
   669 F. Supp. 2d 1301 (S.D. Fla. 2009) ................................................9

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
579 F.3d 220 (3d Cir. 2009) ...............................................................16

*Kilkenny v. Guy C. Long, Inc.*,
288 F.3d 116 (3d Cir. 2002) ................................................................8

*Krinsk v. Fund Asset Mgmt., Inc.*,
No. 85-8428, 1986 WL 205 (S.D.N.Y. May 9, 1986)........................17

*Krinsk v. Fund Asset Mgmt., Inc.*,
875 F.2d 404 (2d Cir. 1989) ..............................................................18

*Kurz v. Phila. Elec. Co.*,
96 F.3d 1544 (3d Cir. 1996) ..............................................................12

*Leimkuehler v. Am. United Life Ins. Co.*,
No. 10-0333, 2012 WL 28608 (S.D. Ind. Jan. 5, 2012) ....................39

*Lewis v. Casey*,
518 U.S. 343 (1996)...........................................................................15

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
982 F.2d 1031 (6th Cir. 1993) ...........................................................38

*McMahon v. McDowell*,
794 F.2d 100 (3d Cir. 1986) ........................................................... 6-7

*Metro. Life Ins. Co. v. Price*,
501 F.3d 271 (3d Cir. 2007) ..........................................................9, 11

*Moench v. Robertson*,
62 F.3d 553 (3d Cir. 1995) ................................................................29

*Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No.
229 Welfare Fund*,
764 F.2d 147 (3d Cir. 1985) ..............................................................15

*Pegram v. Herdrich*,
530 U.S. 211 (2000)......................................................................26, 29

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ..............................................................2

*Phones Plus, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
　　No. 06-1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007)...............................33

*Pietrangelo v. NUI Corp.*,
　　No. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005) .............................27, 30

*Renfro v. Unisys Corp.*,
　　671 F.3d 314 (3d Cir. 2011) ...............................................................29-32, 34-35

*Ruppert v. Principal Life Ins. Co.*,
　　No. 07-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) ...........................19

*Santiago v. Warminster Twp.*,
　　629 F.3d 121 (3d Cir. 2010) ...............................................................................22

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
　　677 F.3d 178 (3d Cir. 2012) .........................................................................7, 17

*Srein v. Frankford Trust Co.*,
　　323 F.3d 214 (3d Cir. 2003) .........................................................................28, 39

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*,
　　317 F. App'x 169 (3d Cir. 2009) .......................................................................16

*Trs. of I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of N.Y. N.J. LLC*,
　　No. 07-4262, 2008 WL 4601792 (D.N.J. Oct. 15, 2008) ..................................39

*Van Doren v. Capital Research & Mgmt. Co.*,
　　No. 10-1425, 2010 WL 5466839 (D.N.J. Dec. 30, 2010) .................. 9, 33, 35-37

*Varity Corp. v. Howe*,
　　516 U.S. 489 (1996)...........................................................................................38

*Wells v. Genesis Health Ventures, Inc.*,
　　No. 05-697, 2005 WL 3150259 (E.D. Pa. Nov. 23, 2005)...................................3

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
　　550 F. Supp. 2d 416 (S.D.N.Y. 2008) ......................................................... 12-13

*Zang v. Paychex, Inc.*,
　　728 F. Supp. 2d 261 (W.D.N.Y. 2010)....................................................29, 33, 35

## STATUTES

15 U.S.C. § 80a-15(c) (ICA § 15(c)) ...............................................................17, 25

15 U.S.C. § 80a-35(b) (ICA § 36(b)) ............................................................. 17-18

15 U.S.C. § 80a-35(b)(3) (ICA § 36(b)(3)) ........................................................17

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) ...................................................39

29 U.S.C. § 1002(21)(A)(i) (ERISA § 3(21)(A)(i)) ........................................ 30-31

29 U.S.C. § 1002(21)(A)(ii) (ERISA § 3(21)(A)(ii)) ...................................... 35-36

29 U.S.C. § 1002(21)(A)(iii) (ERISA § 3(21)(A)(iii)) ..........................................37

29 U.S.C. § 1002(21)(B) (ERISA § 3(21)(B)) ....................................................18

29 U.S.C. § 1101(b)(1) (ERISA § 401(b)(1)) .....................................................18

29 U.S.C. § 1101(c)(5)(B) (ERISA § 401(c)(5)(b)) ............................................38

29 U.S.C. § 1102(a)(2) (ERISA § 402(a)(2)) .......................................................8

29 U.S.C. § 1104 (ERISA § 404) .......................................................................27

29 U.S.C. § 1104(a)(1) (ERISA § 404(a)(1)) ......................................................24

29 U.S.C. § 1106 (ERISA § 406) .......................................................................26

29 U.S.C. § 1106(a) (ERISA § 406(a)) ...............................................................27

29 U.S.C. § 1106(b) (ERISA § 406(b)) ...............................................................27

29 U.S.C. § 1109(a) (ERISA § 409(a)) ...............................................................24

29 U.S.C. § 1113 (ERISA § 413) .......................................................................12

29 U.S.C. § 1113(2) (ERISA § 413(2)) ...............................................................11

29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) ...........................................11, 14, 30

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) .............................................14, 16

29 U.S.C. § 1133 (ERISA § 503) .........................................................................8

29 U.S.C. § 1133(2) (ERISA § 503(2)) ......................................................8

29 U.S.C. § 1140 (ERISA § 510)...........................................................10

29 U.S.C. § 1144(d) (ERISA § 514(d)) ..................................................18

N.J. Stat. Ann. § 17:22A-28 ...................................................................21

N.J. Stat. Ann. § 17:22A-29 ...................................................................21

## Legislative Materials

H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), ..........................................19

## Other Authorities

17 C.F.R. § 270.12b-1(b)(2) ...................................................................25

17 C.F.R. § 270.12b-1(b)(2) ...................................................................17

29 C.F.R. § 2509.75-8 (D-2) ............................................................. 36-37

29 C.F.R. § 2509.96-1 ....................................................................... 36-37

29 C.F.R. § 2510.3-21(c)(1)(i) ...............................................................36

29 C.F.R. § 2510.3-21(c)(1)(ii)(B) ................................................... 36-37

29 C.F.R. § 2550.401c-1 .........................................................................38

Br. for Secretary of Labor as Amicus Curiae Supporting Pls.-Appellants,
*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. Apr. 4, 2008) (No. 07-
3605) ....................................................................................................19

DOL Advisory Opinion 97-16A, 1997 WL 277979, issued May 22, 1997 ...........32

Fed. R. Civ. P. 8(a) ................................................................................30

Fed. R. Civ. P. 12(b)(6) ...........................................................................7

*In the Matter of John Hancock Inv. Mgmt. Servs.*, Securities Act Release No.
55946, SEC Docket 2547 (June 25, 2007) ........................................23

Mutual Fund Distribution Fees; Confirmations, 75 Fed. Reg. 47064
(Aug. 4, 2010).....................................................................................22

Resp't's Opp'n to Pet. for Cert. (U.S. 12-202) ..........................................................9

## PRELIMINARY STATEMENT

Plaintiffs challenge the fees that their retirement plan trustees committed their plans to pay for services related to the plans, and the fees paid by mutual funds in which their plans invested.  This Court dismissed the Second Amended Complaint ("SAC" or "Complaint") in its entirety.  The Third Circuit affirmed dismissal of the Investment Company Act of 1940 ("ICA") claims.  But it reversed and remanded the claims under the Employee Retirement Income Security Act of 1974 ("ERISA") on the ground that the pre-suit demand requirement of trust law does not apply under ERISA.  Nonetheless, the blunderbuss Complaint remains legally infirm and should again be dismissed for a host of additional reasons not previously addressed by the Court:  Plaintiffs failed to exhaust the administrative remedies expressly required by ERISA; their claims are time-barred; they lack standing; the relief sought is not allowed as to non-fiduciary defendants; they cannot use ERISA to challenge mutual fund fees; their claims are implausible; and they fail to plead essential elements of their claims—loss causation, prohibited transactions, and relevant ERISA fiduciary status.

