## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIELLE SANTOMENNO,** *et al.*, | Civ. No. 2:10-cv-01655 (WJM) |
| **Plaintiffs,** | |
| v. | **OPINION** |
| **JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),** *et al.*, | |
| **Defendants.** | |

<u>**WILLIAM J. MARTINI, U.S.D.J.**</u>:

Plaintiffs Danielle Santomenno, Karen Poley, and Barbara Poley bring this action individually and on behalf of a putative class of plan participants against John Hancock Life Insurance Company (U.S.A.) and its affiliates (collectively, "John Hancock" or "Defendants"), under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for allegedly charging their retirement plans excessive fees. This matter comes before the Court on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

### I.      BACKGROUND

#### A.   Facts

Plaintiff Santomenno was an employee of J & H Berge, Inc.  Plaintiffs K. Poley, and B. Poley were employees of Scibal Associates, Inc.  These employers sponsored various benefit plans for their employees, including 401(k) retirement plans.  The 401(k) retirement plans (the "Plans") were administered by trustees (the "Trustees").  The Trustees of the Plans entered into agreements with John Hancock, a service provider for 401(k) retirement plans.

John Hancock provided each Plan with a product known as a group annuity contract.  As part of its services, John Hancock provided Trustees with a menu of 401(k)

investment options (the "big menu").  The options on the big menu included John Hancock mutual funds ("John Hancock Funds") and mutual funds offered by other companies ("Independent Funds").  The Trustees selected a subset of the options on the big menu to be included in their Plans (the "small menu").  *See* Second Amended Complaint ("SAC") ¶ 18, ECF No. 34 ("Each of the [plans], or their sponsors, selects all or some of the funds on the menu constructed by [JHUSA] to be made available to [participants]").  Employees could then pick from the options on the small menu when deciding where to invest their 401(k) contributions.  Plaintiffs take issue with John Hancock's performance as a service provider in three respects.

First, Plaintiffs allege that John Hancock's service provider fees were excessive. Every mutual fund has fees.  The total amount of fees for a given mutual fund is referred to as that mutual fund's "Expense Ratio."  SAC ¶ 250.  The Expense Ratios for the John Hancock Funds and the Independent Funds encompassed a number of different fees, including a Sales and Service Fee, a 12b-1 Fee, and an Investment Advisor Fee.  The Sales and Service Fee represented compensation paid to each Plan's financial representative.  The 12b-1 Fee was a marketing and distribution fee.  And the Investment Advisor Fee represented compensation paid to subadvisors and others who took care of the administrative aspects of managing the investment.  Plaintiffs argue that these fees were excessive in light of the services performed.

Plaintiffs do not dispute that all of these fees were fully disclosed to the Trustees and plan participants.  *See* SAC ¶¶ 146-47, 150, 158, 203-04, 207, 212.  In fact, the Trustees and plan participants received a booklet entitled "Your Investment Options," that described each fee in detail.  *See* SAC ¶¶ 146-50; Your Investment Options booklet, Certification of Alison V. Douglass ("Douglass Cert.") Ex. E at 3-4, 38, ECF No. 71-7.[1] The booklet also provided fee information for each individual investment option, including the Expense Ratio for that option and the fees that made up the Expense Ratio. *See* Douglass Cert. Ex. E at 9-39.

Second, Plaintiffs allege that John Hancock improperly received revenue sharing payments in connection with the Plans.  Participant retirement contributions are not invested into mutual funds directly.  State insurance law and ERISA require service providers to keep retirement contributions separate from other assets.  In addition, if every individual participant in a plan were to invest directly in a mutual fund, the mutual funds would have to keep track of and service thousands of individual accounts, many of which contained little money.  Instead, John Hancock, like other service providers, creates a separate account corresponding with each mutual fund, and then pools

---

[1] The Your Investment Options booklet was explicitly relied on in the Second Amended Complaint.  *See* SAC ¶¶ 146-47, 150.  Accordingly, the Court may consider it on a motion to dismiss.  *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered").

individual contributions for the mutual fund in that separate account.  John Hancock then uses the separate account as a whole to invest in the designated mutual fund.