## FACTUAL BACKGROUND

**I.   The Plans' Trustees Contracted With JHUSA
      to Provide Products and Services at Fully Disclosed
      and Agreed Upon Fees.**

Plaintiff Santomenno is a participant in the J & H Berge, Inc. 401(k) Profit Sharing Plan ("J & H Berge Plan"); Plaintiffs Barbara and Karen Poley are

participants in the Scibal Associates, Inc. 401(k) Plan ("Scibal Plan," together with the J & H Berge Plan, the "Plans"). *See* SAC at 21-22, ¶¶ 51-52.[1] The trustees of Plaintiffs' Plans ("Trustees") entered into group variable annuity contracts ("Contracts") with John Hancock Life Insurance Company (U.S.A.) ("JHUSA") under which JHUSA committed to the Trustees to provide administrative services related to the Plans and access to a platform of investment options for the Plans in return for the fees specified in the Contracts.[2] Each investment option for the Plans that the Trustees contracted to make available, called a sub-account, invested in a specific underlying mutual fund. *See* SAC at 13-14, ¶¶ 18-19. These funds included funds advised by JHUSA affiliate John Hancock Investment Management Services ("JHIMS"), as well as funds advised by unaffiliated companies. *See id.* at 61-65, ¶¶ 247-68.

---

[1] Citations to the SAC are to page and paragraph numbers because the paragraphs in the SAC are not consecutively numbered.

[2] *See* Douglass Cert., Ex. A (contract issued to the "Trustees of J & H Berge, Inc. 401(k) Profit Sharing Plan" (the "J & H Berge Contract")) at MTD2-0000001; Ex. B (contract issued to the "Trustees of Scibal Associates, Inc. 401(k) Plan" (the "Scibal Contract," together with the J & H Berge Contract, the "Contracts")) at MTD2-0000059. When a "complaint is based on [a] contract" the Court can consider it on a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The SAC here is based on the Contracts, which are therefore properly considered here. *See, e.g.*, SAC at 10, ¶ 4; 14-15, ¶¶ 21, 23, 29; 16, ¶ 31; 17, ¶ 32; 19-20, ¶¶ 41-43, 45; 21, ¶¶ 49-50; 22-23, ¶¶ 56-59; 25, ¶ 72; 32-33, ¶¶ 112, 115; 35, ¶¶ 126-27; 37-38, ¶ 141; 46-47, ¶¶ 183, 185; 50-51, ¶¶ 199-213; 62-63, ¶¶ 251-56; 67, ¶ 278; 80, ¶ 341; 121-22, ¶¶ 441-44; 123-25, ¶ 449; Count II: 134-35, ¶ 4; Count VI: 153, ¶¶ 9-10; Count VII: 156-57, ¶ 4.

The Trustees retained full responsibility for selecting the Plans' investment options from the funds available on the platform they chose. *See* SAC at 13-14, ¶ 18; 36, ¶ 132. The Contracts stated that "[c]ontributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder [the trustee]." Douglass Cert., Ex. A (J & H Berge Contract) at MTD2-0000006; Ex. B (Scibal Contract) at MTD2-0000063. The Contracts allowed the Trustees to select investments outside of the Contracts for their Plans and to terminate the Contracts at any time without penalty. *Id.*, Ex. A (J & H Berge Contract) at MTD2-0000013, 16 (permitting contractholder to "terminate this Contract by requesting a withdrawal of" the participants' account balances, and showing no termination fees); Ex. B (Scibal Contract) at MTD2-0000071 and 76 (same).[3] Both Contracts explicitly stated that JHUSA did "not assume the responsibility of the Contractholder, Plan Administrator, Plan Sponsor or any other Fiduciary of the Plan." *Id.*, Ex. A (J & H Berge Contract) at MTD2-0000012; Ex. B (Scibal Contract) at MTD2-0000070.

In addition to JHUSA's platform of investment options, the Contracts commit JHUSA to provide various administrative services to the Trustees and the

---

[3] The Trustees have in fact exercised this right to terminate and have selected alternative service providers and platform options. Douglass Cert., Ex. C (J & H Berge Contract termination); Ex. D (Scibal Contract termination). The Court may consider these letters on a motion to dismiss. *See Wells v. Genesis Health Ventures, Inc.*, No. 05-697, 2005 WL 3150259, at *2 n.4 (E.D. Pa. Nov. 23, 2005).

Plans, including (i) "record keeping services," (ii) "plan installation" services, (iii) "enrollment of participants," (iv) "distribut[ion of] educational materials," (v) "customer service," and (vi) "other participant services."  SAC at 33, ¶ 114; *see also* Douglass Cert., Ex. B (Scibal Contract) at MTD2-0000072 (Service Schedule) (JHUSA also provides administrative manuals and forms, trustee reporting, regulatory reporting assistance, and other "services as agreed upon by the [Trustees] and [JHUSA]").

The Trustees agreed to JHUSA's compensation for its services.  JHUSA's contractual compensation included fees charged to the Plans and investment options, and revenue received with respect to the Plans' investments.  *See*, *e.g.*, SAC at 50, ¶¶ 199-200, 202; 51, ¶¶ 207, 209; Douglass Cert., Ex. A (J & H Berge Contract) at MTD2-0000014-16, 18-58.  As to the latter, JHUSA or its affiliates could receive revenue sharing payments from a mutual fund or its underwriter.  *See* SAC at 107-08, ¶¶ 399-402.

Revenue sharing payments and fees paid by mutual funds under 17 C.F.R. § 270.12b-1 ("12b-1 fees") did not constitute incremental charges under the Contracts.  Whenever JHUSA or its affiliates received such revenue, they reduced otherwise applicable charges to the investment options by a corresponding amount; the Contracts stated explicitly that fees "will be reduced if [JHUSA] or an affiliate receives asset based distribution charges ('12b-1 fees') or sub-transfer agency

4

fees."  Douglass Cert., Ex. A (J & H Berge Contract) at MTD2-0000018.

JHUSA also received Sales and Service fees as agreed upon by the Trustees.

Sales and Service fees represented the charge for compensation paid by JHUSA to

the Plans' financial representative (unrelated to JHUSA) for services provided to

the Plans by that financial representative.  Douglass Cert., Ex. E (Your Investment

Options) at MTD2-0000106.

Plaintiffs do not allege that any of the fees to which the Trustees agreed

under the Contracts, or the fees paid by mutual funds, were not fully disclosed to

them or the Trustees.  Indeed, Plaintiffs plead several JHUSA fee disclosures and

extensive detail concerning fees known to Plaintiffs.  *See, e.g.*, SAC at 38, ¶¶ 146-

47, 150; 41, ¶ 158; 50, ¶¶ 203-04; 51, ¶¶ 207, 212 (all citing "Your Investment

Options" which is submitted herewith as Exhibit E to the Douglass Certification).[4]

## II.    Plaintiffs' Claims Alleging Violations of ERISA.

Plaintiffs bring seven ERISA claims derivatively and as putative class

claims on behalf "of ERISA covered employee benefit plans, the Plaintiff Plans,

that held, or continue to hold, group annuity contracts with [JHUSA] and on behalf

of the participants and beneficiaries of all such ERISA covered employee benefit

plans (i.e., the Plaintiff Participants)."  SAC at 122, ¶ 445.  Plaintiffs allege that

---

[4] The Court may consider materials cited in the SAC on a motion to dismiss.  *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 177 n.2 (3d Cir. 2000) ("[i]nasmuch as the complaint references and relies on the content of certain documents, [the court will] consider them").

JHUSA acted as an ERISA fiduciary, and that it breached ERISA fiduciary duties and engaged in prohibited transactions by: (i) charging a Sales and Service fee, *id.* at 130-36 (Counts I-II); (ii) failing to negotiate the elimination of 12b-1 fees for funds on its platform, *id.* at 137-44 (Counts III-IV); (iii) failing to negotiate lower mutual fund advisory fees for funds included on the platform, *id.* at 145-51 (Count V); (iv) receiving revenue sharing payments from such funds, *id.* at 152-55 (Count VI); and (v) offering the John Hancock Trust Money Market Trust on its platform, *id.* at 156-60 (Count VII).  The Complaint also alleges that JHUSA's affiliated investment adviser, JHIMS, and its affiliated distributors, John Hancock Distributors, LLC ("JHD") and John Hancock Funds, LLC ("JHF"), are liable as non-fiduciaries for "knowingly participating" in two alleged ERISA breaches.  *Id.* at Count III: 141, ¶ 17; Count V: 151, ¶ 15.