From the perspective of a plan participant, this is the same as investing in the mutual fund directly.  From the perspective of a mutual fund, this makes a big difference because the mutual fund only has to keep track of one large investor instead of thousands of small investors.  Because John Hancock is the one administering thousands of individual accounts, the mutual fund's administrative, marketing, and service costs are much lower.  As a result, the Independent Funds are willing to pay some of their fees to John Hancock as compensation for performing these services.  This practice is known as "revenue sharing."  *See* SAC at 152; *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013).  Revenue sharing does not alter a mutual fund's Expense Ratio or the fees that make up that Expense Ratio.  Rather, it impacts what the service provider and the mutual fund do with the fees after those fees have been paid. Plaintiffs allege that John Hancock's receipt of revenue sharing payments was improper, and that instead, John Hancock should have used that revenue to provide a discount to plan participants.  SAC at 154.

Third, Plaintiffs allege that John Hancock improperly selected the JHT-Money Market Trust to be included in their big menu of investment options.  Plaintiffs argue that this option should not have been included because the advisor to the JHT-Money Market Trust had previously been cited and fined by the Securities and Exchange Commission. SAC at 156.

## B.  Procedural History

Plaintiffs filed this action on March 31, 2010.  On October 22, 2010, Plaintiffs filed the Second Amended Complaint, asserting seven ERISA claims and two Investment Company Act of 1940 ("ICA") claims.  Defendants moved to dismiss.  On May 23, 2011, this Court entered an Opinion and Order dismissing all nine counts of the Second Amended Complaint.  *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:10-cv-01655, 2011 WL 2038769 (D.N.J. May 23, 2011).  Plaintiffs appealed.  On April 16, 2012, the Third Circuit affirmed the dismissal of the ICA claims, but reversed and remanded on the ERISA claims.  *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178 (3d Cir. 2012).  Defendants now move to dismiss the ERISA claims on alternate grounds.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in

the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

## III.   DISCUSSION

In the Second Amended Complaint, Plaintiffs assert breach of fiduciary duty claims under ERISA § 404(a) in connection with the following practices:

(1) Count 1:  Charging Excessive Sales and Service Fees for John Hancock Funds;
(2) Count 2:  Charging Excessive Sales and Service Fees for Independent Funds;
(3) Count 3:  Charging 12b-1 Fees for John Hancock Funds;
(4) Count 4:  Charging 12b-1 Fees for Independent Funds;
(5) Count 5:  Charging Excessive Investment Advisor Fees;
(6) Count 6:  Receiving Revenue-Sharing Payments; and
(7) Count 7:  Selecting the JHT-Money Market Trust as an Investment Option.

In Counts 1, 2, 3, 5, and 6, Plaintiffs also assert prohibited transaction claims under ERISA § 406.

Defendants move to dismiss on nine grounds, arguing that:  (1) Plaintiffs failed to exhaust their administrative remedies; (2) Plaintiffs' claims are time-barred; (3) Plaintiffs lack standing to sue for certain investment options; (4) the John Hancock affiliates should be dismissed; (5) Counts 3, 4, 5, and 6 duplicate the dismissed ICA claims; (6) Counts 1, 2, and 7 are not plausible claims; (7) Plaintiffs failed to plead loss causation; (8) Plaintiffs failed to plead their prohibited transaction claims; and (9) John Hancock is not an ERISA fiduciary.

The Court finds that John Hancock is not an ERISA fiduciary for the purpose of any of the claims asserted in this case.  Because this requires a complete dismissal of all

of Plaintiff's claims, the Court does not reach the parties' other arguments.[2]  The Court will address (1) the law governing ERISA fiduciary status, generally; (2) the law governing ERISA fiduciary status in 401(k) fee cases; and (3) why John Hancock is not an ERISA fiduciary in this case.

## A.  ERISA Fiduciary Status, Generally

ERISA requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan.[3]  29 U.S.C. § 1102(a)(1).  In addition, an entity that is not a named fiduciary may be considered an ERISA fiduciary in certain circumstances.  ERISA provides that:

> a person is a fiduciary with respect to a plan **to the extent**
>
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

Because an entity is only a fiduciary "to the extent" that it possesses authority or control over the plan, *id.*, "fiduciary status is not an all or nothing concept."  *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995) (quotations omitted).  Instead, courts "must ask whether [the entity] is a fiduciary with respect to the particular activity in question."  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (quotations omitted).  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [the entity] was acting as a fiduciary . . . when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

---

[2] In their renewed motion to dismiss, Defendants raise arguments that they raised in their first motion, and also raise new arguments that they never asserted before.  Plaintiffs argue that Defendants are barred from raising new arguments by Federal Rule of Civil Procedure 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").  Because Defendants previously argued that John Hancock is not an ERISA fiduciary, and the Court decides the motion on that ground, it is unnecessary to decide the Rule 12(g)(2) issue.