## PROCEDURAL POSTURE

The SAC is Plaintiffs' third complaint.  It asserts the above-described ERISA claims as well as two ICA claims.  On May 23, 2011, this Court dismissed the SAC in its entirety.  It held that Plaintiffs lacked standing to assert cognizable ICA claims.  As to the ERISA claims, the Court held that, following *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986), Plaintiffs could not state a claim absent any allegation that would allow Plaintiffs to usurp the Trustees' litigation decisions—such as pre-suit demand, joinder, or an "allegation[], which if proven,

would establish that the [T]rustees improperly refused to bring suit." Op. at 5, No.

10-01655.  The Court did not address the other grounds presented by Defendants

for dismissal of Plaintiffs' ERISA claims.

On April 16, 2012, a panel of the Third Circuit affirmed dismissal of the

ICA claims, but reversed and remanded as to the ERISA claims.  The panel held

that trust law pre-suit demand rules do not apply under ERISA, notwithstanding

*McMahon*.  *See Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178,

189 (3d Cir. 2012).  The parties' petitions for rehearing and rehearing *en banc*, and

for writs of certiorari, were denied.

## **ARGUMENT**

Plaintiffs' ERISA claims—all of which challenge the fully disclosed fees to

which the Trustees agreed—remain legally deficient and should once again be

dismissed under FED. R. CIV. P. 12(b)(6).

## I. **Standard of Review.**

A plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Specifically, a

complaint must contain "enough fact[s] to raise a reasonable expectation that

discovery will reveal evidence of" necessary elements of the plaintiff's cause of

action.  *Id*. at 556.  Allegations that are merely "consistent with" unlawful conduct

are insufficient to state a plausible claim where "more likely explanations" of

lawful conduct exist. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

Allegations also should not be credited if they are conclusory or contradicted by

documents relied upon in the complaint. *Id.* at 678 (conclusory statements); *In re*

*Arbinet-thexchange, Inc. Secs. Litig.*, No. 05-4404 (JLL), 2006 WL 3831396, at *2

n.5 (D.N.J. Dec. 28, 2006) (allegations contradicted by cited documents).

## II.     Plaintiffs Fail to Plead that They Exhausted Administrative Remedies Before Filing Suit.

Plaintiffs' ERISA claims should be dismissed because they fail to plead that

they exhausted the administrative remedies required of ERISA.

The Third Circuit has long required exhaustion of the administrative

remedies required by ERISA § 503, 29 U.S.C. § 1133, before a plaintiff brings suit

under ERISA. *See, e.g.*, *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 122-23 (3d

Cir. 2002). ERISA § 503(2) requires that each plan afford a participant "a full and

fair review by the appropriate named fiduciary" of any denial of a "claim for

benefits." 29 U.S.C. § 1133(2).[5] Although ERISA § 503(2) requires

administrative procedures as to denials of benefits, the Third Circuit has made

clear that the damages claimed from alleged breaches of fiduciary duty are

"benefits" as that term is used elsewhere in ERISA. *Graden v. Conexant Sys. Inc.*,

496 F.3d 291, 297-300 (3d Cir. 2007).

---

[5] "Named fiduciaries" are those identified in the plan or appointed by the employer sponsoring the plan. *See* ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

Exhaustion is consistent with the idea that "the designated fiduciaries of a plan, and not the federal courts, should be tasked with administering the plan." *Van Doren v. Capital Research & Mgmt. Co.*, No. 10-1425 (KSH), 2010 WL 5466839, at *4 (D.N.J. Dec. 30, 2010) (dismissing claims). The exhaustion requirement is "prudential"; it should be applied flexibly, and "involves a discretionary balancing of interests." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).[6]

The Third Circuit has applied the exhaustion requirement to ERISA breach of fiduciary duty claims. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 254 (3d Cir. 2002); *see generally In re United States Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1315 (M.D. Ga. 2007) (citing *Harrow*'s "compelling policy

---

[6] Although exhaustion is somewhat analogous to the trust law doctrine upon which the Court first dismissed Plaintiffs' ERISA claims, Plaintiffs have conceded that it is an analytically distinct concept, and that the Court has not previously addressed exhaustion. Their counsel represented to the Supreme Court that the argument "that [Plaintiffs] must exhaust . . . administrative remedies, was not raised at any stage of this litigation." Resp't's Opp'n to Pet. for Cert. (12-202) at 8. It is within this Court's discretion to hear arguments that had not been raised before. *See Grynberg v. Total Compagnie Francaise Des Petroles*, No. 10-1088, 2012 WL 4095186, at *7 & n.7 (D. Del. Sept. 18, 2012); *Brown v. City of Essex County N.J.*, No. 10-03980, 2011 WL 3610268, at *3-4 (D.N.J. Aug. 16, 2011) (Martini, J.). Given (i) the dispositive nature of the legal deficiencies noted herein, (ii) the greater focus that can now be had on the ERISA claims given the dismissal of the ICA claims, and (iii) the lack of prejudice suffered by Plaintiffs in hearing these arguments now, the Court should allow Defendants to present these additional arguments to eliminate the need for wasteful discovery or other further litigation as to deficient claims.

rationales" in applying exhaustion requirement to breach of fiduciary duty claim).

Indeed, the Third Circuit has explicitly recognized only two types of ERISA claims

that are exempted from exhaustion—neither of which involve alleged damages

from contracts entered by trustees, and neither of which apply here: (1) claims

against an employer for interference with rights protected under ERISA § 510, 29

U.S.C. § 1140, and (2) claims against a plan administrator for failure to provide

documents required under ERISA.  *See Harrow*, 279 F.3d at 253.

 Instead, as the Eleventh Circuit has held, exhaustion is required where a plan

participant brings a breach of ERISA fiduciary duty suit against a plan service

provider (even one alleged to be a fiduciary) for allegedly excessive contractual

fees.  *See Bickley v. Caremark, Rx, Inc.*, 461 F.3d 1325, 1329-30 (11th Cir. 2006).

The Eleventh Circuit reasoned that exhaustion is appropriate under these facts

because (1) the asserted breach (excessive fees) "arises from" the contractual

arrangement entered by the plan's responsible fiduciary (there the plan

administrator), and (2) the administrator already has "the duty to consider the

pursuit of breach of fiduciary duty claims on behalf of the Plan" for allegedly

excessive fees, and should be allowed "an opportunity to fully consider [the

participant]'s allegations [to] determine, as trustee of the Plan, whether it is in the

best interest of the Plan to pursue such allegations."  *See id.* at 1330.[7]

---

[7] The Eleventh Circuit explained the numerous benefits of requiring the exhaustion

Because Plaintiffs here have failed to allege that they exhausted their Plans' administrative remedies, their claims should be dismissed.  Alternatively, the Court should stay the action so that Plaintiffs may exhaust their administrative remedies. *See D'Amico v. CBS Corp.*, 297 F.3d 287, 290 (3d Cir. 2002) (stay to allow exhaustion is discretionary).

## III.   <u>Plaintiffs' Claims Are Time-Barred.</u>

Plaintiffs' derivative claims for damages under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), should also be dismissed as time-barred by ERISA's statute of limitations.

ERISA establishes a three year statute of limitations for claims where a plaintiff had actual knowledge of the facts constituting the breach, and establishes a six year statute of repose for all other claims barring fraud or concealment.  *See* ERISA § 413(2), 29 U.S.C. § 1113(2).[8]  Where the facts at issue are "openly

---

of administrative remedies before seeking relief in court.  That procedure:

> reduce[s] the number of frivolous lawsuits under ERISA, minimize[s] the cost of dispute resolution, enhance[s] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow[s] prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

461 F.3d at 1330 (alteration in original) (quotations omitted).  The Third Circuit has endorsed these rationales in *Price*, 501 F.3d at 279.

[8] The full statutory section provides that claims for fiduciary violations may not be commenced "after the earlier of – (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an

announced" to a putative class, the Third Circuit applies ERISA's three year period. *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996). Dismissal is appropriate where "the allegations made on the face of the complaint show that the cause of action is time-barred." *Brown v. Novartis Pharm.*, No. 07-365, 2007 WL 2915119, at *2 (D.N.J. Oct. 4, 2007) (Martini, J.) (granting motion to dismiss).