[3] In this case, the Trustees are the named fiduciaries.

Both breach of fiduciary duty claims and prohibited transaction claims require that an action be taken by an ERISA fiduciary. ERISA § 404, which governs breach of fiduciary duty claims, prohibits plan fiduciaries from discharging their duties in a manner that is not "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA § 406, which governs prohibited transaction claims, "prohibits plan fiduciaries from entering into certain transactions." *Nat'l Sec. Sys., Inc. v. Iola ("Iola")*, 700 F.3d 65, 82 (3d Cir. 2012); 29 U.S.C. § 1106 ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction" that fulfills certain prohibited criteria); *Danza v. Fid. Mgmt. Trust Co.*, No. 11-2893, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012) ("Plaintiffs cannot maintain claims for prohibited transactions because Defendants were not fiduciaries"). Thus, ERISA fiduciary status is an essential element of all of Plaintiffs' claims.

Citing the Third Circuit's opinion in *Iola*, Plaintiffs assert that "fiduciary status is irrelevant" to their prohibited transaction claims. Pls.' Ltr. at 2, ECF No. 81. This is an incorrect reading of *Iola*. The parties in *Iola* agreed that a named fiduciary, Tri-Core, engaged in prohibited transactions. *Iola*, 700 F.3d at 90 ("the parties agree, Tri–Core (as fiduciary) contravened § 406(b)(3).") The "narrow legal question" before the Third Circuit was whether the plaintiffs could obtain equitable relief from an advisor who knowingly participated in those prohibited transactions, even though the advisor was not a fiduciary. *Id.* at 91. The Third Circuit said yes. *Id.* The Third Circuit held that, if a fiduciary is liable for engaging in prohibited transactions, then a nonfiduciary may also be liable for participating in the same transactions. *Id.* The Third Circuit did not hold that the plaintiffs could recover, even if nobody was a fiduciary. Such a holding would contradict the plain language of the statute, which provides that a "fiduciary" shall not engage in a prohibited transaction. 29 U.S.C. § 1106. In this case, Plaintiffs make no attempt to show that some other fiduciary engaged in a prohibited transaction. As such, Plaintiffs' prohibited transaction claims will fail unless they show that at least one John Hancock entity was an ERISA fiduciary.

## B. ERISA Fiduciary Status in 401(k) Fee Cases

Litigation over the fees charged to 401(k) retirement plans began to emerge in approximately 2006. Robert N. Eccles, *Circuits Return to 401(k) Fee Cases*, 19 No. 4 ERISA Litig. Rep. (Newsl.) 4 (2011). Circuit court case law governing the fiduciary status of service providers in 401(k) fee cases has just begun to develop, but the recent cases are instructive. *See id.* Three cases, in particular, are applicable here.

In *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), employees of Deere & Company ("Deere") sued the Fidelity Management Trust Company ("Fidelity"), the service provider for their 401(k) plan. *Id.* at 578. The plaintiffs argued that Fidelity was liable as an ERISA fiduciary because Fidelity (1) selected 401(k) investment options with excessive fees, and (2) received revenue sharing payments in connection with the plan. *Id.* at 583. The Seventh Circuit disagreed for two reasons. *Id.* at 583-84. First, the court

6

held that Fidelity was not a fiduciary for purposes of its fees because it negotiated those fees at arms-length.  *Id.* at 583 ("a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms").  Second, the court held that Fidelity was not a fiduciary for purposes of selecting investment options because it was "Deere, not Fidelity [that had] the final say on which investment options [would] be included" in the plan. *Id.*  Accordingly, the Seventh Circuit concluded that the action against Fidelity was properly dismissed.  *Id.* at 592.