Courts routinely dismiss prohibited transaction claims challenging fees of plan investment options where, as here, the investment platform was developed more than three years before suit was brought. *See Fuller v. SunTrust Banks, Inc.*, No. 11-784, 2012 WL 1432306, at *7 (N.D. Ga. Mar. 20, 2012) (the initial investment offering is the "transaction" for purposes of ERISA's limitations period); *see also Figas v. Wells Fargo & Co.*, No. 08-4546, 2010 WL 9047685, at *2-3 (D. Minn. Apr. 6, 2010) (same). Breach of ERISA fiduciary duty claims challenging fees similarly have been dismissed where "[t]he allegedly excessive fees that form[ed] the central basis of [the] claim were readily apparent from the information provided to all Plan participants . . . ." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419-20 (S.D.N.Y. 2008), *aff'd on other*

---

omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation except; that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

12

*grounds*, 325 F. App'x 31 (2d Cir. 2009); *see also Fuller*, 2012 WL 1432306, at

*12 (dismissing fee claims outside the limitations period).

These cases apply here.  Plaintiff Santomenno sued on March 31, 2010, and

the Poley Plaintiffs joined on October 22, 2010.  The SAC and documents

referenced therein show that the challenged transactions all occurred—and were

disclosed—more than three or even six years earlier.  For example, the SAC

alleges that certain mutual funds on the JHUSA platform were "cloned" from

independent funds, but pay higher fees.  SAC at 61-64, ¶¶ 248-265, Count I: 131-

32, ¶¶ 7-8; Count III: 138-139, ¶¶ 6, 9.  The SAC pleads that the challenged fee

practices—which it alleges "apply to all investment menus" that JHUSA offers—

have been in effect since JHUSA began this cloning program in 2002.  *Id.* at 12,

¶ 14; 36, ¶ 13; 161, ¶ 248.  In addition, the Scibal Contract reflects that the Blue

Chip Growth Fund and the Lifestyle Portfolios in which Plaintiffs were invested—

and which paid the challenged fees—have been available on the JHUSA platform

at least as of 2003, more than three or six years prior to the 2010 filing of the

action.  *See* Douglass Cert. Ex. B at MTD2-0000087, 94.

In short, the conduct complained of dates from 2002 and 2003, and the funds

and fees that "form the central basis" of the claims were disclosed at least three

years before the claims were brought.  *Young*, 550 F. Supp. 2d at 420.

Accordingly, all of Plaintiffs' derivative ERISA § 502(a)(2) claims are time-barred.[9]

## IV.  Plaintiffs Lack Standing to Sue with Respect to Investment Options in Which They Did Not Invest and Plans in Which They Did Not Participate.

Plaintiffs do not have standing to challenge fees associated with funds or plans as to which they had no connection.

In order to satisfy the case and controversy requirement of Article III of the Constitution, a party must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct." *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990) (internal quotations omitted); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244-45 (3d Cir. 2012) (affirming dismissal).  This Court has dismissed, for example, ICA claims as to funds in which a plaintiff did not invest. *See In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 633 (D.N.J. 2005) (Martini, J.) (no standing for ICA claims as to funds not owned by plaintiffs), *partially vacated on other grounds*, 463 F. Supp. 2d 505 (D.N.J. 2005). Courts similarly have dismissed ERISA fee claims as to funds in which the plaintiff did not invest.  *See, e.g.*, *Fuller*, 2012 WL 1432306, at *8.

---

[9] Similarly, Plaintiff K. Poley's individual claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), first brought on October 22, 2010, are barred because she began investing her plan account in the challenged fund in July 2004.  *See* SAC at 17, ¶ 35.

Dismissal is also warranted as to retirement plans in which a plaintiff did not participate.  The Third Circuit has held that the court lacks jurisdiction to hear an ERISA claim by a party with respect to plans other than her own.  *See Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 (3d Cir. 1985).  Characterizing an ERISA case as a class action does not cure the deficiency of a lack of standing as to plans in which plaintiffs do not participate.  *See In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).

Here, Plaintiffs only allege an interest in six funds.  *See* SAC at 17, ¶ 34 (alleging that Santomenno was invested in the Blue Chip Growth Fund, the Money Market Trust, and the Small Cap Growth Trust); *id.* at 17-18, ¶¶ 35-36 (alleging that the Poleys were invested in the Lifestyle Fund-Balanced Portfolio, the Lifestyle Fund-Aggressive Portfolio, and/or the Lifestyle Fund-Growth Portfolio).  Plaintiffs participated in only two plans.  *See id.* at 21-22, ¶¶ 51-52.  Plaintiffs lack standing to assert claims with respect to any other funds and any other plans.[10]

## V.    Defendants JHIMS, JHD, and JHF Should Be Dismissed.

Defendants JHIMS, JHD, and JHF—none of whom is alleged to be an ERISA fiduciary—should be dismissed.

---

[10] These same standing principles prevent the Poley Plaintiffs from bringing Counts II, IV, and VII, since the Complaint does not allege that these plaintiffs invested in any non-John Hancock fund or in the Money Market Trust.

*First*, Plaintiffs improperly seek *legal* relief (money damages) against these Defendants, but the statutory provision upon which ERISA claims against non-fiduciaries must be based allows only "appropriate *equitable* relief." 29 U.S.C. § 1132(a)(3) (emphasis added). While Section 502(a)(3) allows for restitution, it does so only "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). Here, Plaintiffs do not allege, nor could they, that the challenged payments made to JHD, JHF, or JHIMS are traceable "to particular funds" currently in Defendants' possession. Plaintiffs' "unspecified request[s] for a money judgment thus must be dismissed as unauthorized under 29 U.S.C. § 1132(a)(3)." *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 F. App'x 169, 171-72 (3d Cir. 2009); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 238 (3d Cir. 2009).

*Second*, the conduct challenged as to these non-fiduciary defendants was the receipt of fees from *mutual funds*, not from retirement plans. *See* SAC at Count III: 139-41, ¶¶ 12-13, 17; Count V: 148-49, ¶¶ 8-10. As discussed below, this conduct is covered by the ICA, not ERISA. Because the Court has dismissed the ICA claims, and that dismissal was affirmed, JHIMS, JHD, and JHF should be dismissed from the case.

16

## VI.   Counts III-VI Concerning Fees Paid by Mutual Funds Are a Back-Door Attempt to Revive Previously Dismissed Claims.

Counts III through VI—challenging 12b-1 fees, advisory fees, and so-called revenue sharing paid by mutual funds—should be dismissed for the additional reason that these claims are simply a back-door attempt to impermissibly use ERISA to re-litigate Plaintiffs' previously dismissed claim under ICA § 36(b), 15 U.S.C. § 80a-35(b).

Section 36(b) of the ICA imposes a fiduciary duty on investment advisers with respect to "the receipt of compensation for services, or payments of a material nature, paid by [mutual funds] or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."  15 U.S.C. § 80a-35(b).  Advisory and 12b-1 fees can only be paid by mutual funds upon the vote of the funds' independent trustees.  *See* ICA § 15(c), 15 U.S.C. § 80a-15(c) (advisory fees); 17 C.F.R. § 270.12b-1(b)(2) (12b-1 fees).  The ICA creates an "exclusive" mechanism of private enforcement of this duty, as the Third Circuit recognized already in this case.  *Santomenno*, 677 F.3d at 186.  That mechanism imposes severe limitations on private actions challenging mutual fund fees, such as limiting damages to one year.  *See* ICA § 36(b)(3).  These statutory limitations serve a purpose; Congress intentionally sought to minimize "nuisance litigation" as to mutual fund fees.  *Krinsk v. Fund Asset Mgmt., Inc.*, No. 85-8428, 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986).  Accordingly, claims brought under other

17

federal statutory provisions for conduct that is governed by ICA § 36(b) are

improper . S*ee Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir. 1989)

(affirming dismissal of claim challenging 12b-1 fees since this "circumvention [of

§ 36(b)'s limitations is] impermissible").

    ERISA, in particular, is not an appropriate vehicle to challenge mutual fund

fees.  ERISA § 514(d) provides that ERISA may not be "construed to alter, amend,

modify, invalidate, impair, or supersede any law of the United States."  29 U.S.C.

§ 1144(d).  ERISA, therefore, cannot be used "as a means of circumventing [a]

restriction" in another federal law.  *Connors v. Amax Coal Co.*, 858 F.2d 1226,

1232 (7th Cir. 1988) (affirming dismissal of ERISA claims, citing § 514(d)).

ERISA also specifically excludes mutual fund advisers from its definitions of

fiduciary and "party in interest," and excludes mutual fund assets from its

definition of plan assets.  *See* ERISA §§ 3(21)(B), 401(b)(1), 29 U.S.C.