In *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), employees of the Unisys Corporation ("Unisys") sued Fidelity.  The plaintiffs argued that Fidelity was liable as an ERISA fiduciary because Fidelity selected 401(k) investment options with excessive fees. *Id.* at 319.  Relying on *Hecker*, the Third Circuit held that Fidelity was not an ERISA fiduciary for two reasons.  *Id.* at 324.  First, the court held that "Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys."  *Id.* The court reasoned that, "'[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he . . . is unable to exercise any control over the trustees' decision [on] whether or not, and on what terms, to enter into an agreement with him.'"  *Id.* (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).  Second, the court held that Fidelity was not a fiduciary for purposes of selecting investment options because the trustees had the final say on which investment options would be included in the plan.  *Id.* at 323.  Accordingly, the Third Circuit concluded that the action against Fidelity was properly dismissed.  *Id.* at 329.[4]

In *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013), the most recent case in the *Hecker* and *Renfro* line of cases, the Seventh Circuit again found that a 401(k) service provider was not a fiduciary.  *Id.* at 908.  In *Leimkuehler*, a plan trustee sued service provider American United Life Insurance Co. ("AUL"), arguing that AUL breached its fiduciary duty by receiving revenue-sharing payments.  *Id.*  The plaintiff argued that AUL was a fiduciary because (1) AUL selected investment options for the plan, (2) AUL maintained plan assets in a separate account, and (3) AUL had the unilateral right to substitute or delete the funds available to the plan.  *Id.* at 910-11.  The Seventh Circuit rejected all three arguments.  First, the court reiterated that the act of selecting investment options does not give rise to fiduciary status.  *Leimkuehler*, 713 F.3d at 911.  The court explained that "AUL [discloses] the bottomline cost of every fund that it offers, [so] Leimkuehler was free to seek a better deal with a different 401(k) service provider if he felt that AUL's investment options were too expensive."  *Id.* at 912. Second, the court found that AUL's management of a separate account did not give rise to fiduciary status because that task had nothing to do with an alleged breach of fiduciary duty.  *Id.* at 913-14.  For example, "Leimkuehler [did] not allege that AUL . . . [withdrew] funds in the separate account to pay for a company-wide vacation to Las

---

[4] The Third Circuit issued its decision in *Renfro* several months after this Court issued its Opinion on the first motion to dismiss.

Vegas." *Id.* at 913.  <u>Third</u>, the court found that AUL's right to substitute and delete funds also had nothing to do with an alleged breach of fiduciary duty.  *Id.* at 914.  Accordingly, the Seventh Circuit concluded that AUL was properly dismissed on summary judgment. *Id.* at 908.

### C.  John Hancock is Not a Fiduciary

In every case charging breach of ERISA fiduciary duty, the threshold question is whether the entity was "acting as a fiduciary . . . when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.  In this case, there are three actions subject to complaint.  In Counts 1 through 5, Plaintiffs allege that John Hancock charged excessive fees.  In Count 6, Plaintiffs allege that John Hancock improperly received revenue-sharing payments.  And in Count 7, Plaintiffs allege that John Hancock improperly selected the JHT-Money Market Trust as an investment option.  The Court will address each action in turn.

<u>First</u>, the Court finds that John Hancock is not a fiduciary with respect to its fees (Counts 1-5).  In *Renfro*, the Third Circuit made clear that a service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation." *Renfro*, 671 F.3d at 324; *see also Hecker*, 556 F.3d at 583.  In this case, John Hancock negotiated its service provider fees at arm's length.  Those fees were fully disclosed.  *See* SAC ¶¶ 146-50; Douglass Cert. Ex. E.  And the Trustees were "free to seek a better deal with a different 401(k) service provider if [they] felt that [the] investment options were too expensive." *Leimkuehler*, 713 F.3d at 912.  Accordingly, John Hancock owed no duty to Plaintiffs with respect to its fees.  *See Danza v. Fid. Mgmt. Trust Co.*, No. 11-2893, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012) ("Defendants owed no duty to Plaintiffs regarding the reasonableness of the QDRO service fees").

<u>Second</u>, the Court finds that John Hancock is not a fiduciary with respect to revenue-sharing payments (Count 6).  Service providers do not "become fiduciaries merely by receiving shared revenue," especially when "the total expense of the investment was accurately disclosed" to plan participants. *Leimkuehler v. Am. United Life Ins. Co.*, No. 10-333, 2012 WL 28608, at *14 (S.D. Ind. Jan. 5, 2012) *aff'd*, 713 F.3d 905 (7th Cir. 2013); *see also Hecker*, 556 F.3d at 584 (no fiduciary status arises from revenue sharing arrangements).  Again, John Hancock's fees, and the total expenses associated with each investment option, were fully disclosed to the Trustees and plan participants.  The Trustees and plan participants chose to invest in those options in spite of the fees.  The fact that John Hancock and the mutual funds chose to allocate those fees in a particular way after the fees were paid does not make John Hancock a fiduciary. *See Leimkuehler*, 713 F.3d at 908.