§§ 1002(21)(B), 1101(b)(1).[11]  Congress explained that "mutual funds are

regulated by the [ICA] and . . . it is not considered necessary to apply [ERISA's]

_____

[11] ERISA § 401(b)(1) provides that when an ERISA plan invests in a security
issued by a mutual fund, or "investment company," "the assets of such plan shall
be deemed to include such security but shall not, solely by reason of such
investment, be deemed to include any assets of such investment company."  29
U.S.C. § 1101(b)(1).  ERISA § 3(21)(B) provides that a plan's investment in a
mutual fund "shall not by itself cause such . . . investment company's investment
adviser or principal underwriter to be deemed to be a fiduciary or a party in
interest."  29 U.S.C. § 1002(21)(B).  Accordingly, the SAC is based on an error of
law by alleging that JHIMS is a "party in interest."  *See* SAC Count V: 148, ¶ 8.

fiduciary rules to mutual funds." H.R. REP. NO. 93-1280, at 296 (1974) (Conf.

Rep.), *quoted in IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*, No.

08-3949, 2008 WL 4838490, at *6 (C.D. Cal. Nov. 5, 2008) (dismissing ERISA

claims).[12]

Here, Counts III-VI of the SAC specifically challenge payments made from

*mutual funds*, not payments made by the Plans or Plaintiffs.  Plaintiffs challenge

the 12b-1 fees, advisory fees, and revenue sharing that they and their plans were

allegedly "charged" (SAC at Count IV: 143, ¶ 4; Count V: 150, ¶ 11; Count VI:

154, ¶ 14); and they allege that JHUSA should have negotiated with fund

companies and advisers for the removal of those fees (*see id.* at Count III: 138-39,

¶¶ 9, 11; Count V: 146-47, ¶¶ 4-6; Count VI: 154, ¶¶ 13-15), and that it was

improper for JHUSA affiliates to receive those fees (*see id.* at Count III: 139-40,

¶¶ 12-13; Count V: 147-48, ¶¶ 7-10; Count VI: 154 ¶¶ 13-15).  All of these

challenges, however, relate to fees paid by mutual funds, not by plans.  Indeed,

---

[12] Courts and the Department of Labor ("DOL") agree that "the sums paid" from a mutual fund "do not constitute [ERISA] plan assets."  Br. for Secretary of Labor as Amicus Curiae Supporting Pls.-Appellants at 22, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. Apr. 4, 2008) (No. 07-3605); *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) (fees drawn from mutual fund assets are not plan assets); *Ruppert v. Principal Life Ins. Co.*, No. 07-00344, 2009 WL 5667708, at *20 (S.D. Iowa Nov. 5, 2009) (revenue sharing payments from mutual funds are not ERISA plan assets), *rev'd in part on other grounds*, 796 F. Supp. 2d 959 (S.D. Iowa 2010). The SAC, therefore, incorrectly states the law in alleging that fees paid from mutual funds constitute ERISA plan "assets."  SAC at Count III: 140, ¶ 12; Count V: 147-48, ¶ 7.

Plaintiffs' counsel *admitted* that the SAC's claims as to allegedly excessive mutual fund fees are the "same" under ERISA and the ICA, and that ERISA is invoked simply to allow Plaintiffs to plead "a much more lenient standard than the ICA." *See* Douglass Cert., Ex. F (Hearing transcript excerpt) at MTD2-0000152, MTD2-0000154.

Plaintiffs' back-door attempt to avoid their lack of ICA standing, and to invoke ERISA to circumvent the ICA's carefully-crafted framework (including its limited rights of action), fails. Counts III through VI should accordingly be dismissed because they challenge fund fees, not plan fees.

## VII.   Counts I, II, and VII Fail to Plead Plausible Claims.

Plaintiffs' other ERISA claims, Counts I, II, and VII, fare no better. They also should be dismissed because Plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### A.   Counts I and II Concerning Sales and Service Fees Do Not State a Plausible Claim.

Counts I and II allege that Sales and Service fees violated ERISA because such fees "exceeded the 12b-1 fee that was already being charged to Plaintiffs by the underlying funds [sic]" and "did not result in the provision of any additional services." SAC at Count I: 131-32, ¶ 8. The duplication allegation is false, and should be dismissed on the pleadings because it is implausible on its face.

According to the SAC, Sales and Service fees are paid "for distribution and marketing of the *Sub-Account units*," SAC at Count I: 131, ¶ 7 (emphasis added). The sub-accounts were distributed to the Trustees through the Contracts along with a bundled array of other services, such as enrollment, recordkeeping, installation, reporting, and any other services to which the Trustees and JHUSA agreed.  SAC at 33, ¶ 114; Douglass Cert., Ex. B (Scibal Contract) at MTD-0000072 (Service Schedule).  Under every state's laws, an independent licensed insurance agent or broker-dealer is required to sell insurance products, such as the Contracts, to ultimate consumers, such as the Trustees.  *See*, *e.g.*, N.J. STAT. ANN. §§ 17:22A-28, 17:22A-29.  The Sales and Service fees were designed for such third-party expenses, and were negotiated and agreed to by the Trustees on behalf of their Plans:

> The Sales and Service Fee . . . represents the charge for compensation to your financial representative for services provided to the plan.  It may also include a charge for other plan expenses, such as [third party administrator] fees, that are negotiated between your Plan trustee(s) and your [third party administrator] or financial representative . . . .

Douglass Cert., Ex. E (Your Investment Options) at MTD2-0000106.

By contrast, 12b-1 fees are utilized for "distribution and service" of *mutual fund* shares.  SAC at 15, ¶ 28.  In the retirement plan services industry, "[a] common use of 12b-1 fees is to pay for the fund to be included on third-party platforms," i.e., paid by the fund to distribute the funds' shares to the platform

provider—such as JHUSA.  Mutual Fund Distribution Fees; Confirmations, 75 Fed. Reg. 47064, 47071 (Aug. 4, 2010).

Thus, the most plausible inference from the SAC is that the Trustees did not agree to Contracts containing duplicative fees: 12b-1 fees are agreed to by mutual fund trustees and are designed for the distribution and marketing of mutual funds shares to platform providers (not to plan trustees); by contrast, Sales and Service fees are not paid by mutual funds and are designed to distribute and market insurance products (of which the investment platform is just one component) by financial representatives *to* plan trustees.  Plaintiffs' allegations therefore lack the required "further factual enhancement" tending to negate the more plausible explanation that these two sets of fees are different.  *Twombly*, 550 U.S. at 570.

In light of such an "obvious alternative explanation" for the existence of these distinct fees, Counts I and II should be dismissed because they are based on the implausible premise that the fees are exactly the same.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010). [13]

---

[13] Although the Complaint alleges that the Contracts provide no additional features beyond a mutual fund, *see* SAC at 14, ¶ 23, the Scibal Contract and the SAC's other allegations refute that allegation, and demonstrate the numerous other services provided under the Contracts that are not alleged to be provided by the mutual funds.  *Id.* at 33, ¶ 114; Douglass Cert., Ex. B (Scibal Contract) at MTD2-0000072 (Service Schedule).

To the extent that a factual question exists as to the purpose of the Sales and Service fee agreed to by the Trustees, the Court should enforce the exhaustion

**B.      Count VII Concerning Selection of the Money
          Market Trust Does Not State a Plausible Claim.**

Count VII, alleging that JHUSA violated ERISA by offering the Money

Market Trust as an investment option, also fails to state a plausible claim.

*First*, the allegation that the Money Market Trust achieved "inferior returns"

(SAC at Count VII: 157-58, ¶ 8) is entirely unsubstantiated and conclusory.

Plaintiffs plead no facts whatsoever supporting this claim.  Count VII should be

dismissed on this basis alone.  *See Boteach v. Socialist People's Libyan Arab

Jamahiriya*, 759 F. Supp. 2d 548, 552 (D.N.J. 2010) (Martini, J.) (allegations

"lack[ing] specificity and detail" fail on motion to dismiss).

*Second*, the other challenge to this fund—that it became imprudent after its

investment adviser, JHIMS, entered into a settlement with the Securities and

Exchange Commission in 2007 (SAC at Count VII: 156-57, ¶ 4)—also cannot

plausibly support a claim.  JHIMS did not admit any wrongdoing in the settlement.

*See In the Matter of John Hancock Inv. Mgmt. Servs., LLC, et al*, Securities Act

Release No. 55946, 90 SEC Docket 2547 (June 25, 2007).  Such a settlement,

therefore, cannot legally, or logically, form the basis of a claim that allowing a

JHIMS-advised fund on an investment platform for trustee selection was a breach

of JHUSA's duties.  *Cf. In re Johnson & Johnson Derivative Litig.*, 865 F. Supp.