<u>Third</u>, the Court finds that John Hancock is not a fiduciary with respect to the selection of the JHT-Money Market Trust as an investment option (Count 7).  A company like John Hancock "is free to design the various plan templates and investment menus to

offer to prospective clients, who can then decide to contract with [it] or not." *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 272 (W.D.N.Y. 2010). A provider does not incur fiduciary status simply because it offers a "big menu" of investment options from which a trustee selects a "small menu" for her plan. *F.W. Webb Co. v. State St. Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010); *Renfro*, 671 F.3d at 323; *Hecker*, 556 F.3d at 592. That is precisely the situation in this case: John Hancock offered a big menu of investment options from which the Trustees selected small menus for their Plans. *See* SAC ¶ 18. And, just like in *Hecker* and *Renfro*, it was the Trustees, not John Hancock, who had the final say on which investment options to include in the Plans. Because John Hancock did not have ultimate authority over which investments were included in the Plans, John Hancock was not a fiduciary with respect to the selection of the JHT-Money Market Trust. *See Renfro*, 671 F.3d at 323.

Plaintiffs nevertheless argue that John Hancock was a fiduciary because it maintained Plan assets in a separate account, reserved the right to substitute or delete the funds available to the plan, and provided investment advice. The Court disagrees, as none of these tasks relate to any alleged breach of fiduciary duty. Plaintiffs do not allege, for example, that John Hancock mismanaged the Plan's separate account by withdrawing funds to pay for a company-wide trip to Las Vegas. *See Leimkuehler*, 713 F.3d at 913. Similarly, Plaintiffs do not allege that John Hancock selected investment options with reasonable fees, and then unilaterally substituted funds with high fees. *See id.* at 914 (AUL's unilateral right to substitute and delete funds did not give rise to fiduciary status). Finally, Plaintiffs do not allege that John Hancock gave bad investment advice by, say, providing inaccurate updates on the plan participants' investments.

Plaintiffs' other arguments are similarly unpersuasive. Plaintiffs argue that John Hancock is a fiduciary because the company offers a Fiduciary Standards Warranty. However, the allegations in the Second Amended Complaint make clear that this product is designed to help ***employers*** (*i.e.*, named fiduciaries) meet their fiduciary obligations. *See* SAC ¶¶ 120, 170 (Fiduciary Standards Warranty is designed to "help[] employers meet the highest fiduciary standards for selection and monitoring of the investments they offer their 401(k) participants"). It in no way warrants that ***John Hancock*** is an ERISA fiduciary. Plaintiffs also argue that the Court should follow *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008) and *Santomenno v. Transamerica Life Ins. Co.*, No. 12-02782, 2013 WL 603901 (C.D. Cal. Feb. 19, 2013), two cases in which district courts were presented with nearly identical facts and found that a service provider was an ERISA fiduciary. The Court notes that many of these 401(k) fee cases have extremely similar facts, and that different district courts may come to different conclusions when presented with the same issues. However, courts in this District have the benefit of a Third Circuit opinion that squarely addresses the fiduciary status of a service provider in a 401(k) fee case. *See Renfro*, 671 F.3d at 324. Accordingly, the

Court will follow the Third Circuit, rather than relying on the out-of-circuit district court decisions offered by Plaintiffs.[5]

      In conclusion, the Court finds that John Hancock was not acting as a fiduciary when taking any of the actions subject to complaint.  Because fiduciary status is an essential element of all of Plaintiffs' claims, the Court finds that the Second Amended Complaint should be dismissed.

## IV.    CONCLUSION

      For the reasons stated above, Defendants' motion to dismiss is **GRANTED**, and the Second Amended Complaint is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.


            /s/ William J. Martini
            **WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 24, 2013**

---

[5] In a single sentence of their Opposition Brief, Plaintiffs argue that John Hancock is estopped from contesting its fiduciary status because it lost that issue when it was a Defendant in the *Charters* case.  Opp. Br. at 28.  Plaintiffs bear the burden of showing that collateral estoppel applies.  *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).  Because Plaintiffs made no attempt to meet that burden, the Court finds this argument unavailing.