---

requirement addressed in Argument Section II, *supra*, to allow the Trustees to
explain to Plaintiffs the rationale for these fees, rather than burdening the Court
with Plaintiffs' undeveloped claims in the first instance.

2d 545, 568-72 (D.N.J. 2011) (dismissing shareholder derivative complaint relating to settlement entered with Department of Justice).

## VIII.   Plaintiffs Fail to Plead Essential Elements of Their Claims.

Finally, all of Plaintiffs' causes of action should be dismissed for the failure to plead essential elements of their claims.

### A.   Plaintiffs' Breach of Fiduciary Duty Claims Fail to Plead Loss Causation.

All the claims for breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), should be dismissed for failure to plead loss causation.

Loss causation is an essential element of an ERISA breach of fiduciary duty claim.  *See* ERISA § 409(a), 29 U.S.C. § 1109(a) (a breaching fiduciary is liable to the plan for losses "resulting from" the breach).  "[A] causal connection is required between the breach of [the] fiduciary duty and the losses incurred . . . ."  *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982); *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994) (ERISA liability exists "only to the extent that losses to the plan result from the breach").  Where the challenged conduct did not cause the purported loss to the plan, the plaintiff has failed to state a claim.  *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 781-82 (5th Cir. 2007) (affirming dismissal where plaintiffs' alleged losses resulted from conduct other than that of defendants); *Feret v. Corestates Fin. Corp.*, No. 97-6759, 1998 WL 426560, *6 (E.D. Pa. July

24

27, 1998) (dismissing claims for failure to plead causal link between alleged breach of duty and harm).

Here, Plaintiffs allege losses to the Plans due to fees paid by mutual funds or charged under the Contracts. JHUSA did not cause any of these losses.

*First*, as described above, the mutual funds themselves paid the challenged advisory and 12b-1 fees. Those fees require the approval of mutual funds' disinterested directors, not of JHUSA. *See* ICA § 15(c) (advisory fees); 17 C.F.R. § 270.12b-1(b)(2) (12b-1 fees).

*Second*, the Trustees selected JHUSA for the Plans, and entered into the Contracts that included the challenged mutual funds with the challenged fees. JHUSA had no authority to select itself or its platform for the Plans, and it was not authorized to select the Plans' investment options. *See* Douglass Cert., Ex. A (J & H Berge Contract) at MTD2-0000006 ("Contributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder [the trustee]."); Ex. B (Scibal Contract) at MTD2-0000063 (same).

*Third*, after the Trustees selected JHUSA and the mutual funds (whose fees were approved by the fund directors), Plaintiffs—and not JHUSA—directed the investment of their plan accounts. *See* SAC at 14, ¶ 20, 37, ¶ 134-35. Tellingly, although Plaintiffs argue that JHUSA should not have made certain mutual funds available because they were "clones" of independent (i.e., unaffiliated) mutual

funds, the independent mutual funds underlying the two "cloned" mutual funds in which Plaintiffs invested were available on JHUSA's platform; Plaintiffs—not JHUSA—made the choice to invest in the "clones" and not the independent mutual funds.[14]

The most plausible inferences to be drawn from the SAC therefore reflect that any losses incurred by the Plaintiffs were caused by decisions and actions of people other than JHUSA.  JHUSA did not select itself for the Plans or its investment options for Plaintiffs' Plan accounts.  Absent pleaded loss causation, Plaintiffs' claims for breach of fiduciary duty should be dismissed.

### B.    Plaintiffs Fail to Plead Claims for Prohibited Transactions.

All of Plaintiffs' prohibited transaction claims under ERISA § 406, 29 U.S.C. § 1106,  fail because Plaintiffs have not pleaded any prohibited transactions with respect to their Plans.

Fiduciary obligations only attach to conduct performed "in relation to a plan."  *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).  ERISA "exempts *any*

---

[14] Plaintiff Santomenno invested in the Blue Chip Growth Fund and the Small Cap Growth Fund.  *See* SAC at 17, ¶ 34.  SAC Table I alleges that these funds are clones of TRBCX (T. Rowe Price Blue Chip Growth) and VEXRX (Vanguard Explorer Admiral Share).  *See id.* at 185, 194.  Both the T. Rowe Price Blue Chip Growth and the Vanguard Explorer funds were available under the J & H Berge Contracts through different sub-accounts than the ones in which Plaintiff Santomenno elected to invest.  *See* Douglass Cert., Ex. A, at MTD2-0000025 (Vanguard Explorer fund was available through the JH Explorer Fund sub-account); *id.* at MTD2-0000039 (T. Rowe Price Blue Chip Growth fund available through the JH T. Rowe Price Blue Chip Growth Fund).

fiduciary from the obligations when it is not acting 'with respect to a plan.'"

*Frank Russell Co. v. Wellington Mgmt. Co.*, 154 F.3d 97, 104 (3d Cir. 1998)

(emphasis in original) (quoting ERISA § 404, 29 U.S.C. § 1104). "A fiduciary

who acts in a strictly business capacity is not acting 'with respect to a plan.'" *Id.*

ERISA's prohibited transaction provisions similarly focus only on conduct with

respect to a "plan," prohibiting a "fiduciary with respect to a plan" from "caus[ing]

the plan" to engage in a certain transactions, ERISA § 406(a), 29 U.S.C. § 1106(a),

and prohibiting other transactions between a plan and a fiduciary, ERISA § 406(b),

29 U.S.C. § 1106(b). Because the prohibited transaction rules create "*per se*

violations [they] should be interpreted narrowly." *Pietrangelo v. NUI Corp.*, No.

04-3223 (GEB), 2005 WL 1703200, at *13 (D.N.J. July 20, 2005) (dismissing

claim) (internal quotations omitted).

Here, Plaintiffs fail to plead any transaction with respect to any plan, let

alone the Plaintiffs' Plans. The transactions at issue—inclusion on JHUSA's

investment platform of mutual funds paying the challenged fees—all stem from the

way in which JHUSA created the investment platform product it offers to Trustees

and others in the marketplace unrelated to any specific retirement plan. For

example, Plaintiffs allege that JHUSA committed a prohibited transaction by

improperly receiving revenue sharing payments, SAC at Count VI: 154-55, ¶ 16,

which are alleged to have been paid and/or negotiated *before* a mutual fund was

included on the JHUSA platform.  *Id.* at 11, ¶ 9.  By their very allegations, then,

Plaintiffs are challenging transactions that necessarily did not occur with respect to

any plan and indeed that occurred well before the Trustees decided to use

JHUSA's platform for Plaintiffs' Plans.

Similarly, Plaintiffs assert that JHUSA should have used its "economic

leverage" as an institutional investor to secure lower-cost investment options and

eliminate 12b-1 fees.  SAC at 79-80, ¶¶ 340-41.  Such purported "economic

leverage" is not alleged to be a result of any specific plan's investments, let alone

Plaintiffs' Plans (indeed, Plaintiffs appear to allege that JHUSA should have

provided cheaper funds on its platform *before* the Plans' Trustees selected JHUSA

and contracted for its product and fees (*id.* at 78-79, ¶¶ 333-35)).

Plaintiffs do not allege any transaction with respect to their Plans.

Accordingly, their prohibited transaction claims in Counts I-III, and V-VI should

be dismissed.

### C.    Plaintiffs Fail to Plead that JHUSA Was an ERISA Fiduciary with Respect to the Challenged Conduct.

Plaintiffs' claims for damages, arising under ERISA § 502(a)(2), also must

be dismissed for failure to plead that JHUSA possessed relevant fiduciary status

under ERISA.

"[A] party's status as an ERISA fiduciary is purely a question of law."  *Srein*

*v. Frankford Trust Co.*, 323 F.3d 214, 220 (3d Cir. 2003) (internal citation

omitted).  "[F]iduciary status is not an all or nothing concept.  A court must ask whether a person is a fiduciary with respect to the particular activity in question." *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995) (internal quotations and citations omitted).  Courts routinely dismiss ERISA claims at the pleading stage where relevant fiduciary status is not properly pleaded.  *See, e.g.*, *Pegram*, 530 U.S. at 231-34 (affirming dismissal); *Renfro v. Unisys Corp.*, 671 F.3d. 314, 321-23 (3d Cir. 2011) (same).[15]

The Complaint should be dismissed because Plaintiffs fail to plead this essential element of their ERISA claims.

### 1.    Plaintiffs Fail to Link JHUSA's Alleged Fiduciary Status to Any Action with Respect to a Plan.

Plaintiffs plead seven separate purported bases for JHUSA's alleged fiduciary status.  *See* SAC at 39-49.  However, one is "a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan."  *Pegram*, 530 U.S. at 225-26; *see also In re RCN Litig.*, No. 04-5068 (SRC), 2006 WL 753149, at *7 (D.N.J. Mar. 21, 2006).  Plaintiffs make no attempt to connect these pleaded bases

---

[15] *See also*, *e.g.*, *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 274 (W.D.N.Y. 2010) (dismissing claims for failure to adequately plead fiduciary status); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc*., No. 08-6160 (JAG), 2009 WL 3233427, at *6 (D.N.J. Sept. 30, 2009) (same); *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033 (FLW), 2005 WL 1140687, at *9-10 (D.N.J. May 13, 2005) (same).

for JHUSA's fiduciary status with the conduct comprising the purported breach.[16]

The SAC's claims contain only the conclusory allegations that JHUSA was an

ERISA fiduciary for the conduct comprising each of the alleged breaches.  *See,*

*e.g.*, SAC at Count I: 130, ¶ 2.  Such conclusory and unmatched pleading does not

suffice to link alleged fiduciary status with respect to the challenged conduct.  *See*

*Renfro*, 671 F.3d at 320.  It fails even Rule 8(a)'s notice pleading standard.  *See*

*Pietrangelo*, 2005 WL 1703200, at *10.  The claims should be dismissed on this

basis alone.

> ### 2. Plaintiffs Fail to Plead that JHUSA Meets any of the Requirements for Relevant ERISA Fiduciary Status.

Beyond Plaintiffs' failure to link purported fiduciary status to any alleged

breach or plan, as they are required to do, none of their seven purported bases for

alleged ERISA fiduciary status sufficiently pleads such status even generally.

> #### a. Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(i).

Plaintiffs do not adequately plead that JHUSA was a fiduciary to their Plans

under ERISA § 3(21)(A)(i), which imposes fiduciary status on one who "exercises

any discretionary authority or discretionary control respecting management of such

---

[16] In addition, as described Argument Section VIII.B, *supra*, Plaintiffs' allegations relate to JHUSA's platform construction, activities that are not alleged to have been conducted with respect to any plan.  This provides yet another basis to dismiss all ERISA § 502(a)(2) claims.

plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A)(i).

The Third Circuit's dismissal of similar excessive fee claims against the service provider in *Renfro v. Unisys* confirms that Plaintiffs here fail to plead JHUSA's relevant ERISA fiduciary status.  In *Renfro*, plan participants alleged that a 401(k) plan service provider who performed administrative services and made available a platform of investment options was an ERISA fiduciary with respect to investment selection and the associated fees.  *See* 671 F.3d at 323.  Under the provider's service agreement, the employer sponsoring the plan agreed that the only investments allowed under the contract would be funds managed by the service provider and/or its affiliates, and that the provider was responsible to "hold and invest . . . plan assets in trust among several investment options selected by the Applicable Fiduciary."  *Id.*  There, like here, the "agreement expressly disclaimed any role for [the service provider] in selecting investment options, stating, '[the provider's entities] shall have no responsibility for the selection of investment options under the Trust,' [i]nstead, the agreement required that [the provider] be explicitly 'direct [ed] . . . as to what investment options . . . Plan participants may invest in.'"  *Id.*

The Third Circuit affirmed dismissal of all the claims against the service provider because, while it may have controlled which investment options it made

31

available on its platform, the employer made the ultimate decision to select the

defendant and its platform; accordingly, the employer made the ultimate decision

about what investment options would be available to its plan. *Renfro*, 671 F.3d at

323. The employer "remained free to add [other] investments to the [] plan" by

hiring another provider. *Id.* The provider could not be a fiduciary with respect to

investment selection because it "had no contractual authority . . . to constrain [the

employer] from including other investment options in the plan." *Id.*[17]  More

generally, a provider, who "has no relationship to an ERISA plan" prior to its

retention by the employer or trustee, "owes no fiduciary duty with respect to the

negotiation" of its services arrangement, including the compensation it receives.

*Id.* at 324.

Other courts routinely hold, like the Third Circuit has, that a company that

operates within a "circumscribed set of responsibilities" under a services

---

[17] *Renfro* similarly disposes of Plaintiffs' additional argument that JHUSA is a
fiduciary by virtue of its ability to update the investment platform it offers to the
market by substituting funds, *see* SAC at 42, ¶ 164; 48, ¶ 192, where, like here, the
plan's named fiduciaries can select a different provider's investment platform if
they are unsatisfied with any platform changes or for any other reason. *See Renfro*,
671 F.3d at 323. The DOL has long allowed a platform provider to substitute
funds without incurring fiduciary status. *See* DOL Advisory Opinion 97-16A,
1997 WL 277979, issued May 22, 1997; *cf. Chi. Dist. Council of Carpenters
Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 477 (7th Cir. 2007) (ERISA service
provider not a fiduciary by virtue of changes it may make to the drug formulary).
JHUSA's ability to substitute funds is not relevant as to Plaintiffs in any case
because Plaintiffs have not pleaded, nor could they, that the funds they selected
within their Plans were ever changed or substituted. *Cf.* SAC at 17-18, ¶¶ 34-36.

agreement is not a relevant ERISA fiduciary. *Van Doren*, 2010 WL 5466839, at

*4 (dismissing claims).  To be a fiduciary, one must have "'actual decision-making

power' on behalf of a plan." *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184

(GEB), 05-1079 (GEB), 2008 WL 141498, at *5 (D.N.J. Jan. 14, 2008) (dismissing

claims).  As Judge Irenas explained in dismissing claims earlier this year

challenging, like here, a service providers' contractual compensation, a provider is

"not a fiduciary when it negotiated . . . service provider fees at arms-length with

[the employer sponsoring a plan]." *Danza v. Fidelity Mgmt. Trust Co.*, No. 11-

2893 (JEI/KMW), 2012 WL 3599362, *2-3 (D.N.J. Aug. 20, 2012), *appeal

docketed*, 12-3497 (3d Cir. Sept. 9, 2012).

    The "mere creation and offering of a menu or lineup of funds cannot legally

or logically give rise to fiduciary status." *Zang*, 728 F. Supp. 2d at 272 (dismissing

claims).  A company like JHUSA "is free to design the various plan templates and

investment menus to offer to prospective clients, who can then decide to contract

with [it] or not." *Id.*  A provider does not incur fiduciary status by offering a "big

menu" of investment options from which a trustee selects a "small menu" for her

plan—a practice "standard in the industry." *F.W. Webb Co. v. State St. Bank &

Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010).[18]

---

[18] *F.W. Webb* also correctly rejected the reasoning of out-of-circuit cases that
Plaintiffs previously cited for the proposition that offering plan trustees a menu of
options confers fiduciary status.  2010 WL 3219284, at *6-7 (rejecting *Phones

These decisions require dismissal here, where the Contracts stated that:

- "Contributions remitted to this Contract may be invested *only in the Investment Options selected by the Contractholder [the Trustee].*"[19]

- JHUSA "will not be required to question any action of the [Trustee]."

- JHUSA "will not be responsible to see that any action of the [Trustee] is authorized by the terms of the Plan, or any trust agreement or any other document executed in connection with the Plan."

Douglass Cert., Ex. A (J & H Berge Contract) at MTD2-0000006, 13 (emphasis added); Ex. B (Scibal Contract) at MTD2-0000063, 71 (emphasis added). The Scibal Contract further provided that "[b]y performing these services, [JHUSA] does not assume the responsibility of the [Trustee], Plan Administrator, Plan Sponsor or any other Fiduciary of the Plan." *Id.*, Ex. B (Scibal Contract) at MTD2-0000070. The Trustees also had no impediment to terminating the Contracts at any time, without discontinuance fees, and to obtain services and investment options from another provider, just like the case in *Renfro.  See* Ex. A (J & H Berge Contract) at MTD2-0000013; Ex. B (Scibal Contract) at MTD2-0000071.

_____

*Plus, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 06-1835, 2007 WL 3124733, at *4 (D. Conn. Oct. 23, 2007), and distinguishing *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156, 165-67 (D. Conn. 2006), and *Charters v. John Hancock Life Ins. Co.*, 534 F. Supp. 2d 168, 171-72 (D. Mass. 2007)).

[19] Plaintiffs admit as much. *See* SAC at 13-14, ¶ 18 ("Each of the [plans], or their sponsors, selects all or some of the funds on the menu constructed by [JHUSA] to be made available to [participants]"); 36, ¶ 132 (same).

Given these authorities and contract language, none of the product features pleaded by the SAC—offering a platform of investment options, the optional Fiduciary Standards Warranty,[20] the Sales and Service fee, and JHUSA's receipt of revenue sharing—establish fiduciary status.  *See* SAC at 44, ¶ 175; 46-47, ¶¶ 184-85; 48, ¶ 192.  Because the arrangement here is akin to *Zang* and *F.W. Webb*, and because the Contracts track the language in *Renfro* and *Van Doren*, the SAC should similarly be dismissed.

### b.    Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(ii).

Plaintiffs also fail to plead that JHUSA rendered fiduciary investment advice under ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii).

Courts have long recognized that selling an investment product or service to an ERISA plan does not constitute providing "investment advice" within the meaning of § 3(21)(A)(ii).  *See Flacche v. Sun Life Assur. Co. of Can. (U.S.)*, 958 F.2d 730, 734-35 (6th Cir. 1992) (selling an annuity contract did not give rise to ERISA fiduciary status); *Consol. Beef Indus. Inc. v. New York Life Ins. Co.*, 949

---

[20] The SAC confirms that the Fiduciary Standards Warranty—an optional product feature—applies to the fiduciary responsibilities possessed by JHUSA's clients— the Trustees—and does not explicitly or implicitly cause JHUSA to assume ERISA fiduciary status.  *See* SAC at 34, ¶ 120; 43, ¶ 170 (JHUSA "warrants and covenants that the investment options *Plan fiduciaries select to offer to Plan participants*" will satisfy ERISA, and the product is designed to "*help[] employers meet the highest fiduciary standards* for selection and monitoring of the investments *they offer their* 401(k) participants." (emphasis added)).

F.2d 960, 965 (8th Cir. 1991) (a person who markets a 401(k) plan is not a fiduciary).  Also excluded from fiduciary conduct is providing generalized educational materials—such as materials informing a participant "about the benefits of plan participation" and "investment alternatives," and "orientation of new participants and advising participants of their rights and options under the plan."  29 C.F.R. §§ 2509.96-1, 2509.75-8 (D-2); *see also Van Doren*, 2010 WL 5466839, at *5 (applying DOL interpretive bulletin to dismiss claims).

Instead, investment advice fiduciary status exists only where plaintiffs plead (and later prove) the presence of five factors.  *See Elliott v. Mitsubishi Cement Corp.*, No. 07-03509, 2008 WL 4286985, at *6 (C.D. Cal. Sept. 15, 2008) (dismissing claim for failure to plead fiduciary status).[21]  Here, Plaintiffs do not plead several of the required factors.  For example, they do not plead that the purported advice served as a "primary basis for investment decisions with respect to plan assets."  29 C.F.R. § 2510.3-21(c)(1)(ii)(B).  Plaintiffs also do not plead that any purported advice is "individualized" to them or their Plans "based on the

---

[21] The factors are: (i) "individualized investment advice . . . based on the particular needs of the plan"; (ii) the advice was given "pursuant to a mutual agreement, arrangement or understanding" that the advice would "serve as a primary basis for investment decisions with respect to plan assets"; (iii) the advice was provided "on a regular basis"; (iv) the advice pertained to the value of property or consisted of "recommendations as to the advisability" of investing in certain property; and (v) the advice was rendered "for a fee."  29 U.S.C. § 1002(21)(A)(ii); 29 C.F.R. § 2510.3-21(c)(1)(i), (ii)(B).

particular needs of the plan." *Id.*; *see also Elliott*, 2008 WL 4286985, at *6 ("Nowhere in the [c]omplaint do [p]laintiffs discuss or even allude to the individualized nature of the 'investment advice.'").

Instead, Plaintiffs make only generalized allegations regarding product features that JHUSA offers to all plan sponsors and trustees in the market. *See* SAC at 43-44, ¶¶ 169-73 (Fiduciary Standards Warranty offered to "plan sponsors"); 42-43, ¶¶ 165; 44, 172-75 (platform offered to "plan sponsors"). The participant enrollment materials and fund fact sheets further alleged by Plaintiffs to constitute investment advice, *see* SAC at 48-49, ¶¶ 194-95, are precisely the type of generalized material that cannot support a claim based on ERISA fiduciary status. *See Van Doren*, 2010 WL 5466839, at *5; *see also* 29 C.F.R. §§ 2509.96-1 and 2509.75-8 (D-2). As such, the SAC fails to state a claim based on investment advice fiduciary status.

### c.    Plaintiffs Fail to Plead that JHUSA Was a Fiduciary under ERISA § 3(21)(A)(iii).

Plaintiffs also fail to plead facts supporting fiduciary status under ERISA § 3(21)(A)(iii), which confers fiduciary status on one who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii).

"Plan administration" for purposes of ERISA § 3(21)(A)(iii) involves operational issues such as interpretation of plan documents and claims

determinations, not management of plan assets.  *See Varity Corp. v. Howe*, 516 U.S. 489, 502-03 (1996) (employer exercised "administrative power" when it conveyed information about plan benefits); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993).  Here, Plaintiffs do not allege, nor could they, that JHUSA had any role—much less a discretionary role—in the construction of documents for their Plans or benefit determinations under their Plans.  In any event, because fiduciary status under § 3(21)(A)(iii) requires "discretionary authority or discretionary responsibility," had Plaintiffs challenged any aspect of plan administration—which they do not—fiduciary status still would not lie based upon lack of any pleaded JHUSA discretion as to their Plans, as set forth above.

### d. Maintaining Assets in Insurance Company Separate Accounts Does Not Make JHUSA an ERISA Fiduciary.

Finally, Plaintiffs' bald assertion that JHUSA is a ERISA fiduciary, *per se*, because it is an insurance company using separate accounts, *see* SAC, 44-46, ¶¶ 176-82, also fails to plead ERISA fiduciary status.

The authority Plaintiffs cite, ERISA § 401(c)(5)(B), 29 U.S.C. § 1101(c)(5)(B), and 29 C.F.R. § 2550.401c-1, do not apply.  They address only whether an insurer's general account assets that support certain policies issued prior to 1999 may be considered "plan assets."  These provisions do not define or

describe who is or is not a fiduciary under ERISA, a matter that is governed

exclusively by ERISA § 3(21)(A).  In *Leimkuehler v. Am. United Life Ins. Co.*, No.

10-0333, 2012 WL 28608, at *10 (S.D. Ind. Jan. 5, 2012), *appeal docketed* 12-

1081 (7th Cir. Jan. 12, 2012), the court rejected the precise argument that Plaintiffs

advance here.  Similarly, the Third Circuit recognizes that ERISA fiduciary status

does not lie in the absence of any pleaded allegation of supporting facts showing

that the standards of § 3(21)(A) are met with respect to the challenged actions.  *See*

*Srein*, 323 F.3d at 214; *Trs. of I.A.M. Dist. No. 15 Health Fund v. Operant*

*Material Solutions of N.Y. N.J. LLC*, No. 07-4262 (HAA), 2008 WL 4601792, at

*4 (D.N.J. Oct. 15, 2008).  As such, the SAC again fails to plead relevant ERISA

fiduciary status.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court

enter an Order granting their Renewed Motion to Dismiss Plaintiffs' Second

Amended Complaint and dismissing Plaintiffs' ERISA claims with prejudice.

Dated:  December 14, 2012      Respectfully Submitted,
Newark, NJ

                                              s/  Brian J. McMahon
                                              Brian J. McMahon, Esq.
                                                GIBBONS P.C.
                                              One Gateway Center
                                              Newark, NJ  07102-5310
                                              Telephone:  (973) 596-4500
                                              Facsimile:  (973) 596-0545
                                              bmcmahon@gibbonslaw.com

James O. Fleckner, Esq. (admitted *pro hac vice*)
Alison V. Douglass, Esq. (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
jfleckner@goodwinprocter.com
adouglass@goodwinprocter.com

**Attorneys for John Hancock Life Insurance
Company (U.S.A.), John Hancock Investment
Management Services, LLC, John Hancock
Funds, LLC, and John Hancock Distributors,
LLC**

LIBA/2324060

40